## EXHIBIT B

**(Proposed Sale Order)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------x
                                                                :
*In re*                                                         :    **Chapter 11**
                                                                :
**CAPMARK FINANCIAL GROUP INC.,** *et al.,*                     :
                                                                :    **Case No. 09-_____ (   )**
      **Debtors.**                                              :
                                                                :    **(Jointly Administered)**
                                                                :
----------------------------------------------------------------x

### ORDER (a) APPROVING EXERCISE OF PUT OPTION; AND (b) AUTHORIZING SALE OF MSB BUSINESS (INCLUDING ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES) FREE AND CLEAR OF ALL CLAIMS AND INTERESTS

Upon the motion dated October 25, 2009 (the "Motion"), of Capmark Financial

Group Inc. ("CFGI") and certain of its subsidiaries, as debtors and debtors in possession

(collectively, the "Debtors"),[1] pursuant to sections 105(a), 363, and 365 of title 11, United States

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are:  Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), and Capmark Affordable Equity Inc. (2381).  CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044.

Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 6004-1 of the Local

Bankruptcy Rules for the District of Delaware (the "Local Rules") requesting the following relief

from this Court: (I) entry of an order:

(i)      scheduling a hearing (the "Sale Hearing") to consider approval of the proposed sale (the "Sale") by CFGI and its wholly-owned subsidiaries, Capmark Finance Inc. ("CFI"), and Capmark Capital Inc. ("CCI") (collectively, the "Sellers"), of the Sellers' commercial mortgage servicing and mortgage banking business assets (collectively, the "MSB Business"), to (a) Berkadia Commercial Mortgage LLC (f/k/a Berkadia III, LLC) ("Berkadia") under that certain Asset Put Agreement (the "APA"), between the Sellers and Berkadia, dated September 2, 2009, attached to the Motion as Exhibit C, or (b) another purchaser submitting a higher or better offer;

(ii)     establishing the objection deadline in connection with the proposed Sale;

(iii)    approving the form of, and notice procedures relating to, the (a) Sale Hearing Notice (as defined below), and (b) Notice of Assumption and Assignment (as defined below);

(iv)     scheduling an auction ("Auction") to the extent the Sellers receive additional higher or better offers for the MSB Business postpetition; and

(v)      approving the Sellers' prepetition and postpetition marketing efforts and bidding process;

(II) upon completion of the Sale Hearing, entry of an order:

(i)      if no higher or better offers have been received, approving the Sellers' exercise of the Put Option (as defined below) pursuant to the APA, and without the necessity of conducting an Auction free and clear of any and all liens, encumbrances, claims, and interests (collectively, the "Liens") pursuant to section 363(f) of the Bankruptcy Code, the APA, or a Modified APA (as defined below); and/or

(ii)     if a higher or better offer is received, and therefore, an Auction is held, authorizing the Sale of the MSB Business to Berkadia, or a Successful Offeror at an Auction, free and clear of any and all liens, encumbrances, claims, and interests (collectively, the "Liens") pursuant to section 363(f) of the Bankruptcy Code, the APA, or a Modified APA;[2]

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

RLF1-3474834-1

and the Court, having entered the Sale Hearing Order on [DATE], 2009; and the Sale Hearing having been held on [DATE], 2009 to consider approval of the Sale of the MSB Business to Berkadia or a Successful Bidder; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the District of Delaware, (ii) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, (iii) Deutsche Bank Trust Company Americas, as trustee under the prepetition senior unsecured floating rate note and 5.875% senior unsecured note indentures, (iv) Wilmington Trust FSB, as successor trustee under the prepetition 6.300% senior unsecured note indenture, (v) counsel for the ad hoc committee of prepetition unsecured bondholders of CFGI, (vi) Law Debenture Trust Company of New York, as trustee under CFGI's prepetition floating rate junior subordinated indenture, (vii) any proposed DIP lender, (viii) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates (on a consolidated basis), (ix) counsel to Berkadia, and (x) the Federal Deposit Insurance Corporation; and it appearing that no other or further notice need be provided; and upon the Motion and Declaration of Thomas L. Fairfield, Executive Vice President, General Counsel and Secretary of CFGI, in Support of the Debtors' Chapter 11 Petitions and First-Day Motions and Applications, dated as of the commencement of these chapter 11 cases (the "Commencement Date") and the Declaration of Michael Wilkerson in Support of the Motion; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to

A.      The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Time is of the essence in consummating a Sale of the MSB Business and it is in the best interests of the Debtors and their estates to sell the MSB Business within the time constraints set forth in the Motion and the APA.  The terms of the APA are the highest and best terms that have been offered for Sale of the MSB Business.

C.      Upon the closing of the APA (the "Closing"), the assets to be sold and executory contracts and unexpired leases to be assumed and assigned will have been acquired by Berkadia after adequate marketing and in good faith and as the result of arm's length negotiations.

D.      Reasonable notice of the Sale and a reasonable opportunity to object or be heard with respect to the Sale of the MSB Business and assumption and assignment of the Assumed Contracts and Leases has been afforded to all interested persons and entities, including: (i) the United States Trustee for the District of Delaware, (ii) counsel for the Official Committee of Unsecured Creditors, (iii) counsel for Berkadia, (iv) any party who, in the past twelve months, expressed in writing to the Debtors an interest in acquiring the MSB Business, and who the Debtors and their representatives reasonably and in good faith determine potentially have the desire and financial wherewithal to effectuate the Sale, (v) all parties who are known to possess or assert a secured claim against the MSB Business, (vi) the Internal Revenue Service, (vii) all applicable state attorneys general, local realty enforcement agencies, and local regulatory authorities, (vii) any parties entitled to notice under Rule 2002-1(b) of the Local Rules for the

---

Bankruptcy Rule 9014.

RLF1-3474834-1

United States Bankruptcy Court District of Delaware, and (viii) all parties to the contracts sought to be assumed and assigned in the Sale.

       E.     Notice, as specified in the preceding paragraph and as evidenced by the affidavits of service and affidavits of publication filed with the Court, has been provided in the form and manner specified in the Motion and required by the Sale Hearing Order, and such notice is reasonable and adequate.

       F.     No further consents or approvals are required for the Debtors to consummate the Sale of the MSB Business other than the consent and approval of this Court. Although the parties have agreed under the terms of the APA to obtain certain additional consents or approvals, as conditions to the closing of the Sale of the MSB Business, such additional consents and approvals are not required as a condition to authorization to consummate the Sale pursuant to sections 363 and 365 of the Bankruptcy Code. Neither the execution of the APA nor the consummation of the Sale of the MSB Business in accordance with its terms will constitute a violation of any provision of the organizational documents of any Debtor or any other instrument, law, regulation, or ordinance by which any Debtor is bound.

       G.     Upon entry of this Sale Order, the Debtors shall have full power and authority to exercise the Put Option (as defined in the Motion) and consummate the Sale and all related transactions contemplated by the APA. The APA and the Sale have been duly and validly authorized by all necessary action of the Debtors and no shareholder vote, board resolution, or other corporate action is required of the Debtors for the Debtors to consummate such Sale.

RLF1-3474834-1

H.      This Sale Order and consummation of the Sale are supported by good business reasons and will serve the best interests of the Debtors, their estates, and creditors by maximizing the values obtained from the MSB Business.

I.      The marketing and bidding processes implemented by the Sellers and their Advisors, as set forth in the Motion, were fair, proper, and reasonably calculated to result in the best value received for the MSB Business.

J.      The APA was negotiated, proposed, and entered into by Berkadia without collusion, in good faith, and from an arm's length bargaining position.  The affiliations of Berkadia and the Sellers have been fully disclosed.  The Sellers and Berkadia have not engaged in any conduct that would cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code.

K.      Berkadia is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such is entitled to all of the protections afforded thereby, and otherwise has acted in good faith in all respects in connection with this proceeding, in that: (i) Berkadia recognized that the Sellers were free to deal with other parties interested in acquiring the Sellers' MSB Business; (ii) Berkadia agreed to provisions in the APA which would enable the Sellers to accept a higher and better offer for the MSB Business; (iii) Berkadia in no way induced or caused the chapter 11 filing of the Debtors; (iv) all payments to be made by Berkadia and other agreements entered into by Berkadia in connection with the Sale have been disclosed; (v) the negotiation and execution of the APA and related agreements was in good faith and an arm's length transaction; and (vi) the disclosure requirements required by Local Rule 6004-1 have been satisfied.

L.      The consideration to be paid (a) by Berkadia to Sellers for the MSB Business pursuant to the APA, after consideration of the amount earlier paid by the Sellers to

6

Berkadia for the Put Option, and (b) by the Sellers to Capmark Bank for Capmark Bank servicing advances, loans and contracts (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the MSB Business; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act or any similar laws of any state or jurisdiction whose law is applicable to the Sale.

M.    The consummation of the Sale pursuant to the APA will be a legal, valid, and effective sale of the MSB Business to Berkadia and will vest Berkadia with all right, title, and interest in and to the MSB Business, free and clear of all Liens in accordance with section 363(f) of the Bankruptcy Code, because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

N.    All parties with Liens against the MSB Business, if any, who did not object to the Motion and the relief requested therein, or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against Berkadia, its affiliates, or any agent of the foregoing to recover any claim which such person or entity has solely against the Debtors or any of their affiliates. All other objections to the Sale of the MSB Business are overruled. Failure to sell the MSB Business free and clear of Liens would be substantially less beneficial to the Debtors' estates.

O.    Not selling the MSB Business free and clear of all Liens would adversely impact the Debtors' estates, and the sale of the MSB Business other than one free and clear of all Liens would be of substantially less value to the Debtors' estates.

7

P.    The sale of the MSB Business outside of a chapter 11 plan pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors.  The Sale does not constitute a *sub rosa* chapter 11 plan.

Q.    All objections thereto having been resolved, the amounts set forth on Exhibit A to the Notice of Assumption and Assignment, dated _____, 2009 (the "Cure Amounts") are deemed the necessary amounts to "cure" all "defaults" under section 365(b) of the Bankruptcy Code.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The Motion is granted in all respects.

2.    Pursuant to sections 363(b), (f) and 365 of the Bankruptcy Code, the Sellers' exercise of the Put Option, and the sale, conveyance, and assignment of the MSB Business, by the Debtors, including the assumption and assignment of the Assumed Contracts and Leases by the Debtors to Berkadia, and all related transactions, pursuant to the APA is approved, and the Debtors are authorized to assume the APA and all agreements contemplated thereunder, and execute any and all documents and take all actions necessary and appropriate to effectuate and consummate the Sale in consideration of the purchase price specified therein, including assigning and transferring to Berkadia all of the Sellers' right, title, and interest in and to all of the Sellers' tangible and intangible property included as part of the MSB Business except as otherwise explicitly provided by the APA.

3.    The transfer of the MSB Business by the Sellers to Berkadia is a legal, valid, and effective transfer and shall vest Berkadia with all right, title, and interest of the Sellers in the MSB Business pursuant to section 363(f) of the Bankruptcy Code, free and clear of any

8

and all Liens (including but not limited to any and all "claims" as defined in section 101(5) of the Bankruptcy Code) and any and all rights and claims under any bulk transfer statutes and related laws, whether arising by agreement, statute, or otherwise and whether arising before or after the commencement of these chapter 11 cases, whether known or unknown, including Liens of any of the creditors, vendors, employers, suppliers, or lessors of the Sellers or any other third party. Any and all such Liens shall attach to the net proceeds of the Sale, with the same priority, validity, force, and effect as they now have against the assets comprising the MSB Business.

4.    The Sale pursuant to this Sale Order shall be binding upon the Debtors, Berkadia, all creditors, members, and owners of the Debtors, all persons having or asserting a Lien against the Debtors or the MSB Business, and all parties to any actions or proceedings that directly or indirectly contest the power or authority of the Debtors to sell, assign, and convey the MSB Business or that seek to enjoin any such sale, assignment, or conveyance.

5.    Any party having the right to consent to the assumption or assignment of the Assumed Contracts and Leases that has failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment, as required by section 365(c) of the Bankruptcy Code.   In addition, adequate assurance of future performance has been demonstrated by or on behalf of Berkadia with respect to the Assumed Contracts and Leases.

6.    There shall be no rent accelerations, assignment fees, increases, or any other fees charged to Debtors or its affiliates or designees as a result of the assumption or assignment by the Debtors to Berkadia of the Assumed Contracts and Leases, and the validity of such assumption or assignment shall not be affected by any dispute between any of the Debtors or their respective affiliates and any counterparty to any Assumed Contract or Lease, and the

9

RLF1-3474834-1

Assumed Contracts and Leases, upon assignment to Berkadia, shall be deemed valid and binding and in full force and effect in accordance with their terms.

7.      Without limiting the generality of the provisions of the APA or other provisions of this Sale Order, Berkadia shall not be deemed to have assumed any liability under, or otherwise be deemed liable in any manner whatsoever with respect to, any contract or lease of any Debtor that is not explicitly designated as an Assumed Contract or Lease, or any other obligation, absent Berkadia's written agreement as to the subsequent inclusion of any specifically identified contract or lease as an Assumed Contract or Lease and the satisfaction of the requirements of section 365 of the Bankruptcy Code with respect to any such contract or lease.

8.      The contemplated Sale has been undertaken by Berkadia and the Debtors at arm's length, without collusion, and Berkadia will acquire the MSB Business pursuant to the APA in good faith, under section 363(m) of the Bankruptcy Code, and is, and shall be entitled to all of the protections in accordance therewith.  The consideration provided by Berkadia for the MSB Business under the APA is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

9.      This Sale Order and all provisions of the APA shall be binding upon any successors and assigns of the Sellers, including, without limitation, any trustee appointed for any of the Sellers in its chapter 11 case or in any superseding proceeding under chapter 7 of the Bankruptcy Code.

10.     Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases shall conflict with or derogate the provisions of the APA, to the extent modified by this Sale Order.

RLF1-3474834-1

11.    Subject to the terms of the APA, the APA may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Sellers or their estates.

12.    From and after the date hereof, the Sellers shall act in accordance with the terms of the APA and each Seller, to the extent it already has not done so, shall execute the APA at or prior to Closing.

13.    To the extent an inconsistency exists between the provisions of the APA and this Sale Order, the provisions contained herein shall govern.  The failure specifically to include any provisions of the APA in this Sale Order does not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA be authorized and approved in its entirety.

14.    Without limiting in any manner the effect of the other provisions of this Sale Order, any person or entity that has filed financing statements, mortgages, mechanics' liens, lis pendens, or other documents evidencing or otherwise asserting a Lien against the MSB Business shall be, and hereby is, directed to deliver to Debtors prior to Closing, in proper form for filing after Closing, and executed by the appropriate parties, termination statements, instruments of satisfaction, mortgage or deed of trust releases, or similar instruments as appropriate to cause the release of any such Lien, and in the event any such person or entity fails to comply with the direction set forth in this paragraph, then, at the option of Berkadia, Berkadia either may seek to have such person or entity held in contempt of this Court or shall be hereby authorized, without the requirement of any further action (including Order of this Court) either to execute and file or record such statements, instruments, releases, and other documents on behalf

11

of such person or entity releasing such asserted Lien in, to, or against the MSB Business or to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the termination or release of any such Lien in, to, or against the MSB Business.

15.    Consistent with, but not in limitation of the foregoing, each and every federal, state, and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

16.    All persons or entities who or that are in possession of some or all of the MSB Business assets on the Closing are hereby directed to surrender possession of those MSB Business assets to Berkadia at Closing; *provided, however,* that Capmark Bank shall be entitled to receive and the Sellers shall immediately tender to Capmark Bank that portion of the purchase price paid in consideration for servicing advances, loans and contracts owned by Capmark Bank and transferred to Berkadia at the closing.

17.    Without limiting the generality of the other provisions of this Sale Order, and to the extent provided by federal law, Berkadia, under no circumstances, shall be deemed to be a successor of the Sellers  (and Berkadia expressly has disclaimed any such liability with respect to the Sellers in the APA).  Accordingly, Berkadia shall have no successor or vicarious liabilities of any kind with respect to the MSB Business, and all persons and entities shall be hereby enjoined from asserting any such claims against Berkadia.  In addition, Berkadia and its affiliates shall have no liability of whatever nature or kind for (a) any potential responsibility or liability to any Seller, or any other person, for Excluded Liabilities, and (b) any potential liability for a claim that the transactions contemplated by the APA constitute a fraudulent conveyance, fraudulent transfer, or similar claim.

12

18.    The Court shall retain exclusive jurisdiction to interpret, construe, and enforce the provisions of the APA and this Sale Order in all respects, and further, to hear and determine any and all disputes between any Debtor and/or Berkadia, as the case may be, and any nondebtor party to, among other things, any Assumed Contracts or Leases, concerning, *inter alia*, assignment thereof by the pertinent Debtor to Berkadia under the APA and any dispute between Berkadia and any Debtor as to their respective obligations with respect to any asset, liability, or claim arising hereunder.

19.    The automatic stay of section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the APA, including, without limitation, with respect to any cash held in escrow pursuant to the provisions thereof.

20.    This Sale Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(g), 6006(d), 7062, or otherwise.

Dated: _____, 2009
      Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

13