# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x

|  |  |  |
|---|---|---|
| *In re* | : | **Chapter 11** |
|  | : |  |
| **CAPMARK FINANCIAL GROUP INC.**, *et al.,* | : | **Case No. 09-13684 (CSS)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |
|  | : | **Re: Docket No. 19** |

-----------------------------------------------------------x

## ORDER (A) SCHEDULING SALE HEARING; (B) ESTABLISHING OBJECTION DEADLINE; (C) APPROVING SALE HEARING NOTICE AND NOTICE OF ASSUMPTION AND ASSIGNMENT; (D) SCHEDULING AN AUCTION; AND (E) APPROVING BIDDING PROCEDURES

Upon the motion dated October 25, 2009 (the "Motion"),[1] of Capmark Financial

Group Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and debtors in

possession (collectively, the "Debtors"),[2] pursuant to sections 105(a), 363, and 365 of title 11,

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[2] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), and Capmark Affordable Equity Inc. (2381). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the

Local Bankruptcy Rules for the District of Delaware (the "Local Rules") requesting the

following relief from this Court: (I) entry of an order:

(i)    scheduling a hearing (the "Sale Hearing") to consider approval of the proposed sale (the "Sale") by CFGI and its wholly-owned subsidiaries, Capmark Finance Inc. ("CFI"), and Capmark Capital Inc. ("CCI") (collectively, the "Sellers"), of the Sellers' commercial mortgage servicing and mortgage banking business assets (collectively, the "MSB Business"), to (a) Berkadia Commercial Mortgage LLC (f/k/a Berkadia III, LLC) ("Berkadia") under that certain Asset Put Agreement (the "APA"), between the Sellers and Berkadia, dated September 2, 2009, attached to the Motion as Exhibit C, or (b) another Successful Bidder (as defined below);

(ii)   establishing the objection deadline in connection with the proposed Sale;

(iii)  approving the form of, and notice procedures relating to, the (a) Notice of Auction and Sale (as defined below), and (b) Notice of Assumption and Assignment (as defined below);

(iv)   scheduling an auction ("Auction") to the extent the Sellers receive additional higher or better offers for the MSB Business, or parts thereof, postpetition; and

(v)    approving bidding procedures (the "Bidding Procedures"), as set forth herein;

(II) upon completion of the Sale Hearing, entry of an order:

(i)    if no higher or better offers have been received, approving the Sellers' exercise of the Put Option (as defined below) pursuant to the APA, and without the necessity of conducting an Auction free and clear of any and all liens, encumbrances, claims, and interests (collectively, the "Liens") pursuant to section 363(f) of the Bankruptcy Code, the APA, or a Modified APA (as defined below); and/or

(ii)   if a higher or better offer is received, and therefore, an Auction is held, authorizing the Sale of the MSB Business to Berkadia, or to another Successful Bidder at an Auction, free and clear of any and all Liens pursuant to section 363(f) of the Bankruptcy Code, the APA, or a Modified APA (as defined below);

and due and proper notice of the Motion having been provided to (i) the Office of the United

States Trustee for the District of Delaware (the "U.S. Trustee"), (ii) Citibank, N.A. and Citicorp

North America, Inc., as administrative agents under the Debtors' prepetition senior credit

2

facility, bridge loan agreement and term loan facility, (iii) Deutsche Bank Trust Company Americas, as trustee under the prepetition senior unsecured floating rate note and 5.875% senior unsecured note indentures, (iv) Wilmington Trust FSB, as successor trustee under the prepetition 6.300% senior unsecured note indenture, (v) counsel for the ad hoc committee of prepetition unsecured bondholders of CFGI, (vi) Law Debenture Trust Company of New York, as trustee under CFGI's prepetition floating rate junior subordinated indenture, (vii) any proposed DIP lender, (viii) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates (on a consolidated basis), (ix) counsel to Berkadia, and (x) the Federal Deposit Insurance Corporation, and it appearing that no other or further notice need be provided; and upon the Declaration of Thomas L. Fairfield, Executive Vice President, General Counsel and Secretary of CFGI, in Support of the Debtors' Chapter 11 Petitions and First-Day Motions and Applications, dated as of the commencement of these chapter 11 cases (the "Commencement Date"), and the Declaration of Michael Wilkerson in Support of the Motion; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     Good and sufficient notice of the Motion has been given under the circumstances, and no further or other notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons.

C.     The Debtors' notice of the Auction and Sale (the "Notice of Auction and Sale"), annexed hereto as Schedule 1, is appropriate and reasonably calculated to provide interested parties with timely and proper notice of the Auction and Sale and related deadlines, and no other or further notice is required.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The Motion is granted to the extent described herein.

2.     The Bidding Procedures, as set forth below, are approved and shall apply with respect to the proposed sale of the MSB Business:

(A)     **Assets to Be Sold**:  The Auction shall consist of the MSB Business (as defined herein), or parts thereof, as applicable;

(B)     **Confidentiality Agreements**:  Upon execution of a confidentiality agreement, in form and substance satisfactory to the Sellers, any party that wishes to conduct due diligence in respect of the MSB Business may be granted access to all material information that has been or will be provided to Berkadia and other bidders;

(C)     **Bid Deadline**:  Any person or entity interested in participating in the Auction must submit a Qualifying Bid (as defined below) on or before **November 20, 2009 at 4:00 p.m. (Eastern Standard Time)** (the "Bid Deadline") in writing, to (1) counsel to the Sellers, Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York 10019, Attention: Michael P. Kessler, Esq. and Judy G.Z. Liu, (2) Capmark Financial Group Inc., 116 Welsh Road, Horsham, Pennsylvania 19044, Attention: Thomas L. Fairfield, Esq., and (3) counsel to the official committee of unsecured creditors appointed in these cases (the "Committee"), Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attention: Thomas Moers Mayer, Esq. and Amy Caton, Esq.

(D)     **Qualifying Bids**:  To participate in the bidding process and be deemed a "Qualified Bidder," each potential bidder (other than Berkadia) must submit a "Qualifying Bid" by the Bid Deadline.  To constitute a Qualifying Bid, a bid must meet the following procedures (which procedures may be modified by the Debtors with the Committee's consent):

4

(i)     be in writing and state that such bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the MSB Business on terms and conditions no less favorable to the Sellers than the terms and conditions contained in the APA;

(ii)    include a mark-up of the APA (the "Modified APA") reflecting the variations from the APA, including which contracts and leases are not to be assumed and assigned pursuant to the Modified APA, and a clean and executed Modified APA;

(iii)   provide that such bidder's offer is irrevocable until the closing of the purchase of the MSB Business if such bidder is the Successful Bidder or the Back-Up Bidder (each as defined below);

(iv)    state such bidder is financially capable of consummating the transactions contemplated by the Modified APA;

(v)     include such financial and other information that will allow the Sellers to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA;

(vi)    describe the intended source of funding of the purchase price and for reimbursement of current and future advances and warehouse lines under the servicing portfolio, its availability and any contingencies or material conditions relating thereto;

(vii)   describe any transition services that will be required by the bidder in connection with an acquisition of the MSB Business;

(viii)  include a statement that there are no conditions precedent to the bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid. The bidder's bid and Modified APA should also highlight any governmental or third-party consents needed to consummate the acquisition of the MSB Business to the extent they are not already contemplated in the APA;

(ix)    not request or entitle the bidder to any transaction or breakup fee, expense reimbursement, put option fee, or similar type of payment;

(x)     fully disclose the identity of each entity that will be bidding for the MSB Business or otherwise participating in connection with such bid, and the complete terms of any such participation;

(xi)    not contain any due diligence or financing contingencies of any kind;

RLF1 3500266v.1

<table>
<tr><td>(xii)</td><td>include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified APA;</td></tr>
<tr><td>(xiii)</td><td>include the names and contact information of members of the bidder who will be available to answer questions regarding the offer;</td></tr>
<tr><td>(xiv)</td><td>include the names of external advisors including financial, legal and accounting firms, as well as industry consultants or other resources;</td></tr>
<tr><td>(xv)</td><td>include any other information or factors that may be relevant to the Sellers and its advisors in consideration of the bid; and</td></tr>
<tr><td>(xvi)</td><td>include a cash deposit by wire transfer equal to five percent (5%) of the amount offered to purchase the MSB Business (the "Good Faith Deposit") provided, in the event an offeror's (or its immediate or remote parent's) long-term senior debt is rated at least A- by Standard and Poor's or the equivalent rating provided by Moody's or Fitch, the Good Faith Deposit obligation will be non-applicable.</td></tr>
</table>

The Debtors shall make a determination, in consultation with the Committee, regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be Qualifying Bids by no later than **4:00 p.m. (Eastern Standard Time) on November 21, 2009**;

(E)     **No Qualifying Bid**: If no timely, conforming Qualifying Bids, other than the APA, are submitted by the Bid Deadline, the Debtors shall not hold an Auction and, instead, shall request at the Sale Hearing that the Court approve the APA with Berkadia;

(F)     **Auction**: In the event the Debtors timely receive one or more Qualifying Bids other than the APA, the Debtors shall conduct the Auction with respect to the MSB Business. The Auction will be conducted at the offices of Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York 10019 on **November 23, 2009 at 10:00 a.m. (Eastern Standard Time)**, or such other location as designated by the Debtors in a notice to all Qualified Bidders.   The Auction shall be governed by the following procedures (which procedures may be modified by the Debtors with the Committee's consent):

<table>
<tr><td>(i)</td><td>Berkadia, or any Qualified Bidder submitting a Qualified Bid, shall be provided with any Qualifying Bid received on or before the Bid Deadline;</td></tr>
<tr><td>(ii)</td><td>Berkadia and the Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative;</td></tr>
</table>

6

(iii)    Only representatives of the Debtors, Berkadia, Qualified Bidders, the U.S. Trustee and the Committee, shall be entitled to be present at the Auction;

(iv)    The Auction process shall be transcribed by a qualified court reporter;

(v)    Only Berkadia and Qualified Bidders shall be entitled to make any subsequent bids at the Auction;

(vi)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

(vii)    Bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualified Bidders prior to the Auction and such Bid shall be announced prior to the start of the Auction;

(viii)    Qualified Bidders may then submit successive bids in increments of at least $5,000,000 higher than the previous bid;

(ix)    All Qualified Bidders shall have the right to submit additional bids and make additional modifications to the APA or Modified APA, as applicable, at the Auction;

(x)    The Auction may include individual negotiations with the Qualified Bidders (including Berkadia) and/or open bidding in the presence of all other Qualified Bidders (including Berkadia);

(xi)    The Auction shall continue until there is only one offer that the Sellers determine, in consultation with the Committee, subject to Court approval, is the highest or best offer from among the Qualified Bidders (including Berkadia) submitted at the Auction (the "Successful Bid"). In making this decision, the Debtors (in consultation with the Committee) may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the APA requested by each Qualified Bidder, and the net benefit to the Debtors' estates. The Qualified Bidder submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of a purchaser, as set forth in the applicable Modified APA; and

(xii)    Within three (3) days after conclusion of the Auction, but prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made and make and pay for all necessary filings with all

7

applicable governmental or other authorities.  Bids made after the close of the Auction shall not be considered by the Debtors.

**(G)      Back-Up Bidder and Return of Good Faith Deposits:**

    (i)    If an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Qualified Bid, as determined by the Debtors in the exercise of their business judgment at the Auction shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until 24 hours after the closing of the sale transaction with the Successful Bidder. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

    (ii)    Except as otherwise provided herein, Good Faith Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) business day following the conclusion of the Auction.  The Good Faith Deposit of the Back-Up Bidder shall be held by the Debtors until one (1) business day after the closing of the sale transaction with the Successful Bidder.

3.    The form and manner of providing the Notice of Auction and Sale is hereby approved.  Service of the Notice of Auction and Sale, as set forth below, constitutes sufficient notice of the Auction and Sale Hearing.

4.    The Court shall hold the Sale Hearing on **November 24, 2009 at** ~~9:00~~ *3:00 p.m.* ~~a.m.~~ **(Eastern Standard Time)** at which time the Court will consider approval of the Sale of the MSB Business, including the Debtors' assumption and assignment of any Assumed Contracts and Leases to Berkadia or the Successful Bidder.

5.    The notices described in the subparagraphs below (collectively, the "Notices") shall be sufficient and no further notice shall be required if given as follows:

    (a)    The Debtors shall serve, within 3 business days after entry of the Bidding Procedures Order (the "Mailing Deadline"), by overnight courier, electronic mail, or same-day messenger delivery, and copies of the Notice

of Auction and Sale upon: (i) the U.S. Trustee, (ii) attorneys for the Committee, (iii) attorneys for Berkadia, (iv) any party who, in the past 12 (twelve) months, expressed in writing to the Debtors an interest in acquiring the MSB Business, and who the Debtors and their representatives reasonably and in good faith determine potentially have the desire and financial wherewithal to effectuate the Sale, (v) all parties who are known to possess or assert a secured claim against the MSB Business, (vi) the Internal Revenue Service, (vii) all applicable state attorneys general, local realty enforcement agencies, and local regulatory authorities, (viii) the Federal Deposit Insurance Corporation, and (ix) any parties entitled to notice under Rule 2002-1(b) of the Local Rules for the United States Bankruptcy Court District of Delaware.

(b)     On or before the Mailing Deadline, the Debtors (or their agent) shall serve, by overnight courier, electronic mail, or same-day messenger delivery, the Notice of Assumption and Assignment (the "Notice of Assumption and Assignment"), substantially in the form attached hereto as Schedule 2, upon all known nondebtor parties to the Assumed Contracts and Leases. The Notice of Assumption and Assignment shall set forth (i) the intent of the Debtors to assume the Assumed Contracts and Leases and assign them to Berkadia or the Successful Bidder, as applicable and (ii) applicable cure amounts (the "Cure Amounts").

(c)     On or before the Mailing Deadline, or as soon as practical thereafter, the Debtors will publicize the Notice of Auction and Sale in the Wall Street Journal (National Edition) for 2 consecutive business days.

6.     Any objection (an "Objection") to the Sale of the MSB Business, the

assumption and assignment of any Assumed Contracts or Leases, or the Cure Amounts must be

filed and served so as to be actually received on or before **November 20, 2009 at 4:00 p.m.**

**(Eastern Standard Time)** by (a) counsel for the Debtors, Dewey & LeBoeuf LLP, Attention:

Michael P. Kessler, Esq., and Judy G.Z. Liu, Esq., 1301 Avenue of the Americas, New York,

New York 10019; (b) local counsel for the Debtors, Richards, Layton & Finger, P.A., One

Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attention: Mark D.

Collins, Esq. and Jason M. Madron, Esq.; (c) counsel for Berkadia, Weil, Gotshal & Manges

LLP, 767 Fifth Avenue, New York, New York 10153, Attention: Andrea Bernstein, Esq., and

William Gutowitz, Esq.; (d) DLA Piper LLP (US) 1251 Avenue of the Americas, New York,

New York 10020, Attention: Thomas R. Califano; (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (f) counsel to the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attention: Thomas Moers Mayer, Esq. and Amy Caton, Esq.; (g) administrative agent under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, Citicorp North America, Inc., and Citibank, N.A., 1615 Brett Rd. Bldg. 3, New Castle, Delaware 19720, Attention: Ralph Townley; (h) indenture trustee under the Debtors' prepetition floating rate and 5.875% senior unsecured note indentures, Deutsche Bank Trust Company Americas, 60 Wall Street, 27th Floor, MS:NYC60-2710, New York, New York 10005, Attention:  Trust & Securities Services; (i) successor trustee under the prepetition 6.300% senior unsecured note indenture, Wilmington Trust FSB, 166 Mercer Street, Suite 2-R, New York, New York 10012-3249, Attention: Adam Berman; (j) counsel for the ad hoc committee of prepetition unsecured bondholders of CFGI, Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, New York 10019, Attention: Adam L. Shiff, Esq.; (k) trustee under CFGI's prepetition floating rate junior subordinated indenture, Law Debenture Trust Company of New York, 767 Third Avenue, Thirty First Floor, New York, New York 10017, Attention: Corporate Trust Administration; (l) any proposed DIP lender; (m) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates (on a consolidated basis); and (n) the Federal Deposit Insurance Corporation.  All Objections must state with specificity the nature of such objection.

7.    If an Objection challenges a Cure Amount, the Objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof.  Upon receipt of an Objection to a Cure Amount,

10

the Debtors may, in their sole discretion (but in consultation with the Committee), hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the applicable Debtor and the objecting party. So long as the Debtors hold the Claimed Cure Amount in reserve and otherwise satisfy the requirements for assumption under section 365 of the Bankruptcy Code, the applicable Seller may, without further delay, assume and assign the Assumed Contract and Lease that is the subject of an Objection relating to that Assumed Contract's or Lease's Cure Amount.

8.     If no Objection to the Cure Amount or the proposed assumption and assignment of an Assumed Contract or Lease is timely filed and served, the applicable Debtor may assume and assign the Assumed Contract or Lease to Berkadia or the Successful Bidder and the Cure Amount set forth in the Notice of Assumption and Assignment shall be binding upon the respective nondebtor party to the Assumed Contract or Lease for all purposes in such Debtor's chapter 11 case. The respective nondebtor party shall be forever barred from objecting to the assumption and assignment of the relevant Assumed Contract or Lease and the Cure Amount, including, without limitation, the right to assert any condition to assignment and/or additional cure or other amount with respect to their respective Assumed Contracts and Leases.

9.     Failure of any objecting person or entity to timely file its Objection shall be an absolute bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion or the Debtors' assumption and assignment of any of the Assumed Contracts and Leases, or the consummation and performance of the Sale (including the transfer free and clear of all Liens).

10.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Bidding Procedures Order. Each of the Debtors is

11

hereby authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements of this Bidding Procedures Order.

      11.    Notwithstanding any potential applicability of Bankruptcy Rule 6004(h) or other Rule, this Bidding Procedures Order shall not be stayed for ten (10) days after the entry hereof and shall be effective and enforceable upon signature hereof.

Dated: November 4, 2009
      Wilmington, Delaware

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

RLF1 3500266v.1