IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
                                            :
*In re*                                     :   Chapter 11
                                            :
CAPMARK FINANCIAL GROUP INC., *et al.*,    :   Case No. 09-13684 (CSS)
                                            :
       Debtors.                             :   Jointly Administered
                                            :
                                            :   Hearing Date: December 3, 2009 at 2:00 p.m.
                                            :   Objection Deadline: November 25, 2009 at 4:00 p.m.
------------------------------------------------------------x

### DEBTORS' APPLICATION PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 328(a), BANKRUPTCY RULE 2014(a), AND LOCAL RULE 2014-1, FOR AUTHORIZATION TO EMPLOY AND RETAIN DEWEY & LEBOEUF LLP AS ATTORNEYS FOR THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Capmark Financial Group Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"),[1] submit this application (the "Application") for an order approving, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the employment and retention of Dewey & LeBoeuf LLP ("D&L"), *nunc*

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), and Capmark Affordable Equity Inc. (2381). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

*pro tunc* to October 25, 2009 (the "Commencement Date"), as their attorneys, under a general retainer, in connection with the commencement and prosecution of their chapter 11 cases. This Application is supported by the Affidavit of Michael P. Kessler Pursuant to Bankruptcy Code Sections 327(a), 328(a), and 329(a), Bankruptcy Rules 2014(a) and 2016(b), and Local Rules 2014-1 and 2016-1, in Support of Debtors' Application for Authorization to Employ and Retain Dewey & LeBoeuf LLP as Attorneys for the Debtors *Nunc Pro Tunc* to the Commencement Date (the "Kessler Affidavit"), annexed hereto as Exhibit A. In further support of this Application, the Debtors respectfully represent:

## Background

1. On the Commencement Date, each of the Debtors commenced a voluntary case under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession as authorized by sections 1107(a) and 1108 of the Bankruptcy Code.

2. On October 27, 2009, this Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 1015-1 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules").

3. On November 2, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed a statutory creditors committee pursuant to section 1102 of the Bankruptcy Code (the "Creditors Committee").

## Jurisdiction and Venue

4. This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Capmark's Businesses

*Overview*

5. The Debtors and their non-debtor subsidiaries and affiliates (together with the Debtors, "Capmark") are a group of commercial real estate finance companies that provide real estate-related products and services to borrowers, investors and other customers along three core business lines: (i) commercial real estate lending and mortgage banking; (ii) servicing; and (iii) investments and funds management. Capmark's business lines are conducted through six business segments organized by geography and type of business:

- *North American Lending and Mortgage Banking.* This segment includes most North American activities relating to the real estate lending and mortgage banking business, including commercial mortgage banking, loan origination and capital markets activities, and syndication of new markets tax credit funds.

- *North American Servicing.* This segment includes all North American loan servicing activities, including activities with respect to the primary, master and special servicing of loan portfolios originated by Capmark, third parties, and securitized loan pools.

- *North American Investments and Funds Management.* This segment includes all North American activities relating to investments and funds management, including sponsorship of real estate debt and equity funds and management of Capmark's own real estate debt and equity investments.

- *North American Affordable Housing.* The North American Affordable Housing segment manages affordable housing debt investments and low income housing tax credit equity investments on behalf of third-party investors.

- *Asian Operations.* This segment historically included all Asian activities relating to all three core business lines. Capmark has ceased all Asian proprietary lending and investing activities and is currently focused on managing existing loan, investment and fee-for-services businesses in Asia.

- *European Operations.* This segment historically included all European activities relating to all three core business lines. Capmark has ceased all European proprietary lending and investing activities, has sold its European servicing business and closed its Irish banking subsidiary, and is currently focused on managing existing loan, investment and fee-for-services businesses in Europe.

As of June 30, 2009, the carrying value of Capmark's total loan portfolio of commercial real estate loans held for sale or investment was $10.7 billion. Capmark also owns substantial real estate and equity investments and certain other tangible and intangible assets. On a consolidated basis, as of June 30, 2009, Capmark's assets were approximately $20.1 billion and liabilities were approximately $21 billion. Consolidated losses for the three months ending June 30, 2009 were approximately $1.6 billion.

*Events Leading to Chapter 11*

6. As a commercial real estate finance company, Capmark's ability to generate income and cash flow is highly dependent on (i) the volume of financing it originates and the credit performance of that financing; (ii) its ability to securitize, sell, participate or otherwise finance loans; (iii) the fair value of the loans on its balance sheet; and (iv) the spreads it generates on its interest-earning assets. In addition, Capmark's financial performance is driven by, among other things, its ability to increase the size of its servicing portfolios and the amount of real estate-related assets under management. Capmark's origination activities impact the level of placement fees and net interest income, and impact the amount of loans it has available for future sale and servicing opportunities, which in turn affect its levels of net gains or losses and

fee-based income. Capmark's ability to increase the size of its servicing portfolios affects the level of servicing fees it earns and income it derives from escrow balances.

7. The unprecedented conditions in domestic and international financial markets have adversely affected Capmark's businesses. The lack of credit available to potential purchasers of Capmark's assets and the current condition of the securitization markets has severely impaired its ability to sell assets in the normal course of business. Capmark has historically utilized the proceeds from such asset sales as a source of liquidity for new originations and the repayment of debt. Dislocations in worldwide capital markets, together with the deterioration of Capmark's operating results, have also impaired its ability to obtain alternative means of financing its origination and investment activities. Capmark's inability to sell its assets has required it to hold a greater portion of its assets for a longer duration, thereby increasing the credit risk related to lending and investment activities. The negative impact from this increased credit exposure has been exacerbated by the fact that the performance of Capmark's loans and real estate investments has sharply deteriorated. The current market conditions have made it difficult for Capmark's borrowers to find replacement financing or to sell their properties, which are the typical sources of repayment for commercial mortgage loans. The lack of available replacement financing decreases Capmark's cash flow, by increasing the average duration of Capmark's loan portfolio and decreasing transaction-related servicing fees.

8. These developments have effectively made it impossible for the Debtors to continue their business operations in a profitable manner absent a restructuring of their businesses and obligations. After carefully reviewing and exploring strategic business alternatives and transactions, and after implementing numerous cost-saving strategies, the Debtors determined that an orderly restructuring of their debts under chapter 11 represents the

5

best of all available strategic options to maximize and preserve the value of their estates for their creditors and other parties in interest.

## Relief Requested

9. By this Application, the Debtors seek entry of an order approving, pursuant to Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rule 2014(a), and Local Rule 2014-1, the employment and retention of D&L, *nunc pro tunc* to the Commencement Date, as their attorneys, under a general retainer, in connection with the commencement and prosecution of their chapter 11 cases, and in accordance with D&L's normal hourly rates and reimbursement policies in effect when services are rendered.

## Basis for Relief Requested

10. Pursuant to section 327(a) of the Bankruptcy Code, a debtor in possession is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under [the Bankruptcy Code.]" 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code modifies section 101(14) (definition of "disinterested person") and section 327(a) of the Bankruptcy Code in chapter 11 cases, by providing "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). Under section 328(a) of the Bankruptcy Code, with the court's approval a debtor in possession may employ professional persons under section 327(a) of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on retainer, on an hourly basis, on a fixed or percentage basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Pursuant to section 329(a) of the Bankruptcy Code, "an attorney representing a debtor . . . shall file with the court a statement of compensation paid or agreed to

be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a).

11. As required by Bankruptcy Rule 2014(a), this Application sets forth the following: (a) the specific facts showing the necessity for D&L's employment, (b) the reasons for the Debtors' selection of D&L as their attorneys in connection with their chapter 11 cases, (c) the professional services to be provided by D&L, (d) the arrangement between the Debtors and D&L with respect to D&L's compensation, and (e) to the best of Debtors' knowledge, the extent of D&L's connections, if any, to certain parties in interest in these chapter 11 cases.

## Retention of D&L is Warranted

12. The Debtors have been informed that Martin J. Bienenstock, Michael P. Kessler, and Judy G.Z. Liu, each a member of D&L, as well as other members of, counsel to, and associates of D&L who will be employed in these chapter 11 cases, are members in good standing in the jurisdictions in which such attorneys are admitted. In addition, Martin J. Bienenstock, Michael P. Kessler, and Judy G.Z. Liu have been admitted *pro hac vice* to practice before this Court in a number of other cases, and have been granted *pro hac vice* admission to appear before this Court in connection with the Debtors' chapter 11 cases.

13. The Debtors have selected D&L as their attorneys because of D&L's knowledge of the Debtors' businesses and financial affairs, and D&L's extensive experience and knowledge in, among other areas, and business reorganizations and restructurings under chapter 11 of the Bankruptcy Code. D&L and its members currently represent, and have represented, debtors and creditors in multiple large and complex chapter 11 cases.

14. D&L has represented the Debtors since February 2, 2009 in connection with the Debtors' restructuring efforts. Since that time, D&L, working together with Richards,

7

Layton & Finger, P.A. ("RL&F"), as local counsel to the Debtors, was primarily responsible for the preparation of the chapter 11 petitions, initial motions, and applications relating to the Debtors' chapter 11 cases and their commencement. In addition, previous to retaining D&L in connection with their restructuring efforts, the Debtors retained D&L in connection with various corporate matters, including asset and equity sale transactions, including, but not limited to, the Agreement, and with respect to certain tax, regulatory, corporate governance and employment matters. During the course of these representations, D&L has become intimately familiar with the Debtors' businesses, financial affairs, capital structure, and restructuring alternatives. Accordingly, D&L has the necessary background to deal effectively with the potential legal issues and problems that may arise in the context of the Debtors' chapter 11 cases and restructuring efforts. The Debtors believe D&L is both well qualified and able to represent them in their chapter 11 cases.

## Scope of Services

15. The employment of D&L under a general retainer is appropriate and necessary to enable the Debtors to execute their duties as debtors and debtors in possession and effect their restructuring efforts. Subject to further order of this Court, it is proposed that D&L be employed to render the following professional services:

    a. advise the Debtors in connection with the legal aspects of a financial restructuring under chapter 11;

    b. prepare on behalf of the Debtors, as debtors in possession, all necessary motions, applications, answers, orders, reports, and other papers in connection with the administration of the Debtors' estates;

    c. take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors, the negotiation of disputes in which the Debtors are involved, and the

    preparation of objections to claims filed against the Debtors' estates;

  d. take all necessary actions, including to negotiate and prepare on behalf of the Debtors, a plan or plans and related disclosure statement(s) and all related documents, and such further actions as may be required in connection with the administration of the Debtors' estates; and

  e. perform all other necessary legal services in connection with the prosecution of these chapter 11 cases.

  16. It is necessary for the Debtors to employ D&L under a general retainer to render the foregoing professional services. Therefore, the Debtors have requested that D&L perform the services set forth herein and, subject to this Court's approval of this Application, D&L has stated its desire, willingness, and ability to act in these chapter 11 cases and to render the necessary professional services as attorneys for the Debtors.

### D&L's Disinterestedness

  17. To the best of the Debtors' knowledge, the members of, counsel, and associates of, D&L do not have any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Kessler Affidavit.

  18. In view of the foregoing, the Debtors submit that D&L is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

### Compensation of D&L

  19. Prior to the Commencement Date, D&L received certain amounts (as set forth in the Kessler Affidavit) from the Debtors as compensation for professional services relating to the potential restructuring of the Debtors' financial obligations and the potential commencement of these chapter 11 cases, and additional amounts for the reimbursement of

9

RLF1-3503703-1

reasonable and necessary expenses incurred in connection therewith. D&L also has received a retainer fee and an advance against expenses for services to be performed in the preparation for and prosecution of these chapter 11 cases, in the amount disclosed in the Kessler Affidavit.

20. D&L will seek interim and final allowance of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules and Local Rules, and any procedures as may be fixed by order of the Court.

21. The Debtors respectfully request that all fees and related costs and expenses incurred by the Debtors on account of services rendered by D&L in these cases be paid as administrative expenses of the estates pursuant to sections 328, 330(a), 331, 503(b), and 507(a)(1) of the Bankruptcy Code. Subject to this Court's approval, D&L will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date such services are rendered, subject to section 328(a) and 330 of the Bankruptcy Code. The current hourly rates charged by D&L for professionals and paraprofessionals employed in its offices are provided below:

| **Billing Category** | **Range** |
| --- | --- |
| **Partners** | $625-$995 |
| **Counsel** | $625-$675 |
| **Associates** | $385-$625 |
| **Paraprofessionals** | $155-$275 |

22. These hourly rates are subject to periodic adjustments to reflect economic and other conditions. D&L will maintain detailed records of actual and necessary costs and expenses incurred in connection with the legal services described above. D&L reserves its right to file an application for allowance of an enhanced fee award at the end of these cases, subject to the discretion of the Debtors.

23. Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain D&L on any reasonable terms and conditions. The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders of this Court, propose to pay D&L its customary hourly rates for services rendered that are in effect from time to time, as set forth in the Kessler Affidavit, and to reimburse D&L according to its customary reimbursement policies, and respectfully submit that such rates and policies are reasonable.

24. The Debtors understand that D&L is customarily reimbursed for all expenses incurred in connection with the representation of a client in a given matter, including, but not limited to, photocopying services, printing, delivery charges, filing fees, postage, and computer research time.

25. The Debtors further submit that the relief requested herein is necessary and appropriate, is in the best interests of the Debtors, their estates, and their creditors, and should be granted in all respects.

## Notice

26. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion shall be provided by U.S. first-class mail to (i) the U.S. Trustee, (ii) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, (iii) Deutsche Bank Trust Company Americas, as trustee under the prepetition senior unsecured floating rate note and 5.875% senior unsecured note indentures, (iv) Wilmington Trust FSB, as successor trustee under the prepetition 6.300% senior unsecured note indenture, (v) any proposed DIP lender, (vi) the Federal Deposit Insurance Corporation, (vii) counsel to the Creditors Committee, and (viii) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). The Debtors submit that no other or further notice need be provided.

RLF1-3503703-1

## **No Previous Request**

27.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) approving the employment and retention of D&L, *nunc pro tunc* to the Commencement Date, as their attorneys, and (ii) granting such other and further relief as the Court may deem just.

Dated: November 10, 2009
       Horsham, Pennsylvania

                              Capmark Financial Group Inc.
                              (for itself and on behalf of its affiliated debtors and debtors in possession)

                              */s/ Thomas L. Fairfield*
                              Thomas L. Fairfield
                              Executive Vice President, General Counsel and Secretary