IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
*In re*                                                        :   Chapter 11
:
CAPMARK FINANCIAL GROUP INC., *et al.*,                        :   Case No. 09-13684 (CSS)
:
Debtors.                                                       :   (Jointly Administered)
:
:   Hearing Date: December 3, 2009 at 2:00 p.m.
:   Objection Deadline: November 25, 2009 at 4:00 p.m.
:
---------------------------------------------------------------x

## DEBTORS' APPLICATION PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2014(a), AND LOCAL RULE 2014-1 FOR AUTHORIZATION TO EMPLOY AND RETAIN LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Capmark Financial Group Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"),[1] submit this application (the "Application") for an order approving the employment and retention of Lazard

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), and Capmark Affordable Equity Inc. (2381). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

Frères & Co. LLC ("Lazard"), as investment banker and financial advisor to the Debtors in connection with the commencement and prosecution of their chapter 11 cases, *nunc pro tunc* to October 25, 2009 (the "Commencement Date"). This Application is supported by the Affidavit of Frank A. Savage in Support of Debtors' Application for Authorization to Employ and Retain Lazard Frères & Co. LLC as Investment Banker and Financial Advisor *Nunc Pro Tunc* to the Commencement Date (the "Savage Affidavit"), attached hereto as Exhibit A. In further support of this Application, the Debtors respectfully represent as follows:

### Background

1. On the Commencement Date, each of the Debtors commenced a voluntary case under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession as authorized by sections 1107(a) and 1108 of the Bankruptcy Code.

2. On October 27, 2009, this Court entered an order authorizing the joint administration of the Debtors' chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3. On November 2, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed a statutory creditors committee pursuant to section 1102 of the Bankruptcy Code (the "Creditors Committee").

### Jurisdiction and Venue

4. This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

RLF1 3504834v.1

## Capmark's Businesses

*Overview*

5.      The Debtors and their non-debtor subsidiaries and affiliates (together with the Debtors, "Capmark") are a group of commercial real estate finance companies that provide real estate-related products and services to borrowers, investors and other customers along three core business lines: (i) commercial real estate lending and mortgage banking; (ii) servicing; and (iii) investments and funds management. Capmark's business lines are conducted through six business segments organized by geography and type of business:

- *North American Lending and Mortgage Banking.* This segment includes most North American activities relating to the real estate lending and mortgage banking business, including commercial mortgage banking, loan origination and capital markets activities, and syndication of new markets tax credit funds.

- *North American Servicing.* This segment includes all North American loan servicing activities, including activities with respect to the primary, master and special servicing of loan portfolios originated by Capmark, third parties, and securitized loan pools.

- *North American Investments and Funds Management.* This segment includes all North American activities relating to investments and funds management, including sponsorship of real estate debt and equity funds and management of Capmark's own real estate debt and equity investments.

- *North American Affordable Housing.* The North American Affordable Housing segment manages affordable housing debt investments and low income housing tax credit equity investments on behalf of third-party investors.

- *Asian Operations.* This segment historically included all Asian activities relating to all three core business lines. Capmark has ceased all Asian proprietary lending and investing activities and is currently focused on managing existing loan, investment and fee-for-services businesses in Asia.

- *European Operations.* This segment historically included all European activities relating to all three core business lines. Capmark has ceased all European proprietary lending and investing activities, has sold its

3

European servicing business and closed its Irish banking subsidiary, and is currently focused on managing existing loan, investment and fee-for-services businesses in Europe.

6. As of June 30, 2009, the carrying value of Capmark's total loan portfolio of commercial real estate loans held for sale or investment was $10.7 billion. Capmark also owns substantial real estate and equity investments and certain other tangible and intangible assets. On a consolidated basis, as of June 30, 2009, Capmark's assets were approximately $20.1 billion and liabilities were approximately $21 billion. Consolidated losses for the three months ending June 30, 2009 were approximately $1.6 billion.

*Events Leading to Chapter 11*

7. As a commercial real estate finance company, Capmark's ability to generate income and cash flow is highly dependent on (i) the volume of financing it originates and the credit performance of that financing; (ii) its ability to securitize, sell, participate or otherwise finance loans; (iii) the fair value of the loans on its balance sheet; and (iv) the spreads it generates on its interest-earning assets. In addition, Capmark's financial performance is driven by, among other things, its ability to increase the size of its servicing portfolios and the amount of real estate-related assets under management. Capmark's origination activities impact the level of placement fees and net interest income, and impact the amount of loans it has available for future sale and servicing opportunities, which in turn affect its levels of net gains or losses and fee-based income. Capmark's ability to increase the size of its servicing portfolios affects the level of servicing fees it earns and income it derives from escrow balances.

8. The unprecedented conditions in domestic and international financial markets have adversely affected Capmark's businesses. The lack of credit available to potential purchasers of Capmark's assets and the current condition of the securitization markets has severely impaired its ability to sell assets in the normal course of business. Capmark has

4

historically utilized the proceeds from such asset sales as a source of liquidity for new originations and the repayment of debt. Dislocations in worldwide capital markets, together with the deterioration of Capmark's operating results, have also impaired its ability to obtain alternative means of financing its origination and investment activities. Capmark's inability to sell its assets has required it to hold a greater portion of its assets for a longer duration, thereby increasing the credit risk related to lending and investment activities. The negative impact from this increased credit exposure has been exacerbated by the fact that the performance of Capmark's loans and real estate investments has sharply deteriorated. The current market conditions have made it difficult for Capmark's borrowers to find replacement financing or to sell their properties, which are the typical sources of repayment for commercial mortgage loans. The lack of available replacement financing decreases Capmark's cash flow, by increasing the average duration of Capmark's loan portfolio and decreasing transaction-related servicing fees.

9. After carefully reviewing and exploring strategic business alternatives and transactions (such as the APA), and after implementing numerous cost-saving strategies, the Debtors determined that an orderly restructuring of their debts under chapter 11 represents the best of all available strategic options to maximize and preserve value of their estates for their creditors and other parties in interest.

### Relief Requested

10. By this Application, the Debtors seek entry of an order, substantially in the form attached hereto as Exhibit D, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1, authorizing the employment and retention of Lazard as investment banker and financial advisor to the Debtors in connection with the commencement and prosecution of their chapter 11 cases, *nunc pro tunc* to the Commencement Date and in accordance with the terms of the engagement letter, dated as of and

effective as of October 23, 2009 (the "Retention Letter"), which is attached hereto as <u>Exhibit B</u>, and the related indemnification agreement, dated and effective as of January 1, 2009 (the "Indemnification Letter"), which is attached hereto as <u>Exhibit C</u>.

**Basis for Relief Requested**

11. Pursuant to section 327(a) of the Bankruptcy Code, a debtor in possession is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under [the Bankruptcy Code.]" 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code modifies section 101(14) (definition of "disinterested person") and section 327(a) of the Bankruptcy Code in chapter 11 cases, by providing "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). Under section 328(a) of the Bankruptcy Code, with the court's approval, a debtor in possession may employ professional persons under section 327(a) of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on retainer, on an hourly basis, on a fixed or percentage basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

12. As required by Bankruptcy Rule 2014(a), this Application sets forth the following: (a) the specific facts showing the necessity for Lazard's employment, (b) the reasons for the Debtors' selection of Lazard as their investment banker and financial advisor in connection with their chapter 11 cases, (c) the professional services to be provided by Lazard, (d) the arrangement between the Debtors and Lazard with respect to Lazard's compensation, and (e) to the best of the Debtors' knowledge, the extent of Lazard's connections, if any, to certain parties in interest in these chapter 11 cases.

6

## Retention of Lazard is Warranted

13. Recently, the Debtors have faced a number of challenges that, taken together, have had a negative impact on the Debtors' overall financial performance, thereby necessitating the commencement of these cases. To address this growing crisis, the Debtors retained Lazard to provide investment banking and financial advisory services to the Debtors in connection with a possible restructuring of the Debtors. Consideration of the foregoing was a critical element in the Debtors' decision to enter into the Retention Letter.

14. Lazard is well-qualified to serve as the Debtors' investment banker and financial advisor. Lazard is the U.S. operating subsidiary of a preeminent international financial advisory and asset management firm. Lazard, together with its predecessors and affiliates, has been advising clients around the world for over 150 years.

15. Lazard is an investment banking firm focused on providing financial and investment banking advice and transaction execution on behalf of its clients. Lazard's broad range of corporate advisory services includes services pertaining to: general financial advice, domestic and cross-border mergers and acquisitions, divestitures, privatization, special committee assignments, takeover defenses, corporate restructurings, strategic partnerships and joint ventures. In addition, Lazard is a registered broker-dealer with the United States Securities and Exchange Commission.

16. Lazard and its professionals have extensive experience and an excellent reputation for providing high quality financial advisory services to debtors and creditors in large and complex chapter 11 cases and other debt restructurings, and Lazard is very familiar with the Debtors' financial and business operations. Since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $1,000 billion in debtors' assets, including the chapter 11 cases of Adelphia Communications Corporation, Calpine Corporation, Daewoo

Corporation, Lehman Brothers Holdings, Inc., Movie Gallery, Inc., Northwest Airlines Inc., WCI Communities, Inc., Wellman, Inc., and Worldcom, Inc. Further, Lazard has provided financial advisory services in a number of chapter 11 cases in the District of Delaware, including Vertis Holdings, Inc., Tropicana Entertainment, LLC, Hayes Lemmerz International, Inc., GenTek Inc., Owens Corning, Fruit of the Loom, Inc., Vlasic Foods International Inc., Armstrong World Industries, Inc., Kaiser Aluminum Corporation, Meridian Automotive Systems, Inc., New Century TRS Holdings, Inc., and Sun Healthcare Group, Inc., among others.

17. The resources, capabilities, and experience of Lazard in advising the Debtors are crucial to the Debtors' successful restructuring. An experienced investment banker and financial advisor such as Lazard fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. Broadly speaking, Lazard will concentrate its efforts on formulating strategic business and transaction alternatives, negotiating with the Debtors' creditor constituencies, and assisting the Debtors in developing and implementing an asset or other sale strategy and/or a viable chapter 11 plan. As noted in the Declaration of Michael Wilkerson in support of the Motion, Pursuant To Sections 105(a), 363, And 365 Of The Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 And 9014, And Local Rules 2002-1 And 6004-1 Requesting Entry Of Two Orders: (I) The Sale Hearing Order, (a) Scheduling The Sale Hearing; (b) Establishing Objection Deadline; (c) Approving Sale Hearing Notice And Notice Of Assumption And Assignment; (d) Scheduling An Auction; And (e) Approving Exercise Of Put Option; And/Or (b) Authorizing Sale of MSB Business (Including Assumption And Assignment Of Contracts And Leases) Free And Clear Of All Claims And Interests, Lazard played a key role in the marketing of the MSB Business and the Debtors' entry into the APA. For these reasons,

the Debtors require the services of a capable and experienced investment banking and financial advisory firm such as Lazard.

18. Prior to retaining Lazard, the Debtors' senior management considered other investment banking and financial advisory firms. The Debtors evaluated each firm based on a number of criteria, including the following: the overall restructuring experience of each firm and their professionals; the overall investment banking and financial advisory capabilities of such firm; the firm's experience in advising large companies in chapter 11; and the likely attention of the senior personnel of the firm. After due consideration of the above and as an exercise of their business judgment, the Debtors concluded that Lazard was best qualified to provide investment banking and financial advisory services to the Debtors at a reasonable level of compensation.

19. The terms of the Retention Letter and the Indemnification Letter are consistent with, and typical of, arrangements entered into by Lazard and other investment banking and financial advisory firms in connection with rendering similar services to clients such as the Debtors. The Debtors believe that Lazard is well-qualified and able to represent their interests in a cost-effective, efficient, and timely manner. Lazard has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of this Court.

20. Lazard was employed by CFGI on January 1, 2009 in connection CFGI's restructuring efforts. During the course of their employment, Lazard has become familiar with the Debtors' businesses, financial affairs, capital structure, and restructuring alternatives. Accordingly, Lazard has the necessary background to deal effectively with the issues and problems that may arise in the context of the Debtors' chapter 11 cases and reorganization

efforts. The Debtors believe Lazard is both well qualified and uniquely able to serve the Debtors as investment banker and financial advisor in their chapter 11 cases.

## Scope of Services

21. The employment of Lazard is appropriate and necessary to enable the Debtors to execute their duties as debtors and debtors in possession and effect their reorganization efforts. Subject to further order of this Court, it is proposed that Lazard be employed to render the following professional services, as necessary and requested:[2]

    a. reviewing and analyzing the Debtors' business, operations, and financial projections;

    b. evaluating the Debtors' potential debt capacity in light of projected cash flows;

    c. assisting in the determination of a capital structure for the Debtors;

    d. assisting in the determination of a range of values for the Debtors on a going concern basis;

    e. advising the Debtors on tactics and strategies for negotiating with the Stakeholders and/or potential counterparties;

    f. rendering financial advice to the Debtors and participating in meetings or negotiations with the Stakeholders, potential counterparties, rating agencies and/or other appropriate parties in connection with any Restructuring;

    g. advising the Debtors on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

    h. advising and assisting the Debtors in evaluating a potential Financing transaction by the Debtors, and, subject to Lazard's agreement to so act and, if requested by Lazard, the execution of appropriate agreements, on behalf of the Debtors, contacting potential sources of capital as the Debtors may designate and

---

[2] Capitalized terms not otherwise defined herein are defined in the Retention Letter. The descriptions of the Retention Letter and Indemnification Letter provided herein are brief summaries and are provided for purpose of convenience only. To the extent there is any discrepancy between such summaries and the terms of the Retention Letter or the Indemnification Letter, the terms of the Retention Letter or the Indemnification Letter, as the case may be, shall control.

assisting the Company in implementing such a Financing;

i. assisting the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with the Restructuring;

j. assisting the Debtors in identifying and evaluating candidates for a potential Sale Transaction, advising the Debtors in connection with negotiations and aiding in the consummation of a Sale Transaction;

k. attending meetings of the Debtors' Board of Directors and its committees with respect to matters on which Lazard has been engaged to advise the Debtors;

l. providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise the Debtors in any proceeding before the Bankruptcy Court; and

m. providing the Debtors with other financial restructuring advice.

22. It is necessary for the Debtors to employ Lazard to render the foregoing professional services. Therefore, the Debtors have requested that Lazard perform the services set forth herein and, subject to this Court's approval of this Application, Lazard has stated its desire, willingness, and ability to act in these chapter 11 cases and to render such professional services as investment banker and financial advisor to the Debtors, including assistance in the development of a strategic business and restructuring transaction and initiative.

23. The Debtors are or will be seeking to employ Loughlin Meghji + Company ("LM+Co"), as crisis managers to the Debtors and to designate Mohsin Y. Meghji as Chief Restructuring Officer, Beekman Advisors, Inc. ("Beekman"), as strategic advisor to the Debtors, and KPMG LLP ("KPMG"), as tax and accounting advisor to the Debtors. The Debtors believe that the services Lazard will provide will be complementary rather than duplicative of the services to be performed by LM+Co, Beekman, and KPMG. The Debtors are very mindful of the need to avoid duplication of services and appropriate procedures will be implemented to

11

ensure that there is minimal duplication of effort as a result of Lazard's retention as investment banker and financial advisor.

### Lazard's Disinterestedness

24. To the best of the Debtors' knowledge, Lazard does not have any interest adverse to the Debtors, or any material connection with their creditors or any other party in interest except as may be set forth in the Savage Affidavit.

25. In view of the foregoing, the Debtors submit that Lazard is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code and as required under section 327(a) of the Bankruptcy Code.

### Compensation of Lazard

26. Before the Commencement Date, Lazard received certain prepetition amounts from the Debtors as compensation for professional services performed relating to the potential restructuring of the Debtors' financial obligations and the potential commencement of these chapter 11 cases, and additional amounts for the reimbursement of reasonable and necessary expenses incurred therewith. The Debtors have paid Lazard approximately $2.54 million in fees and expenses for the period from January 2009 through October 2009.

27. The Debtors understand that Lazard hereafter intends to apply to the Court for allowances of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and further orders of this Court for all services performed and expenses incurred after the Commencement Date.

RLF1 3504834v.1

28. Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain Lazard on any reasonable terms and conditions. As more fully described in the Retention Letter, in consideration of the services provided, the Debtors have agreed to pay Lazard:

   a. A monthly fee of $250,000 (the "Monthly Fee"), payable on November 1, 2009 and on the first day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10 of the Retention Letter. All Monthly Fees paid in respect of this engagement (and all Monthly Fees paid under the Prior Agreement (as defined in the Retention Letter)) shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee (each as defined below) payable; provided, that, in the event of a Chapter 11 filing, such credit shall apply only to the extent that such fees are approved in their entirety by the Bankruptcy Court, if applicable.

   b. A fee equal to $12,500,000, payable upon the consummation of a Restructuring (the "Restructuring Fee").

   c. (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Debtors consummate a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Debtors, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to the Restructuring Fee.

   (ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Debtors consummate any Sale Transaction not covered by clause (i) above, the Debtors shall pay Lazard a fee (the "Minority Sale Transaction Fee") based on the Aggregate Consideration calculated as set forth in Schedule I of the Retention Letter; provided, that, notwithstanding the foregoing, in the event of a Minority Sale Transaction solely involving all or substantially all of the Debtors' United States commercial mortgage servicing and mortgage banking business assets, such Minority Sale Transaction Fee shall be equal to $3,500,000 rather than the Minority Sale Transaction Fee that would otherwise be payable based on the Aggregate Consideration calculated as set forth in Schedule I to the Retention Letter. Any Minority Sale Transaction Fee shall be credited in full against any Restructuring Fee or Sale Transaction Fee subsequently payable.

   (iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale

Transaction.

  d. A fee, payable upon consummation of a Financing, equal to the amount set forth in Schedule II of the Retention Letter (the "Financing Fee"). Any Financing Fee(s) paid shall be credited in full against any Restructuring Fee or Sale Transaction Fee subsequently payable.

  e. For the avoidance of any doubt, more than one fee may be payable pursuant to clauses (b), (c) and (d) above; provided, that the aggregate fees payable pursuant to clauses (b), (c) and (d) above shall not exceed $12,500,000.

  f. In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Debtors shall promptly reimburse Lazard for all: (A) reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including reasonable expenses of counsel, if any; provided, however, that such reimbursable fees and expenses shall not exceed $100,000 in the aggregate without the prior written consent of the Debtors (which consent shall not be unreasonably withheld).

  g. As part of the compensation payable to Lazard under the Retention Letter, the Debtors have agreed to the terms of the Indemnification Letter.

  h. All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts become due and payable hereunder.

29. Pursuant to the Indemnification Letter, the Debtors have agreed to indemnify and hold harmless, and provide contribution and reimbursement to, Lazard, its affiliates, and its and their respective directors, officers, members, employees, agents, and controlling persons (collectively, the "Indemnified Parties") from, against and with respect to any losses, claims, damages, liabilities or expenses brought by any party, including the Debtors' securityholders and creditors, in connection with Lazard's engagement by the Debtors, except to the extent such claims result primarily from the bad faith, gross negligence, or willful misconduct of the Indemnified Parties.

RLF1 3504834v.1

30. Lazard has agreed that the terms of the Indemnification Letter shall be amended to incorporate the standard Delaware Bankruptcy Court provisions relating to indemnification of investment banking and financial advisory professionals, as included in the proposed order attached to this Application.

31. The Debtors submit that such indemnification is standard in the specialized financial advisory industry and that the provision of such indemnification by the Debtors is fair and reasonable considering Lazard's qualifications and the expectations of other special financial advisors in connection with engagements of this scope and size. Accordingly, as part of this Application, the Debtors request that the Court approve the terms set forth in the Indemnification Letter.

32. Lazard will seek interim and final allowance of compensation and reimbursement of expenses pursuant to the Bankruptcy Code, applicable Bankruptcy Rules, Local Rules, and orders of the Court, and in accordance with the terms of the Retention Letter, the Indemnification Letter and any procedures as may be fixed by order of the Court.

33. Lazard has informed the Debtors that it intends to present to the Court reasonably detailed descriptions of those services provided on behalf of the Debtors, the time expended in providing those services in half-hour increments, and the individuals who provided professional services on behalf of the Debtors. Accordingly, to the extent necessary based on the foregoing, the Debtors respectfully seek a waiver of the information requirements set forth in Local Rule 2016-2(d), in accordance with Local Rule 2016-2(g)

## Notice

34. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided by first-class mail to (i) the U.S. Trustee, (ii) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition

15

RLF1 3504834v.1

senior credit facility, bridge loan agreement and term loan facility, (iii) Deutsche Bank Trust Company Americas, as trustee under the prepetition senior unsecured floating rate note and 5.875% senior unsecured note indentures, (iv) any proposed DIP lender, (v) the Federal Deposit Insurance Corporation, (vi) counsel to the Creditors Committee, and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). The Debtors submit that no other or further notice need be provided.

## No Previous Request

35. No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request an order (i) approving the employment and retention of Lazard Frères & Co. LLC, as investment banker and financial advisor to the Debtors on the terms set forth in the Retention Letter and the Indemnification Letter, *nunc pro tunc* to the Commencement Date, and (ii) providing such other and further relief as the Court deems just and proper.

Dated: November 6, 2009
Horsham, Pennsylvania

                                       Capmark Financial Group Inc.
                                       (for itself and on behalf of its affiliated
                                       debtors and debtors in possession)

                                       Thomas L. Fairfield
                                       Executive Vice President, General Counsel,
                                       and Secretary