# EXHIBIT B

## (Retention Letter)

# LAZARD

LAZARD FRÈRES & CO. LLC
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020
PHONE 212-632-6000
www.lazard.com

October 23, 2009

Capmark Financial Group Inc.
116 Welsh Road
Horsham, PA 19044

Attention:     Thomas L. Fairfield
                      Executive Vice President

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and Capmark Financial Group Inc. and its controlled subsidiaries (collectively with any entity formed or used for the purposes set forth herein, the "Company").

## *Assignment Scope:*

The Company hereby retains Lazard as its investment banker to provide the Company with general restructuring advice and to advise it in connection with any Restructuring, Sale Transaction and/or Financing (each as defined below) on the terms and conditions set forth herein.   As used in this Agreement, the term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) and/or recapitalization of all or a significant portion of the Company's outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), trade claims, leases (both on and off balance sheet), litigation-related claims and obligations, unfunded pension and retiree medical liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in interest rates, repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities, sale or disposition of assets, sale of debt or equity securities or other interests or other similar transaction or series of transactions.  By signing this Agreement, we hereby accept our appointment as your investment banker under the terms hereof.

## *Description of Services:*

1.  Lazard agrees, in consideration of the compensation provided in Section 2 below, to perform such of the following investment banking services as the Company may reasonably request:

(a) Reviewing and analyzing the Company's business, operations and financial projections;

(b) Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c) Assisting in the determination of a capital structure for the Company;

(d) Assisting in the determination of a range of values for the Company on a going concern basis;

(e) Advising the Company on tactics and strategies for negotiating with the Stakeholders and/or potential counterparties;

(f) Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders, potential counterparties, rating agencies and/or other appropriate parties in connection with any Restructuring;

(g) Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to the Restructuring;

(h) Advising and assisting the Company in evaluating a potential Financing[1] transaction by the Company, and, subject to Lazard's agreement so to act and, if requested by Lazard, the execution of appropriate agreements, on behalf of the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such a Financing;

(i) Assisting the Company in preparing documentation within our area of expertise that is required in connection with the Restructuring;

(j) Assisting the Company in identifying and evaluating candidates for a potential Sale Transaction, advising the Company in connection with negotiations and aiding in the consummation of a Sale Transaction[2];

(k) Attending meetings of the Company's Board of Directors and its committees with respect to matters on which we have been engaged to advise you;

---

[1] As used in this Agreement, the term "Financing" means any transaction or series of transactions involving the public or private issuance, sale, or placement of equity, equity-linked, or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing in connection with a case under the Bankruptcy Code.

[2] As used in this Agreement, the term "Sale Transaction" means any transaction or series of transactions involving (a) an acquisition, merger, consolidation, or other business combination pursuant to which the business or assets of the Company are, directly or indirectly, combined with another company; (b) the acquisition, directly or indirectly, by a buyer or buyers (which term shall include a "group" of persons as defined in Section 13(d) of the Securities Exchange Act of 1934, as amended), of equity interests or options, or any combination thereof constituting a majority of the then outstanding stock of the Company or possessing a majority of the then outstanding voting power of the Company (except as may occur with current Stakeholders as a result of a Restructuring); (c) any other purchase or acquisition, directly or indirectly, by a buyer or buyers of significant assets, securities or other interests of the Company or (d) the formation of a joint venture or partnership with the Company or direct investment in the Company for the purpose of effecting a transfer of an interest in the Company to a third party.

(l)     Providing testimony, as necessary, with respect to matters on which we have been engaged to advise you in any proceeding before the Bankruptcy Court; and

(m)    Providing the Company with other financial restructuring advice.

*Fees:*

2.  As consideration for Lazard's services, the Company shall pay Lazard the following fees:

(a)    A monthly fee of $250,000 (the "Monthly Fee"), payable on November 1, 2009 and on the first day of each month thereafter until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 10. All Monthly Fees paid in respect of this engagement (and all Monthly Fees paid under the Prior Agreement (as defined below)) shall be credited (without duplication) against any Restructuring Fee or Sale Transaction Fee (each as defined below) payable; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Bankruptcy Court, if applicable.

(b)    A fee equal to $12,500,000, payable upon the consummation of a Restructuring (the "Restructuring Fee"); provided, however, that if a Restructuring is to be completed through a "pre-packaged" or "pre-arranged" plan of reorganization, the Restructuring Fee shall be earned and shall be payable upon the earlier of (1) execution of any definitive agreements with respect to such plan and (2) delivery of binding consents to such plan, in the case of either clause (1) or (2), that is binding on a sufficient number of creditors and/or bondholders of the Company, as the case may be, to bind the creditors and/or bondholders of the requisite amount of Existing Obligations to the plan; provided, further, that in the event that Lazard is paid a fee in connection with a "pre-packaged" or "pre-arranged" plan and such plan is not consummated, Lazard shall return such fee to the Company.

(c)    (i) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Company, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to the Restructuring Fee.

(ii) If, whether in connection with the consummation of a Restructuring or otherwise, the Company consummates any Sale Transaction not covered by clause (i) above, the Company shall pay Lazard a fee (the "Minority Sale Transaction Fee") based on the Aggregate Consideration calculated as set forth in Schedule I hereto; provided, that, notwithstanding the foregoing, in the event of a Minority Sale Transaction solely involving all

or substantially all of the Company's United States commercial mortgage servicing and mortgage banking business assets, such Minority Sale Transaction Fee shall be equal to $3,500,000 rather than the Minority Sale Transaction Fee that would otherwise be payable based on the Aggregate Consideration calculated as set forth in Schedule I hereto. Any fee paid under this Section 2(c)(ii) shall be credited in full against any fees subsequently payable under Section 2(b) or Section 2(c)(i).

(iii) Any Sale Transaction Fee or Minority Sale Transaction Fee shall be payable upon consummation of the applicable Sale Transaction.

(d) A fee, payable upon consummation of a Financing, equal to the amount set forth in Schedule II (the "Financing Fee"). Any Financing Fee(s) paid shall be credited in full against any Restructuring Fee or Sale Transaction Fee subsequently payable.

(e) For the avoidance of any doubt, more than one fee may be payable pursuant to clauses (b), (c) and (d) above; provided, that the aggregate fees payable pursuant to clauses (b), (c) and (d) above shall not exceed $12,500,000.

(f) In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all: (A) reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (B) other reasonable fees and expenses, including reasonable expenses of counsel, if any; provided, however, that such reimbursable fees and expenses referred to in this clause (f) shall not exceed $100,000 in the aggregate without the prior written consent of the Company (which consent shall not be unreasonably withheld).

(g) As part of the compensation payable to Lazard hereunder, the Company agrees that the indemnification letter dated as of January 1, 2009 (the "Indemnification Letter") between Capmark Financial Group Inc. and certain of its subsidiaries (the "Previous Capmark Group") and Lazard, which remains in full force and effect, shall also apply to our engagement hereunder; it being understood and agreed that the Company shall be jointly and severally liable for all of the Previous Capmark Group's obligations pursuant to the Indemnification Letter. The Indemnification Letter is incorporated herein in its entirety.

(h) All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts become due and payable hereunder.

*Retention in Chapter 11 Proceedings:*

3. In the event of the commencement of chapter 11 proceedings, the Company agrees that it will use its commercially reasonable efforts to obtain prompt authorization from the Bankruptcy Court to retain Lazard on the terms and conditions set forth in this Agreement under the provisions of Section 328(a) of the Bankruptcy Code. Subject to being so retained, Lazard agrees that during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement and that it shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and order of the Bankruptcy Court. The Company shall supply Lazard with a draft of the application and proposed retention order authorizing Lazard's retention sufficiently in advance of the filing of such application and proposed order to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Lazard's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by an order of the Bankruptcy Court, which order is acceptable to Lazard. The application shall note that in so agreeing to seek Lazard's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Lazard's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Restructuring, Sale Transaction or Financing, that the value to the Company of Lazard's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the deferred fees, including the Restructuring Fee, Sale Transaction Fee and Financing Fee is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of the services to be provided hereunder, and that the deferred Restructuring Fee, Sale Transaction Fee and Financing Fee shall not be considered to be "bonuses" or fee enhancements under applicable law.

*Other:*

4. No fee payable to any other person, by you or any other party, shall reduce or otherwise affect any fee payable hereunder to us.

5. The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information reasonably available to the Company regarding the business of the Company as Lazard may request in connection with this engagement. The Company will use reasonable efforts to keep Lazard advised of developments materially affecting the Company or its financial position. In performing its services pursuant to this Agreement, including in connection with any valuation of the Company, Lazard shall be entitled to rely upon information furnished to it by the Company or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors, the Company or management or shareholders with respect to any such valuation or appraisal.

6. In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any other party to pursue (or not to pursue) any

business strategy or to effect (or not to effect) any Restructuring, Sale Transaction, Financing or other transaction. Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing any tax, legal or other specialist (other than that expressly provided for herein) advice.

7. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or Lazard Capital Markets LLC or any of their respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing.

8. The Indemnification Letter shall survive any termination or expiration of this Agreement.

9. In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will keep Lazard reasonably apprised regarding developments regarding a potential Restructuring, Sale Transaction or Financing, including with respect to any discussions, negotiations or inquiries. In the event that Lazard receives an inquiry concerning any proposed Restructuring, Sale Transaction or Financing, we will promptly inform the Company of such inquiry.

10. Our engagement hereunder may be terminated by you or us at any time without liability or continuing obligation to you or us, except that (a) following such termination we shall remain entitled to any fees accrued pursuant to Section 2 but not yet paid prior to such termination, and to reimbursement of expenses incurred prior to such termination, (b) in the case of termination by Lazard, Lazard will refund a portion of any Monthly Fee previously paid that relates to the portion of the month following the date of such termination, and (c) in the case of termination by the Company, we shall remain entitled to full payment of any Restructuring Fee, Sale Transaction Fee, Minority Sale Transaction Fee or Financing Fee (that would have been payable pursuant to Section 2 hereof) in respect of any Restructuring, Sale Transaction or Financing, as the case may be, (A) that is or for which, during the period from the date hereof until one year following such termination, (1) announced, (2) a definitive agreement is executed, (3) binding consents are delivered by a sufficient number of creditors and/or bondholders of the Company, as the case may be, to bind the relevant creditors and bondholders of the Company to such transaction or arrangement (whether or not in connection with a bankruptcy proceeding), or (4) approved by the Bankruptcy Court, as the case may be, and (B) that is, anytime after such event, consummated.

11. The Company recognizes that Lazard has been engaged only by the Company and that the Company's engagement of Lazard is not deemed to be on behalf of and is not intended to confer rights upon any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto as against Lazard or any of its affiliates or any of their respective directors, officers, members, agents, employees or representatives. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of the Company is authorized to rely upon the Company's engagement of Lazard or any statements,

advice, opinions or conduct by Lazard. Without limiting the foregoing, any advice, written or oral, rendered to the Company's Board of Directors or management in the course of the Company's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of the Company, as the case may be, in evaluating any Restructuring, Sale Transaction or Financing and does not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring, Sale Transaction or Financing. Any advice, written or oral, rendered by Lazard may not be disclosed publicly or made available to third parties without the prior written consent of Lazard. Notwithstanding the foregoing, nothing herein shall prohibit you from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure. Lazard's role herein is that of an independent contractor; nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Lazard and the Company or its Board of Directors or any other person or entity.

12. Unless required by subpoena or other legal or regulatory process (and in the case of any such requirement, only following prior notice to the Company to the extent practicable), (i) we will not disclose to any third party (other than to our counsel or other agents or as otherwise agreed by you) any portion of the information provided by you pursuant to Section 5 which is not publicly available (or which became publicly available as a result of disclosure by us in violation of this Section 12), and (ii) we will not use such confidential information for any purpose other than pursuant to our engagement hereunder. At your request and expense, we will reasonably cooperate with the Company's efforts to obtain a protective order with respect to any such information required to be disclosed by subpoena or other legal or regulatory process as stated in the first sentence of this Section. Notwithstanding anything herein to the contrary, upon the public announcement of the consummation of a Restructuring, Sale Transaction or Financing, Lazard shall be entitled to announce its role as financial advisor to you on its website, in its marketing materials, in publications and in any other media as it may choose (subject to your prior approval of any content that has not been otherwise publicly disclosed in a Company press release).

13. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and Lazard Capital Markets LLC and its affiliates and may share with any such entity any information relevant to this engagement, provided that such entities shall keep the confidential information of the Company confidential in the same manner as set forth in Section 12 above. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed pursuant to Section 2(f) above for its expenses on the same basis as Lazard (and any such expenses shall be aggregated with Lazard's expenses for purposes of the proviso in such Section) but shall not otherwise be entitled to any fees beyond the fees payable to Lazard pursuant to Section 2 hereof.

14. The provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter. You agree that the Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto, and this Agreement amends and

LAZARD

restates in its entirety the engagement letter between Lazard and Capmark Financial Group Inc. and certain of its subsidiaries dated as of January 1, 2009 (the "Prior Agreement"). For the avoidance of any doubt, we shall remain entitled to any Monthly Fees accrued, and to reimbursement of any expenses incurred, under the Prior Agreement as in effect prior to the date hereof.

15. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York, and each of the parties hereto hereby submits to the jurisdiction of such courts. Each of the parties hereto hereby waives on behalf of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. Each of the parties hereto waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

Very truly yours,

LAZARD FRERES & CO. LLC

By: _____

~~Terry Savage~~ FRANK A. (TERRY) SAVAGE
Managing Director

Accepted and Agreed to as of the date first written above.

CAPMARK FINANCIAL GROUP INC.,
on behalf of itself and its controlled subsidiaries

By. _____
Thomas L. Fairfield
Executive Vice President

## SCHEDULE I

### Fees for Sale Transactions

The following Sale Transaction fee schedule shall apply. The total fee is calculated by breaking down the Aggregate Consideration and multiplying each increment by the corresponding incremental fee. For example, for a transaction in which the Aggregate Consideration paid is $60 million, the fee would be $625,000 + $550,000 + $175,000 which totals $1.35 million.

| Aggregate Consideration<br>($ in millions) | Incremental Fee % |
|---|---|
| $0 - $25 | 2.50% |
| $25 - $50 | 2.20% |
| $50 - $100 | 1.75% |
| $100 - $200 | 1.30% |
| $200 - $300 | 1.10% |
| $300 - $400 | 1.00% |
| $400 - $500 | 0.90% |
| $500 - $600 | 0.86% |
| $600 - $700 | 0.82% |
| $700 - $800 | 0.78% |
| $800 - $900 | 0.74% |
| $900 + | 0.70% |

For purposes hereof, the term "Aggregate Consideration" means (x) the total amount of cash and the fair market value (on the date of payment) of all of the property paid and payable (including amounts paid into escrow) in connection with the Sale Transaction (or any related transaction), including amounts paid and payable in respect of convertible securities, preferred equity securities, warrants, stock appreciation rights, option or similar rights, whether or not vested, plus (y), in the case of the sale of shares of the Company or relevant Company entity, the principal amount of all indebtedness for borrowed money or other liabilities of the Company or relevant Company entity, as applicable, as set forth on the most recent balance sheet, or, in case of the sale of assets, all indebtedness for borrowed money or other liabilities assumed by the third party. Aggregate Consideration shall also include, in the case of the sale of shares of the Company or relevant Company entity, the aggregate amount of any dividends or other distributions declared by the Company or relevant Company entity, as applicable, after the date hereof other than normal quarterly cash dividends, and, in the case of the sale of assets, the net value of any current assets not sold by the Company or relevant Company entity, as applicable. For purposes of calculating Aggregate Consideration, the value of securities (whether debt or equity) that are freely tradable in an established public market will be determined on the basis of

the average closing price in such market for the 10 trading days prior to the closing of the Sale Transaction (the "Valuation Date"); and the value of securities that have no established public market or other property will be the fair market value of such securities or other property on such Valuation Date and any restricted stock (i.e., stock in a public company not freely tradeable) received shall be valued at 85% of the public market price of such stock.    Aggregate Consideration shall also be deemed to include guarantees of monies borrowed assumed directly or indirectly by the third party.    If the Aggregate Consideration is subject to increase by contingent payments related to future events, the portion of our fee relating thereto shall be calculated by us in good faith and paid to us upon consummation of the Sale Transaction.

## SCHEDULE II

### Fees for Financings

Lazard shall be paid a Financing Fee of $1,500,000 in connection with any debtor-in-possession financing relating to servicing advances (other than debtor-in-possession financing provided solely on an intercompany basis).  For any other Financing, the total Financing Fee shall be calculated by multiplying the applicable fee percentage by the total gross proceeds raised in each Financing.

| Funds Raised | Fee % |
|---|---|
| Senior Secured Debt | 1.50% |
| Senior Debt | 3.00% |
| Subordinated Debt | 3.50% |
| Convertible Debt | 3.75% |
| Convertible Preferred Stock | 5.00% |
| Common Stock | 6.00% |