## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
                             :

*In re*                           :    **Chapter 11**
                             :

**CAPMARK FINANCIAL GROUP INC.,** *et al.,*  :    **Case No. 09-13684 (CSS)**
                             :

         **Debtors.**              :    **Jointly Administered**
                             :

                             :    **Re: Docket Nos. 74, 88, 349 and 420**
-------------------------------------------------------------x

## FINAL ORDER (I) AUTHORIZING
## USE OF CERTAIN CASH COLLATERAL POSTPETITION AND
## (II) PROVIDING ADEQUATE PROTECTION TO PREPETITION
## SECURED PARTIES IN CONNECTION THEREWITH

Upon the motion, dated October 27, 2009 (the "<u>Motion</u>") of Capmark Financial Group

Inc. ("<u>CFGI</u>") and certain of its direct and indirect subsidiaries and affiliates, each as a debtor

and debtor in possession (collectively, the "<u>Debtors</u>")[1] in the above-captioned chapter 11 cases

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), and Capmark Affordable Equity Inc. (2381). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044.

(collectively, the "Cases") pursuant to sections 105(a), 361, 362, 363 and 507 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 4001-2 and 9013-1(m) of the Local Bankruptcy Rules of the District of Delaware seeking entry of an order, (i) authorizing the Debtors' use of cash collateral as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral") of the Prepetition Secured Lenders (as defined herein), (ii) providing adequate protection to the Prepetition Secured Lenders for any diminution in value of their respective interests in the Prepetition Collateral (including the Cash Collateral), and (iii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this order (this "Order"), all as more fully described in the Motion; having considered the Motion, the Declaration of Thomas L. Fairfield, Executive Vice President, General Counsel and Secretary of CFGI, in Support of the Debtors' Chapter 11 Petitions and First Day Motions and Applications, sworn to on October 25, 2009, the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on October 29, 2009 (the "Interim Hearing"), as well as the hearings held on November 24, 2009, December 10, 2009, and December 18, 2009 (the "Subsequent Hearings," and together with the Interim Hearing, the "Hearings"); and notice of the Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by this Court; and after due

---

The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

2

deliberation and consideration, and for good and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[2]

A.    _Commencement Date._  On October 25, 2009 (the "Commencement Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court") commencing these Cases.

B.    _Debtors in Possession._  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.    _Jurisdiction and Venue._  This Court has jurisdiction, pursuant to 28 U.S.C. § 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases appears proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    _Statutory Committee._  An official committee of unsecured creditors in these Cases was appointed by the United States Trustee (the "U.S. Trustee") pursuant to section 1102 of the Bankruptcy Code (the "Statutory Committee") on November 2, 2009.

E.    _Trustee or Examiner._  As of the date hereof, no request has been made for the appointment of a trustee or examiner.

F.    _Debtors' Stipulations._  Without prejudice to, and subject to, the rights of parties in interest as set forth in Paragraph 14 below, the Debtors and Debtors in Possession stipulate and agree that (collectively, Paragraphs F(i) through and including F(iv) below are referred to herein as the "Debtors' Stipulations," which are not findings of this Court):

---

[2] The findings of fact and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

3

(i)      *Prepetition Secured Credit Agreement.*  Pursuant to that certain Term Facility Credit and Guaranty Agreement, dated as of May 29, 2009 (as amended, supplemented or otherwise modified, the "Prepetition Secured Credit Agreement"; together with all other loan, intercreditor and security documents related to, referenced in or executed in connection with the Prepetition Secured Credit Agreement, the "Prepetition Secured Credit Documents"), among CFGI, as Borrower, certain of the Debtors and other subsidiaries of CFGI who have provided guarantees under the Prepetition Secured Credit Agreement (the "Guarantors"),[3] CitiCorp North America, Inc. (the "Prepetition Administrative Agent"), as Administrative Agent, Citibank, N.A., as Collateral Agent (the "Collateral Agent," together with the Administrative Agent, the "Prepetition Agents"), JPMorgan Chase Bank, N.A., as Syndication Agent, and Citigroup Global Markets Inc. and J.P. Morgan Securities, Inc., as Joint Lead Arrangers and Joint Bookrunners, and the lenders that are parties thereto from time to time (collectively, together with the Prepetition Administrative Agent, the "Prepetition Secured Lenders"), the Prepetition Secured Lenders provided credit facilities to CFGI and provided other financial accommodations to CFGI, as principal obligor (collectively the "Prepetition Credit Facility").

(ii)      *Prepetition Secured Credit Obligations.*  The Prepetition Credit Facility provided CFGI with $1.5 billion in aggregate maximum principal amount of term commitments. As of the Commencement Date, the outstanding principal amount of all loans under the Prepetition Secured Credit Agreement was not less than $1.5 billion (together with any amounts paid, incurred or accrued prior to the Commencement Date in accordance with the Prepetition

---

[3] The Debtor Guarantors are Capmark Finance Inc., Commercial Equity Investments, Inc., Capmark Capital Inc., Net Lease Acquisition LLC, Mortgage Investments, LLC, SJM CAP, LLC, Capmark Affordable Equity Holdings Inc., Capmark REO Holding LLC, and Summit Crest Ventures. In addition, there are two non-Debtor Guarantors, Capmark Investments LP and Crystal Ball Holding of Bermuda Limited.

4

Secured Credit Documents, including principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), reimbursement obligations, indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof to the extent and as provided for in the Prepetition Secured Credit Documents, and including any "Obligation" as defined in the Prepetition Secured Credit Agreement, the "Prepetition Secured Credit Obligations"). The Prepetition Secured Credit Obligations are guaranteed by the Guarantors.

(iii)    *Prepetition Liens and Prepetition Collateral.* As more fully set forth in the Prepetition Secured Credit Documents, prior to the Commencement Date, certain of the Debtors granted to the Collateral Agent for the ratable benefit of the Prepetition Secured Parties a security interest in and first priority lien upon the Debtors' property (and proceeds therefrom), as set forth in the Prepetition Secured Credit Documents (collectively, the "Prepetition Liens"), including but not limited to, certain Pledged Equity, Pledged Debt, Agreement Collateral and other Mortgage Loan Assets (each as defined in the Prepetition Secured Credit Documents) and the Cash Collateral (collectively, the "Prepetition Collateral"). Specifically, the Pledged Equity, Pledged Debt, Agreement Collateral and other Mortgage Loan Assets are assets owned by Capmark Finance Inc. ("CFI"), Capmark Capital Inc. ("CCI") and certain other Grantors (as defined in the Prepetition Secured Credit Documents), and, pursuant to the terms of the Prepetition Secured Credit Agreement, CFI, CCI or the applicable Grantor upstream cash payments received in connection with such Prepetition Collateral to CFGI, which, in turn, contemporaneously places such funds in accounts at Citibank, denominated as (a) the Cash Collateral Account (Account No. XXXX76), Interest Cash Collateral Sub-Account (Account No.

5

XXXX77), the Reserve Cash Collateral Sub-Account (Account No. XXXX78), and the Non-Reserve Cash Collateral Sub-Account (Account No. XXXX79) (each as defined in the Motion; collectively the "Collateral Accounts").

(iv)    *Cash Collateral.*  Each Debtor represents that all of the Debtors' cash in the Collateral Accounts constitutes the Cash Collateral of the Prepetition Secured Lenders. As of (a) October 23, 2009, the Cash Collateral Account contained not less than $4,521,736.37, the Interest Cash Collateral Sub-Account contained not less than $6,959,025.03, the Reserve Cash Collateral Sub-Account contained not less than $124,253,043.10 and the Non-Reserve Cash Collateral Sub-Account contained not less than $86,029,004.17; and as of (b) December 1, 2009, the Cash Collateral Account contained not less than $4,379,274.54, the Interest Cash Collateral Sub-Account contained not less than $13,540,189.83, the Reserve Cash Collateral Sub-Account contained not less than $121,240,811.01 and the Non-Reserve Cash Collateral Sub-Account contained not less than $105,922,220.13.  The Cash Collateral may be used by the Debtors subject to the terms and conditions of this Order.

G.    *Adequate Protection.*  The Prepetition Administrative Agent, for the benefit of itself and the Prepetition Secured Lenders, is entitled to receive adequate protection to the extent of any diminution in value of its interests in the Prepetition Collateral, resulting from the use, consumption, or shrinkage of the Prepetition Collateral, including the Cash Collateral (collectively the "Diminution in Value"), pursuant to sections 361, 362 and 363 of the Bankruptcy Code.  Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection for any Diminution in Value, the Prepetition Administrative Agent, for the benefit of itself and the Prepetition Secured Lenders, will receive the Adequate Protection Liens, the Adequate Protection Payments, and the 507(b) Claims, if applicable (each as defined herein).

6

H.    *Notice.*  Notice of the Hearing and the relief requested in the Motion has been provided by the Debtors to (i) the Office of the U.S. Trustee, (ii) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, (iii) counsel for the ad hoc committee of prepetition unsecured noteholders of CFGI, (iv) counsel for the Statutory Committee, (v) the Federal Deposit Insurance Corporation, and (vi) those parties who have entered their appearance in the case pursuant to Rule 2002.  Given the nature of the relief sought, this Court concludes that sufficient and adequate notice of the Hearing has been given pursuant to Bankruptcy Rules 2002, 4001(b) and (d) and 9014 and section 102(1) of the Bankruptcy Code as required by section 361 and 363 of the Bankruptcy Code, and that no further notice of, or hearing on, the relief sought at the Hearing and the relief granted herein is necessary or required.

I.    *Use of Collateral.*  Unless otherwise ordered by this Court after notice and a hearing, the Debtors' continuing use of the Cash Collateral shall be solely upon the protections, terms and conditions provided for in this Order.

Based upon the foregoing findings and conclusions, the Motion and the record before this Court with respect to the Motion, and good and sufficient cause appearing therefor,

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.    Motion Granted.    The Motion is granted pursuant to Bankruptcy Code section 363(c)(2)(A) as set forth herein, and the use of Cash Collateral is authorized, subject to the terms of this Order.

2.    Objections Overruled.    Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled are hereby denied and overruled.

7

3.    Authorization to Use Cash Collateral. Subject to the terms and conditions of this Order, the Debtors are authorized, but not required, to use the Cash Collateral for the period (the "Specified Period") from the Commencement Date through the date that is the earliest to occur of (i) 5:00 p.m. New York City time on December 31, 2010, (ii) the expiration of a Remedies Notice Period (as defined herein), or (iii) an Event of Default (as defined herein) under subparagraph 11(f) below. The Prepetition Secured Credit Documents shall govern the rights and obligations of the Prepetition Secured Lenders, subject to the provisions of this Order, and the Debtors shall be required to continue to (a) deposit funds into the Collateral Accounts in accordance with the Prepetition Secured Credit Documents; and (b) comply with section 5.01(q) of the Prepetition Secured Credit Agreement; *provided, however*, that if cash of any Debtor other than CFGI is used to comply with the requirements of this sentence, such Debtor shall be granted a superpriority administrative expense claim against CFGI (the "Transferee Intercompany Claim") *provided, however* that any Transferee Intercompany Claim is offset against any Post-petition Intercompany Claim (as defined below) held by CFGI against such Debtor. Subject to Paragraph 7 below, the Cash Collateral in the Reserve Cash Collateral Sub-Account may be used by the Debtors solely and exclusively for the specific purposes and in the amounts set forth on the schedule provided to counsel for each of the Prepetition Administrative Agent, that certain ad hoc committee of Prepetition Secured Lenders represented by Kirkland & Ellis LLP (the "Ad Hoc Committee"), and the Statutory Committee (collectively, the "Permitted Uses"). The schedule of Permitted Uses may be amended from time to time after consultation with the Statutory Committee and with the consent of the Prepetition Administrative Agent and the Ad Hoc Committee, *provided*, that the amount of the Permitted Uses shall not exceed $75 million in the aggregate during the Specified Period. Cash Collateral in the Non-Reserve Cash Collateral

8

Sub-Account and in the Interest Cash Collateral Sub-Account, respectively, may be used by the Debtors solely and exclusively as authorized in Paragraphs 7 and 8 below. The Prepetition Administrative Agent's and the Prepetition Secured Lenders' consent to the Permitted Uses is without prejudice to any argument that additional Cash Collateral should not be used by the Debtors in any manner. The Debtors are not authorized to use Cash Collateral other than the Cash Collateral in the Collateral Accounts in accordance with the terms of this Order.

4.    Post-petition Intercompany Administrative Expense Claims. Each Debtor is authorized by this Order to, and does hereby, pursuant to sections 361, 363(c)(2), and 364(c)(2) of the Bankruptcy Code, grant CFGI an allowed superpriority administrative expense claim in an amount equal to the Cash Collateral used postpetition by any such Debtor for the Permitted Uses (the "Post-petition Intercompany Claim") provided, however, that any Post-petition Intercompany Claim shall be offset against any Transferee Intercompany Claim held by such Debtor against CFGI.

5.    Section 507(b) Claims. In the event that the adequate protection provided hereunder to the Prepetition Administrative Agent, for the benefit of the Prepetition Secured Lenders, is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral, the Prepetition Secured Lenders shall be granted claims under section 507(b) of the Bankruptcy Code (the "507(b) Claims") against the Debtor that holds the Prepetition Collateral that suffered the Diminution in Value in an amount equal to such residual Diminution in Value.

6.    Adequate Protection Liens.

(a)    *Adequate Protection Liens.* As adequate protection of the interests of the Prepetition Secured Lenders against any Diminution in Value of such interest, and to secure the

9

payment of the Prepetition Secured Credit Obligations in an amount equal to any Diminution in Value, the Debtors, pursuant to sections 361 and 363(e) of the Bankruptcy Code, shall be deemed to have granted, as of the Commencement Date to the Prepetition Administrative Agent, for the benefit of itself and the Prepetition Secured Lenders, additional and replacement continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens (the "Adequate Protection Liens") on (i) all Cash Collateral, (ii) the Prepetition Collateral and any proceeds derived therefrom (including, but not limited to, cash, real property and other assets that result from the foreclosure by the Debtors on loans that constitute the Prepetition Collateral) and (iii) the Post-petition Intercompany Claims, in each case, limited to an amount equal to any Diminution in Value. The Adequate Protection Liens granted in the Post-petition Intercompany Claims shall protect the Prepetition Secured Lenders against Diminution in Value solely to the extent that any Prepetition Lien granted by CFI in favor of the Prepetition Secured Lenders over the Prepetition Collateral is avoided pursuant to sections 544, 545, 547, 548 or 549 of the Bankruptcy Code or any other statute, or diminishes in value for any reason, or it is determined (other than due to a decrease in the value of the Prepetition Collateral) that the claim that can be asserted by the Prepetition Secured Lenders over any of the Prepetition Collateral is less than the amount of the Prepetition Secured Credit Obligations. If the Prepetition Liens granted by CFGI in favor of the Prepetition Secured Lenders over the Cash Collateral are avoided in whole or in part pursuant to section 544, 545, 547, 548 or 549 of the Bankruptcy Code, or any other statute, the Adequate Protection Liens (including the liens on the Pre-petition Intercompany Claims) shall be automatically disallowed and avoided, to the same extent that such Prepetition Liens are avoided, by order of this Court.

(b)     *Priority of Adequate Protection Liens.* The Adequate Protection Liens

10

shall be junior only to the permitted prior liens under the terms of the Prepetition Secured Credit Documents, if any. The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Prepetition Collateral. Each Adequate Protection Lien shall be enforceable against each Debtor that granted such Adequate Protection Lien or that holds property that is subject to such Adequate Protection Lien, its estate, and any successor thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Cases"). Subject to further order of this Court (the entry of which would constitute an Event of Default under Subparagraph 11(a) below) and except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and the Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in any of the Cases or any Successor Cases or upon the dismissal of any of the Cases or Successor Cases. Except as otherwise provided herein, the Adequate Protection Liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

7.      Adequate Protection Payments. As further adequate protection, CFGI shall make payments to the Prepetition Administrative Agent for the benefit of the Prepetition Secured Lenders (the "Adequate Protection Payments"), as follows:

(a)      *Payment of Expenses.* Payment of the reasonable fees, costs and expenses,

11

whether prepetition or postpetition, incurred by the Prepetition Administrative Agent and the Ad Hoc Committee, including, without limitation, the reasonable fees and expenses of legal and other professionals retained by the Prepetition Administrative Agent or the Ad Hoc Committee, or that are otherwise payable by CFGI in accordance with the Prepetition Secured Credit Documents; *provided, however,* that all such Adequate Protection Payments shall be made on a monthly basis (each, a "Monthly Expense Payment").  All Monthly Expense Payments shall be made out of the funds in either the Reserve Cash Collateral Sub-Account or the Non-Reserve Cash Collateral Sub-Account and CFGI shall not be required to make any Monthly Expense Payments to the extent that making such payments would reduce the funds in the Reserve Cash Collateral Account below the total unspent Permitted Uses plus $25 million; *provided,* that with respect to any professional retained by the Prepetition Administrative Agent (in its capacity as Prepetition Administrative Agent) in connection with the Prepetition Secured Credit Agreement that holds an advance payment made by the Debtors prior to the Commencement Date (each, a "Professional Advance"), 25% of each Monthly Expense Payment shall be deemed paid through an application of the Professional Advance held by such professional and 75% of each Monthly Expense Payment shall be made by CFGI until such Professional Advance is exhausted after which 100% of each Monthly Expense Payment shall be made by CFGI in accordance with this paragraph.  Professionals receiving Monthly Expense Payments shall not be required to comply with the fee guidelines of the U.S. Trustee for the payment of fees and expenses, but each professional shall provide appropriately documented (redacted to protect attorney client privilege and confidentiality) fee and expense invoices to the Debtors, the Statutory Committee, and the U.S. Trustee, and the Debtors are authorized and directed to pay within 30 days of the submission thereof the fees and expenses with respect thereto; *provided,* that to the extent the

12

Debtors, the Statutory Committee, or the U.S. Trustee has an objection to the fees and expenses of any such professional, the objecting party or parties shall so advise the professional within 10 days following receipt of the applicable invoice and such invoice shall not be paid unless the objection is resolved (including by an order of this Court) and/or withdrawn within 20 days following receipt of the applicable invoice by the objecting Debtors, the Statutory Committee, or the U.S. Trustee, as applicable; *provided further*, that if any such objection is raised and not resolved and/or withdrawn within 20 days following receipt (or such later date as the objecting party or parties and the professional shall agree), the parties shall submit any dispute to this Court for adjudication.

(b)     *Payment of Current Interest.*  CFGI shall make monthly payments in an amount equal to the interest payments at the non-default rate[4] that would otherwise be due and payable as provided by section 2.06(a)(i) (and subject to section 2.08(b)(iii)) of the Prepetition Secured Credit Agreement) (each, an "Interest Payment") to the Prepetition Administrative Agent.  All Interest Payments shall be made from the Interest Cash-Collateral Sub-Account and CFGI shall not be required to make any Interest Payments to the extent that the Interest Cash Collateral Account does not contain sufficient funds to make such payments.  CFGI shall make each Interest Payment to the Prepetition Administrative Agent by 10:00 a.m. prevailing Eastern Time on the first business day of each month in which an Interest Payment is payable.

(c)     *Principal Payments.*  CFGI shall make Adequate Protection Payments equal to all amounts contained in the Cash Collateral Account, including the Reserve Cash Collateral Sub-Account, Non-Reserve Cash Collateral Sub-Account and Interest Cash Collateral

---

[4] Nothing herein shall impair or limit the ability of the Prepetition Administrative Agent, for the benefit of the Prepetition Secured Lenders, to request the payment or allowance of interest at the default rate provided in the Prepetition Secured Credit Agreement and to adjust the application of Adequate Protection Payments to take into account any increase in allowed interest.

13

RLF1 3519538v.1

Sub-Account, above the total unspent Permitted Uses plus $25 million on a quarterly basis, to be received by the Prepetition Administrative Agent no later than 10:00 a.m. prevailing Eastern Time on each January 27th, April 15th, July 15th and October 15th, or, if such date is not a Business Day (as defined in the Prepetition Secured Credit Agreement), then on the next succeeding Business Day (each, a "Quarterly Principal Payment Date"), in payment and reduction of principal on outstanding Prepetition Secured Credit Obligations (the "Principal Payments"); *provided,* that if both the Prepetition Administrative Agent and any Prepetition Secured Lender consent, Principal Payments shall be paid monthly and any Certifications shall also be required to be provided on a monthly basis; *provided, further,* that any Adequate Protection Payments for fees and expenses of the Prepetition Administrative Agent and the Ad Hoc Committee shall be applied prior to any Principal Payment. In addition to any rights the Statutory Committee has to seek reconsideration, modification or nullification of this Order, if any, at any time upon payment by the Debtors of Principal Payments totaling $400 million, the Statutory Committee or any other party in interest granted standing by this Court shall have the right to file a motion in this Court (a "Principal Termination Motion") seeking entry of an order (a "Principal Termination Order") terminating the requirement that additional Principal Payments be made hereunder, *provided, however,* all parties-in-interest have the express right to object to any Principal Termination Motion. The Prepetition Administrative Agent shall make distributions of Principal Payments in accordance with Subparagraph 7(l) below.

(d)     *Certification.* Notwithstanding     the     payment     date     set     forth     in Subparagraph 7(c) above, the Debtors shall not remit to the Prepetition Administrative Agent or any Prepetition Secured Lender, any Principal Payments unless and until such party and its Affiliate Guarantor (as defined in the Certification), if applicable, executes and delivers to the

14

Prepetition Administrative Agent as well as counsel for the Prepetition Administrative Agent, the Debtors, and the Statutory Committee, on or before the date that is 10 business days prior to each Quarterly Principal Payment Date (each, a "Certification Approval Date"), a certification,[5] substantially in the form attached hereto as Exhibit A (a "Certification"):

(i)     consenting to the personal jurisdiction of this Court over such recipient with respect to any Challenge (as defined below) related to such payment, including any discovery sought in connection therewith, seeking to recover, recharacterize or otherwise impose any legal or equitable remedy with respect to such Adequate Protection Payments;

(ii)    agreeing to accept service by overnight courier addressed to the recipient at the address set forth in the Certification of any summons and complaint relating to such adversary proceeding or any properly issued discovery demand served in contemplation thereof;

(iii)   agreeing to deliver on a strictly confidential basis to the Financial Advisors (a) if the applicable Prepetition Secured Lender is an SEC registrant, the Prepetition Secured Lender's latest timely filed form 10-Q or form 10-K; or (b) if the applicable Prepetition Secured Lender is not an SEC registrant or is an SEC registrant that is delinquent in its SEC filings or is not required to make any SEC filings, a statement of the Prepetition Secured

---

[5] The contents of all Certifications shall be treated as confidential and their dissemination shall be limited to the Debtors' and Statutory Committee's professionals only, except to the extent of any proceedings before this Court related thereto, in which instance, the Certifications and all applicable pleadings related thereto shall be filed under seal (which sealing order shall contemplate provision of all such documents only to the Debtors, the Prepetition Administrative Agent, the Statutory Committee and the United States Trustee) with the identity of the Prepetition Secured Lender (or its Affiliate Guarantor, as applicable) redacted. Unless otherwise ordered by this Court, any documentation supporting the Certification, including the statement of assets and liabilities referenced herein, shall not be included in the Certification and shall not be disseminated to counsel for the Debtors, the Statutory Committee or the Prepetition Administrative Agent and shall only be delivered on a confidential basis to financial advisors for the Debtors, the Statutory Committee and the Prepetition Administrative Agent (collectively, the "Financial Advisors") in connection with their review of the Certification and for no other purpose.

15

Lender's assets and liabilities[6] (with footnote disclosures of sufficient detail to verify the amount of Liquid Assets[7] *or* a condensed schedule of investments prepared in connection with such statement of assets and liabilities[8]) created no more than 45 days prior to the applicable Certification Approval Date;

<div style="margin-left:2em">

(iv)    certifying that it:

A)    (i) maintains a Net Asset Value[9] in excess of 8 times the aggregate amounts previously paid and being repaid pursuant to the Principal Payments (the "<u>Paydown Share</u>") <u>and</u>

(ii) is in possession and control of Liquid Assets exceeding (a) 400% of the Paydown Share to the extent the Liquid Assets are encumbered *or* (b) 200% of the Paydown Share to the extent the Liquid Assets are unencumbered;

B)    is not, as of the applicable Certification Approval Date, in default of any contract or credit agreement which would result in the inability of the Prepetition Secured Lender or Affiliate Guarantor, as applicable, to return its Paydown Share, and would not violate any such contract or credit agreement in the event such Prepetition Secured Lender or Affiliate Guarantor, as applicable, is required to disgorge any or all of its Paydown Share; and

C)    shall (i) promptly (but in no event more than 3 business days after receipt of actual knowledge) provide a certificate to counsel for the Debtors and

</div>

---

[6] The statement of assets and liabilities shall present the following at fair value: (a) total assets; (b) total liabilities; and (c) net assets, in each case in accordance with GAAP or modified GAAP, as applicable.

[7] For purposes of this Order and the Certification, "<u>Liquid Assets</u>" shall mean: (a) cash; (b) money markets; (c) U.S. government obligations; (d) marketable securities and other investments that trade in an active market; or (e) any other financial asset that is acceptable to the Financial Advisors as sufficiently liquid.

[8] The condensed schedule of investments shall categorize investments by type (such as common stocks, preferred stocks, convertible securities, fixed-income securities, government securities, options purchased, options written, warrants, futures, loan participations, short sales, other investment companies, and so forth).

[9] For purposes of this Order and the Certification, "<u>Net Asset Value</u>" means, as of any date of determination, the excess of the fair value of securities owned, cash, receivables, and other assets over the liabilities of the applicable Prepetition Secured Lender (or Affiliate Guarantor, as applicable) as calculated pursuant to its procedures for preparation of its financial statements in accordance with GAAP or modified GAAP, as applicable.

the Statutory Committee, with notice to counsel for the Prepetition Administrative Agent, by such Prepetition Secured Lender or its Affiliate Guarantor, if applicable, (a) of the occurrence of any "Event of Default" or similar default under any contract or credit agreement which would result in the inability of the Prepetition Secured Lender or Affiliate Guarantor to return the Prepetition Secured Lender's Paydown Share in accordance with the terms hereof *or* (b) if any of the foregoing representations in this Subparagraph 7(d)(iv) are no longer accurate and (ii) provide on a quarterly basis beginning no earlier than 15 business days prior to each Quarterly Principal Payment Date and no later than 10 business days prior to each Quarterly Principal Payment Date (each such period, a "Reaffirmation Date") to counsel for the Debtors and counsel for the Statutory Committee, with notice to counsel for the Prepetition Administrative Agent, a reaffirmation (a "Quarterly Reaffirmation") that the representations and certifications contained in the applicable Certification remain accurate as of the Reaffirmation Date.

(v)    acknowledging that receipt of the Paydown Share does not constitute a defense to any Challenge; and

(vi)    severally, but not jointly, indemnifying and holding harmless the Prepetition Administrative Agent and its affiliates and their respective directors, officers, agents and employees and each other person controlling the Prepetition Administrative Agent or any of its affiliates (the "Indemnified Parties"), to the full extent lawful, from and against any losses, expenses, claims or proceedings related to or arising out of any order directing disgorgement of any Adequate Protection Payments, *provided*, that such indemnification shall not apply to the gross negligence or willful misconduct of the Indemnified Parties.

(e)    *Certification Objections.*    Prior to any disbursement to a Prepetition Secured Lender of its Paydown Share, the Financial Advisor to the Statutory Committee, in consultation with the Debtors, shall review the Certification (including the accompanying SEC filings or statement of assets, as applicable), or the Quarterly Reaffirmation, as applicable, submitted by the Prepetition Secured Lender pursuant to this Order and the information contained therein to determine whether the Certification complies with the requirements of this

17

Order.    The Statutory Committee may, but shall have no independent duty to, investigate compliance with Subparagraph 7(d) above beyond relying upon the authenticity and correctness of the documents submitted by the Prepetition Secured Lenders or the Affiliate Guarantor, if applicable.    If the Statutory Committee has not provided an objection to the Certification (a "Certification Objection") submitted by the Prepetition Secured Lender or Affiliate Guarantor, with notice to counsel for the Prepetition Administrative Agent and the Debtors within 5 Business Days, such Certification shall be deemed in compliance with the requirements of this Order.    In the event a Certification Objection is raised by the Statutory Committee, no payment of a Paydown Share shall be made to the applicable Prepetition Secured Lender, *provided,* that if the applicable Prepetition Secured Lender disputes the basis for the Certification Objection, and such dispute cannot be resolved after good faith discussions between the Statutory Committee and the Prepetition Secured Lender, such Prepetition Secured Lender may seek to have this Court resolve such a dispute upon notice to the Statutory Committee, the Debtors and the Prepetition Administrative Agent.

(f)    *Alternate Certification.*    Nothing herein shall impair or otherwise restrict any Prepetition Secured Lender from contacting the Financial Advisor to the Statutory Committee to propose an alternate mechanism to ensure repayment of its Paydown Share, the sufficiency of which is subject to the Financial Advisor to the Statutory Committee's discretion in consultation with the other Financial Advisors and upon notice to counsel for the Prepetition Administrative Agent, the Debtors and the Statutory Committee; *provided,* that nothing herein shall impair or otherwise restrict any Prepetition Secured Lender, upon notice to counsel for the Prepetition Administrative Agent, the Debtors and the Statutory Committee, and an opportunity to object, from proposing to this Court at any of the scheduled omnibus hearings, an alternate

18

mechanism to ensure repayment of its Paydown Share.   Upon the written consent of the Prepetition Administrative Agent, the Debtors, the Ad Hoc Committee and the Statutory Committee, the Certification requirements set forth in Subparagraph 7(d) above may be modified or removed without further order of this Court.

(g)     *Repayment of Adequate Protection Payments.*  In the event that an order directing disgorgement of any Adequate Protection Payments received by such Prepetition Secured Lender is entered against a Prepetition Secured Lender which received Adequate Protection Payments (including, but not limited to, a Paydown Share) by a court of competent jurisdiction, such Prepetition Secured Lender expressly agrees to repay any amounts so ordered (any such amounts being "Disgorged Cash"), *provided*, that such Prepetition Secured Lenders shall only be required to pay interest on the Disgorged Cash, if so ordered by this Court, at the rates earned by the Debtors on cash held in the Reserve Cash Collateral Sub-Account during the period that the Prepetition Secured Lender held the Disgorged Cash.  The Prepetition Secured Lender that actually received the amounts so ordered to be disgorged shall retain liability to make the Disgorged Cash repayments, regardless of whether such Prepetition Secured Lender subsequently transferred any or all of its interest in the Prepetition Secured Credit Obligations. All Disgorged Cash repayments shall be made not later than 10 business days after service by certified mail of the order directing disgorgement (unless such order has been stayed by a court of competent jurisdiction) to the address set forth in the latest Certification of such Prepetition Secured Lender. All amounts repaid shall be deposited into third-party escrow accounts (each a "Repayment Escrow") and no amounts shall be released from a Repayment Escrow until all disputes that gave rise to the disgorgement have been resolved by a final and non-appealable order by a court of competent jurisdiction (a "Final Disgorgement Order"). Upon the entry of an

19

order directing disgorgement (regardless whether such order has been appealed or stayed), the Adequate Protection Payments required by this Order shall cease pending the entry of a Final Disgorgement Order or an order of a court of competent jurisdiction directing otherwise. Any Prepetition Secured Lender that fails to comply with the continuing obligations set forth in this Order is subject to penalty as determined by this Court. If a Final Disgorgement Order is entered by this Court, any current or former member of the Ad Hoc Committee shall pay to the Debtors all professional fee payments that would otherwise have been owed under the engagement letter between such member and Kirkland & Ellis LLP. Nothing set forth in this Order shall limit the rights of the plaintiff in any action against any Prepetition Secured Lender from seeking any other pre-judgment remedy that may be available under applicable law, or any Prepetition Secured Lender from opposing such relief.

(h)    *Failure to Certify.* In the event that any Prepetition Secured Lender is unable or unwilling to comply with the requirements set forth in Subparagraph 7(d) above in their entirety on or before the Certification Approval Date, its Paydown Share shall not be included in the Principal Payments remitted to the Prepetition Administrative Agent and such Paydown Share shall be placed in a segregated interest-bearing bank account to be held by the Prepetition Administrative Agent (the "Paydown Account") for the benefit (including any interest accruing on the amounts deposited in the Paydown Account) of such Prepetition Secured Lender (each, a "Non-Certifying Lender") and not to be removed without (i) further order of this Court or (ii) certification by the Debtors to the Prepetition Administrative Agent of compliance with Subparagraph 7(d) above.   The Prepetition Secured Credit Obligations of any Non-Certifying Lender shall be deemed to be reduced for all purposes under the Prepetition Secured Credit Documents by the Paydown Share attributable to such Non-Certifying Lender that is

20

deposited into the Paydown Account, and any Non-Certifying Lender is hereby prohibited from exercising its rights, if any, under section 2.12 of the Prepetition Secured Credit Agreement to seek a sharing of any other Prepetition Secured Lenders' Paydown Share. Nothing contained herein shall prevent (i) any Non-Certifying Lender or (ii) any successor of a Non-Certifying Lender, from requesting receipt of such Paydown Share at a later date to the extent such Non-Certifying Lender or its successor, as applicable, can comply with the Certifications and other provisions hereof. In no event shall any Prepetition Secured Lender, taken together with its successors and assigns, receive greater than 100% of its respective Paydown Share.

(i)    *Transfer of Rights.* All transfers of any interest in the Prepetition Secured Credit Obligations shall be consummated pursuant to documents that comply with the provisions of this Order to the reasonable satisfaction of the Prepetition Administrative Agent. Not later than 5 Business Days prior to a Quarterly Principal Payment Date, notice shall be provided to counsel for the Prepetition Administrative Agent, the Debtors, and the Statutory Committee by any Non-Certifying Lender with respect to transfer of any rights or interest in its Paydown Share, which notice shall include the identity of the transferee and the amount of the proposed transfer; *provided, however*, with respect to the Debtors and the Statutory Committee, the dissemination of such notice shall be limited to the Debtors' and Statutory Committee's professionals only.

(j)    *Effect of Non-Certification.* Any Non-Certifying Lender's inability or unwillingness to comply with the requirements set forth in Subparagraph 7(d) above shall not affect or otherwise alter such Non-Certifying Lender's consent to the entry of this Order and the Debtors' use of the Non-Certifying Lender's Cash Collateral. Nothing contained in this Order shall be or shall be deemed to constitute the assumption of the Prepetition Secured Credit Agreement pursuant to section 365 of the Bankruptcy Code.

21

(k)    *Conversion to Non-Certifying Lender Status.*    In the event the representations and certifications contained in a Certification submitted by a Prepetition Secured Lender are no longer accurate, or a Prepetition Secured Lender that received a Paydown Share no longer is willing to comply with the Certification requirements set forth in Subparagraph 7(d) above with respect to subsequent distributions, the Prepetition Secured Lender shall (i) promptly, but not more than 5 business days after such occurrence, provide notice of such an occurrence to the Debtors, the Prepetition Administrative Agent, and the Statutory Committee and (ii) return its Paydown Share (plus interest calculated at the rate at which funds in the Paydown Account accrue interest) to the Prepetition Administrative Agent within 3 business days of providing the notice required in clause (i) of this subparagraph, provided that, the repayment of such Paydown Share shall be treated for all purposes as if it was received by the Prepetition Administrative Agent on the most recent Quarterly Principal Payment Date. The returned Paydown Share shall be deposited into the Paydown Account as provided for in Subparagraph 7(h) above and such Prepetition Secured Lender shall become a Non-Certifying Lender upon the receipt of the notice by the Debtors, the Prepetition Administrative Agent, and the Statutory Committee described in clause (i) of this subparagraph.

(l)    *Distribution Requirements.*    Three Business Days prior to each Quarterly Principal Payment Date, the Debtors, after consultation with the Statutory Committee, shall provide the Prepetition Administrative Agent with a list of all Prepetition Secured Lenders that are entitled to receive a payment of a Paydown Share in accordance with Subparagraph 7(d) above (each, an "Approved Certified Lender"). The Prepetition Administrative Agent shall pay the Paydown Share to each Approved Certified Lender based upon the *pro rata* share of the holdings, as recorded on the books and records of the Prepetition Administrative Agent as of the

22

third Business Day prior to a Quarterly Principal Payment Date, and shall deposit the amount of any remaining Principal Payment into the Paydown Account.

(m)  *Recharacterization of Adequate Protection Payments.*

i.      If a court of competent jurisdiction enters an order determining that the Prepetition Secured Lenders are undersecured and/or otherwise not entitled to the Adequate Protection Payments, such Adequate Protection Payments (other than Principal Payments) shall be recharacterized as payments of principal of the Prepetition Secured Credit Obligations of CFGI and the Debtor Guarantors and shall be subject to section 2.12 of the Prepetition Secured Credit Agreement (including, but not limited to, with respect to payments to Ad Hoc Committee professionals in accordance with Subparagraph 7(a) above); *provided, however*, subject to the reservation in the final proviso of this subparagraph, upon the payment in full of the secured portion of the Prepetition Secured Credit Obligations of CFGI and the Debtor Guarantors, any remaining Adequate Protection Payments shall be recharacterized and setoff against the recovery of the Prepetition Secured Lenders on their unsecured deficiency claims against CFGI and the Debtor Guarantors until the recovery upon the unsecured deficiency claims has been satisfied to the full extent allowed by an order of this Court; *provided further*, that if the secured portion of the Prepetition Secured Credit Obligations and the unsecured deficiency claims are satisfied as aforesaid, all remaining Adequate Protection Payments shall be subject to disgorgement in accordance with Subparagraph 7(g) above; *provided, however*, that nothing in this subparagraph impairs the ability of the Debtors, the Statutory Committee or any other party in interest granted standing by this Court to move this Court seeking disgorgement, rather than recharacterization, of any Adequate Protection Payments in the event that the secured portion of the Prepetition Secured Credit Obligations have been fully satisfied as aforesaid, and any and all rights and

23

defenses of the Prepetition Administrative Agent and the Prepetition Secured Lenders to object to, or otherwise contest, such relief are hereby expressly preserved.

        ii.     If a court of competent jurisdiction enters an order determining that the Prepetition Secured Credit Obligations owed to the Prepetition Secured Lenders are unsecured and thus the Prepetition Secured Lenders are not entitled to Adequate Protection Payments such payments shall be deposited into a Repayment Escrow pending entry of a Final Disgorgement Order. Subject to the reservation in the final proviso of this subparagraph, upon entry of a Final Disgorgement Order, all Adequate Protection Payments shall be recharacterized and setoff against the recovery of the Prepetition Secured Lenders on their unsecured claims against CFGI and the Debtor Guarantors until the recovery upon the unsecured claims has been satisfied to the full extent allowed by an order of this Court; *provided, however*, that, if the unsecured claims are satisfied as aforesaid, all remaining Adequate Protection Payments shall be subject to disgorgement in accordance with Subparagraph 7(g) above; *provided further, however*, that nothing in this subparagraph impairs the ability of the Debtors, the Statutory Committee or any other party in interest granted standing by this Court to seek disgorgement, rather than recharacterization, of any Adequate Protection Payments if a court of competent jurisdiction enters an order determining that the Prepetition Secured Credit Obligations owed to the Prepetition Secured Lenders are unsecured and thus the Prepetition Secured Lenders are not entitled to Adequate Protection Payments, and any and all rights and defenses of the Prepetition Administrative Agent and the Prepetition Secured Lenders to object to or otherwise contest such relief are hereby expressly preserved.

        iii.     If a court of competent jurisdiction enters an order determining that the Prepetition Secured Lenders are not entitled to any recovery on their claims, whether secured

24

or unsecured, by reason of subordination, disallowance, or otherwise, all Adequate Protection Payments shall be subject to disgorgement in accordance with Subparagraph 7(g) above, *provided, however,* that the Prepetition Administrative Agent itself shall not be liable for disgorgement of any amount other than: (a) payments received by the Prepetition Administrative Agent in its individual capacity and (b) the turnover to the Debtors of any amounts held in the Repayment Escrow or Paydown Account pursuant to Subparagraphs 7(g) and 7(h) above.

(n)     Nothing herein shall preclude the Debtors, the Statutory Committee, or any other party in interest granted standing by this Court to argue that any Adequate Protection Payments in excess of the allowed prepetition secured claim of the Prepetition Secured Lenders against CFGI (an "Excess Adequate Protection Payment") has been made by Debtors other than CFGI, as if any such Excess Adequate Protection Payment had been made by the Debtor that transferred the cash for the Excess Adequate Protection Payment to CFGI.

8.     Modification of Automatic Stay.     The automatic stay imposed under section 362(a) of the Bankruptcy Code (the "Automatic Stay") is modified as necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens; (b) permit CFGI to make the Adequate Protection Payments; (c) permit the Debtors to perform such acts as the Prepetition Administrative Agent or Prepetition Secured Lenders may request in their reasonable discretion to assure the perfection and priority of the liens granted herein; (d) permit the Debtors to incur all obligations to the Prepetition Administrative Agent and Prepetition Secured Lenders under this Order and (e) permit the Debtors to comply with section 5.01(q) of the Prepetition Secured Credit Agreement; *provided, however,* that any stay of relief with respect to the exercise of remedies shall be in accordance with Paragraph 14 below or as otherwise ordered by this Court.

25

RLF1 3519538v.1

9.    <u>Reporting and Consultation Requirements</u>.  As further adequate protection, each Debtor shall provide the Prepetition Secured Lenders with:  (a)(i) all information required to be reported pursuant to sections 2.05(c)(iii), 5.03(d)(ii)(A), 5.03(d)(ii)(C) and 5.03(q) of the Prepetition Secured Credit Agreement and (ii) copies of all periodic financial reporting provided by the Debtors to the Statutory Committee promptly after such information is furnished to the Statutory Committee; and (b) prior written notice ("<u>Collateral Sale Notice</u>") of the Debtors' intent to sell (a "<u>Collateral Sale</u>") any of the Prepetition Collateral where either: (i) the unpaid principal balance of such Prepetition Collateral is in excess of $10 million or (ii) the total proceeds for the sale of such Prepetition Collateral are in excess of $10 million.  Subject to agreement on a protocol governing the sale of Prepetition Collateral, the Debtors agree not to consummate a Collateral Sale without further order of this Court if holders of at least 30% of the Prepetition Secured Credit Obligations notify the Debtors and the Prepetition Administrative Agent in writing that such holders object to such Collateral Sale (a "<u>Collateral Sale Objection</u>") within 5 business days of receipt of any Collateral Sale Notice.

10.    <u>Perfection of Adequate Protection Liens</u>.  This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Secured Lenders to the priorities granted herein.  Notwithstanding the foregoing, the Prepetition Administrative Agent is authorized to file, as it deems necessary or advisable, such financing statements,

26

mortgages, notices of liens and other instruments or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Commencement Date; *provided, however,* that no such filing or recordation shall be necessary or required in order to create, evidence or perfect the Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the Prepetition Administrative Agent all such financing statements, mortgages, title insurance policies, notices, instruments and other documents as such Prepetition Administrative Agent or Prepetition Secured Lenders may reasonably request. The Prepetition Agents, each in their sole discretion, may file a copy of this Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, mortgages, notices of lien, instrument, or similar document.

11.    Events of Default. The occurrence of any of the following events, unless waived in writing by the Prepetition Administrative Agent shall constitute an event of default (collectively, the "Events of Default"):

(a)    the obtaining after the Commencement Date of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien (in each case, other than Permitted Liens (as referenced in clause (d) of the definition of Permitted Liens in the Prepetition Secured Documents)) on all or any portion of the Prepetition Collateral which is equal or senior to any security interest, mortgage or other lien of the Prepetition Secured Lenders, or (ii) entitled to priority administrative status which is equal or senior to that granted to the Prepetition Secured Lenders herein;

27

(b)    (i) the entry of a Principal Termination Order or (ii) the failure to make a Principal Payment on a Quarterly Principal Payment Date as a result of the entry of an order by this Court staying such Principal Payment;

(c)    reversal, vacatur, or modification of this Order without the express prior written consent of the Prepetition Administrative Agent, in its sole discretion;

(d)    unless requested by the Prepetition Administrative Agent or the Prepetition Secured Lenders, the dismissal of the Cases or conversion of the Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

(e)    the Debtors' failure to perform, after 5 business days' written notice from the Prepetition Administrative Agent, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under this Order (other than a failure to perform with respect to Paragraph 3 above), including, without limitation, the Debtors' failure to comply with the requirements of Paragraph 9 above and the delivery of a 506(c) Notice pursuant to Paragraph 20 below (unless such failure to comply with Paragraph 9 above or Paragraph 20 below is cured within the five business day notice period); and

(f)    the Debtors' failure to perform, after notice from the Prepetition Administrative Agent, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under Paragraph 3 above, which failure shall constitute an Event of Default for which no notice is necessary.

12.    <u>Rights and Remedies Upon Event of Default</u>.  The Prepetition Administrative Agent and the Ad Hoc Committee acting together may jointly, immediately upon the occurrence and at any time during the continuation of an Event of Default, terminate, reduce or restrict the

ability of the Debtors to use Cash Collateral (any such action, a "Termination Declaration"). The Termination Declaration shall be given by facsimile or other electronic means to counsel to the Debtors, counsel to the Statutory Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"). Except with respect to Subparagraph 11(f) above, the Debtors may request that this Court order the continued use of the Cash Collateral (a) during the period that ends 30 days after a Termination Declaration Date resulting from an Event of Default under Subparagraph 11(b) above, and (b) during the period that ends 5 business days after a Termination Declaration Date resulting from any other Event of Default under Subparagraphs 11(a) through 11(e) above (each, a "Remedies Notice Period"). Immediately upon the end of a Remedies Notice Period unless this Court orders otherwise, the Debtors shall no longer have the right to use or seek to use Cash Collateral.

13.    Limitations on the Use of Cash Collateral.    Unless otherwise ordered by this Court after notice and a hearing, the Cash Collateral may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the Prepetition Administrative Agent, the Prepetition Secured Lenders, or their rights and remedies under the Prepetition Secured Credit Documents or this Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or the Statutory Committee (if any) in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief adverse to the interests of the Prepetition Administrative Agent, the Prepetition Secured Lenders,

29

or their rights and remedies under the Prepetition Secured Credit Documents or this Order, (ii) invalidating, setting aside, recharacterizing, avoiding or subordinating, in whole or in part, the Prepetition Secured Credit Obligations, (iii) for monetary, injunctive or other affirmative relief against the Prepetition Administrative Agent or any Prepetition Secured Lender, or their respective Collateral that would impair the ability of the Prepetition Administrative Agent or Prepetition Secured Lenders to recover on the Prepetition Secured Credit Obligations or seeking affirmative relief against them, or (iv) preventing, hindering or otherwise delaying the exercise by the Prepetition Administrative Agent or Prepetition Secured Lenders of any rights and/or remedies under this Order, the Prepetition Secured Credit Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of this Court or otherwise) by the Prepetition Administrative Agent or Prepetition Secured Lenders upon any of the Prepetition Collateral; (b) to object to, contest, or interfere with in any way the enforcement or realization upon any of the Prepetition Collateral once an Event of Default has occurred by the Prepetition Administrative Agent or, subject to the Prepetition Secured Credit Documents, the applicable Prepetition Secured Lenders; (c) other than in accordance with this Order without the consent of the Prepetition Secured Lenders; (d) to object to or challenge in any way the claims, liens, or interests (including interests in the Prepetition Collateral) held by or for the benefit of the Prepetition Administrative Agent or Prepetition Secured Lenders; (e) to assert, commence or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Administrative Agent or any Prepetition Secured Lender; (f) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, characterization or enforceability of any of the Prepetition Secured Credit Obligations or Prepetition Liens or any other rights or

interests of the Prepetition Administrative Agent or Prepetition Secured Lenders; or (g) to prevent, hinder or otherwise delay the exercise by the Prepetition Administrative Agent or any Prepetition Secured Lender of any rights and remedies granted under this Order.

14.    <u>Reservation of Certain Rights of the Debtors, the Statutory Committee and Third Parties</u>.    Nothing in this Order shall prejudice the rights of the Debtors, the Statutory Committee or any other party in interest granted standing by this Court to seek to avoid, object to or otherwise challenge (any such action, a "<u>Challenge</u>") (a) the validity, extent, priority, or perfection of the mortgages, security interests, and liens of the Prepetition Administrative Agent or any Prepetition Secured Lender; or (b) the validity, allowability, priority, secured status or amount of the Prepetition Secured Credit Obligations, *provided*, that any Challenge, whether by the Debtors, the Statutory Committee or any other third party, must be brought within 60 days (the "<u>Action Notice Period</u>") after the Prepetition Administrative Agent, in consultation with the Ad Hoc Committee, delivers a written notice (the "<u>Action Notice</u>") indicating that the Prepetition Secured Lenders are electing to commence the Action Notice Period, *provided further*, that no Action Notice may be delivered within 60 days of the entry of this Order.    Any Challenge not timely commenced shall be waived and all third parties shall be forever enjoined, barred and estopped from pursuing any such Challenge.

15.    <u>Plan Sale</u>.    In the event the Prepetition Collateral is sold pursuant to a chapter 11 plan, the Debtors shall not seek confirmation of such plan under section 1129(b)(2)(A) of the Bankruptcy Code for the class of claims that includes the Prepetition Secured Credit Obligations, other than pursuant to 1129(b)(2)(A)(ii) of the Bankruptcy Code.

31

16.    All Acts.  The Debtors are authorized to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Order and the transactions contemplated hereby.

17.    Termination.  Nothing contained in this Order shall be deemed to terminate, modify in any respect, or release any obligations of any of the Guarantors.

18.    No Third Party Rights.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

19.    Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of:  (a) the Prepetition Administrative Agent's or any Prepetition Secured Lender's right to seek any other or supplemental relief in respect of any Debtor, including, without limitation, the right to seek (i) additional adequate protection (without prejudice to any other party in interest's right to object to or otherwise oppose such additional adequate protection), and (ii) additional rights to repayment of the Prepetition Secured Credit Obligations (without prejudice to any other party in interest's right to object to or otherwise oppose such additional repayment); or (b) any of the rights of the Prepetition Administrative Agent or any Prepetition Secured Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases, conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.  Other than as expressly set forth in this Order, any other rights, claims or privileges

32

(whether legal, equitable or otherwise) of the Prepetition Administrative Agent and Prepetition Secured Lenders are preserved.

20.     Section 506(c) Reservation.     The Debtors or any trustee or other fiduciary hereafter appointed in any of the Cases or any Successor Cases must provide 30 days prior written notice (a "506(c) Notice") to counsel for the Prepetition Administrative Agent and the Ad Hoc Committee of any exercise of rights pursuant to section 506(c) of the Bankruptcy Code, including, but not limited to, the allocation of overhead or other charges against the Cash Collateral. Nothing herein shall prejudice the right of the Prepetition Administrative Agent or the Prepetition Secured Lenders to seek a waiver of section 506(c) of the Bankruptcy Code. No such waiver, however, is being granted by this Order.

21.     No Waiver by Failure to Seek Relief.     The failure of the Prepetition Administrative Agent or any Prepetition Secured Lender to seek relief or otherwise exercise its rights and remedies under this Order, the Prepetition Secured Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Administrative Agent or the applicable Prepetition Secured Lender.

22.     Ad Hoc Committee Actions.     To the extent any consent is required or requested hereunder of the Ad Hoc Committee, such consent shall be communicated to the Debtors by Kirkland & Ellis LLP and the Debtors shall be entitled to rely on such communication.

23.     Good Faith.     The Prepetition Administrative Agent and Prepetition Secured Lenders each have acted in good faith in connection with this Order and their reliance on this Order is in good faith.

33

24.     Binding Effect of Order.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Administrative Agent, the Prepetition Secured Lenders, all other creditors of any of the Debtors, the Statutory Committee or any other Court-appointed committee appointed in any of the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases.

25.     No Modification of Order.  Any liens or claims granted to the Prepetition Administrative Agent and the Prepetition Secured Lenders hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

26.     Survival.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to cases under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; (d) discharging any Debtor; or (e) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Order, including, if applicable, the claims, liens, security interests and other protections granted to the Prepetition Administrative Agent and the Prepetition Secured Lenders pursuant to this Order shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Order until the indefeasible payment in full of all Prepetition Secured Credit

34

Obligations, notwithstanding the expiration of the Specified Period or any earlier termination of the Debtors' authorization to use Cash Collateral.

27.    <u>Retention of Jurisdiction</u>.  This Court has and will retain jurisdiction to enforce this Order according to its terms.

Dated: December ⟨⟨ 22 ⟩⟩, 2009
       Wilmington, Delaware

                                _____
                                THE HONORABLE CHRISTOPHER S. SONTCHI
                                UNITED STATES BANKRUPTCY JUDGE

RLF1 3519538v.1