# Exhibit A

**(Proposed Bidding Procedures Order)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------x
                                                        :
*In re*                                                 :       **Chapter 11**
                                                        :
**CAPMARK FINANCIAL GROUP INC.,** *et al.,*             :       **Case No. 09-13684 (CSS)**
                                                        :
**Debtors.**                                            :       **Jointly Administered**
                                                        :
----------------------------------------------------------------x

ORDER (A) SCHEDULING AN AUCTION IN CONNECTION WITH THE SALE
OF REAL ESTATE EQUITY INVESTMENT ADVISORY GROUP BUSINESS ASSETS;
(B) APPROVING BIDDING PROCEDURES; (C) APPROVING BREAK-UP FEE AND
EXPENSE REIMBURSEMENT; (D) SCHEDULING A SALE HEARING;
(E) ESTABLISHING OBJECTION DEADLINE; AND (F) APPROVING SALE
HEARING NOTICE AND NOTICE OF ASSUMPTION AND ASSIGNMENT

Upon the motion, dated as of January 15, 2010 (the "Motion"),[1] of Capmark

Financial Group, Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and

debtors in possession (collectively, the "Debtors"),[2] pursuant to sections 105(a), 363, and 365 of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such term in the Motion.

[2] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), and Capmark Investments LP (7999). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, (Continued)

title 11, United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1

of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules") requesting the

following relief from this Court:

(I)    entry of an order (the "Bidding Procedures Order"):

      i.    scheduling a hearing (the "Sale Hearing") to consider approval of the proposed sale (the "Sale") by Capmark Investments LP and Capmark Carried Interest LLC (a non-debtor affiliate of the Debtors) (together, the "Sellers"), of certain of the Sellers' assets which substantially comprise the Sellers' real estate equity investment advisory group business (collectively, the "REEG Business"), to (a) TRECAP Partners LLC (the "Purchaser"), under that certain Purchase Agreement (the "Purchase Agreement"), between the Sellers and Purchaser, dated as of January 14, 2010, attached to the Motion as Exhibit C, or (b) another Successful Bidder (as defined below);

      ii.    establishing the objection deadline in connection with the proposed Sale;

      iii.    approving the form, and notice procedures relating to, the (a) Sale Hearing Notice (as defined below), and (b) Notice of Assumption and Assignment (as defined below);

      iv.    scheduling an auction ("Auction") to the extent the Sellers receive additional higher or better offers for the REEG Business;

      v.    approving the bidding procedures (the "Bidding Procedures"), as set forth herein; and

      vi.    approving the break up fee (the "Break-Up Fee") and expense reimbursement ("Expense Reimbursement");

(II)    upon completion of the Sale Hearing, entry of an order (the "Sale Order"):

      i.    if no higher and/or better offers have been received, approving the Sellers' entry into the Purchase Agreement without the necessity of conducting an Auction; or

---

19044.   The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

RLF1 3527691v.1

      ii.     if a higher and/or better offer is received, and therefore, an Auction is held, authorizing the Sale of the REEG Business to Purchaser, or to another Successful Bidder (as defined below) at an Auction, free and clear of any and all liens, encumbrances, claims, and interests of any kind, nature or description (collectively, the "<u>Liens</u>") pursuant to section 363(f) of the Bankruptcy Code, pursuant to the Purchase Agreement, or a Modified Purchase Agreement;

and due and proper notice of the Motion having been provided to (i) the U.S. Trustee, (ii) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, (iii) counsel to the Purchaser, (iv) Wilmington Trust FSB, as successor trustee under the prepetition senior unsecured floating rate note, 5.875% senior unsecured note, and 6.300% senior unsecured note indentures, (v) counsel to the Committee, and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b), and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[1]

     A.     The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

     B.     Good and sufficient notice of the Motion has been given under the circumstances, and no further or other notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons.

---

[1] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

RLF1 3527691v.1

C.      The Debtors' Notice of Auction and Sale, annexed hereto as <u>Schedule 1</u>, is appropriate and reasonably calculated to provide interested parties with timely and proper notice of the Auction and Sale and related deadlines, and no other or further notice is required.

D.      The Debtors' notice of the assumption and assignment of the Assigned Contract (the "<u>Notice of Assumption and Assignment</u>"), annexed hereto as Schedule 2, is appropriate and reasonably calculated to provide interested parties with timely and proper notice of the assumption and assignment of the Assigned Contracts and related deadlines and cure amounts, and no other or further notice is required.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is granted to the extent described herein.

2.      The Bidding Procedures, as set forth below, are approved and shall apply with respect to the proposed sale of the REEG Business (provided the Debtors may modify, amend and waive, as applicable, the Bidding Procedures in their sole discretion after consultation with the Committee):

(a)     **Assets to Be Sold**:  The assets to be sold shall consist of the assets comprising the REEG Business.

(b)     **Confidentiality Agreements**:  Upon execution of a confidentiality agreement, in form and substance satisfactory to the Sellers, any party that wishes to conduct due diligence in respect of the REEG Business may be granted access to all material information that has been or will be provided to Purchaser and other bidders; *provided, however,* prior to receipt by a party of any information from the Debtors (including, but not limited to, the Purchase Agreement and its schedules and exhibits, business and financial information and access to representatives of the Sellers), each such party will be required to deliver evidence reasonably satisfactory to the Sellers establishing such party's financial capability to timely consummate a purchase of the REEG Business.

(c)     **Bid Deadline**:  Any person or entity interested in participating in the Auction must submit a Qualifying Bid (as defined below) on or before February 18, 2010 at 12:00 p.m. noon (prevailing Eastern Time) (the "<u>Bid Deadline</u>") in writing, to (1) counsel to the Debtors, Dewey & LeBoeuf

4

LLP, 1301 Avenue of the Americas, New York, New York, 10019, Attention: Michael P. Kessler, Esq. and Judy G.Z. Liu, Esq., (2) corporate counsel to the Sellers, Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, New York, 10018, (3) Capmark Investments LP, 116 Welsh Road, Horsham, Pennsylvania, 19044, Attention: Keith Kooper, President, and (4) counsel to the Committee appointed in these cases, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York, 10036, Attention: Thomas Moers Mayer, Esq. and Amy Caton, Esq.

(d)     **Qualifying Bids**:  To participate in the bidding process and be deemed a "Qualifying Bidder," each potential bidder (other than the Purchaser) must submit a "Qualifying Bid" by the Bid Deadline.  The Purchase Agreement is deemed a Qualifying Bid and Purchaser is deemed a Qualifying Bidder. Otherwise, to constitute a Qualifying Bid a bid must:

    i.    be in writing and state that such bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the REEG Business on terms and conditions no less favorable to the Sellers than the terms and conditions contained in the Purchase Agreement, and with a purchase price of no less than the Purchaser's purchase price plus the Termination Fee, the Expense Reimbursement, and $500,000;

    ii.    provide details of any assumptions about the transaction that are key to the purchase price, including a break-out of value ascribed, as applicable, to: (a) asset management fees, (b) general partnership interests, and/or (c) incentive management fees;

    iii.    include a mark-up of the Purchase Agreement (a "Modified Purchase Agreement") reflecting the variations from the Purchase Agreement, and a clean and executed Modified Purchase Agreement;

    iv.    otherwise include terms and conditions substantially the same in all respects to the Purchase Agreement (including with respect to the representations and warranties);

    v.    provide that such bidder's offer is irrevocable until the closing of the purchase of the REEG Business if such bidder is the Successful Bidder or the Back-Up Bidder (each as defined below);

    vi.    state such bidder is financially capable of consummating the transactions contemplated by the Modified Purchase Agreement, and that there are no financing or due diligence contingencies for the bidder to consummate the Modified Purchase Agreement;

5

vii.    provide that such bidder will not require additional representations or warranties that relate to the limited liability company interests/limited partnership owned by the funds and joint separate accounts except as stated in Article 4 of the Purchase Agreement;

viii.    state such bidder is a registered investment adviser with the SEC;

ix.    provide that such bidder will close on the sale of the REEG Business within the same time period provided for in the Purchase Agreement;

x.    include such financial and other information that will allow the Sellers to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement and evaluate bidder's demonstration of its experience as a fiduciary in the investment management business;

xi.    describe the bidder's intention for the management and employees of the REEG Business, including the bidder's working assumption for sharing of promote revenue with management going forward, if applicable, and the integration of the REEG Business with the bidder's current business with regard to personnel and a pro forma business plan;

xii.    provide a summary of the key economic elements of the bidder's proposal that affect the third party investors of the funds and joint venture separate accounts of the REEG Business including any change, if necessary, to the key economic or governance terms of these investment vehicles;

xiii.    describe any transition services that will be required by the bidder in connection with an acquisition of the REEG Business;

xiv.    include a statement that there are no conditions precedent to the bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid. The bidder's bid and Modified Purchase Agreement should also highlight any governmental or third-party consents needed to consummate the acquisition of the REEG Business to the extent they are not already contemplated in the Purchase Agreement;

xv.    not request or entitle the bidder to any transaction or breakup fee, termination fee, expense reimbursement, or similar type of payment;

xvi.    fully disclose the identity of each entity that will be bidding for the REEG Business or otherwise participating in connection with such bid, and the complete terms of any such participation;

xvii.   include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Purchase Agreement;

xviii.  include the names and contact information of members of the bidder who will be available to answer questions regarding the offer;

xix.    include the names of external advisors including financial, legal, and accounting firms, as well as industry consultants or other resources;

xx.     include any other information or factors that may be relevant to the Sellers and their advisors in consideration of the bid; and

xxi.    include a cash deposit by wire transfer equal to ten (10%) percent of the amount offered to purchase the REEG Business (the "Good Faith Deposit").

The Sellers shall make a determination regarding whether a bid is a Qualifying Bid, after consultation with the Committee, and shall notify bidders whether their bids have been determined to be Qualifying Bids by no later than one hour before the start of the Auction (as defined below);

(e)     **No Qualifying Bids**:  If no timely, conforming Qualifying Bids, other than the Purchase Agreement, are submitted by the Bid Deadline, the Sellers shall not hold an Auction (as defined below) and, instead, shall request at the Sale Hearing that the Court approve the Purchase Agreement with Purchaser.

(f)     **Right to Disseminate Information Relating to Bid**.  At any time, whether before or after the Auction, the Sellers may share or not share, in their sole discretion, any bid for the REEG Business with the other bidders.

(g)     **Auction**:  In the event the Sellers timely receive one or more Qualifying Bids other than the Purchase Agreement, the Sellers shall conduct the Auction with respect to the REEG Business.  The Auction will be held at the offices of Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York, 10019, on February 23, 2010 at 12:00 p.m. noon (prevailing Eastern Time), or such other location as designated by the Debtors in a notice to all Qualifying Bidders.  The Auction shall be governed by the following procedures (which may be amended, modified

7

and waived, as applicable, by the Debtors at any time in their sole discretion after consultation with the Committee):

i.   The Purchaser and the Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

ii.  Only representatives of the Debtors, the Purchaser, Qualifying Bidders, counsel and other advisors selected by the Committee, and representatives from the Office of the U.S. Trustee, shall be entitled to be present at the Auction;

iii. The Auction process shall be transcribed by a qualified court reporter, unless otherwise provided herein;

iv.  Only the Purchaser and Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

v.   Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

vi.  Bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction and such Bid shall be announced prior to the start of the Auction (the "Initial Highest Bid");

vii. Qualifying Bidders may submit subsequent bids to the Initial Highest Bid and all such subsequent bids must be stated in an amount exceeding each prior bid by USD $250,000 in purchase price consideration;

viii. The Sellers may determine the order in which Qualifying Bidders shall bid at the Auction;

ix.  All Qualifying Bidders and the Purchaser shall be able to submit additional bids and make additional modifications to the Purchase Agreement or Modified Purchase Agreement, as applicable, at the Auction as determined by the Sellers at any time in their sole discretion after consultation with the Committee;

x.   The Auction may include individual negotiations with the Qualifying Bidders and the Purchaser and/or open bidding in the presence of all other Qualifying Bidders and the Purchaser;

xi.  The Sellers may determine, in their sole discretion and after consulting with the Committee, which portions o f the Auction shall be transcribed on the record and which shall not be transcribed;

8

xii.   The Sellers may, in their sole discretion and after consulting with the Committee, discuss any Qualifying Bid with other Qualifying Bidders individually or together in any other group or groups of Qualifying Bidders, as determined by the Sellers;

xiii.  The Auction shall continue until there is only one offer that the Sellers determine, after consultation with the Committee and subject to Court approval, with respect to the REEG Business, is the highest and/or best offer from among the Qualifying Bidders submitted at the Auction (the "Successful Bid"). In making this decision, the Debtors may consider any factors they deem relevant, including, without limitation, the amount of the purchase price, the form of consideration being offered, the expense to the Debtors of any obligation to pay the Break-Up Fee and Expense Reimbursement, the likelihood of the Qualifying Bidder's ability to close a transaction and the timing thereof, the number, type, and nature of any changes to the Purchase Agreement requested by each Qualifying Bidder, any contingencies relating to a Qualifying Bidder's offer, and the net benefit to the Debtors' estates. The Purchaser or Qualifying Bidder submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of a purchaser, as set forth in the applicable Purchase Agreement or Modified Purchase Agreement; and

xiv.   Within three (3) days after conclusion of the Auction, but prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made and make and pay for all necessary filings with all applicable governmental or other authorities; *provided, however,* that any Successful Bidder shall have fifteen days to obtain requisite consents. Bids made after the close of the Auction shall not be considered by the Sellers.

(h)   **Back-Up Bidder and Return of Good Faith Deposits**:

i.   If an Auction is conducted, the Qualifying Bidder with the next highest or otherwise best Qualified Bid, as determined by the Sellers in the exercise of their business judgment at the Auction and in consultation with the Committee, shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until 24 hours after the closing of the sale transaction with the Successful Bidder. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not

9

required, to consummate the Sale with the Back-Up Bidder without further order of the Court.

ii.    Except as otherwise provided herein, Good Faith Deposits shall be returned to each bidder not selected by the Sellers as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) Business Day following the conclusion of the Auction. Each Good Faith Deposit of the Back-Up Bidder shall be held by the Debtors until one (1) Business Day after the closing of the Sale transaction with the Successful Bidder for the REEG Business.

3.    The Break-Up Fee and Expense Reimbursement are approved. The Sellers are hereby authorized and directed to pay the Break-Up Fee and Expense Reimbursement in the event all or substantially all of the REEG Business is sold to another bidder and the Purchase Agreement is terminated as a result of entry of an Order approving an alternative transaction. Upon closing of the alternative transaction, the Sellers shall immediately pay the Break-Up Fee and Expense Reimbursement in cash to the Purchaser as an administrative expense claim in CILP's chapter 11 case pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code. In no event shall the Break-Up Fee or Expense Reimbursement be payable if these chapter 11 cases are converted to chapter 7 cases.

4.    The form and manner of providing the Notice of Auction and Sale is hereby approved. Service of the Notice of Auction and Sale, as set forth below, constitutes good and sufficient notice of the Auction and Sale Hearing.

5.    The Court shall hold the Sale Hearing on March 4, 2010 at 10:00 a.m. (prevailing Eastern Time) at which time the Court will consider approval of the Sale of the REEG Business, including the Debtors' assumption and assignment of the Assigned Contracts to Purchaser or the Successful Bidder.

6.    Any objection (an "Objection") to the Sale of the REEG Business, the assumption and assignment of any Assigned Contracts, or the Cure Amounts must be filed and

10

served so as to be actually received on or before 4:00 p.m. on February 25, 2010 by (a) counsel for the Debtors, Dewey & LeBoeuf LLP, Attention: Michael P. Kessler, Esq., and Judy G.Z. Liu, Esq., 1301 Avenue of the Americas, New York, New York, 10019; (b) local counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware, 19801, Attention: Mark D. Collins, Esq. and Jason M. Madron, Esq.; (c) corporate counsel to the Sellers, Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, New York, 10018, Attention: Edward Braum, Esq.; (d) counsel for Purchaser, Akin Gump Strauss Hauer & Feld LLP, 1700 Pacific Avenue, Suite 4100, Dallas, Texas, 75201-4675, Attention: R. Terry Miller, Esq.; (e) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801; (f) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, 1615 Brett Rd. Bldg. 3, New Castle, Delaware, 19720, Attention: Ralph Townley; (g) successor trustee under the prepetition senior unsecured floating rate note, 5.875% senior unsecured note, and 6.300% senior unsecured note indentures, Wilmington Trust FSB, 166 Mercer Street, Suite 2-R, New York, New York, 10012-3249, Attention: Adam Berman; (h) counsel to the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York, 10036, Attention: Thomas Moers Mayer, Esq. and Amy Caton, Esq.; and (i) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). Each Objection must state with specificity the nature of such Objection.

      7.     The notices described in the subparagraphs below (collectively, the "Notices") shall be sufficient and no further notice shall be required if given as follows:

          i.     The Debtors shall serve, within 3 business days after entry of the Bidding Procedures Order (the "Mailing Deadline"), by overnight

11

courier, electronic mail, or same-day messenger delivery, and copies of the Notice of Auction and Sale upon: (i) the U.S. Trustee, (ii) attorneys for the Committee, (iii) attorneys for the Purchaser, (iv) any party who, in the past 12 (twelve) months, expressed in writing to the Debtors an interest in acquiring the REEG Business, and who the Debtors and their representatives reasonably and in good faith determine potentially have the desire and financial wherewithal to effectuate the Sale, (v) all parties who are known to possess or assert a secured claim against the REEG Business, (vi) the Internal Revenue Service, (vii) the SEC, (viii) all applicable state attorneys general, local realty enforcement agencies, and local regulatory authorities, and (xi) any parties entitled to notice under Rule 2002-1(b) of the Local Rules for the United States Bankruptcy Court for the District of Delaware.

ii.     On or before the Mailing Deadline, or as soon as practical thereafter, the Sellers will publicize the Notice of Auction and Sale in the Wall Street Journal (National Edition) for one business day.

iii.    On or before the Mailing Deadline, CILP (or its agent) shall serve, by overnight courier, electronic mail, or same-day messenger delivery, the Notice of Assumption and Assignment, substantially in the form attached hereto as Schedule 2, upon all known nondebtor parties to the Assigned Contracts.  The Notice of Assumption and Assignment shall set forth (i) the intent of CILP to assume the Assigned Contracts and assign them to Purchaser (or to any Successful Bidder), and (ii) applicable Cure Amounts, if any. The Notice of Assumption and Assignment shall identify the Assigned Contracts and the Cure Amounts that the Sellers believe must be paid to cure all defaults under the Assigned Contracts.  If no amount is listed on the Notice of Assumption and Assignment, the Sellers believe that there is no Cure Amount due.

8.      Any objections to (i) the assumption and assignment of an Assigned Contract, or (ii) the amount asserted as the Cure Amount (each, an "Assumption and/or Cure Objection") must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of the Assigned Contract (the "Claimed Cure Amount").

9.      If an Objection challenges a Cure Amount, the Objection must set forth the Claimed Cure Amount with appropriate documentation in support thereof.  Upon receipt of

12

an Objection to a Cure Amount, CILP may, in its sole discretion, hold an amount equal to the

Claimed Cure Amount in reserve pending further order of the Court or agreement between the

applicable Debtor and the objecting party.  So long as CILP holds the Claimed Cure Amount in

reserve and otherwise satisfies the requirements for assumption under section 365 of the

Bankruptcy Code, CILP may, without further delay, assume and assign the Assigned Contract

that is the subject of an Objection relating to that Assigned Contract's Cure Amount.

        10.    If no Objection to the Cure Amount or the proposed assumption and

assignment of an Assigned Contract is timely filed and served, the applicable Debtor may

assume and assign the Assigned Contract to Purchaser or the Successful Bidder and the Cure

Amount set forth in the Notice of Assumption and Assignment shall be binding upon the

respective nondebtor party to the Assigned Contract for all purposes in CILP's chapter 11 case

and otherwise.  The respective nondebtor party shall be forever barred from objecting to the

assumption and assignment of the relevant Assigned Contract and the Cure Amount, including,

without limitation, the right to assert any condition to assignment and/or additional cure or other

amount with respect to their respective Assigned Contracts.

        11.    Failure of any objecting person or entity to timely file its Objection shall

be an absolute bar to the assertion, at the Sale Hearing or thereafter, of any objection to the

Motion or CILP's assumption and assignment of any of the Assigned Contracts, or the

consummation and performance of the Sale (including the transfer free and clear of all Liens).

        12.    The Court shall retain jurisdiction over any matter or dispute arising from

or relating to the implementation of this Bidding Procedures Order.  CILP is hereby authorized

and empowered to take such steps, expend such sums of money, and do such other things as may

RLF1 3527691v.1

be necessary to implement and effect the terms and requirements of this Bidding Procedures

Order.

13.    Notwithstanding any other provision contained herein, the Debtors, after

consultation with the Committee, may adjourn or cancel the Auction or Sale at any time as an

exercise of their sound business judgment.

14.    Notwithstanding any potential applicability of Bankruptcy Rule 6004(h) or

other Rule, this Bidding Procedures Order shall not be stayed for ten (10) days after the entry

hereof and shall be effective and enforceable upon signature hereof.

Dated: January __, 2010
      Wilmington, Delaware

 

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1

**(Proposed Notice of Auction and Sale)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                        :
In re                                   :   Chapter 11
                                        :
CAPMARK FINANCIAL GROUP INC., et al.,   :   Case No. 09-13684 (CSS)
                                        :
        Debtors.                        :   Jointly Administered
                                        :
-------------------------------------------------------------x
```

## NOTICE OF AUCTION AND SALE HEARING FOR SALE OF REAL ESTATE EQUITY INVESTMENT ADVISORY GROUP BUSINESS ASSETS

NOTICE IS HEREBY GIVEN, as follows:

1.      On January 15, 2010, Capmark Financial Group, Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"),[1] filed a motion (the "Motion") pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), seeking approval of, among other things, (i) the establishment of bidding procedures (the "Bidding Procedures"), (ii) the scheduling of an auction (the "Auction"), as necessary, and (iii) the scheduling of a sale

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), and Capmark Investments LP (7999). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

hearing (the "Sale Hearing") in connection with the proposed sale (the "Sale") by Capmark Investments LP and Capmark Carried Interest LLC (a non-debtor affiliate of the Debtors) (together, the "Sellers"), of the Sellers' REEG Business (as defined below). On [DATE], the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures and the Sale Hearing schedule.

2.    The Sellers and TRECAP Partners LLC (the "Purchaser") have entered into a Purchase Agreement, dated as of January 15, 2010 (the "Purchase Agreement"), regarding the Sale of certain of the Sellers' assets which substantially comprise the Sellers' real estate equity investment advisory group business (collectively, the "REEG Business"), whereby the Sellers have agreed to sell the REEG Business to Purchaser, subject to higher and better offers.

3.    Pursuant to the Bidding Procedures Order, if the Sellers receive any higher or better bids for the REEG Business, the Auction for the REEG Business shall take place on February 23, 2010 at 12:00 p.m. noon (prevailing Eastern Time), at the offices of Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York, 10019. Only parties that have submitted a Qualified Bid, as set forth in the Bidding Procedures Order, by no later than February 18, 2010 at 12:00 p.m. noon (prevailing Eastern Time) (the "Bid Deadline") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the REEG Business must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.    The Bidding Procedures Order provides that a Sale Hearing will be held on March 4, 2010 at 10:00 a.m. (prevailing Eastern Time) before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, in Room 6 of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware, 19801.

5.    At the Sale Hearing, the Debtors shall request the Court to enter an order, among other things, authorizing the Sale of the REEG Business to Purchaser pursuant to the Purchase Agreement, or authorizing the Sale of the REEG Business to the Successful Bidder (as defined in the Bidding Procedures Order) at the Auction.

6.    At the Sale Hearing, the Court may enter such orders as it deems appropriate under the applicable law and as required by the circumstances and equities of these chapter 11 cases. Any objection (an "Objection") to the Sale of the REEG Business pursuant to the terms of the Purchase Agreement shall be in writing, shall conform to Bankruptcy Rules and the Local Rules, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against CILP's estate or properties, the basis for the Objection and the specific grounds therefor, and shall be served upon (a) counsel for the Debtors, Dewey & LeBoeuf LLP, Attention: Michael P. Kessler, Esq., and Judy G.Z. Liu, Esq., 1301 Avenue of the Americas, New York, New York, 10019; (b) local counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware, 19801, Attention: Mark D. Collins, Esq. and Jason M. Madron, Esq.; (c) corporate counsel to the Sellers, Goodwin Procter LLP, The New York Times Building, 620 8th Avenue, New York, New York, 10018, Attention: Edward Braum, Esq.; (d) counsel for Purchaser, Akin Gump Strauss Hauer & Feld LLP, 1700 Pacific Avenue, Suite 4100, Dallas, Texas, 75201-4675, Attention: R. Terry

2

Miller, Esq.; (e) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801; (f) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, 1615 Brett Rd. Bldg. 3, New Castle, Delaware, 19720, Attention: Ralph Townley; (g) successor trustee under the prepetition senior unsecured floating rate note, 5.875% senior unsecured note, and 6.300% senior unsecured note indentures, Wilmington Trust FSB, 166 Mercer Street, Suite 2-R, New York, New York, 10012-3249, Attention: Adam Berman; (h) counsel to the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York, 10036, Attention: Thomas Moers Mayer, Esq. and Amy Caton, Esq.; and (i) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b), so as to be actually received no later than February 25, 2010 at 4:00 p.m. (prevailing Eastern Time).

7.    A copy of the Purchase Agreement is attached as <u>Exhibit C</u> to the Motion.

Dated: January __, 2010
        Wilmington, Delaware

Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Jason M. Madron (No. 4431)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: 302.651.7700
Facsimile: 302.651.7701

-and-

Martin J. Bienenstock
Michael P. Kessler
Judy G.Z. Liu
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: 212.259.8000
Facsimile: 212.259.6333

*Attorneys for the Debtors and Debtors in Possession*

RLF1 3527691v.1

## SCHEDULE 2

**(Proposed Notice of Assumption and Assignment)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
             :

*In re*                 :      **Chapter 11**
             :

**CAPMARK FINANCIAL GROUP INC.,** *et al.,*  :      **Case No. 09-13684 (CSS)**
             :

        **Debtors.**        :      **Jointly Administered**
             :

---------------------------------------------------------------x

## NOTICE OF INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS IN CONNECTION WITH THE PROPOSED SALE OF REAL ESTATE EQUITY INVESTMENT ADVISORY GROUP BUSINESS ASSETS AND THE FIXING OF CURE AMOUNTS AND PROCEDURES ASSOCIATED THEREWITH

NOTICE IS HEREBY GIVEN, as follows:

      1.      On [DATE], the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Bidding Procedures Order"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules") in the above-captioned chapter 11 cases of Capmark Financial Group, Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"),[1] approving, among other things, this notice, the scheduling of the

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are:  Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), and Capmark Investments LP (7999).  CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, (Continued)

Sale Hearing, and the procedures for the fixing of cure amounts (the "Cure Amounts") related to the assumption and assignment of certain executory contracts, unexpired leases, and other agreements of CILP (the "Assumed Contracts" with respect to each counterparty listed on Exhibit A attached hereto) in connection with the sale of assets which substantially comprise the Sellers' (as defined below) real estate equity investment advisory group business (the "REEG Business"). Capmark Investments LP ("CILP") will assume the Assumed Contracts and assign them to TRECAP Partners LLC (the "Purchaser"), pursuant to the terms of that certain Purchase Agreement, dated as of January 14, 2010 (the "Purchase Agreement"), between CILP and Capmark Carried Interest LLC (a non-debtor affiliate of the Debtors) (together, the "Sellers") and Purchaser, or to another Successful Bidder (as defined in the Bidding Procedures Order) at an Auction (as defined in the Bidding Procedures Order) for the sale of the REEG Business.

2.      CILP believes any and all defaults (other than the filing of these chapter 11 cases) under the Assumed Contracts can be cured by the payment of the Cure Amounts listed on Exhibit A.

3.      Any objections to (i) the assumption and assignment of an Assumed Contract, or (ii) the amount asserted as the Cure Amount (each, an "Assumption and/or Cure Objection") must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of the Assumed Contract (the "Claimed Cure Amount").

4.      To be considered a timely Assumption and/or Cure Objection, the Assumption and/or Cure Objection must be filed with the Court and served upon (a) counsel for the Debtors, Dewey & LeBoeuf LLP, Attention: Michael P. Kessler, Esq., and Judy G.Z. Liu, Esq., 1301 Avenue of the Americas, New York, New York, 10019; (b) local counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware, 19801, Attention: Mark D. Collins, Esq. and Jason M. Madron, Esq.; (c) counsel for Purchaser, Akin Gump Strauss Hauer & Feld LLP, 1700 Pacific Avenue, Suite 4100, Dallas, Texas, 75201-4675, Attention: R. Terry Miller, Esq.; (d) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801; (e) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, 1615 Brett Rd. Bldg. 3, New Castle, Delaware, 19720, Attention: Ralph Townley; (f) successor trustee under the prepetition senior unsecured floating rate note, 5.875% senior unsecured note, and 6.300% senior unsecured note indentures, Wilmington Trust FSB, 166 Mercer Street, Suite 2-R, New York, New York, 10012-3249, Attention: Adam Berman; (g) counsel to the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York, 10036, Attention: Thomas Moers Mayer, Esq. and Amy Caton, Esq.; and (h) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b), such that it is actually received no later February 25, 2010 at 4:00 p.m. (prevailing Eastern Time).

---

19044.    The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

2

5.      If an Assumption and/or Cure Objection is timely filed, a hearing with respect to that objection shall be held before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, at the Sale Hearing.

6.      Unless the Assumption and/or Cure Objection is timely filed and served, the assumption and assignment of the applicable Assumed Contract will proceed without further notice at the Sale Hearing to approve the sale of the REEG Business.

7.      Parties that fail to file and serve timely Assumption and/or Cure Objections shall be deemed to have waived and released any and all rights to assert Cure Amounts different from those listed on Exhibit A and, subject to payment of the cure amount(s) listed on Exhibit A with respect to their Assume Contract(s), shall be forever barred and estopped from asserting or claiming against the pertinent Debtor, Purchaser, or any assignee of any Assumed Contract that any additional amounts are due or defaults exist, or prohibitions or conditions to assignment exist or must be satisfied, under such Assumed Contract.

8.      If no Cure Amounts are due under the Assumed Contract, and the nondebtor party to the Assumed Contract does not otherwise object to CILP's assumption and assignment of the Assumed Contract, no further action need be taken on the part of that nondebtor party.

9.      Assumption and/or Cure Objections that object solely to the Cure Amount may not prevent or delay CILP's assumption and assignment of any Assumed Contracts. If a party objects solely to a Cure Amount, CILP may, in its sole discretion, hold the Claimed Cure Amount in reserve pending further order of the Court or mutual agreement of the parties. So long as CILP holds the Claimed Cure Amount in reserve, and there are no other unresolved objections to assumption and assignment, CILP can, without further delay, assume and assign the Assumed Contract that is the subject of the objection. Under such circumstances, the objecting party's recourse is limited to the funds held in reserve.

10.     CILP's decision to assume and assign to Purchaser (or the Successful Bidder) the Assumed Contracts is subject to Court approval and the closing of the Purchase Agreement (the "Closing"). Accordingly, absent such Closing, any of the Assumed Contracts shall not be deemed assumed nor assigned, and shall in all respects be subject to further administration under the Bankruptcy Code. The inclusion of any document on the list of Assumed Contracts shall not constitute or be deemed to be a determination or admission by any Debtor or Purchaser (or the Successful Bidder) that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated: January __, 2010
      Wilmington, Delaware

                               Mark D. Collins (No. 2981)
                               Paul N. Heath (No. 3704)
                               Jason M. Madron (No. 4431)
                               Lee E. Kaufman (No. 4877)
                               RICHARDS, LAYTON & FINGER, P.A.
                               One Rodney Square
                               920 North King Street
                               Wilmington, Delaware 19801
                               Telephone:  302.651.7700
                               Facsimile:  302.651.7701

                               -and-

                               Martin J. Bienenstock
                               Michael P. Kessler
                               Judy G.Z. Liu
                               DEWEY & LEBOEUF LLP
                               1301 Avenue of the Americas
                               New York, New York 10019
                               Telephone:  212.259.8000
                               Facsimile:  212.259.6333

                               *Attorneys for the Debtors and Debtors in
Possession*

4

## Cure Schedule of Additional Contracts

| Counterparty Name and Address | Description of Agreement | Cure Amount |
|---|---|---|
| Capmark Commercial Realty Partners LP<br>116 Welsh Road<br>Horsham, PA 19044<br>Attn: Investment Advisor | Management Agreement, dated October 29, 2004, by and between Capmark Investments LP (f/k/a GMAC Institutional Advisors LLC) and Capmark Commercial Realty Partners, LP (f/k/a GMAC Commercial Realty Partners, LP) | $0.00 |
| Capmark Commercial Realty Partners II, LP<br>116 Welsh Road<br>Horsham, PA 19044<br>Attn: Investment Advisor | Management Agreement, dated December 15, 2005, by and between Capmark Investments LP (f/k/a GMAC Institutional Advisors LLC) and Capmark Commercial Realty Partners II, LP (f/k/a GMAC Commercial Realty Partners II, LP) | $0.00 |
| Capmark Commercial Realty Partners IIA (REIT), LP<br>116 Welsh Road<br>Horsham, PA 19044<br>Attn: Investment Advisor | Management Agreement, dated December 15, 2005, by and between Capmark Investments LP (f/k/a GMAC Institutional Advisors LLC) and Capmark Commercial Realty Partners IIA (REIT), LP (f/k/a GMAC Commercial Realty Partners IIA (REIT), LP) | $0.00 |
| Capmark Commercial Realty Partners III, LP<br>116 Welsh Road<br>Horsham, PA 19044<br>Attn: Investment Advisor | Management Agreement, dated July 24, 2007, by and between Capmark Investments LP and Capmark Commercial Realty Partners III, LP | $0.00 |
| Capmark UK Realty Partners, LP<br>116 Welsh Road<br>Horsham, PA 19044<br>Attn: Investment Advisor | Advisory Agreement, dated September 29, 2006, by and between Capmark Investments LP and Capmark UK Realty Partners, LP | $0.00 |
| Apartment Properties Income and Growth Fund I, LLC<br>116 Welsh Road<br>Horsham, PA 19044<br>Attn: Investment Advisor | Asset Management Agreement, dated July 23, 2001, by and between Capmark Investments LP (f/k/a GMAC Institutional Advisors LLC) and Apartment Properties Income and Growth Fund I, LLC, as amended by that certain First Amendment to Asset Management Agreement, dated August 31, 2006 | $0.00 |
| Select Apartment Properties, LLC<br>116 Welsh Road<br>Horsham, PA 19044<br>Attn: Investment Advisor | Amended and Restated Asset Management Agreement, dated as of November 29, 2007, by and between Capmark Investments LP, Select Apartment Properties, LLC and TDB Cappar LLC | $0.00 |
| Potomac Yards Equity Investments, Inc.<br>116 Welsh Road<br>Horsham, PA 19044<br>Attn: Investment Advisor | Asset Management Agreement, dated as of January 12, 2005, by and between Capmark Investments LP (f/k/a GMAC Institutional Advisors LLC), Crystal City Partners LLC and Potomac Yards Equity Investments, Inc. | $0.00 |
| GIA Holdings IDF, LLC<br>116 Welsh Road<br>Horsham, PA 19044<br>Attn: Investment Advisor | Asset Management Agreement, dated as of January 10, 2005, by and between Capmark Investments LP (f/k/a GMAC Institutional Advisors LLC), GIA Holdings IDF, LLC and AGL Life Assurance Company Separate Account GVA 6 | $0.00 |

| Counterparty Name and Address | Description of Agreement | Cure Amount |
|---|---|---|
| Brevard FL Retail, LLC<br>116 Welsh Road<br> Horsham, PA 19044<br>Attn: Investment Advisor | Asset Management Agreement, dated as of January 1, 2006, by and between Capmark Investments LP (f/k/a GMAC Institutional Advisors LLC) and Brevard FL Retail, LLC | $0.00 |
| Riata Property Investors LLC<br>116 Welsh Road<br> Horsham, PA 19044<br>Attn: Investment Advisor | Asset Management Agreement, dated August 31, 2006, by and between Capmark Investments LP and Riata Property Investors LLC | $0.00 |
| Seacrest Investors, LLC<br>116 Welsh Road<br> Horsham, PA 19044<br>Attn: Investment Advisor | Asset Management Agreement, dated September 26, 2006, by and between Capmark Investments LP and Seacrest Investors, LLC | $0.00 |