# Exhibit B

(Proposed Sale Order)

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
: 
*In re* : Chapter 11
: 
CAPMARK FINANCIAL GROUP INC., *et al.*, : Case No. 09-13684 (CSS)
: 
Debtors. : Jointly Administered
: 
------------------------------------------------------------x

## ORDER AUTHORIZING SALE OF REAL ESTATE EQUITY INVESTMENT ADVISORY GROUP BUSINESS ASSETS (INCLUDING ASSUMPTION AND ASSIGNMENT OF CONTRACTS) FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS

Upon the motion, dated as of January 15, 2010 (the "Motion")[1] of Capmark Financial Group, Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"),[2] pursuant to sections 105(a), 363, and 365 of

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such term in the Motion.

[2] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), and Capmark Investments LP (7999). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

title 11, United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules") requesting the following relief from this Court:

    (I)    entry of an order (the "Bidding Procedures Order"):

        i.    scheduling a hearing (the "Sale Hearing") to consider approval of the proposed sale (the "Sale") by Debtor Capmark Investments LP ("CILP") and Capmark Carried Interest LLC (a non-debtor affiliate of the Debtors) (together, the "Sellers"), of certain of the Sellers' assets, which substantially comprise the Sellers' real estate equity investment advisory group business (the "REEG Business"), to (a) TRECAP Partners LLC (the "Purchaser") under that certain Purchase Agreement, dated as of January 14, 2010 (the "Purchase Agreement"), between the Sellers and Purchaser, attached to the Motion as Exhibit C, or (b) another Successful Bidder;

        ii.    establishing the objection deadline in connection with the proposed Sale;

        iii.    approving the form and manner of, and notice procedures relating to, the (a) Sale Hearing Notice (as defined below), and (b) Notice of Assumption and Assignment (as defined below);

        iv.    scheduling an auction ("Auction") to the extent the Sellers receive additional higher or better offers for the REEG Business;

        v.    approving the bidding procedures (the "Bidding Procedures"), as set forth herein; and

        vi.    approving a break up fee (the "Break-Up Fee") and an expense reimbursement (the "Expense Reimbursement");

    (II)    upon completion of the Sale Hearing, entry of an order (the "Sale Order"):

        i.    if no higher or better offers have been received, approving the Sellers' entry into the Purchase Agreement without conducting an Auction; or

        ii.    if a higher or better offer is received, and therefore, an Auction is held, authorizing the Sale of the REEG Business to Purchaser, or to another Successful Bidder at an Auction, free and clear of any and all liens, encumbrances, claims, and interests of any kind,

nature or description (collectively, the "Liens") pursuant to section 363(f) of the Bankruptcy Code, pursuant to the Purchase Agreement, or a Modified Purchase Agreement;

and due and proper notice of the Motion having been provided to (i) the U.S. Trustee, (ii) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, (iii) counsel to the Purchaser, (iv) Wilmington Trust FSB, as successor trustee under the prepetition senior unsecured floating rate note, 5.875% senior unsecured note, and 6.300% senior unsecured note indentures, (v) counsel to the Committee, and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). The Debtors submit that no other or further notice need be provided, and (vii) all parties to any agreements sought to be assumed and assigned pursuant to the Purchase Agreement, and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

A.  The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  Time is of the essence in consummating a Sale of the REEG Business and it is in the best interests of CILP and its estate to sell the REEG Business within the time

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

constraints set forth in the Motion and the Purchase Agreement. The terms of the Purchase Agreement are the highest and best terms that have been offered for Sale of the REEG Business.

C. Upon the closing of the Purchase Agreement (the "Closing"), the REEG Business to be sold and executory contracts to be assumed and assigned will have been acquired by Purchaser after adequate marketing and in good faith and as the result of arms'-length negotiations.

D. Reasonable notice of the Sale and a reasonable opportunity to object or be heard with respect to the Sale of the REEG Business and assumption and assignment of the Assigned Contracts has been afforded to all interested persons and entities, including: (i) the U.S. Trustee, (ii) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, (iii) counsel to the Purchaser, (iv) Wilmington Trust FSB, as successor trustee under the prepetition senior unsecured floating rate note, 5.875% senior unsecured note, and 6.300% senior unsecured note indentures, (v) counsel to the Committee, and (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b), and (vii) all parties to any agreements sought to be assumed and assigned pursuant to the Purchase Agreement.

E. Although the parties have agreed under the terms of the Purchase Agreement to obtain certain additional consents or approvals, as conditions to the closing of the Sale of the REEG Business, the Court makes no finding as to whether any of these additional consents or approvals are necessary for approval and authorization of the Sale by the Court. Neither the execution of the Purchase Agreement nor the consummation of the Sale of the REEG Business, in accordance with the terms of the Purchase Agreement, shall constitute a violation of

RLF1 3527691v.1

any provision of the organizational documents of CILP or any other instrument, law, regulation, or ordinance by which CILP is bound.

F.  Upon entry of this Sale Order, CILP shall have full power and authority to consummate the Sale and all related transactions contemplated by the Purchase Agreement. The Purchase Agreement and the Sale have been duly and validly authorized by all necessary action of CILP and no shareholder vote, board resolution, or other corporate action is required of CILP for CILP to consummate such Sale.

G.  This Sale Order and consummation of the Sale are supported by good business reasons and will serve the best interests of CILP, its estate, and creditors by maximizing the value received for the REEG Business.

H.  The Purchase Agreement was negotiated, proposed, and entered into by Purchaser without collusion, in good faith, and from an arms'-length bargaining position. There is no relationship between affiliates of Purchaser and the Sellers. The Sellers and Purchaser have not engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.

I.  Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such is entitled to all of the protections afforded thereby, and otherwise has acted in good faith in all respects in connection with this proceeding, in that: (i) Purchaser recognized that the Sellers were free to deal with other parties interested in acquiring the Sellers' REEG Business; (ii) Purchaser agreed to provisions in the Purchase Agreement which would enable the Sellers to accept a higher and better offer for the REEG Business; (iii) Purchaser in no way induced or caused the chapter 11 filing of CILP; (iv) all payments to be made by Purchaser and other agreements entered into by Purchaser in connection with the Sale have been disclosed;

(v) the negotiation and execution of the Purchase Agreement and related agreements was in good faith and an arms'-length transaction; and (vi) the disclosure requirements required by Local Rule 6004-1 have been satisfied.

J.  The consideration to be paid by Purchaser to Sellers for the REEG Business pursuant to the Purchase Agreement (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the REEG Business; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act or any similar laws of any state or jurisdiction whose law is applicable to the Sale.

K.  The consummation of the Sale pursuant to the Purchase Agreement will be a legal, valid, and effective sale of the REEG Business to Purchaser and will vest Purchaser with all right, title, and interest in and to CILP's portion of the REEG Business, free and clear of all Liens in accordance with section 363(f) of the Bankruptcy Code, because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

L.  All parties with Liens against the REEG Business, if any, who did not object to the Motion and the relief requested therein, or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against Purchaser, its affiliates, or any agent of the foregoing to recover any claim which such person or entity has solely against CILP or any of its affiliates. All other objections to the Sale of the REEG Business are overruled. Failure to sell CILP's portion of the REEG Business free and clear of Liens would be substantially less beneficial to CILP's estate.

M.  All objections thereto having been resolved, other than for amounts escrowed by the Debtors for unresolved Claimed Cure Amounts, the amounts set forth on Exhibit A to the Notice of Assumption and Assignment, dated as of [DATE] (the "Cure Amounts") are deemed the necessary amounts to "cure" all "defaults" under section 365(b) of the Bankruptcy Code.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.  The Motion is granted in all respects, other than with respect to matters already addressed by the Bidding Procedures Order.

2.  Pursuant to sections 363(b), (f) and 365 of the Bankruptcy Code, the Sellers' sale, conveyance, and assignment of the REEG Business, including the assumption and assignment of the Assigned Contracts by the Sellers to Purchaser, and all related transactions, pursuant to the Purchase Agreement is approved, and CILP is authorized to assume the Purchase Agreement and all agreements contemplated thereunder, and execute any and all documents and take all actions necessary and appropriate to effectuate and consummate the Sale in consideration of the purchase price specified therein, including assigning and transferring to Purchaser all of CILP's right, title, and interest in and to all of CILP's tangible and intangible property included as part of the REEG Business except as otherwise explicitly provided by the Purchase Agreement.

3.  The transfer of the REEG Business by the Sellers to Purchaser is a legal, valid, and effective transfer and shall vest Purchaser with all right, title, and interest in CILP's portion of the REEG Business pursuant to section 363(f) of the Bankruptcy Code, free and clear of any and all Liens (including but not limited to any and all "claims" as defined in section 101(5) of the Bankruptcy Code) and any and all rights and claims under any bulk transfer

statutes and related laws, whether arising by agreement, statute, or otherwise and whether arising before or after the commencement of these chapter 11 cases, whether known or unknown, including Liens of any of the creditors, vendors, employers, suppliers, or lessors of CILP or any other third party. Any and all such Liens shall attach to the net proceeds of the Sale, with the same priority, validity, force, and effect as they now have against the assets comprising the REEG Business.

4. The Sale pursuant to this Sale Order shall be binding upon CILP, Purchaser, all creditors, members, and owners of CILP, all persons having or asserting a Lien against CILP or the REEG Business, and all parties to any actions or proceedings that directly or indirectly contest the power or authority of CILP to sell, assign, and convey the REEG Business or that seek to enjoin any such sale, assignment, or conveyance.

5. Any party having the right to consent to the assumption or assignment of the Assigned Contracts that has failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment, as required by section 365(c) of the Bankruptcy Code. In addition, adequate assurance of future performance has been demonstrated by or on behalf of Purchaser with respect to the Assigned Contracts.

6. There shall be no rent accelerations, assignment fees, increases, or any other fees charged to CILP or its affiliates or designees as a result of the assumption or assignment by CILP to Purchaser of the Assigned Contracts, and the validity of such assumption or assignment shall not be affected by any dispute between CILP or its respective affiliates and any counterparty to any Assigned Contract, and the Assigned Contracts, upon assignment to Purchaser, shall be deemed valid and binding and in full force and effect in accordance with their terms.

7. Without limiting the generality of the provisions of the Purchase Agreement or other provisions of this Sale Order, Purchaser shall not be deemed to have assumed any liability under, or otherwise be deemed liable in any manner whatsoever with respect to, any contract or lease of CILP that is not explicitly designated as an Assigned Contract or an Assumed Liability, or any other obligation, absent Purchaser's written agreement as to the subsequent inclusion of any specifically identified contract or lease as an Assigned Contract or an Assumed Liability and the satisfaction of the requirements of section 365 of the Bankruptcy Code with respect to any such contract or lease.

8. The contemplated Sale has been undertaken by Purchaser and the Sellers at arms'-length, without collusion, and Purchaser shall acquire the REEG Business pursuant to the Purchase Agreement in good faith, under section 363(m) of the Bankruptcy Code, and is, and shall be entitled to all of the protections in accordance therewith. The consideration provided by Purchaser for the REEG Business under the Purchase Agreement is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

9. This Sale Order and all provisions of the Purchase Agreement shall be binding upon any successors and assigns of the Sellers, including, without limitation, any trustee appointed for any Seller in its chapter 11 case or in any superseding proceeding under chapter 7 of the Bankruptcy Code.

10. Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases shall conflict with or derogate the provisions of the Purchase Agreement, to the extent modified by this Sale Order.

11. The Purchase Agreement may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties and in accordance with the terms thereof,

without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on CILP or its estate.

12. From and after the date hereof, the Sellers shall act in accordance with the terms of the Purchase Agreement and each Seller, to the extent it already has not done so, shall execute the Purchase Agreement at or prior to Closing.

13. To the extent any inconsistency exists between the provisions of the Purchase Agreement and this Sale Order, the provisions contained herein shall govern. The failure specifically to include any provisions of the Purchase Agreement in this Sale Order does not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

14. Without limiting in any manner the effect of the other provisions of this Sale Order, any person or entity that has filed financing statements, mortgages, mechanics' liens, *lis pendens*, or other documents evidencing or otherwise asserting a Lien against the REEG Business shall be, and hereby is, directed to deliver to CILP prior to Closing, in proper form for filing after Closing, and executed by the appropriate parties, termination statements, instruments of satisfaction, mortgage or deed of trust releases, or similar instruments as appropriate to cause the release of any such Lien, and in the event any such person or entity fails to comply with the direction set forth in this paragraph, then, at the option of Purchaser, Purchaser either may seek to have such person or entity held in contempt of this Court or shall be hereby authorized, without the requirement of any further action (including Order of this Court) either to execute and file or record such statements, instruments, releases, and other documents on behalf of such person or entity releasing such asserted Lien in, to, or against the REEG Business or to file,

register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the termination or release of any such Lien in, to, or against the REEG Business.

15. Consistent with, but not in limitation of the foregoing, each and every federal, state, and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

16. All persons or entities in possession of some or all of the assets comprising the REEG Business on the Closing are hereby directed to surrender possession of those assets to Purchaser at Closing.

17. Without limiting the generality of the other provisions of this Sale Order, and to the extent provided by federal law, Purchaser, under no circumstances, shall be deemed to be a successor of the Sellers (and Purchaser expressly has disclaimed any such liability with respect to the Sellers). Accordingly, Purchaser shall have no successor or vicarious liabilities of any kind with respect to the REEG Business, and all persons and entities shall be hereby enjoined from asserting any such claims against Purchaser. Purchaser and its affiliates shall have no liability of whatever nature or kind for (a) any potential responsibility or liability to any Seller, or any other person, for Excluded Liabilities, and (b) any potential liability for a claim that the transactions contemplated by the Purchase Agreement constitute a fraudulent conveyance, fraudulent transfer, or similar claim.

18. The Court shall retain exclusive jurisdiction to interpret, construe, and enforce the provisions of the Purchase Agreement and this Sale Order in all respects, and further, to hear and determine any and all disputes between CILP and/or Purchaser, as the case may be, and any non-debtor party to, among other things, any Assigned Contracts, concerning, *inter alia*, assignment thereof by the pertinent Debtor to Purchaser under the Purchase Agreement and any

dispute between Purchaser and any Debtor as to their respective obligations with respect to any asset, liability, or claim arising hereunder.

19. The automatic stay of section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the Purchase Agreement, including, without limitation, with respect to any cash held in escrow pursuant to the provisions thereof.

20. This Sale Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(g), 6006(d), 7062, or otherwise.

Dated: _____, 2010
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

12

RLF1 3527691v.1