

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                              :
*In re*                                       :   Chapter 11
                                              :
CAPMARK FINANCIAL GROUP INC., *et al.*,       :   Case No. 09-13684 (CSS)
                                              :
       Debtors.                               :   Jointly Administered
                                              :
                                              :   Re: Docket No. 787
---------------------------------------------------------------x

## ORDER (a) SCHEDULING AN AUCTION SALE; (b) APPROVING BIDDING PROCEDURES; (c) APPROVING EXPENSE REIMBURSEMENT AND BREAK-UP FEE; (d) SCHEDULING THE SALE HEARING; (e) ESTABLISHING OBJECTION DEADLINE; AND (f) APPROVING FORM/MANNER OF NOTICE OF AUCTION AND SALE AND NOTICE OF ASSUMPTION AND ASSIGNMENT

Upon the motion (the "Motion")[1] of Capmark Financial Group, Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"),[2] pursuant to sections 105(a), 363, and 365 of title 11, United States Code (the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such term in the Motion.

[2] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), and Capmark Investments LP (7999). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania,

"Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules") requesting the following relief from this Court:

(I) entry of an order (the "Bidding Procedures Order"):

(i) scheduling a hearing (the "Sale Hearing") to consider approval of the proposed sale (the "Sale") by Debtors CFGI and Capmark Finance Inc. ("CFI," and together with CFGI, the "Debtor-Sellers," and collectively with nondebtor Capmark México Holding, S. de R.L. de C.V. ("Capmark Mexico"), the "Sellers"), of that portion of the Sellers' assets (the "Transferred Interests") that comprise substantially all of the Debtor-Sellers' remaining investments in the Mexican market (the "Debtor-Sellers' Transferred Interests") to (a) TESEFA, S.A. de C.V. (the "Buyer") under that certain purchase agreement (the "Sale Agreement"), dated February 4, 2010, among the Sellers, the Buyer, Promecap S.A. de C.V. ("Promecap"), Odisea Asset Management, LLC ("Odisea") and Zéndere Holding S.A.P.I. de C.V. ("Zéndere" and, together with Odisea and Promecap, the "Guarantors"), attached to the Motion as Exhibit C, or (b) another Successful Bidder or Successful Bidders (as defined below);

(ii) establishing the objection deadline in connection with the proposed Sale;

(iii) approving the form of, and notice procedures relating to, the (a) Notice of Auction and Sale (as defined below), and (b) Notice of Assumption and Assignment (as defined below);

(iv) scheduling an auction ("Auction") to the extent the Debtor-Sellers receive additional higher or better offers for the Debtor-Sellers' Transferred Interests;

(v) approving bidding procedures (the "Bidding Procedures"), as set forth herein; and

(vi) approving the expense reimbursement (the "Expense Reimbursement") and the break-up fee (the "Break-Up Fee") provided for in the Sale Agreement;

(II) upon completion of the Sale Hearing, entry of an order (the "Sale Order"), among other things:

(i) if no higher and/or otherwise better offers have been received, approving the Debtor-Sellers' entry into the Sale Agreement without the necessity of conducting an Auction; or

(ii) if a higher or better offer is received for some (to the extent permitted) or all of the Debtor-Sellers' Transferred Interests, and therefore, an Auction is held,

---

19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

2

authorizing the Sale of the Debtor-Sellers' Transferred Interests to the Buyer, or to another Successful Bidder or Successful Bidders at an Auction, free and clear of any and all liens, encumbrances, claims, and interests of any kind, nature or description (collectively, the "Liens") pursuant to section 363(f) of the Bankruptcy Code (as defined below), pursuant to the Sale Agreement, or a Modified Sale Agreement (as defined below);

and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (ii) counsel to the Buyer, (iii) Wilmington Trust FSB, as successor trustee under the prepetition 6.300% senior unsecured note, unsecured floating rate note and 5.875% senior unsecured note indentures, (iv) counsel to the statutory committee of unsecured creditors (the "Committee"), and (v) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b), and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

A.  The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  Good and sufficient notice of the Motion has been given under the circumstances, and no further or other notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons.

C.  The Debtors' notice of the Auction and Sale (the "Notice of Auction and Sale"), annexed hereto as Schedule A-1, is appropriate and reasonably calculated to provide

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

3

interested parties with timely and proper notice of the Auction and Sale and related deadlines, and no other or further notice is required.

D. The Debtors' notice of the assumption and assignment of the Assigned Contracts (the "Notice of Assumption and Assignment"), annexed hereto as Schedule A-2, is appropriate and reasonably calculated to provide interested parties with timely and proper notice of the assumption and assignment of the Assigned Contracts and related deadlines, and no other or further notice is required.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion is granted to the extent described herein.

2. The Bidding Procedures, as set forth below, are approved and shall apply with respect to the proposed sale of the Transferred Interests (the Debtors may modify, amend and waive, as applicable, the Bidding Procedures in their sole discretion after consultation with the Committee, except the Debtors may not modify, amend or waive the Bidding Procedures to provide that a Qualifying Bid can be made for less than the Core Interests or in a manner that modifies the Break-Up Fee or Expense Reimbursement without the consent of the Buyer):

(A) **Assets to Be Sold**: The Auction shall consist of the Transferred Interests.

(B) **Confidentiality Agreements**: Upon execution of a confidentiality agreement, in form and substance satisfactory to the Debtor-Sellers, any party that wishes to conduct due diligence in respect of the Transferred Interests may be granted access to all material information that has been or will be provided to the Buyer and other bidders; *provided, however*, prior to receipt by a party of any information from the Debtor-Sellers (including, but not limited to, the Sale Agreement and its schedules and exhibits, business and financial information and access to representatives of all the Sellers), each such party will be required to deliver evidence reasonably satisfactory to Debtor-Sellers establishing such party's financial capability to timely consummate a purchase of all of the Transferred Interests.

(C) **Bid Deadline**: Any person or entity interested in participating in the Auction must submit a Qualifying Bid (as defined below) on or before March 22, 2010 at 2:00 p.m. (prevailing Eastern Time) (the "Bid Deadline") in writing, to (1)

4

counsel to the Debtor-Sellers, Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York, 10019, Attention: Michael P. Kessler, Esq. and Judy G.Z. Liu, Esq., (2) Capmark Financial Group Inc., 116 Welsh Road, Horsham, Pennsylvania, 19044, Attention: Thomas L. Fairfield, Esq., and (3) counsel to the Committee, Kramer Levin Naftalis and Frankel, LLP, Attention: Thomas Moers Mayer, Esq. and Amy Caton, Esq., 1177 Avenue of the Americas, New York, New York, 10036. The Bid Deadline may be extended or otherwise modified by the Debtors in their sole discretion after consultation with the Committee.

(D) **Qualifying Bids**: Only Qualified Bidders (as defined below) may participate in the bidding process. In order to be deemed a "Qualifying Bidder" each potential bidder (other than the Buyer) must submit a "Qualifying Bid" by the Bid Deadline. The Sale Agreement is deemed a Qualifying Bid and Buyer is deemed a Qualifying Bidder. Otherwise, to constitute a Qualifying Bid, a bid must:

  i. be in writing and state that such bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of all the Transferred Interests on terms and conditions no less favorable to the Sellers than the terms and conditions contained in the Sale Agreement; *provided*, the Debtors, after consultation with the Committee, may accept bids for less than all of the Transferred Interests provided such bids (a) are submitted in writing, (b) state that such bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of no less than the Core Interests (as defined in the Sale Agreement) on terms and conditions no less favorable to the Sellers than the terms and conditions contained in the Sale Agreement, and (c) state that such bidder is prepared to acquire the Transferred Interests included in its bid that are not Core Interests in the event such bidder is not the Successful Bidder for the Core Interests at the Auction;

  ii. include a mark-up of the Sale Agreement (the "Modified Sale Agreement") reflecting the variations from the Sale Agreement, and a clean and executed Modified Sale Agreement;

  iii. otherwise include terms and conditions substantially the same in all respects to Sale Agreement (including with respect to the representations and warranties);

  iv. provide that such bidder's offer is irrevocable until the closing of the purchase of the Transferred Interests if such bidder is a Successful Bidder or a Back-Up Bidder (each as defined below);

  v. provide that such bidder will close on the sale of the Transferred Interests comprising its bid within the same time period provided for in the Sale Agreement;

vi. provide that such bidder acknowledges and agrees that it will not be entitled to purchase any Transferred Interest for which the necessary consents or waivers cannot be obtained by such bidder or with respect to which a third party with a right of first refusal exercises such right, and that the purchase price shall be reduced by the purchase price allocated to any Transferred Interest that cannot be transferred because the necessary consents and waivers cannot be obtained by such bidder or with respect to which such third party has exercised its right of first refusal;

vii. provide that such bidder agrees and recognizes that the sale of Transferred Interests by nondebtor Seller Capmark Mexico shall be governed by the same bidding procedures and requirements set forth in this Order;

viii. provide for the immediate payment of the Expense Reimbursement and the Break-Up Fee to Buyer upon consummation of a sale or sales of the Transferred Interests out of the proceeds of an Alternative Transaction in accordance with the Sale Agreement;

ix. represent that the bidder is a Qualified Transferee (under and as defined in each of the Shareholder Agreements set forth on Exhibit A of the Sale Agreement);

x. exceed the Purchase Price in the Sale Agreement by an initial bid of MXN $6,740,000 (USD $514,896.87)[4] plus the amount of the Expense Reimbursement and the Break-Up Fee (assuming a sale of all of the Transferred Interests and out of pocket expenses of the Buyer in the amount of USD $100,000), which bid must be separately allocated among each of the Transferred Interests in proportion to the allocations set forth on Exhibit B to the Sale Agreement;

xi. to the extent not previously provided during the bidding process, include such financial and other information, including audited financial statements, that will allow the Sellers to make a reasonable determination as to the bidder's financial wherewithal and other capabilities to consummate the transactions contemplated by the Modified Sale Agreement;

xii. not request or entitle the bidder to any transaction or break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement;

xiii. not contain any due diligence or financing contingencies of any kind or any conditions precedent to such bidder's obligation to purchase the Transferred Interests other than conditions set forth in the Sale Agreement;

---

[4] All U.S. dollar equivalents set forth in this Order were calculated using exchange rates as of February 4, 2010. Bids must be submitted in Mexican pesos and the Auction will be conducted in Mexican pesos, using the Mexican peso amounts stated herein.

|      |                                                                                                                                                                                                                                                                      |
|------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| xiv. | include the names and contact information of members of the bidder who will be available to answer questions regarding the offer;                                                                                                                                    |
| xv.  | include the names of external advisors to the bidder, including financial, legal and accounting firms, as well as industry consultants or other resources;                                                                                                           |
| xvi. | include any other information or factors that may be relevant to the Sellers and their advisors in consideration of the bid; and                                                                                                                                     |
| xvii.| include a cash deposit in United States Dollars by wire transfer equal to ten percent (10%) of the amount offered to purchase the Transferred Interests (the "Good Faith Deposit").                                                                                  |

The Debtors shall make a determination regarding whether a bid is a Qualifying Bid, after consultation with the Committee, and shall notify bidders as to whether their bids have been determined to be Qualifying Bids by no later than March 26, 2010 at 10:00 a.m. (prevailing Eastern Time).

(E) **No Qualifying Bids**: If no timely, conforming Qualifying Bids, other than the Sale Agreement, are submitted by the Bid Deadline, the Debtors shall not hold an Auction and, instead, shall request at the Sale Hearing that the Court approve the Sale Agreement with the Buyer.

(F) **Right to Disseminate Information Relating to Bids**: At any time, whether before or after the Auction, the Sellers may share or not share, after consultation with the Committee, the details of any bid for the Transferred Interests with the other bidders.

(G) **Auction**: In the event the Sellers timely receive one or more Qualifying Bids other than the Sale Agreement, the Sellers shall conduct the Auction with respect to the Transferred Interests. The Auction will be conducted at the offices of Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York, 10019, on March 26, 2010 at 11 a.m. (prevailing Eastern Time), or such other location as designated by the Debtors in a notice to all Qualifying Bidders. The Auction shall be governed by the following procedures (which may be amended, modified and waived, as applicable, by the Debtors at any time in their sole discretion after consultation with the Committee):

(i) The Buyer and the Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

(ii) Only representatives of the Debtors, the Buyer, Qualifying Bidders, counsel and other advisors selected by the Committee, and representatives from the Office of the United States Trustee, shall be entitled to be present at the Auction;

7

(iii) The Auction process shall be transcribed by a qualified court reporter, unless otherwise provided herein;

(iv) Only the Buyer and Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

(v) Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

(vi) Bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction and such Bid shall be announced prior to the start of the Auction (the "Initial Highest Bid");

(vii) Qualifying Bidders may submit subsequent bids to the Initial Highest Bid and all such subsequent bids must be stated in an amount exceeding each prior bid by MXN $3,370,000 (USD $257,448.43) in purchase price consideration;

(viii) Each successive bid after the Initial Highest Bid must be separately allocated among each of the Transferred Interests as set forth on Exhibit B to the Sale Agreement;

(ix) The Sellers may determine, in consultation with the Committee, the order in which Qualifying Bids will be submitted and may modify the ordering of the Qualifying Bids at any time;

(x) The Sellers may consider, in consultation with the Committee, Qualifying Bids for substantially all of the Transferred Assets or for individual or groups of Transferred Assets; *provided*, for the avoidance of doubt, the Sellers' right to consider bids for one or any group of the Transferred Assets does not alter the requirement that a Qualifying Bid be submitted for no less than the Core Interests;

(xi) The Sellers may require, in consultation with the Committee, that bids subsequent to the Initial Highest Bid be submitted for all the Transferred Interests or for individual or groups of Transferred Interests and may require that subsequent bids allocate purchase price increases for all of the Transferred Interests or individually for each Transferred Interest; provided, for the avoidance of doubt, the Sellers' right to consider bids for one or any group of the Transferred Interests is subject to the requirement that a Qualifying Bid be submitted for no less than the Core Interests;

(xii) All Qualifying Bidders and the Buyer shall be able to submit additional bids and make additional modifications to the Sale Agreement or Modified Sale Agreement, as applicable, at the Auction as determined by the Sellers at any time after consultation with the Committee;

(xiii) The Auction may include individual negotiations with the Qualifying Bidders and the Buyer and/or open bidding in the presence of all other Qualifying Bidders and the Buyer;

(xiv) Consistent with the conduct of the Auction in subsection (xiii) above, the Sellers may determine, after consulting with the Committee, which portions of the Auction shall be transcribed on the record and which shall not be transcribed;

(xv) The Sellers may, after consulting with the Committee, discuss any Qualifying Bid with other Qualifying Bidders individually or together in any other group or groups of Qualifying Bidders, as determined by the Sellers;

(xvi) The Auction shall continue until there is only one or more offers that the Sellers determine, after consultation with the Committee and subject to Court approval with respect to the Debtor-Sellers' Transferred Interests, is or are the highest and/or otherwise best offer or offers from among the Qualifying Bidders and the Buyer submitted at the Auction (the "Successful Bid" or "Successful Bids"). In making this decision, the Debtors may consider any factors they deem relevant, including, without limitation, the amount of the purchase price, the Transferred Interests to be acquired, the form of consideration being offered, the likelihood of a Qualifying Bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the Sale Agreement requested by each Qualifying Bidder, any contingencies relating to a Qualifying Bidder's offer and the net benefit to the Debtors' estates. The Buyer or the Qualifying Bidder and/or Qualifying Bidders submitting such Successful Bid and/or Successful Bids shall become the "Successful Bidder" and/or the "Successful Bidders" and shall have such rights and responsibilities of a purchaser, as set forth in the applicable Sale Agreement, Modified Sale Agreement or Modified Sale Agreements; and

(xvii) Within three (3) days after conclusion of the Auction, but prior to the Sale Hearing, the Successful Bidder or Successful Bidders shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid or Successful Bids was and/or were made and make and pay for all necessary filings with all applicable governmental or other authorities. Bids made after the close of the Auction shall not be considered by the Sellers.

(H) **Back-Up Bidder or Bidders and Return of Good Faith Deposits**:

(i) If an Auction is conducted where the Debtors do not permit separate bids for the individual Transferred Interests and one Qualifying Bidder submits the highest and/or otherwise best Qualifying Bid for all of the Transferred

9

Interests, the Qualifying Bidder with the next highest and/or otherwise best Qualifying Bid for all of the Transferred Interests, as determined by the Sellers in the exercise of their business judgment in consultation with the Committee, at the Auction shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until the earlier of (a) 24 hours after the closing of the Sale transaction with the Successful Bidder or (b) any outside closing date or termination date in the Sale Agreement or Modified Sale Agreement. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Court.

(ii) If an Auction is conducted where the Debtors permit separate bids for the individual Transferred Interests as permitted herein and multiple Qualifying Bidders separately submit the highest and/or otherwise best Qualifying Bids for individual Transferred Interests as provided herein, the Qualifying Bidder with the next highest and/or otherwise best Qualifying Bid for a particular Transferred Interest, as determined by the Sellers in the exercise of their business judgment in consultation with the Committee, at the Auction shall be required to serve as a back-up bidder (where more than one Back-Up Bidder exists, the "Back-Up Bidders") and keep such bid open and irrevocable until the earlier of (a) 24 hours after the closing of the Sale transaction with the Successful Bidder or (b) any outside closing date or termination date in the Sale Agreement or Modified Sale Agreement. Following the Sale Hearing, if a Successful Bidder fails to consummate an approved sale for the Transferred Interest because of a breach or failure to perform on the part of such Successful Bidder, the related Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the Sale of the related Transferred Interest with the applicable Back-Up Bidder without further order of the Court.

(iii) Except as otherwise provided herein, Good Faith Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Successful Bidders or the Back-Up Bidder or Back-Up Bidders by no later than the fifth (5th) Business Day following the conclusion of the Auction. Each Good Faith Deposit of a Back-Up Bidder shall be held by the Debtors until the earlier of (a) one (1) Business Day after the closing of the Sale transaction with the related Successful Bidder for the Transferred Interest or Transferred Interests or (b) the date of any termination of the Sale Agreement or Modified Sale Agreement of the Back-Up Bidder.

3. The Expense Reimbursement and the Break-Up Fee are approved. The Debtor-Sellers are hereby authorized and directed to pay in cash the Expense Reimbursement and the pro rata portion of the Break-Up Fee attributable to each Debtor-Seller's Transferred Interests that are sold to another bidder or bidders in accordance with the terms of the Sale Agreement and out of the proceeds of any Alternative Transaction or Alternative Transactions. The Debtor-Sellers are also hereby authorized and directed to pay the Expense Reimbursement as otherwise provided in the Sale Agreement if the Sellers do not consummate the Sale pursuant to the Sale Agreement or pursuant to an Alternative Transaction or Alternative Transactions. The Expense Reimbursement and the Break-Up Fee shall constitute administrative expense claims in the Debtor-Sellers' chapter 11 cases pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code. In no event shall the Expense Reimbursement be payable if these chapter 11 cases are coverted to chapter 7 cases prior to the Expense Reimbursement becoming due and payable. Similarly, in no event shall the portion of the Break-Up Fee attributable to the Debtor-Sellers' Transferred Interests be payable if these chapter 11 cases are converted to chapter 7 cases prior to the Break-Up Fee becoming due and payable.

4. The form and manner of providing the Notice of Auction and Sale is hereby approved. Service of the Notice of Auction and Sale, as set forth below, constitutes sufficient notice of the Auction and Sale Hearing.

5. The Court shall hold the Sale Hearing on ~~April 1, 2010 at 10:00 a~~.m. [handwritten: April 5, 2010 at 3:00 p.m.] (prevailing Eastern Time), at which time the Court will consider approval of the Sale of the Transferred Interests, including the Debtors' assumption and assignment of the Assigned Contracts to the Buyer or the Successful Bidder.

11

6. Any objection (an "Objection") to the Sale of the Debtor-Sellers' Transferred Interests, the assumption and assignment of any Assigned Contracts, or the Cure Amounts must be filed and served so as to be actually received on or before March 25, 2010 at 4:00 p.m. (prevailing Eastern Time) by (a) counsel for the Debtors, Dewey & LeBoeuf LLP, Attention: Michael P. Kessler, Esq. and Judy G.Z. Liu, Esq., 1301 Avenue of the Americas, New York, New York, 10019; (b) local counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware, 19801, Attention: Mark D. Collins, Esq.; (c) counsel for the Buyer, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York, 10019, Attention: Brian S. Hermann, Esq. and Julie M. D'Ambruoso, Esq.; (d) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801; (e) counsel for the Committee, Kramer Levin Naftalis & Frankel LLP, Attention: Thomas Moers Mayer, Esq., and Amy Caton, Esq., 1177 Avenue of the Americas, New York, New York, 10036; (f) the successor indenture trustee under the Debtors' prepetition floating rate, 6.300%, and 5.875% senior unsecured note indentures, Wilmington Trust FSB, 166 Mercer Street, Suite 2-R, New York, New York, 10012-3249, Attention: Adam Berman; and (g) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).

7. The notices described in the subparagraphs below (collectively, the "Notices") shall be sufficient and no further notice shall be required if given as follows:

(a) The Debtors (or their agent) shall serve, within five (5) business days after entry of the Bidding Procedures Order (the "Mailing Deadline"), by overnight courier, electronic mail, or same-day messenger delivery, and copies of the Notice of Auction and Sale, substantially in the form attached hereto as Schedule A-1, upon: (i) the U.S. Trustee, (ii) attorneys for the Committee, (iii) attorneys for Buyer, (iv) any party who, in the past twelve (12) months, expressed in writing to the Debtors an interest in acquiring the Transferred Interests, and who the Debtors and their

representatives reasonably and in good faith determine potentially have the desire and financial wherewithal to effectuate the Sale, (v) all parties who are known to possess or assert a secured claim against the Transferred Interests, (vi) all parties who hold a right to consent to the transfer or sale of the Transferred Interests (including parties who hold a right of first refusal for any sale or transfer of the Transferred Interests), (vii) all applicable state attorneys general, local realty enforcement agencies, and local regulatory authorities, and (viii) any parties entitled to notice under Bankruptcy Rule 2002 and Rule 2002-1(b) of the Local Rules for the United States Bankruptcy Court District of Delaware.

(b) On or before the Mailing Deadline, the Debtors (or their agent) shall serve, by overnight courier, electronic mail, or same-day messenger delivery, the Notice of Assumption and Assignment (the "Notice of Assumption and Assignment"), substantially in the form attached hereto as Schedule A-2, upon all known nondebtor parties to the Assigned Contracts. The Notice of Assumption and Assignment shall set forth (i) the intent of the Debtors to assume the Assigned Contracts and assign them to Buyer or the Successful Bidder, as applicable and (ii) applicable cure amounts (the "Cure Amounts"), if any. The Notice of Assumption and Assignment shall identify the Assigned Contracts and the Cure Amounts that the Debtors believe must be paid to cure all defaults under the Assigned Contracts. If no amount is listed on the Notice of Assumption and Assignment, the Debtors believe there is no Cure Amount due.

(c) On or before the Mailing Deadline, or as soon as practicable thereafter, the Debtors will publicize the Notice of Auction and Sale in the Wall Street Journal (National Edition) and Reforma, the Mexican Newspaper associated with the Wall Street Journal (South American Edition) for two (2) consecutive business days.

8. Any objections to (i) the assumption and assignment of an Assigned Contract, or (ii) the amount asserted as the Cure Amount (each, an "Objection") must be in writing and set forth with specificity the nature of the objection and the cure amount the objecting party believes should be paid in connection with the assumption of the Assigned Contract (the "Claimed Cure Amount"). If an Objection is timely filed, the hearing with respect to the Objection shall be held at the Sale Hearing.

9. If an Objection challenges a Cure Amount, the Objection must set forth the Claimed Cure Amount with appropriate documentation in support thereof. Upon receipt of

an Objection to a Cure Amount, the Debtors may, in their sole discretion, hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the applicable Debtor and the objecting party. So long as the Debtors hold the Claimed Cure Amount in reserve and otherwise satisfy the requirements for assumption under section 365 of the Bankruptcy Code, the applicable Debtor-Seller may, without further delay, assume and assign the Assigned Contract that is the subject of an Objection relating to that Assigned Contract's Cure Amount.

10. If no Objection to the Cure Amount or the proposed assumption and assignment of an Assigned Contract is timely filed and served, the applicable Debtor may assume and assign the Assigned Contract to the Buyer or the Successful Bidder, and the Cure Amount set forth in the Notice of Assumption and Assignment shall be binding upon the respective nondebtor party to the Assigned Contract for all purposes in such Debtor's chapter 11 case and otherwise. The respective nondebtor party shall be forever barred from objecting to the assumption and assignment of the relevant Assigned Contract and the Cure Amount, including, without limitation, the right to assert any condition to assignment and/or additional cure or other amount with respect to their respective Assigned Contracts.

11. Failure of any objecting person or entity to timely file its Objection shall be an absolute bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion or the Debtors' assumption and assignment of any of the Assigned Contracts, or the consummation and performance of the Sale (including the transfer free and clear of all Liens).

12. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Bidding Procedures Order. Each of the Debtors is hereby authorized and empowered to take such steps, expend such sums of money, and do such

other things as may be necessary to implement and effect the terms and requirements of this Bidding Procedures Order.

13. Notwithstanding any other provision contained herein, the Debtors, after consultation with the Committee, may adjourn or cancel the Auction or Sale at any time as an exercise of their sound business judgment.

14. Notwithstanding any potential applicability of Bankruptcy Rule 6004(h) or other Rule, this Bidding Procedures Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable upon signature hereof.

Dated: February 19, 2010
Wilmington, Delaware

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE