UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re* | : | |
| | : | Chapter 11 |
| CAPMARK FINANCIAL GROUP, INC., *et al.*,[1] | : | Case Number 09-13684 (CSS) (Jointly Administered) |
| Debtors. | : | |

Hearing Date: March 4, 2010 at 10:00 A.M.

**OBJECTION OF THE UNITED STATES TRUSTEE TO (I) THE MOTION, PURSUANT TO SECTIONS 105(a), 363(b), 363(c), AND 503(c) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2002, 6004 AND 9014, AND LOCAL RULES 2002-1 AND 6004-1, REQUESTING ENTRY OF AN ORDER APPROVING DEBTORS' PERFORMANCE INCENTIVE PLAN FOR INSIDER EMPLOYEES AND (II) THE RELATED MOTION TO FILE THE PERFORMANCE INCENTIVE PLAN UNDER SEAL
(DOCKET ENTRY #s 809, 810)**

In support of her objection to (i) the Debtors' motion for an order, pursuant to sections 105(a), 363(b), 363(c) and 503(c) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014,

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), and Capmark Investments, LP (7999). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

and Local Rules 2002-1 and 6004-1, requesting entry of an order approving the Debtors' performance incentive plan for insider employees (the "PIP Motion") and (ii) the related motion to file the performance incentive plan under seal (the "Seal Motion") (together with the PIP Motion, the "Motions"), Roberta A. DeAngelis, Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through her counsel, avers:

## INTRODUCTION

1. Under (i) 28 U.S.C. § 1334, (ii) (an) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a) and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motions.

2. Under 28 U.S.C. § 586, the U.S. Trustee has an overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motions and the issues raised in this response/objection.

## GROUNDS/BASIS FOR OBJECTION TO PIP MOTION

4. 11 U.S.C. § 503(c)(1, 3) provide:

> Notwithstanding subsection (b) [allowing the payment of administrative expenses in certain circumstances], there shall neither be allowed, nor paid –
>
> (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to

remain with the debtor's business, absent a finding by the court based upon evidence in the record that –

    (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

    (B) the services provided by the person are essential to the survival of the business; and

    (C) either

        (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

        (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred; [or]

\*   \*   \*   \*   \*

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of filing of the petition.

5.     The Debtors propose to pay "insiders" pursuant to the performance incentive plan ("PIP"). It is the Debtors' burden, therefore, to establish that the relief requested is not prohibited by 11 U.S.C. § 503(c)(1). Courts have interpreted 11 U.S.C. § 503(c)(1) as prohibiting incentive plans with performance "targets" set at levels where they do not truly serve as targets. *See In re Dana Corp.*, 358 B.R. 567, (Bankr. S.D.N.Y. 2006) (court found that benchmarks for the debtors' long-term incentive plan "are difficult targets to reach and are clearly not 'lay-ups.'"); *In re Nobex Corp.*, No. 05-20050 (MFW), 2006 Bankr. LEXIS 417 (Bankr. D. Del. Jan. 19, 2006) (court

approved incentive plan under 11 U.S.C. § 503(c) where payments were tied exclusively to improvement upon "stalking horse" bid; "stalking horse" bid, by itself, did not vest participants with right to payment).

6. In paragraph 11 of the PIP Motion, the Debtors state that "[t]he Performance Incentive Plan provides for performance incentive payments to Insider Employees based upon their achievement of certain objective measures or milestones (the "Milestones") in these chapter 11 cases. The Milestones include the achievement of various value-creating benchmarks, such as asset sales, management of other asset dispositions, successful business transitions, implementation of cost-reduction plans, and the expeditious confirmation of a chapter 11 plan."

7. Certain of the metrics proposed under the PIP Motion are designed to retain employees (as opposed to producing desirable results). Notwithstanding the fact that Code section 503(c)(1) was designed to curb retention pay, the Debtors propose to pay bonuses which are partly based upon the mere completion of certain tasks in connection with the Debtors' liquidation. *Cf. In re Dana Corp.*, 358 B.R. 567 (Bankr. S.D.N.Y. 2006) (court found that benchmarks for the debtors' long-term incentive plan "are difficult targets to reach and are clearly not 'lay-ups.'"); *In re Nobex Corp.*, 2006 Bankr. LEXIS 417 (Bankr. D. Del. Jan. 19, 2006) (court approved incentive plan under 11 U.S.C. § 503(c) where payments were tied exclusively to improvement upon "stalking horse" bid; "stalking horse" bid, by itself, did not vest participants with right to payment).

8. In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (Apr. 20, 2005) ("BAPCPA") in order to remedy various abuses of the bankruptcy system. Prior to enactment of the BAPCPA, retention payments were frequently made in chapter 11 cases by means of KERPs. Before 11 U.S.C. § 503(c) was

4

enacted, no specific provisions of the Bankruptcy Code addressed compensation to a debtor's management. Debtors-in-possession typically requested approval of employment compensation under 11 U.S.C. §§ 363(b) and 365, and their requests for approval of management compensation proposals, including KERPs, were evaluated by bankruptcy courts under the "sound business purpose" test, which was essentially a "business judgment" rule. *See, e.g., The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (citing *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re EaglePicher Holdings, Inc.*, No. 05-12601, 2005 WL 4030132 at *6 (Bankr. S.D. Ohio Aug. 26, 2005).

9. Through the enactment of the BAPCPA, Congress responded to concerns that it was inappropriate for corporate executives to be paid excessive amounts for continued service during the bankruptcy case while labor, pensioners, trade vendors and other stakeholders shouldered the "pain" associated with the bankruptcy process. *See In re Nellson Neutraceutical, Inc.*, 369 B.R. 787, 801 (Bankr. D. Del. 2007) ("Although there is little in the way of legislative history, it is widely acknowledged that [11 U.S.C. § 503(c)] was a response to perceived abuses of the bankruptcy system by 'the executives of giant companies . . . who lined their own pockets, but left thousands of employees and retirees out in the cold.'") (quoting statement of Senator Edward Kennedy, as cited in *In re Dana Corp.*, 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2006)).

10. Section 503(c)(1) significantly alters pre-BAPCPA, management compensation practices by curtailing retention payments. The relief requested by the Debtors implicates Code section 503(c)(1), and "[i]t is axiomatic that statutory interpretation begins with the language of the statute itself." *Government of Virgin Islands v. Knight*, 989 F.2d 619, 633 (3d Cir. 1993). A

5

statutory language analysis must precede any resort to legislative history or case law as "[t]here is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 543 (1930). The statutory language is the best indicia of Congress' intent as "much less thought is spent on the future implications of committee reports and explanations on the floor than in choosing the words of a statute." *Paskel v. Heckler*, 768 F.2d 540, 543-44 (3d Cir. 1985).

11. The plain meaning of the statutory phrase "for the purpose of inducing such person to remain with the debtor's business" unambiguously prohibits payments to insiders where the payment clearly serves a retentive purpose. Section 503(c)(1)'s text does not require that bankruptcy courts hierarchically order the bankrupt corporation's reasons for making proposed payments to insiders to discern the main or "primary" purpose. Rather, the statutory language directs the bankruptcy court to determine whether the proposed payment is being made to keep the employee in place. If the proposed payment has a retentive purpose, it may not be allowed or paid unless the Debtors can demonstrate that it meets the conditions in section 503(c)(1). *See In re Dana Corp.*, 351 B.R. 96, 102 (Bankr. S.D.N.Y. 2006) (rejecting debtors' request to pay bonuses to insiders upon debtors' emergence from chapter 11 and, in doing so, employing "a familiar fowl analogy" – "if it walks like a duck (KERP) and quacks like a duck (KERP), it's a duck (KERP).").

12. "Words may be interpolated in a statute . . . 'only when the statutory language is equivocal or where literal interpretation leads to an absurdity' so gross as to shock general moral or common sense." *See Hatfried, Inc. v. Commissioner of Internal Revenue*, 162 F.2d 628, 631 (3d Cir. 1947) (internal citation omitted). Neither of those conditions is satisfied with respect to section

6

503(c)(1). There is nothing equivocal about the express language of section 503(c)(1). To the contrary, interpolation of the word "primary" as a modifier of the word "purpose" in section 503(c)(1) leads to equivocation: bankruptcy courts will be forced to divine from the record whether retention was the primary, secondary, or tertiary purpose of the proposed payments in determining whether section 503(c)(1) applies.

13. Further, the BAPCPA was enacted, in part, to remedy the abusive effects of retention pay upon the bankruptcy system. A remedial statute should be broadly construed to effectuate the remedial purpose. *See Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998); *In re Waters*, 384 B.R. 432, 441 (Bankr. N.D. W. Va. 2008) ("In construing the new provisions [of a new statute], courts should endeavor to give the statute a construction that defeats 'evasions employed to continue the mischief sought to be remedied by the statute.'") (internal citation omitted). Interpolation of the word "primary" as a modifier of "purpose" in section 503(c)(1) limits the section's applicability and, by extension, hampers the effort to protect innocent creditors and equity security holders from management's enrichment and/or entrenchment efforts via "pay to stay" strategies.

14. Finally, the text of the BAPCPA demonstrates that, when Congress wanted to use the words "primary" or "primarily" as modifiers, it expressly did so. For example, "health care business" is defined as a public or private entity . . . that is *primarily* engaged in offering to the general public [certain] facilities and services . . . ." BAPCPA § 1101(a)(2) (bracketed text and emphasis added). The term "small business debtor" in the BAPCPA excludes "a person whose *primary* activity is the business of owning or operating real property or activities incident thereto." *Id.* § 432(a) (emphasis added). Similarly, in amending certain disclosure obligations respecting open

7

end credit plans, Congress provided in the BAPCPA that the disclosure obligations did not apply to "any charge card account, the *primary* purpose of which is to require payment of charges in full each month." *Id.* § 1301(a) (emphasis added). Accordingly, in light of the appearance of the word "primary" in other sections of the BAPCPA, the absence of the word "primary" from section 503(c)(1) should not be construed as an accident. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts purposefully in the disparate inclusion or exclusion.").

15. The Debtors bear the burden of demonstrating that the PIP is justified by the facts and circumstances of these cases under Code section 503(c)(3). Here, the text of the Motion does not make the Debtors' case under that subsection. For example, in the course of reviewing the Motion, the U.S. Trustee obtained employee-by-employee detail regarding payments proposed to be made under the PIP. That data indicates that, in a number of instances, proposed payments to certain employees are inconsistent with prior compensation paid to such employees.

## GROUNDS/BASIS FOR OBJECTION TO SEAL MOTION

16. With regard to the Seal Motion, the Debtors have not demonstrated that all of the information contained in the PIP is "confidential commercial information" for purposes of 11 U.S.C. § 107(b). "Confidential . . . commercial information" is not defined in the Bankruptcy Code, so the term must "be interpreted as taking [its] ordinary, contemporary, common meaning." *See Perrin v. United States*, 444 U.S. 37, 42 (1979). "Commercial information has been defined as information that would cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *Video Software Dealers Ass'n v. Orion Pictures Corp. (In*

8

*re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (citation omitted). Accordingly, to the extent that the Debtors establish that part of the PIP should be sealed, the balance of the document should be publicly filed.

        Respectfully submitted,

        **ROBERTA A. DeANGELIS**
        **ACTING UNITED STATES TRUSTEE**

        **BY:** /s/ Joseph J. McMahon, Jr.
        Joseph J. McMahon, Jr., Esquire (# 4819)
        Trial Attorney
        United States Department of Justice
        Office of the United States Trustee
        J. Caleb Boggs Federal Building
        844 King Street, Room 2207, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491
        (302) 573-6497 (Fax)

Date: March 2, 2010