IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------x
                        :

*In re*                       :     **Chapter 11**

**CAPMARK FINANCIAL GROUP INC.,** *et al.,*  :     **Case No. 09-13684 (CSS)**

          **Debtors.**[1]        :     **Jointly Administered**

                       :     **Re: Docket Nos. 809 and 810**
-----------------------------------------------------------------x

## DECLARATION OF JEFF PRATAS VISITHPANICH
## IN SUPPORT OF MOTION, PURSUANT TO SECTIONS
## 105(a), 363(b), 363(c), AND 503(c) OF THE BANKRUPTCY CODE,
## BANKRUPTCY RULES 2002, 6004, AND 9014, AND LOCAL RULES
## 2002-1 AND 6004-1, REQUESTING ENTRY OF AN ORDER: (I) APPROVING
## DEBTORS' PERFORMANCE INCENTIVE PLAN FOR INSIDER EMPLOYEES,
## (II) CONFIRMING THAT DEBTORS' CONTINUATION OF DISCRETIONARY
## BONUS PLAN FOR NON-INSIDER EMPLOYEES IS AN ORDINARY
## COURSE TRANSACTION OR, ALTERNATIVELY, APPROVING
## THE BONUS PLAN OUTSIDE THE ORDINARY COURSE, AND
## (III) AUTHORIZING PAYMENTS UNDER SUCH PLANS

Jeff Pratas Visithpanich, pursuant to section 1746, title 28, United States Code,

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4 5 LLC (8979), Capmark Affordable Equity Inc (2381), and Capmark Investments LP (7999). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044 The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

RLF1 3544412v 1

hereby declares as follows:

1.      I am a Principal of Johnson Associates, Inc. ("Johnson"). Johnson is a boutique compensation consulting firm specializing in the financial services industry, including asset management firms, major commercial and investment banks, alternative investment firms and hedge funds, retail brokerages, and other organizations. We routinely consult on, and have a deep and current understanding of, market practices and compensation levels for major asset management firms, both inside and outside of chapter 11.

2.      Johnson has substantial experience with companies in chapter 11. For example, Johnson served as a compensation consultant in several chapter 11 cases in the District of Delaware, including *In re Aegis Mortgage Corp.*, No. 07-11119 (BLS) (Bankr. D. Del.); *In re Global Home Prods., LLC*, No. 06-10340 (KG) (Bankr. D. Del); and *In re Nellson Neutraceutical, Inc.*, No. 06-10072 (CSS) (Bankr. D. Del.).

3.      I joined Johnson in 1998, and have been a Principal of Johnson since 2005. I hold an MBA with a concentration in Financial Instruments & Markets from New York University Leonard N. Stern School of Business, and a Bachelor of Science in Industrial Engineering from Columbia University. Before joining Johnson, I was a Financial Analyst at Prudential Securities for one and a half years.

4.      As a Principal of Johnson, I have extensive experience in the compensation consulting industry. Since joining Johnson, I have helped numerous clients evaluate, design, and implement their annual and long-term compensation programs, including incentive compensation plans and regular bonus plans for chapter 11 debtors. Throughout my career at Johnson, I have been involved in a variety of consulting assignments including, but not limited to: annual incentive design, conception of compensation philosophy, competitive market

2

analyses, structuring executive employment agreements, equity program design, senior executive compensation evaluations, and total compensation reviews. I have worked extensively with a broad range of companies, both publicly and privately held, and have developed a substantial base of knowledge and understanding of compensation practices in the financial services industry. I have frequently testified in Bankruptcy Court and have been qualified as an expert witness based upon my experience in compensation consulting, in cases such as *In re Global Home Products, LLC*, No. 06-10340 (KG) (Bankr. D. Del) and *In re Nellson Neutraceutical, Inc.*, No. 06-10072 (CSS) (Bankr. D. Del.).

5. Unless otherwise stated, all facts set forth in this declaration (the "Declaration") are based upon: (a) my personal knowledge; (b) my experience as a Principal of Johnson; and (c) information provided to me by authorized representatives of Capmark Financial Group Inc., and certain of its Debtor subsidiaries, concerning the operation, compensation structure, and financial affairs of the Debtors; and (d) information provided to me by colleagues and employees working under my supervision. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of Johnson.

6. I make this Declaration in support of the *Motion, Pursuant to Sections 105(a), 363(b), 363(c), and 503(c) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rules 2002-1 and 6004-1, Requesting Entry of an Order (I) Approving Debtors' Performance Incentive Plan for Insider Employees, (II) Confirming that Debtors' Continuation of Discretionary Bonus Plan for Non-Insider Employees is an Ordinary Course Transaction or, Alternatively, Approving the Bonus Plan Outside the Ordinary Course, and (III)*

*Authorizing Payments Under Such Plans* [Docket No. 809] (the "Motion"),[2] filed on February 11, 2010.

7.　　　The Debtors retained Johnson to provide (a) an assessment of the Debtors' Performance Incentive Plan for Insider Employees and (b) a comparative analysis of the Debtors' discretionary Bonus Plan for Non-Insider Employees against similar plans in the industry. The Performance Incentive Plan was evaluated against broad financial services market practices from both a design and magnitude perspective. I performed these functions with the assistance of certain Johnson team members acting at my direction.

8.　　　Johnson's analysis of the Performance Incentive Plan and the Bonus Plan, and conclusions are set forth in a report dated March 1, 2010 (the "Johnson Report"). I directed the preparation of the Johnson Report, attached hereto as Exhibit A.

9.　　　The Johnson Report covers multiple issues related to compensation, including: (i) design structures and metrics, (ii) competitive compensation levels, and (iii) relative positioning of the Debtors' Insider Employees. The Johnson Report compares information on the Debtors' compensation practices with competitive analyses utilizing both public and private information, taking into account high-level discussions with the Debtors' human resources personnel, management, and professionals. In preparing the Johnson Report, we compared the Debtors' compensation practices and proposed Performance Incentive Plan to those of several companies in chapter 11 and within the broader financial services market. Regarding magnitudes of compensation, we reviewed the incumbent functions, analyzed multiple sources of data, and developed market references for comparisons.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

10. On behalf of Johnson, I have concluded that the Performance Incentive Plan and the proposed awards and Milestones thereunder are consistent with other companies' plans in chapter 11 and within the broader financial services market, and provides for reasonable compensation to Insider Employees, based on the specific context of the Debtors' businesses, and in relation to the broader financial services market. I have also concluded, based upon my expertise with compensation practices in the financial services industry, that the Bonus Plan, which the Debtors seek to continue for Non-Insider Employees only, is comparable to other discretionary bonus plans in the financial services industry.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 3, 2010
Wilmington, Delaware

Jeff Pratas Visithpanich

5

## EXHIBIT A

**Johnson Report**

# CAPMARK

---

I. Performance Incentive Plan Assessment

---

*Appendix B Redacted*

**March 1, 2010**

## JOHNSON ASSOCIATES, INC.

19 West 44th Street – Suite 511 New York, New York 10036

(212) 221-7400 • Fax (212) 221-3191

# Introduction

Johnson Associates was asked by Capmark to provide (a) an assessment of the Performance Incentive Plan (PIP) and (b) a comparative analysis of Capmark's discretionary bonus program for non-insiders against similar plans in the industry. The perspectives shown here reflect our deep knowledge of the industry and issues. This brief report covers multiple issues related to compensation, including: (i) design structures and metrics, (ii) competitive compensation levels, and (iii) relative positioning of Capmark insider professionals.

Johnson Associates is a boutique compensation consulting firm specializing in the financial services industry, including asset management firms, major commercial and investment banks, alternative investment firms and hedge funds, retail brokerages, and other organizations. We routinely consult on the topics addressed here, and have a deep, current understanding of market practices and levels for major asset management firms.

This brief report reflects information on Capmark's compensation practices, along with competitive analyses from both public and private information. In addition, we had high-level discussions with human resources management and professionals. The findings are meant to demonstrate the competitiveness of the incentive proposals in the bankruptcy and broader market context. The standards for comparison include market practices across similarly-situated comparators.

JOHNSON ASSOCIATES, INC.

# Johnson Associates Representative Asset Management Clients

*In addition to listed representative clients, Johnson Associates has extensive knowledge and current information on the pay levels and practices for a much broader group of relevant firms.*

| Asset Management | Alternative Products* | | Brokerage | Private Equity |
|---|---|---|---|---|
| Alliance Capital | Aetna | Laurus | Bear Stearns | Citicorp Venture Capital |
| American Express Financial Advisors | Aetos | Marathon | Charles Schwab | Credit Suisse |
| Bessemer | Angelo Gordon | Morgan Stanley | Citigroup | Fidelity |
| Canyon | Arden | Pequot | FleetBoston | General Atlantic |
| Charles Schwab | Canyon | Pine Grove | Goldman Sachs | Goldman Sachs |
| Citigroup | Cargill | Soros | Jefferies | JP Morgan Chase |
| Fidelity Investments | Citigroup | TIFF | Knight | Lehman Brothers |
| Franklin Resources | Citadel | Triarc | Lehman Brothers | Madison Dearborn |
| Goldman Sachs | Commonfund | Tudor | Piper Jaffray | Monitor Clipper |
| Invesco | Credit Suisse AI | UBP | TD Ameritrade | Onex |
| Janus | Fidelity | UBS | US Clearing | Ontario Municipal Employees Retirement System |
| Julius Baer | General Atlantic | Vulcan | | Scotia Bank |
| Lehman Brothers | Hamilton Lane | Independent Hedge and Other Alternative Funds (25+) | | Societe Generale |
| Oppenheimer | Icahn Enterprises/AREP | | | Thomas Weisel |
| Putnam | Invesco | | | Toronto Dominion |
| Scotia Bank | Ivy | | | TPG |
| TD Bank Financial | iStar Financial | | | Vector |
| | KKR Financial | | | Vulcan |
| | | | | Independent Firms (20+) |

*Alternative Products includes:  Hedge funds, real estate, fund-of-funds, structured credit, distressed property, etc.

**JOHNSON ASSOCIATES, INC.**

C:\r\Pwh\RLF14\MM2544412_1.DOC
RLF1 3544412v.1

# Table of Contents

- **_Broad Observations of Proposed Compensation_**        **5**

- **_Incentive Plan Assessment_**        **6**

  – *Incentive Plan Assessment:  Structure & Alignment*        **7 – 8**

  – *Incentive Plan Assessment:  Performance Metrics*        **9**

  – *Incentive Plan Assessment:  Quantum of Reward*        **10**

- **_Non-Insider Discretionary Bonus_**        **11**

  – *Non-Insider Bonus:  Perspectives on Proposed Amounts*        **12**

- **_Appendix_**

JOHNSON ASSOCIATES, INC.

– *Appendix A:  Overview of Compensation Plans in Chapter 11*     14 – 15

– *Appendix B:  Market References & Compensation Comparisons*     redacted

JOHNSON ASSOCIATES, INC.

C:\WvPortl\RLF1\NJMP\3544412_1.DOC
RLF1 3544412v.1

# Broad Observations of Proposed Compensation

- **Overall Capmark Performance Incentive Plan (PIP) reasonably positioned, based on the specific context of the business and in relation to the marketplace. However, select features of the incentive paradigm, such as the ability to provide long-term incentives, reflect the realities of bankruptcy.**

| | Observation – PIP | Comments |
|---|---|---|
| ☑ | **Performance Incentive Plan (PIP) competitively positioned** | • Meaningful incentive - helps motivate and align<br>• Payouts spread over time — not all up-front<br>• Reasonable termination/separation provisions — not onerous |
| ☑ | **Incentive metrics consistent with comparators in bankruptcy** | • Objectives consistent with other firms in Chapter 11<br>• Blend of (i) value maximization goals & (ii) actions items that help move the business forward |
| ☑ | **Aggressive salaries in the total offering** | • Aggressive positioning sensible given additional functions/skills required and business context<br>• Certainty often a helpful direction on a related pay item |
| ☒ | **Lack of long-term incentive in the total offering** | • Long-term incentive a typical pay element in financial services<br>• Missing a potential alignment and upside pay vehicle<br>• Bankruptcy less conducive to long-term incentives, but PIP a reasonable bridge to a long-term plan after emergence |
| ☑ | **Levels of pay to insiders within broad market norms** | • As a group, pay to all insiders moderately below market median total compensation levels |

| | Observation – Discretionary Bonus | Comments |
|---|---|---|
| ☑ | **Non-insider bonus amounts appear consistent with market norms** | • Average bonus of ≅$19k per person in line with past amounts<br>• Capmark incentive decline of ≅2%-5% lower than year-over-year change to staff and support in the marketplace |

JOHNSON ASSOCIATES, INC.

C:\XY\XY\RLF1\LMRJ544412_1.DOC<br>RLF1 3544412v.1

# Performance Incentive Plan (PIP) Assessment

JOHNSON ASSOCIATES, INC.

C:\\\\Partly\\RLF1\\LM\\3544412_1.DOC
RLF1 3544412v.1

# Incentive Plan Assessment: Structure & Alignment

- **Where available, standards for comparison include references in bankruptcy and broader market practices**

| Issue | Capmark | Assessment/Observation |
|---|---|---|
| **Available Base Salary** *(related pay item)* | • Provide salaries that are (i) consistent with required skills and (ii) in line with market <br><br> • Recognize need to be selectively aggressive, given business context | ☑ Consistent with market practice <br><br> • In the broad marketplace, increasing salaries (a) a sensible practice and (b) suggested by regulators/authorities <br><br> • Commensurate with additional functions/skills in Capmark context, not unusual to be aggressive on salaries |
| **Available Bonus** | • Recognize need to reward contributions towards milestones <br><br> • By-person levels linked to contribution, individual circumstances, and historical pay | ☑ Consistent with market practice (and in Bankruptcy) <br><br> • Typical to motivate professionals through meaningful incentive opportunities <br><br> • Minimize potential risk of unmotivated workforce |
| **Deferral of Incentives** | • Incentives generally paid over time <br>   – 50% at achievement of milestone <br>   – 25% payable after 6/30/11 <br>   – 25% payable after 12/31/11 <br> • Forfeiture if not hit milestones; may lose: <br>   – 50% if not achieve by 3/15/11 <br>   – Next 25% if not achieve by 6/30/11 <br>   – Next 25% if not achieve by 12/31/11 | ☑ Consistent with market practice <br><br> • Important for (i) alignment with business, (ii) efficient compensation delivery, and (iii) reinforcing incentives |

JOHNSON ASSOCIATES, INC.

- **Where available, standards for comparison include references in bankruptcy and broader market practices**

| Issue | Capmark | Assessment/Observation |
|---|---|---|
| **Provision for (i) Termination or (ii) Platform Disposition** *(& assumed separation)* | • Payable in full as a result of termination without cause or a platform disposition (if incentive earned) | ☑ Consistent with market practice<br><br>• Competitive given it is typical to observe reasonable treatment (i.e., payment) if both (i) terminated not-for-cause and (ii) performance obligations fulfilled |
| **Long-Term Incentive** *(related pay item)* | • None available (recognizing limitations in bankruptcy context) | ☒ Less consistent with market practice<br><br>• Common element of pay across financial services<br><br>• Helps further alignment and provide economic upside (as well as potential downside)<br><br>• Bankruptcy less conducive to long-term incentives, but PIP a reasonable bridge |

**JOHNSON ASSOCIATES, INC.**

# Incentive Plan Assessment: Performance Metrics

- **Where available, standards for comparison include references in bankruptcy and broader market practices**

| Issue | Capmark | Assessment/Observation |
|---|---|---|
| **Traditional Incentive Metrics** | • Given bankruptcy business context, traditional financial and business metrics (revenues, income/EBITDA, product goals, etc.) deemphasized | ☒ Less consistent with market practice (but more reasonable in Bankruptcy context)<br>• Financial and business performance goals typically drive incentive plan payouts in more normalized business settings |
| **Bankruptcy Incentive Metrics** *(economic value items)* | • **_Enterprise_**: sale of high-value platforms<br>• **_Asset management_**: collect loan portfolios<br>• **_Asia_**: monetization of assets<br>• **_Affordable_**: settle LIHTC guarantee liabilities<br>• **_Investments_**: (i) sale of equity group & (ii) resolution of debt fund<br>• **New markets tax credit**: disposition or other resolution | ☑ Consistent with market practice (in Bankruptcy)<br>• Sales, disposition, and/or monetization functions in order to maximize remaining economic value on assets<br>• See Appendix A for details |
| **Bankruptcy Incentive Metrics** *(action items)* | • **_Enterprise_**: (i) transition to Berkadia, (ii) execution of expense plan, and (iii) confirm plan of reorganization<br>• **_Asset management_**: transition into Bank<br>• **_Asia_**: outsourcing portfolio management<br>• **_Affordable_**: transfer LIHTC management | ☑ Consistent with market practice (in Bankruptcy)<br>• Execution of key tasks to maintain progress, going forward. Actions items include, but not limited to:<br>  – Execution of business plans (cost reductions, etc.)<br>  – Complete/confirm reorganization<br>  – Transition/transfer business operations to new entity<br>  – Emerge from bankruptcy<br>• See Appendix A for details |

**JOHNSON ASSOCIATES, INC.**

CWPFHPPEFTLPMIBMMT2_1DOC<br>RLF1 3544412v.1

# Incentive Plan Assessment: Quantum of Reward

- **Where available, standards for comparison include references in bankruptcy and broader market practices**

| Issue | Capmark | Observations |
|---|---|---|
| **Positioning of Proposed Compensation Amounts** *(to insiders)* | • Across the 30 insiders, proposed total compensation of $17.6 million ($8.8 million salary and $8.8 million incentive) | ☑ <u>Consistent with market practice</u><br>• As a group, total compensation amounts consistent with broad market norms (proposed total pay 10% below the group's market median)<br>  – See summary data below and Appendix B for details<br>• On an individual basis, would expect total compensation to vary both higher and lower<br>  – Variations typical given (i) different levels of value contribution and (ii) individual circumstances |

## Summary Reference Data

- **Reference based on proprietary data, third party survey detail, and market observations**
- **See Appendix B for details**

| | Capmark Proposed | | | Estimated 2009 Market Reference (in millions) | | | | | | | | | Capmark Proposed Total Comp % Variation from Target Percentiles | | |
| | | | | 25th %-ile | | | Median | | | 75th %-ile | | | | | |
| | Base Salary | PIP | Total Comp | Base Salary | Incent | Total Comp | Base Salary | Incent | Total Comp | Base Salary | Incent | Total Comp | 25th | Median | 75th |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Capmark Insiders | $8.8 | $8.8 | $17.6 | $5.9 | $7.4 | $13.3 | $7.4 | 12.2 | $19.5 | $8.8 | $19.4 | $28.1 | +33% | -10% | -37% |

JOHNSON ASSOCIATES, INC.

C:\...\...\...\...DOC<br>RLF1 3544412v.1

**Non-Insider Discretionary Bonus Assessment**

JOHNSON ASSOCIATES, INC.

C:\u\Pu\s\RLF1\LMA\3544412_1.DOC
RLF1 3544412v.1

# Non-Insider Bonus: Perspectives on Proposed Amounts

- **Non-insider incremental pool of $2.4 million for 2009 (for a total of $4.8 million)**
  - **With incremental pool, average total 2009 bonus per non-insider would be $19k**

| Comparison to: | Reference Point | Assessment/Commentary |
|---|---|---|
| • **Prior Capmark bonuses provided historically** | • In 2008, Capmark provided average bonuses to non-insiders in the range of $9k-$35k per person (average $20k per person) | ☑ **Bonus ($) amounts consistent with past levels** <br><br> Proposed Capmark levels (average $19k per person) moderately below amounts historically provided |
| • **Market-competitive variation (%) vs. prior year** | • Across financial services, typical year-over-year incentives increased ≅20%+ for staff and support across financial services | ☑ **Bonus (%) variation/change not unusual** <br><br> Capmark's year-over-year incentive decline (≅2%-5% down) lower than typical market increases, but not unexpected for real estate-related businesses |

JOHNSON ASSOCIATES, INC.

RLF1 3544412v.1

**APPENDIX**

JOHNSON ASSOCIATES, INC.

C:\\\Plots\RLF1LMHJ044412_1.DOC
RLF1 3544412v.1

# Appendix A: Overview of Compensation Plans in Chapter 11

- **Examples below include companies in Chapter 11 with compensation information for top employees that is relevant to Capmark. Source: Lazard**

| FIRM / FILING | OVERVIEW | SENIOR EMPLOYEES |
|---|---|---|
| **AMERICAN HOME MORTGAGE INVESTMENT (AUG – 07)** | ◘ FY Revenues - $1,135mm<br>◘ Total liabilities: $19,330mm<br>◘ KEIP Metric<br>　◌ 27 executives (SVPs and VPs)<br>　◌ Additional non-insider retention plan was also approved | ◘ Maximum payout of $9 million and will not be less than $3.65 million; pro-rata sharing of threshold pool to be distributed on 1/31/08 and pro-rata sharing of 50% of amounts above threshold every 3 months thereafter, and final 50% paid upon completion of claims reconciliation process<br>　◌ Milestones: Successful sale of Assets (% of net proceeds of sales with multiple-steps and various cash rates depending on the timing of the sale) and an expedited wind-down of the Debtor's business (similar steps and timing in wind-down contributions) |
| **EXTENDED STAY (JUN – 09)** | ◘ FY Revenues - NA (Private)<br>◘ Total liabilities: $7,600mm<br>　◌ HVM Incentive Program: 96% of the compensation proposed for the Senior Executives is triggered by certain performance-based metrics, assuming the Debtors achieve their fourth revised business plan (the "Business Plan") and their peers perform as expected. These metrics are (i) the RevPAR Index Percentage Change ("RPIPC"), and (ii) the change in Controllable Cost per Occupied Room ("CCPOR"). In addition, the Senior Executives are compensated for expediting the Debtors' emergence from chapter 11 | ◘ Pursuant to the terms of the Revised HVM Incentive Plan, each of the Critical Employees would receive an Additional Payment, equal to the percentage of the Incentive Amount specified below, depending on such Critical Employee's title:<br>　◌ Senior Executives (excluding the President and CEO) - 135% of the Incentive Amount<br>　◌ President/CEO – 182.25% of the Incentive Amount<br>　◌ Assuming certain hurdle rates were achieved, the top 5 executives were expected to receive $5.1mm which includes a $2.4mm payment upon emergence from bankruptcy<br>◘ Each of the Senior Executives shall receive a 10% base salary increase on November 1, 2009, representing an aggregate annual cost of approximately $204,000 for a 12 month period |

C:\Fv\5A\RLF1\MA3D4MFZ_P.DOC
RLF1 3544412v.1

**JOHNSON ASSOCIATES, INC.**

# Appendix A:  Overview of Compensation Plans in Chapter 11

- **Examples below include companies in Chapter 11 with compensation information for top employees that is relevant to Capmark.  Source: Lazard**

| FIRM/FILING | OVERVIEW | SENIOR EMPLOYEES |
|---|---|---|
| GENERAL GROWTH PROPERTIES (APR - 09) | ▫ FY Revenues - $3,442mm<br>▫ Total liabilities: $27,293mm<br>  ▫ A) Prepetition Cash Value Added Compensation Incentive Plan ("CVA Plan") - all full-time employees provided that the CEO and President & COO are only eligible in 2010<br>  ▫ B) Key Employee Incentive Plan - 46 employees deemed essential or integral to the company's operations and reorganization process | ▫ A) Cash awards are a percentage of base salary; 2010 targets for the CEO and COO are $2MM and $1.6MM, respectively (the top 12 executive's total annualized incentive would be $11.6mm if targets are achieved)<br>  ▫ Milestones: For KEIP participants, 2009 EBITDA of $2.116BN (2010 to be set)<br>▫ B) Cash awards are a percentage of base salary, ranging from 30% to 225% (estimated $15.2MM)<br>  ▫ Milestones: 40% weight to POR Recovery Value and 60% weight to Market-Based Recovery Value<br>  ▫ $10MM based on emergence date |
| NORTEL (JAN - 09) | ▫ FY Revenues - $8,180mm<br>▫ Total liabilities: $11,800mm<br>▫ Key Incentive Metrics for employees:<br>  ▫ Achievement of North American objectives of Nortel's cost reduction plan<br>  ▫ Achievement of certain parameters that will result in a leaner and more focused organization<br>  ▫ Achievement of the confirmation of the Debtors' plan of reorganization or the confirmation by the Canadian Court of a plan or plans of restructuring | ▫ Bonuses for 92 employees<br>  ▫ 8 members of the Senior Leadership Team<br>  ▫ 82 members of the Executive Leadership Team<br>  ▫ 2 other officers of the Debtors<br>▫ Plans tied to the achievement of Key Milestones<br>  ▫ 25% upon achievement of the first milestone<br>  ▫ 25% upon achievement of the second milestone<br>  ▫ 50% upon achievement of the third milestone<br>▫ Employees under the KEIP are eligible to a percentage of their annual base salary ranging from 20% to 183% or up to $23m in total<br>  ▫ SLT ranges between 100% - 183% (2008 base salaries of $425k- $1.29mm)<br>  ▫ ELT ranges between 48% - 112% |

**JOHNSON ASSOCIATES, INC.**

# Appendix B:  Market References & Compensation Comparisons

- **References based on proprietary data, third party survey detail, and market observations**

**JOHNSON ASSOCIATES, INC.**