8. South 89'52'00" West, 34.60 feet to a point; thence

9. Due North, 85.50 feet to the point of beginning, containing 8,754 square feet, more or less, or 0.20096 acres, more or less, of land.

NOTE: At the date hereof, the above-described land is designated on the Records of the Assessor of the District of Columbia for taxation and assessment purposes as lot 866 in Square 1200.

**Parcel 4**

Lot 800, Square 1186 and East Market Space, described as follows:

Part of Original Lot 42 in Square 16, "Old Georgetown", now known as Square 1186, described in accordance with a plat of survey recorded in Survey Book 143 at page 86, of the Records of the Office of the Surveyor of the District of Columbia as follows:

Beginning for the same at the intersection of the East Line of West Market Space with the south line of "M" Street and running East along the line of "M" Street, 40.40 feet to the West line of Potomac Street; and running South along the line of Potomac Street and a prolongation thereof, 242.60 feet, more or less, to the North line of the Canal Wall 2.00 feet thick; thence West along the Canal Wall 40.00 feet to the intersect prolongation South of the East line of West Market Space; thence North along said prolongation and the East line of West Market Space, 243.00 feet, more or less, to the place of beginning.

NOTE: At the date hereof the above described land is designated on the records of the Assessor of the District of Columbia for taxation purposes as Lot 800 in Square 1186.

ALSO

The entire East Market Space, also known as Potomac Street, as shown on the Plat Survey attached as Attachment C to that certain AMENDMENT NUMBER FIVE TO THE LEASE by and between the District of Columbia, a municipal corporation, and the Market House Company, a Delaware Corporation, dated September 26, 1985, and recorded among the District of Columbia Land Records on October 9, 1985, as Instrument No. 37427.

**Parcel 5**

That certain public alley known as "Warehouse Place" and which has now been closed as evidenced by a plat entitled "PUBLIC ALLEY CLOSED SQUARE 1200" which was recorded at 3:30 p.m. on March 27, 1985, in Book 176 at Page 93 among the Records of the Office of the Surveyor of the District of Columbia.

All of the above land described on Exhibit B is now known for purposes of assessment and taxation among the Records of the Assessor of the District of Columbia as Lots 852, 866, 867 and 868 and parts of Lots 803 and 842 in Square 1200 and Lot 800 in Square 1186 and the East Market Space (Potomac Street).

TOGETHER WITH that certain subsurface easement as created and described in Deed of Easement by and between Katherine O. Eckert and Georgetown Park Associates, dated August 14, 1980 and recorded September 10, 1980 as Instrument No. 28806 (the "Easement") among the Land Records of the District of Columbia.

NOTE: The Easement terminates at such time as construction takes place, subsequent to August 14, 1980, on Lot 829 in Square 1200 which involves excavation to an elevation below the underpinning ties described in the Easement.

**NOTE:  Parcel I is now known for assessment and taxation purposes as Lots 852 and 868 in Square 1200.**

**Parcel VIII – Parcels 1, 2 and 5 are now known for assessment and taxation purposes as Lot 867 in Square 1200.**

**Parcel II and VIII – Parcels 3 and 4 are now known for assessment and taxation purposes as Lot 866 and part of Lot 868 in Square 1200 and Lot 800 in Square 1186.**

**TITLE TO THE ESTATE OR INTEREST IN THE LAND IS AT THE EFFECTIVE DATE VESTED IN:** Georgetown Park Partners, LLC, a Delaware limited liability company, as follows:

FEE SIMPLE:  Parcel I (as to all parcels) and consists of Lots 852 and 868 in Square 1200 and Parcel VIII, Parcels 1, 2 and 5 and consists of Lot 867 in Square 1200.

LEASEHOLD:   Parcel II and Parcel VIII, Parcels 3 and 4 as further described below and consists of Lot 866 and part of Lot 868 in Square 1200 and Lot 800 in Square 1186.

EASEMENT:  Parcel III, Parcels IVA and IVB, Parcels VA and VB, Parcel VI and Parcel VII.

<div align="center">

**Ground Lease Descriptions**

</div>

## PARCEL II Lease:

A Leasehold as to part of Lot 868 in Square 1200 as set forth in that certain Lease Agreement by and between the District of Columbia, a municipal corporation, and Georgetown Park Associates, a limited partnership, dated as of June 28, 1978 and recorded July 27, 1978 as Instrument No. 25691; as partially assigned to Park Associates Limited, a District of Columbia limited partnership by Assignment of Lease Agreement dated as of July 16, 1982 and recorded July 19, 1982 as Instrument No. 17905; and as further assigned to Georgetown Park Partners, LLC by Assignment and Assumption of Ground Lease Agreement from Georgetown Park Associates, Inc., a Delaware corporation, dated as of February 28, 2007 and recorded March 1, 2007 as Instrument No. 2007028715.

**PARCEL VIII, Parcel 3 Lease:**

A Leasehold as to Lot 866 (formerly taxed as Lot 848) in Square 1200 as set forth in that certain Lease dated as of April 3, 1980 from Audrey B. Miller, Sherwin Miller, Bernice F. Leonard and Daniel Leonard to M.K.D. Associates, Donohoe Construction Co., Inc. and Donohoe Investment Company as evidenced of record by Memorandum of Lease dated as of April 3, 1980 and recorded October 15, 1980 as Instrument No. 33020; as assigned to Georgetown Park Associates by Assignment of Lease dated as of October 3, 1985 and recorded October 4, 1985 as Instrument No. 36814; as Assigned to Georgetown Park Partners, LLC by Assignment and Assumption of Ground Lease Agreement from Georgetown Park Associates, Inc., a Delaware corporation, dated as of February 28, 2007 and recorded March 1, 2007 as Instrument No. 2007028714.

**PARCEL VIII, PARCEL 4 Lease:**

A Leasehold as to Lot 800 in Square 1186 as set forth in that certain Lease (Georgetown Market) by and between the District of Columbia, a municipal corporation, and the Market House Company, a Delaware corporation, originally executed on November 28, 1977, re-executed on January 29, 1979 and recorded on March 6, 1979 as Instrument No. 7068; Consent to Assignment of Lease by the Market House Company, a Delaware corporation d/b/a The Market House, lessor, and Crusties Bakery, Inc., a Virginia corporation, lessee, dated April 1, 1980 and recorded April 14, 1980 as Instrument No. 12367 (as to designated floor space 119 only at The Market House); as Amended by Amendment Number One to the Lease dated September 28, 1979 and recorded June 30, 1980 as Instrument No. 20327; as further Amended by Amendment Number Two to the Lease dated February 2, 1981 and recorded September 1, 1981 as Instrument No. 28168; as further Amended by Amendment Number Three to the Lease dated November 18, 1982 and recorded December 15, 1982 as Instrument No. 32482; as further amended by Amendment Number Four to the Lease dated January 7, 1985; as further Amended by Amendment Number Five to the Lease dated September 26, 1985 and recorded October 9, 1985 as Instrument No. 37427; as assigned by the Market House Company, a Delaware corporation, to Georgetown Park Associates, a District of Columbia limited partnership, dated as of October 3, 1985 and recorded October 4, 1985 as Instrument No. 36815; as further amended by Amendment Number Six to the Lease dated March 11, 1999; and as assigned to Georgetown Park Partners, LLC, a Delaware limited liability company, by Assignment and Assumption of Ground Lease Agreement from Georgetown Park Associates, Inc., a Delaware corporation, dated as of February 28, 2007 and recorded March 1, 2007 as Instrument No. 2007028712; and Consent to Assignment of Lease dated as of February 27, 2007, made by the District of Columbia, a municipal corporation, for the benefit of Georgetown Park Associates, Inc., a Delaware corporation (successor by merger to Georgetown Park Associates, a District of Columbia limited partnership) and Georgetown Park Partners, LLC, a Delaware limited liability company recorded March 1, 2007 as Instrument No. 2007028713.

EXHIBIT I

FORM OF NOTICE TO BORROWER

_____, 2010

BY                                    CERTIFIED                                    MAIL/
RETURN RECEIPT REQUESTED

Georgetown                    Park                    Partners                    LLC
_____
_____

Re:  Loan in the original principal amount of $70,400,000 made by Capmark Finance Inc. to Georgetown Park Partners, LLC pursuant to that certain Loan Agreement dated as of February 28, 2007.


Ladies and Gentlemen:

Capmark Finance Inc., debtor in possession (**"Seller"**) and _____ (**"Purchaser"**), a _____ having an address at _____, hereby notify Georgetown Park Partners, LLC (**"Borrower"**) that on the date hereof, Seller sold its interest in the referenced loan (the **"Loan"**) to Purchaser.   Seller and Purchaser irrevocably and unconditionally authorize and direct Borrower to make each payment of interest, principal, escrows, impounds and all other amounts payable with respect to the Loan payable to the order of:

_____

and to deliver each payment to the following address:

_____
_____
_____

If Borrower makes any payments other than in accordance with this authorization and direction, Borrower will not receive credit for the payment until otherwise properly directed. Borrower should notify Purchaser at the address and phone number given below if Borrower has any questions or comments on this matter:

_____
_____
_____
Attn:_____
Phone:_____

Thank you very much for your cooperation.

Very truly yours,

[PURCHASER]

By:_____
    Name:
     Title:

CAPMARK FINANCE INC., debtor in possession

By:_____
    Name:
     Title:

2

EXHIBIT J

ESCROW PROVISIONS

The Deposit shall be held in escrow by Escrow Agent on the following terms and conditions:

The Deposit shall be invested in a day of deposit/day of withdrawal account in a Federally insured financial institution approved by Purchaser and Seller. All interest earned on the Deposit shall accrue in favor of Purchaser and shall be credited against the Purchase Price at Closing except in the case of a Purchaser default and release of the Deposit to Seller in which case, all accrued interest shall be released to Seller along with the Deposit.

(a)    Escrow Agent shall deliver the Deposit to Seller or to Purchaser, as the case may be, on the following conditions:

(i)    To Seller, upon the consummation of the Closing.

(ii)    To Seller, upon receipt of written demand therefore in accordance with a termination of the Agreement pursuant to the terms thereof (under which Seller is entitled to retain the Deposit), which demand shall be signed by Seller and shall state that Seller is entitled to the Deposit in accordance with the terms of the Agreement; provided, however, that Escrow Agent shall not honor such demand until at least seven (7) Business Days after the date on which Escrow Agent shall have delivered a copy of such demand to Purchaser, nor thereafter if Escrow Agent shall have received a notice of objection from Purchaser given in accordance with the provisions of clause (c) and (d) of this Exhibit J within such 7-Business Day period.

(iii)To    Purchaser, upon receipt of written demand therefore in accordance with a termination of the Agreement pursuant to the terms thereof (under which Purchase is entitled to a return of the Deposit), which demand shall be signed by Purchaser and shall state that Purchaser is entitled to the Deposit in accordance with the terms of the Agreement; provided, however, Escrow Agent shall not honor such demand until at least seven (7) Business Days after the date on which Escrow Agent shall have delivered a copy of such demand to Seller, nor thereafter if Escrow Agent shall have received a notice of objection from Seller given in accordance with the provisions of clauses (c) and (d) of this Exhibit J within such 7-Business Day period.

(b)    Any notice to or demand upon Escrow Agent shall be in writing and shall be sufficient only if received by Escrow Agent at its address set forth below in this Exhibit J, and in the manner, set forth in Section 8.1 of this Agreement, and within the applicable time periods set forth herein, if any.

(c)    Upon receipt of a demand for the Deposit, made by Seller or Purchaser pursuant to clauses (b)(ii) or (iii) of this Exhibit J, Escrow Agent shall promptly deliver a copy thereof to the other party. The other party shall have the right to object to the delivery of the Deposit by delivering to Escrow Agent notice of objection within seven (7) Business Days after the date Escrow Agent delivers such copy to the other party, but not thereafter. Upon receipt of such notice of objection, Escrow Agent shall promptly deliver a copy thereof to the other party.

(d)     If (i) Escrow Agent shall have received a notice of objection as provided for in clause (d) of this Exhibit J within the time therein prescribed or (ii) any other disagreement or dispute shall arise between the parties or any other persons resulting in adverse claims and demands being made for the Deposit, whether or not litigation has been instituted, then and in any such event, Escrow Agent shall refuse to comply with any claims or demands on it, and shall continue to hold the Deposit until Escrow Agent receives either (y) a written notice signed by both parties directing the disbursement of the Deposit, or (z) a final order of a court of competent jurisdiction, entered in an action, suit or proceeding in which Seller and Purchaser are parties, directing the disbursement of the Deposit, in either of which events Escrow Agent shall then disburse the Deposit in accordance with such direction.  Escrow Agent shall not be or become liable in any way or to any Person for its refusal to comply with any such claims and demands unless and until it has received such direction.  Upon compliance with such direction, Escrow Agent shall be released of and from all liability hereunder.

(e)     Notwithstanding the foregoing, Escrow Agent shall have the right following one or more of the circumstances described in clause (e)(i) or (ii) of this Exhibit J, on notice to the parties, to deposit the Deposit with a court of competent jurisdiction.  Upon the taking by Escrow Agent of such action, Escrow Agent shall be released of and from all liability hereunder.

(f)     Escrow Agent shall not have any duties or responsibilities, except those set forth in this Exhibit J and shall not incur any liability (i) in acting upon any signature, notice, demand, request, waiver, consent, receipt or other paper or document believed by Escrow Agent to be genuine and Escrow Agent may assume that any Person purporting to give it any notice on behalf of any party in accordance with the provisions hereof has been duly authorized to do so, or (ii) in otherwise acting or failing to act under this Exhibit J except in the case of Escrow Agent's gross negligence or willful misconduct.

(g)     Seller and Purchaser acknowledge that Escrow Agent is acting solely as stakeholder at the request of Seller and Purchaser and for their convenience, that Escrow Agent shall not be deemed to be the agent of either of the parties, and that Escrow Agent shall not be liable to either of the parties, except for its gross negligence or willful misconduct.

(h)     Seller and Purchaser hereby jointly and severally agree to indemnify Escrow Agent for, and to hold it harmless against, any loss, liability, damage or expense incurred by it arising out of or in connection with Escrow Agent's entering into and/or performing its obligations under this Agreement so long as such loss, liability, damage or expense does not arise out of Escrow Agent's gross negligence or willful misconduct.

(i)     Purchaser shall pay all income tax on all interest earned on the Deposit and Escrow Agent shall report all such interest to Purchaser.  Purchaser's tax i.d. number is 20-4522205

(j)     Notices to Escrow Agent shall be sent to the following address:

Fidelity National Title Insurance Company
1 Park Avenue-Suite 1402

New York, N.Y. 10016
Attention: Thomas A. Glatthaar

       (k)     The provisions of this <u>Exhibit</u> J shall survive the Closing or earlier termination of this Agreement.

EXHIBIT K

LOAN DOCUMENTS

- That certain Loan Agreement dated as of February 28, 2007 between Georgetown Park Partners, LLC and Capmark Finance, Inc.;

- That certain Promissory Note A dated as of February 28, 2007 from Georgetown Park Partners, LLC to Capmark Finance Inc. in the principal amount of $66,000,000;

- That certain Promissory Note B dated as of February 28, 2007 from Georgetown Park Partners, LLC to Capmark Finance Inc. in the principal amount of $4,400,000;

- That certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing executed by Georgetown Park Partners, LLC to Kelly M. Wrenn, Trustee for the benefit of Capmark Finance Inc., dated as of February 28, 2007 and recorded March 1, 2007 as Instrument No. 2007028716, as affected by Deed of Appointment of Substitute Trustee dated as of March 25, 2010 and recorded March 31, 2010 as Instrument No. 2010028334 with the District of Columbia Recorder of Deeds;

- That certain Guaranty (Exceptions to Nonrecourse Liability) dated as of February 28, 2007 and executed by WDC Holdings, LLC in favor of Capmark Finance Inc.;

- That certain Environmental Indemnity Agreement dated as of February 28, 2007 and executed by Georgetown Park Partners, LLC and WDC Holdings, LLC in favor of Capmark Finance Inc. and all other Indemnified Parties (as defined therein);

- That certain UCC Financing Statement recorded in the Land Records of the District of Columbia as Instrument No. 2007028718 on March 1, 2007;

- That certain UCC Financing Statement recorded in the office of the Delaware Department of State, U.C.C. Filing Section, as Instrument No. 2007-0784545 on March 1, 2007;

- That certain Assignment of Leases and Rents executed by Georgetown Park Partners, LLC to Capmark Finance Inc., dated as of February 28, 2007 and recorded March 1, 2007 as Instrument No. 2007028717 with the District of Columbia Recorder of Deeds;

- That certain Assignment of Property Management Contract and Subordination of Management Fees executed by Georgetown Park Partners, LLC and General Growth Management, Inc. in favor of Capmark Finance Inc., dated as of March 15, 2007;

- That certain Assignment of Interest Rate Cap as Collateral executed by Georgetown Park Partners, LLC in favor of Capmark Finance Inc., dated as of February 28, 2007;

- That certain Operations and Maintenance Agreement (Asbestos) dated as of February 28, 2007 between Georgetown Park Partners, LLC and Capmark Finance, Inc.; and

- That certain Post Closing Agreement dated as of February 28, 2007 between Georgetown Park Partners, LLC and Capmark Finance, Inc.

- That certain Letter Agreement pertaining to cash management dated on or about the date hereof between Capmark Finance, Inc. and Georgetown Park Partners, LLC.

EXHIBIT L

RELEASE AGREEMENT

This Release Agreement (this "**Release**") is made as of _____ __, 2010, by and among (A)(i) **WDC HOLDINGS, LLC**, a Delaware limited liability company ("**Guarantor**"), (ii) **WDC GEORGETOWN PARK MANAGER, LLC**, a Delaware limited liability company ("**WDC Manager**") and (iii) **WDC GEORGETOWN PARK, LLC**,a Delaware limited liability company ("**WDC GPLLC**") (Guarantor, WDC Manager and WDC GPLLC being collectively referred to as the "**WDC Parties**"), (C) **HERBERT MILLER**, an individual ("**Miller**") (each of the WDC Parties and Miller is referred herein, individually, as a "**Releasor**", and collectively as the "**Releasors**"), and (D) **CAPMARK FINANCE INC.**, debtor-in-possession ("**Lender**" and, together with Lender's successors and assigns, predecessors, servicers, subservicers, parents, subsidiaries and/or affiliated companies (including, without limitation, Capmark Investments LP) and the shareholders, trustees officers, directors, partners, members, beneficial owners, attorneys in fact, employees, agents, representatives and attorneys of all of the foregoing and their respective heirs, executors, administrators, attorneys, successors, legal representatives and assigns, but in all events excluding the Excluded Parties, as defined below, the "**Released Parties**").

WHEREAS, Georgetown Park Partners, LLC **("Borrower")** and Lender are parties to that certain Loan Agreement dated as of February 28, 2007 (the "**Loan Agreement**") relating to one or more mortgage loans in the maximum amount of up to $70,400,000 (collectively, the "**Loan**"). Terms used but not otherwise defined herein shall have the meanings given in the Loan Agreement.

WHEREAS, pursuant to that certain Guaranty (Exceptions to Nonrecourse Liability) dated as of February 28, 2007, Guarantor agreed to guaranty certain of Borrower's Obligations with respect to the Loan.

WHEREAS, on the date hereof, concurrently with the execution and delivery of this Release, Lender has consummated the sale of the Loan to Angelo Gordon Real Estate Inc., a Delaware corporation or its assignee ("**Transferee**") under that certain Loan Purchase and Sale Agreement dated as of May __, 2010 between Lender and Angelo Gordon Real Estate Inc. (the "**LPSA**");

WHEREAS, pursuant to the LPSA, it is a condition to Lender's obligation to sell the Loan to Transferee that Releasors execute and deliver this Release.

WHEREAS, Releasors agree that they will derive substantial benefit from the sale of the Loan to Transferee.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto hereby agree as follows:

1.      Release. Effective upon the date hereof, each of the Releasors, on behalf of itself and each of its heirs, executors, administrators, successors, legal representatives and assigns and all persons claiming by, through or under it, and each of its parents, subsidiaries and/or affiliated companies and the shareholders, officers, directors, partners, members, employees, agents, representatives and attorneys of all of the foregoing and their respective heirs, executors, administrators, successors, legal representatives and assigns and all persons claiming by, through or under them or any of them (all hereinafter collectively referred to as the "**Releasing Parties**"), do hereby remise, release, acquit and forever discharge each of the Released Parties of, from and against any and all manner of actions, causes of actions, choices in action, suits, debts, dues, sums of money, compensation, accounts, rentals, commissions, reckonings, bonds, bills, specialties, covenants, rights, contracts, controversies, agreements, promises, costs, damages, judgments, executions, claims and demands whatsoever, whether known or unknown, foreseen or unforeseen (regardless of by whom raised) in law or in equity, including, without implied limitation, such claims and defenses as fraud, mistake, duress and usury, which the Releasing Parties, and/or any of them, and/or anyone claiming by, through or under any of the Releasing Parties, now have, ever had or may ever have from the beginning of time through the date hereof against the Released Parties or any of them, singly or in any combination, on account of, arising out of, or in connection with any thing, cause, matter, transaction, act or omission of any nature whatsoever of, or involving, in whole or in part, directly or indirectly, any of the following (collectively, the "**Claims**"): (i) the Loan, or any of the Loan Documents, (ii) the Property, (iii) the Debt, (iv) any and all matters described in (or relating to or arising out the matters described in) all proofs of claim filed by Borrower and/or any WDC Parties (including proofs of claim numbers 1633, 1634, 1483, 1484, 1619 and 1622 in the bankruptcy proceedings of Lender, Capmark Investments LP and their affiliates (collectively, the **Proofs of Claim**"), (v) any transactions, occurrences, acts, omissions, statements, promises, agreements or undertakings of Borrower or by, between or among any of the direct or indirect members in Borrower, or (vi) any transactions, occurrences, acts, omissions, statements, promises, agreements or undertakings of any of the Released Parties (or of any contractor, counsel or representative of a Released Party) made or omitted to be made in connection with any of the foregoing clauses (i) through (iv) or other matters arising out of the relationship between any of the Releasing Parties and any of the Releasors with respect thereto, including any and all documents executed in connection therewith or any other document, instrument or agreement and the representations and warranties set forth herein or therein. For purposes of the avoidance of doubt, Lender, for itself and for the Released Parties, acknowledges and agrees that the foregoing release shall not apply to, and that the term "Released Parties" shall exclude (1) Capmark Members (as that term is defined in the Limited Liability Company Agreement of Borrower, dated as of October 30, 2006) and each of Capmark Members' successors and assigns, and all persons claiming by, through or under Capmark Members, and the shareholders, officers, directors, partners, members, employees, agents, representatives and attorneys of Capmark Members, but solely in such capacity (and specifically excluding Releasor's parents, subsidiaries and/or affiliated companies in any other capacity), and (ii) TRECAP Partners, LLC, or any of its affiliates and related entities (the foregoing, the "**Excluded Parties**").

2.      Covenant Not to Sue. Each of the Releasors hereby covenants and agrees, for and on behalf of itself and the Releasing Parties, that it shall forever refrain, and is hereby estopped, from instituting, prosecuting, asserting or otherwise pursuing or pressing against any of the Released Parties any of the Claims (whether or not such Claims are now existing or are

hereafter discovered). Releasors agree to cause Borrower and any other parties that have filed any of the Proofs of Claim to withdraw on the date hereof all of the Proofs of Claim.

        3.      <u>Representations and Warranties</u>.

        (a)      The WDC Parties represent and warrant to Lender and the other Released Parties that, as of the date hereof:

        i.      <u>Organization</u>. Each of the WDC Parties (i) is a duly organized and validly existing entity in good standing under the laws of the State of its formation, (ii) has the requisite entity power and authority to carry on its business as now being conducted, (iii) is duly qualified as a foreign entity in each jurisdiction in which the nature of its business, makes such qualification necessary or desirable and (iv) has the requisite entity power to execute and deliver, and perform its obligations under, this Release.

        ii.      <u>Authorization</u>. The execution and delivery by each of the WDC Parties of this Release and its performance of its obligations hereunder (i) have been duly authorized by all requisite entity action, (ii) will not violate any provision of any applicable legal requirements, any order, writ, decree, injunction or demand of any court or other governmental authority, any organizational document or any indenture or agreement or other instrument to which any of the WDC Parties is a party or by which any of the WDC Parties is bound (iii) to the knowledge of the WDC Parties, will not conflict with, result in a breach of, or constitute a default under, any of the terms, conditions or provisions of any agreement or instrument to which any of the WDC Parties, or any other affiliate of the WDC Parties, is a party or by which it is bound and (iv) to the knowledge of the WDC Parties, will not be in conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under, or result in the creation or imposition of any lien of any nature whatsoever upon any of the property or assets of any of the WDC Parties pursuant to, any indenture or agreement or instrument. None of the WDC Parties is required to obtain any consent, approval or authorization from or to file any declaration or statement with, any governmental authority or other agency in connection with or as a condition to the execution, delivery or performance of this Release. This Release has been duly authorized, executed and delivered by each of the WDC Parties.

        iii.      <u>Enforceability</u>. This Release is a legal, valid and binding obligation of each of the WDC Parties, enforceable against each such party in accordance with its terms, subject to bankruptcy, insolvency and other limitations on creditors' rights generally and to equitable principles.

        iv.      <u>No Transfer of Claims</u>. None of the WDC Parties has transferred or encumbered any of the Claims.

        (b)      Miller represents and warrants to Lender and the other Released Parties that, as of the date hereof:

           i.     <u>Authorization</u>. The execution and delivery by Miller of this Release and its performance of his obligations hereunder (i) will not violate any provision of any applicable legal requirements, any order, writ, decree, injunction or demand of any court or other governmental authority, any organizational document or any indenture or agreement or other instrument to which Miller is a party or by which Miller is bound (iii) to Miller's knowledge, will not conflict with, result in a breach of, or constitute a default under, any of the terms, conditions or provisions of any agreement or instrument to which Miller, or any other affiliate of Miller is a party or by which it is bound and (iv) to Miller's knowledge, will not be in conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under, or result in the creation or imposition of any lien of any nature whatsoever upon any of the property or assets of Miller pursuant to, any indenture or agreement or instrument. Miller is not required to obtain any consent, approval or authorization from or to file any declaration or statement with, any governmental authority or other agency in connection with or as a condition to the execution, delivery or performance of this Release. This Release has been duly authorized, executed and delivered by Miller.

           ii.     <u>Enforceability</u>. This Release is a legal, valid and binding obligation of Miller, enforceable against each such party in accordance with its terms, subject to bankruptcy, insolvency and other limitations on creditors' rights generally and to equitable principles.

           iii.     <u>No Transfer of Claims</u>. Miller has not transferred or encumbered any of the Claims.

        (c)     Lender hereby represents and warrants to the Releasors that, subject to and in accordance with the LPSA, Lender has assigned and transferred to Transferee all of Lender's right, title and interest in and to the Loan, including without limitation, any and all Lender Claims, excluding the Excluded Claims (as such terms are hereinafter defined), such that Lender has no further right, title and interest in and to any Lender Claims (other than Excluded Claims), against the Releasors.

        The term "**Lender Claims**" shall mean any and all manner of actions, causes of actions, choices in action, suits, debts, dues, sums of money, compensation, accounts, rentals, commissions, reckonings, bonds, bills, specialties, covenants, rights, contracts, controversies, agreements, promises, costs, damages, judgments, executions, claims and demands whatsoever, whether known or unknown, foreseen or unforeseen (regardless of by whom raised) in law or in equity, which Lender and/or anyone claiming by, through or under Lender (other than Transferee and its successors and assigns, none of whom shall be bound by the terms of this Release), now have, ever had or may ever have from the beginning of time through the date hereof against the Releasors, or any of them, singly or in any combination, on account of, arising out of, or in connection with any thing, cause, matter, transaction, act or omission of any nature whatsoever of, or involving, in whole or in part, directly or indirectly, any of the following: (i) the Loan, or any of the Loan Documents, (ii) the Property, (iii) the Debt or (iv) any transactions, occurrences, acts, omissions, statements, promises, agreements or undertakings of any of the Releasors (or of any contractor, counsel or representative of a Releasor) made or omitted to be made in connection with any of the foregoing clauses (i) through (iii) or other matters arising out of the

relationship between any of the Releasors and any of the Released Parties with respect thereto, including any and all documents executed in connection therewith or any other document, instrument or agreement and the representations and warranties set forth herein or therein.

The term "**Excluded Claims**" shall mean any and all manner of actions, causes of actions, choices in action, suits, debts, dues, sums of money, compensation, accounts, rentals, commissions, reckonings, bonds, bills, specialties, covenants, rights, contracts, controversies, agreements, promises, costs, damages, judgments, executions, claims and demands whatsoever, whether known or unknown, foreseen or unforeseen (regardless of by whom raised) in law or in equity, which Lender and/or the Released Parties, and/or any of them, and/or anyone claiming by, through or under any of the Releasing Parties (other than Transferee and its successors and assigns, none of whom shall be bound by the terms of this Release), now have, ever had or may ever have from the beginning of time through the date hereof against the Releasors, or any of them, singly or in any combination, on account of, arising out of, or in connection with any thing, cause, matter, transaction, act or omission of any nature whatsoever of, or involving, in whole or in part, directly or indirectly, any obligations or liabilities now existing or hereafter arising under that certain Environmental Indemnity Agreement dated February 28, 2007 made by Georgetown Park Partners, LLC and WDC Holdings, LLC in favor of Capmark Finance Inc. and all other Indemnified Parties (as defined therein).

4.    Governing Law; JURY TRIAL WAIVER. This Release shall be construed in accordance with and governed by the laws of the State of New York applicable to agreements executed in and to be performed in New York and by any applicable Federal law. Until the chapter 11 cases of Lender, Capmark Investments LP and their affiliated debtors and debtors in possession are closed or dismissed, each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of and agrees that venue shall be proper in the United States Bankruptcy Court for the District of Delaware, and any appellate court therefrom, in any action or proceeding arising out of or relating to or connected with this Agreement. Each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be heard and determined in such court until such chapter 11 cases are closed or dismissed. Following the closing or dismissal of the chapter 11 cases of Lender, Capmark Investments LP and their affiliated debtors and debtors in possession, each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of and agrees that venue shall be proper in the United States Bankruptcy Court for the District of Delaware or any state or federal court in New York County in the State of New York, and any appellate court therefrom. Each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be heard and determined in any such court at any time following the closing or dismissal of such chapter 11 cases. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATED TO THIS RELEASE.

5.    Integration; amendment. This Release constitutes the sole agreement of the parties with respect to the subject matter hereof and supersedes all oral negotiations and prior writings with respect to the subject matter hereof. This Release may not be modified or amended except in a writing executed by the person or entity against whom enforcement of such modification or amendment is sought.

6.      Successors and assigns.  This Release (i) shall be binding upon the Releasors and, where applicable, their respective heirs, executors, administrators, successors and permitted assigns, and (ii) shall inure to the benefit of the Released Parties and their respective heirs, executors, administrators, successors and assigns.

7.      Severability and consistency.  The illegality, unenforceability or inconsistency of any provisions of this Release shall not in any way affect or impair the legality, enforceability or consistency of the remaining provisions of this Release or any instrument or agreement executed in connection herewith.

8.      Counterparts.  This Release may be executed in any number of counterparts and by the different parties on separate counterparts.  Each such counterpart shall be deemed an original, but all such counterparts shall together constitute one and the same agreement.  An electronically transmitted counterpart of this Release shall constitute an original for all purposes.

[TEXT ENDS – SIGNATURES COMMENCE ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties hereto have caused this Release to be duly executed by their duly authorized representatives, all as of the day and year first above written.

WDC HOLDINGS, LLC, a Delaware limited liability company

By: _____
    Name:
    Title:

WDC GEORGETOWN PARK MANGER LLC, a Delaware limited liability company

By:  WDC Georgetown Park, LLC, its sole member

    By: _____
        Name:
        Title:

WDC GEORGETOWN PARK, LLC, a Delaware limited liability company

By: _____
    Name:
    Title:

_____
Herbert Miller, individually

## LENDER

CAPMARK FINANCE INC., debtor in possession

By: _____
    Name:
    Title:

EXHIBIT M

Form of Guaranty

## GUARANTY OF INDEMNIFICATION OBLIGATIONS

**made by**

**AG REALTY FUND VII (TE), L.P.,**
**AG REALTY FUND VII, L.P.,**
**AG REALTY FUND VII(AC), L.P.,**
**AG REALTY VII(AU) INVESTMENTS, L.P., and**
**AG KIC REALTY FUND, L.P.**[1]

**as guarantors,**

**in favor of**

**CAPMARK FINANCE INC., debtor in possession**

**Dated as of _____, 2010**

---

[1]     To the extent that, at Closing, any particular "Guarantor" does not have a direct or indirect ownership interest in the Purchaser, then such entity will be removed as a Guarantor, and Pro Rata shares of other Guarantors will be adjusted accordingly.

## GUARANTY OF INDEMNIFICATION OBLIGATIONS

This GUARANTY (this "*Guaranty*"), dated as of _____ __, 2010, made by AG REALTY FUND VII (TE), L.P., REALTY FUND VII, L.P., AG REALTY FUND VII(AC), L.P., AG REALTY VII(AU) INVESTMENTS, L.P., and AG KIC REALTY FUND, L.P. (each, a "*Guarantor*" and collectively, "*Guarantors*"), in favor of CAPMARK FINANCE INC., debtor in possession ("*Seller*"), having an address at 485 Madison Avenue, New York, New York 10022.

## R E C I T A L S:

A.    Pursuant to that certain Loan Purchase and Sale Agreement dated as of May __, 2010 (the "*Purchase and Sale Agreement*") between Angelo Gordon Real Estate Inc. (together with any permitted assignee thereunder, "*Purchaser*") and Seller, Seller has agreed to sell and Purchaser has agreed to purchase a loan (the "*Loan*") in accordance with the terms and provisions of the Purchase and Sale Agreement.

B.    In connection with the sale of the Loan, Purchaser has agreed to indemnify Seller (and the other Indemnified Persons (as such term is defined in the Purchase and Sale Agreement)) from and against certain claims, as more particularly described in the Purchase and Sale Agreement, and as a condition to the sale of the Loan, Seller has required Guarantors to execute and deliver to Seller this Guaranty.

**NOW, THEREFORE**, in consideration of the premises set forth herein and as an inducement for and in consideration of the agreement of Seller to sell the Loan to Purchaser pursuant to the Purchase and Sale Agreement, each Guarantor hereby agrees, covenants, represents and warrants to Seller as follows:

1.    **Definitions.**

(a)    All capitalized terms used and not defined herein shall have the respective meanings given such terms in the Purchase and Sale Agreement.

(b)    The term "*Guaranteed Obligations*" means Purchaser's indemnification obligations set forth in Section 7.1(b) of the Purchase and Sale Agreement.

2.    **Guaranty.**

(a)    Subject to Section 2(b) below, each Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Seller the full, prompt and complete payment when due of the Guaranteed Obligations.

(b)     Notwithstanding anything to the contrary contained in the Purchase Agreement or in this Guaranty (i) each Guarantor shall be liable only for its Pro-Rata Share (hereinafter defined) of the Guaranteed Obligations, with the obligations of each Guarantor under this Guaranty being several obligations (based upon the Pro-Rata Share of each such Guarantor), and not joint and several obligations, and (ii) the maximum aggregate liability of Guarantors under this Guaranty with respect to the Guaranteed Obligations shall be $3,300,000, inclusive of any amounts payable under Section 16 below (the "***Guaranty Cap***"). As used herein, the "***Pro-Rata Share***"[2] of each Guarantor means (A) 57.1998% for AG Realty Fund VII (TE), L.P., (B) 29.7372% for AG Realty Fund VII, L.P., (C) 3.7087% for AG Realty Fund VII(AC), L.P., (D) 7.5000% for AG KIC Realty Fund, L.P., and (E) 1.8543% for AG Realty VII(AU) Investments, L.P. By way of example, if there is a claim with respect to the Guaranteed Obligations of $3,000,000, then AG Realty Fund VII (TE), L.P. shall be liable for $1,715,994 thereof; AG Realty Fund VII, L.P. shall be liable for $892,116 thereof; AG Realty Fund VII(AC), L.P. shall be liable for $111,261 thereof; AG KIC Realty Fund, L.P. shall be liable for $225,000 thereof, and AG Realty VII(AU) Investments, L.P. shall be liable for $55,629 thereof; and if there is thereafter an additional $1,000,000 claim in respect of a Guaranteed Obligation, the maximum amount payable by the Guarantors with respect to such additional Guaranteed Obligation shall be $300,000 (which $300,000 shall be funded by the Guarantors, in accordance with their respective Pro-Rata Shares).

(c)     All sums payable to Seller under this Guaranty shall be payable on demand and without reduction for any offset, claim, counterclaim or defense.

**3.     Representations and Warranties.** Each Guarantor, with respect to itself only, hereby represents and warrants to Seller as follows (which representations and warranties shall be given as of the date hereof and shall survive the execution and delivery of this Guaranty):

(a)     **Organization, Authority and Execution.** Such Guarantor is a limited partnership duly organized, validly existing and in good standing under the laws of the State of Delaware and has all necessary power and authority to own its properties and to conduct its business as presently conducted or proposed to be conducted and to enter into and perform this Guaranty and all other agreements and instruments to be executed by it in connection herewith. This Guaranty has been duly executed and delivered by such Guarantor.

(b)     **Enforceability.** This Guaranty constitutes a legal, valid and binding obligation of such Guarantor, enforceable against such Guarantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency,

---

[2]     Pro Rata Shares are based on anticipated percentage ownership in Purchaser (and will be revised to reflect actual pro-rata ownership interests, if different than percentages set forth in this definition).

reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally.

(c)   **No Violation.**   The execution, delivery and performance by such Guarantor of its obligations under this Guaranty has been duly authorized by all necessary action, and do not and will not violate any law, regulation, order, writ, injunction or decree of any court or governmental body, agency or other instrumentality applicable to such Guarantor, or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, or result in the creation or imposition of any mortgage, lien, charge or encumbrance of any nature whatsoever upon any of the assets of such Guarantor pursuant to the terms of such Guarantor's limited partnership agreement, or any mortgage, indenture, agreement or instrument to which such Guarantor is a party or by which it or any of its properties is bound.

(d)   **No Litigation.** To such Guarantor's knowledge, there are no actions, suits or proceedings at law or at equity, pending or, threatened in writing against or affecting such Guarantor or which involve the validity or enforceability of this Guaranty or which will materially adversely affect the financial condition of such Guarantor or the ability of such Guarantor to perform any of its obligations under this Guaranty. Such Guarantor is not in default beyond any applicable grace or cure period with respect to any order, writ, injunction, decree or demand of any governmental authority which would materially adversely affect the financial condition of such Guarantor or the ability of such Guarantor to perform any of its obligations under this Guaranty.

(e)   **Consents.**   All consents, approvals, orders or authorizations of, or registrations, declarations or filings with, all governmental authorities (collectively, the "*Consents*") that are required in connection with the valid execution, delivery and performance by such Guarantor of this Guaranty have been obtained and such Guarantor agrees that all Consents required in connection with the carrying out or performance of any of such Guarantor's obligations under this Guaranty will be obtained when required.

(f)   **Financial Statements and Other Information.** All financial statements of such Guarantor heretofore delivered to Seller are true and correct in all material respects and fairly present the financial condition of such Guarantor as of the respective dates thereof, and to such Guarantor's best knowledge, no materially adverse change has occurred in the financial conditions reflected therein since the respective dates thereof. To such Guarantor's best knowledge, none of the aforesaid financial statements or any certificate or statement furnished to Seller by or on behalf of such Guarantor in connection with the transactions contemplated hereby, and to such Guarantor's best knowledge, none of the representations and warranties of such Guarantor in this Guaranty contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein or herein not misleading. Such Guarantor is not insolvent within the meaning of the United States Bankruptcy Code or any other applicable law, code or regulation and the execution, delivery and performance of this Guaranty will not render such Guarantor insolvent.

(g)  **Consideration.** Such Guarantor is the owner, directly or indirectly, of certain legal and beneficial equity interests in Purchaser.

4.  **Financial Statements.** Each Guarantor shall deliver to Seller no more than one time in any calendar year, copies of the financial statements for such Guarantor in such form as is furnished by such Guarantor to its investors, provided that prior to providing such financial statements to Seller, upon Guarantors' written request, Seller shall reaffirm the confidentiality obligations of Seller contained in that certain letter agreement dated May 5, 2010, between Purchaser and Seller.

5.  **Unconditional Character of Obligations of Guarantors.**

(a)  The obligations of Guarantors hereunder shall be irrevocable, absolute and unconditional, irrespective of the validity, regularity or enforceability, in whole or in part, of the Purchase and Sale Agreement or the documents executed in connection therewith (collectively, the **"Acquisition Documents"**) or any provision thereof, or the absence of any action to enforce the same, any waiver or consent with respect to any provision thereof, the recovery of any judgment against Purchaser, a Guarantor or any other Person or any action to enforce the same, any failure or delay in the enforcement of the obligations of Purchaser under the Purchase and Sale Agreement with respect to the Guaranteed Obligations or Guarantors under this Guaranty, or any setoff, counterclaim, and irrespective of any other circumstances which might otherwise limit recourse against a Guarantor by Seller or constitute a legal or equitable discharge or defense of a guarantor or surety. Seller may enforce the obligations of any Guarantor under this Guaranty by a proceeding at law, in equity or otherwise. **This Guaranty is a guaranty of payment and performance and not merely a guaranty of collection.** Each Guarantor waives diligence, notice of acceptance of this Guaranty, filing of claims with any court, any proceeding to enforce any provision of any other Acquisition Document, against such Guarantor, Purchaser or any other Person, any right to require a proceeding first against Purchaser or any other Person, or to exhaust any security for the performance of the Guaranteed Obligations or any other obligations of Purchaser or any other Person, or any protest, presentment, notice of default or other notice or demand whatsoever (except to the extent expressly provided to the contrary in this Guaranty).

(b)  The obligations of Guarantors under this Guaranty, and the rights of Seller to enforce the same by proceedings, whether by action at law, suit in equity or otherwise, shall not be in any way affected by any of the following:

i.  any insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Purchaser, the Property or any part thereof, a Guarantor or any other Person;

ii.  any failure by Seller or any other Person, whether or not without fault on its part, to perform or comply with any of the terms of the Purchase and

Sale Agreement, or any other Acquisition Documents, or any document or instrument relating thereto;

     iii.  the sale, transfer or conveyance of the Loan, the Property or any interest therein to any Person, whether now or hereafter having or acquiring an interest in the Loan or the Property or any interest therein and whether or not pursuant to any foreclosure, trustee sale or similar proceeding against Purchaser or the Loan or the Property or any interest therein; or

     iv.  the release of Purchaser or any other Person from the performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Acquisition Documents by operation of law or otherwise.

   (c)  Except as otherwise specifically provided in this Guaranty, each Guarantor hereby expressly and irrevocably waives all defenses in an action brought by Seller to enforce this Guaranty based on claims of waiver, release, surrender, alteration or compromise and all setoffs, reductions, or impairments, whether arising hereunder or otherwise.

   (d)  Seller may deal with Purchaser and Affiliates of Purchaser in the same manner and as freely as if this Guaranty did not exist and shall be entitled, among other things, to grant Purchaser or any other Person such extension or extensions of time to perform any act or acts as may be deemed advisable by Seller, at any time and from time to time, without terminating, affecting or impairing the validity of this Guaranty or the obligations of Guarantors hereunder.

   (e)  No compromise, alteration, amendment, modification, extension, renewal, release or other change of, or waiver, consent, delay, omission, failure to act or other action with respect to, any liability or obligation under or with respect to, or of any of the terms, covenants or conditions of, the Acquisition Documents shall in any way alter, impair or affect any of the obligations of Guarantors hereunder, and Guarantors agree that if any Acquisition Document are modified with Seller's consent, the Guaranteed Obligations shall automatically be deemed modified to include such modifications.

   (f)  Seller may proceed to protect and enforce any or all of its rights under this Guaranty by suit in equity or action at law, whether for the specific performance of any covenants or agreements contained in this Guaranty or otherwise, or to take any action authorized or permitted under applicable law, and shall be entitled to require and enforce the performance of all acts and things required to be performed hereunder by Guarantors. Each and every remedy of Seller shall, to the extent permitted by law, be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity.

   (g)  No waiver shall be deemed to have been made by Seller of any rights hereunder unless the same shall be in writing and signed by Seller, and any such waiver shall be a waiver only with respect to the specific matter involved and shall in no way

impair the rights of Seller or the obligations of Guarantors to Seller in any other respect or at any other time.

(h)     At the option of Seller, any Guarantor may be joined in any action or proceeding commenced by Seller against Purchaser in connection with or based upon the Guaranteed Obligations and recovery may be had against any Guarantor in such action or proceeding or in any independent action or proceeding against such Guarantor to the extent of such Guarantor's liability hereunder, without any requirement that Seller first assert, prosecute or exhaust any remedy or claim against Purchaser or any other Person, or any security for the obligations of Purchaser or any other Person.

(i)     Guarantors agree that this Guaranty shall continue to be effective or shall be reinstated, as the case may be, if at any time any payment is made by Purchaser or a Guarantor to Seller and such payment is rescinded or must otherwise be returned by Seller (as determined by Seller in its sole and absolute discretion) upon insolvency, bankruptcy, liquidation, reorganization, readjustment, composition, dissolution, receivership, conservatorship, winding up or other similar proceeding involving or affecting Purchaser or a Guarantor, all as though such payment had not been made.

6.    **Intentionally Omitted.**

7.    **Entire Agreement/Amendments.** This instrument represents the entire agreement between the parties with respect to the subject matter hereof. The terms of this Guaranty shall not be waived, altered, modified, amended, supplemented or terminated in any manner whatsoever except by written instrument signed by Seller and Guarantors.

8.    **Successors and Assigns.** This Guaranty shall be binding upon each Guarantor, and such Guarantor's estate, heirs, personal representatives, successors and assigns, may not be assigned or delegated by any Guarantor and shall inure to the benefit of Seller and its successors and assigns.

9.    **Applicable Law and Consent to Jurisdiction.** This Guaranty shall be governed by, and construed in accordance with, the substantive laws of the State of New York. Each of Seller and each Guarantor hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of and agrees that venue shall be proper in the United States Bankruptcy Court for the District of Delaware, and any appellate court therefrom, in any action or proceeding arising out of or relating to or connected with this Guaranty. Each of Seller and each Guaranty hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be heard and determined in such court. Each Guarantor irrevocably consents to the service of any and all process in any such suit, action or proceeding by service of copies of such process to such Guarantor at its address provided in Section 14 hereof. Nothing in this Section 9, however, shall affect the right of Seller to serve legal process in any other manner permitted by law or affect the right of Seller to bring any suit, action or proceeding against any Guarantor or its property in the courts of any other jurisdictions.

10. **Section Headings.** The headings of the sections and paragraphs of this Guaranty have been inserted for convenience of reference only and shall in no way define, modify, limit or amplify any of the terms or provisions hereof.

11. **Severability.** Any provision of this Guaranty which may be determined by any competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, each Guarantor hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.

12. **WAIVER OF TRIAL BY JURY.** EACH GUARANTOR HEREBY WAIVES THE RIGHT OF TRIAL BY JURY IN ANY LITIGATION, ACTION OR PROCEEDING ARISING HEREUNDER OR IN CONNECTION THEREWITH.

13. **Other Guaranties.** The obligations of each Guarantor hereunder are separate and distinct from, and in addition to, the obligations of such Guarantor now or hereafter arising under any other guaranties, indemnification agreements or other agreements to which such Guarantor is now or hereafter becomes a party. In no event shall any Guarantor be entitled to any credit against amounts due under this Guaranty by reason of amounts paid to Seller by Guarantors (or any of them) or any other person under or by reason of the other guaranties, indemnification agreements or other agreements to which Guarantors (or any of them) are now or hereafter become a party.

14. **Notices.** All notices, consents, approvals and requests required or permitted hereunder (a "*Notice*") shall be given in writing and shall be effective for all purposes if either hand delivered with receipt acknowledged, or by a nationally recognized overnight delivery service (such as Federal Express), or by certified or registered United States mail, return receipt requested, postage prepaid, or by facsimile and confirmed by facsimile answer back, in each case addressed as follows (or to such other address or Person as a party shall designate from time to time by notice to the other party): If to Seller: Capmark Finance, Inc., 485 Madison Avenue, New York, New York 10022, Attention: Jonathan B. Kohan, with a copy to: Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, Attention: Louis J. Hait, Esq.; if to any Guarantor: c/o Angelo, Gordon & Co., L.P., 245 Park Avenue, 26th Floor, New York, New York 10167, Attention: Dana Roffman, with a copy to: Duval & Stachenfeld LLP, 101 Park Avenue, 11th Floor, New York, New York 10178, Attention: Terri L. Adler, Esq. A notice shall be deemed to have been given: in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day; or in the case of overnight delivery, upon the first attempted delivery on a Business Day.

15. **Guarantor's Receipt of Purchase and Sale Agreement.** Each Guarantor by its execution hereof acknowledges receipt of a true copy of the Purchase and Sale Agreement.

16. **Expenses.** Each Guarantor hereby agrees to pay all costs, charges and expenses, including reasonable attorneys' fees and disbursements, that may be incurred by

Seller in enforcing the covenants, agreements, obligations and liabilities of Guarantors under this Guaranty, subject in each case, to the Guaranty Cap.

        **17.**    **Termination**.  Subject to Section 5(i), Guarantors' obligations under this Guaranty shall terminate on the date that any and all claims and other matters that are the subject of Section 7.1(b) of the Purchase and Sale Agreement and which have been asserted in writing by the claimant thereunder on or prior to the second anniversary of the date hereof have been fully and finally resolved and adjudicated beyond all right of appeal, and any and all obligations of Guarantors with respect thereto under this Guaranty (including under Section 16 above) have been paid in full, subject in any event to the Guaranty Cap.

        **18.**    **Counterparts**.  This Guaranty may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

**IN WITNESS WHEREOF**, each Guarantor has executed this Guaranty as of the date first above written.

<div style="margin-left:40%">

AG KIC REALTY FUND, L.P.,
AG REALTY FUND VII, L.P.,
AG REALTY FUND VII (TE), L.P.,
AG REALTY FUND VII (AC), L.P.,
each a Delaware limited partnership

By:   Angelo, Gordon & Co., L.P., a Delaware
      limited partnership, fund advisor or
      investment manager of each

     By:   _____
            Name:
            Title:

AG REALTY VII(AU) INVESTMENTS, L.P.

By:   AGR VII LLC, a Delaware limited liability
      company, its general partner

     By:   Angelo, Gordon & Co., L.P., a
           Delaware limited partnership, its
           manager

     By:   _____
            Name:
            Title:

</div>

<u>EXHIBIT N</u>

CAPMARK FINANCE INC.

<u>CERTIFICATE OF ASSISTANT SECRETARY</u>

I, LISA MALONEY, ASSISTANT SECRETARY OF CAPMARK FINANCE INC., a California corporation, (the "Corporation"), hereby certify that the following is a true and correct copy of the resolutions adopted by the Board of Directors of the Corporation by Unanimous Written Consent dated November 2, 1998 (the "Resolutions"), which Resolutions I certify to be in full force and effect on the date hereof:

**RESOLVED,** that instruments, documents, or agreements relating to or affecting the property or business and affairs of the Corporation may be executed in its name, with or without its corporate seal, by the persons hereinafter designated. For the purpose of this resolution, the terms "Executive Officer", "Senior Officer", "Junior Officer" and "Limited Signer" are defined as follows:

"Executive Officer" shall mean the President, Executive Vice President, Senior Vice President, Chief Financial Officer, Treasurer and Secretary.

"Senior Officer" shall mean all Executive Officers plus any Vice President.

"Junior Officer" shall mean any Assistant Vice President, Assistant Treasurer and Assistant Secretary.

"Limited Signer" shall mean any Junior Officer or non-officer employee designated by two Executive Officers, one of whom shall be the President, the Chief Operating Officer or the Chief Financial Officer of the Corporation, by filing a written authorization with the Secretary of this Corporation. Revocation of such authority shall likewise be filed with the Secretary.

1.    Any Executive Officer, acting alone, may execute:

a)    Any instruments, documents, or agreements which may be found necessary, proper, or expedient to be executed in conducting the business of the Corporation, except for the borrowing money or transfer of securities.

      b)     Deeds and conveyances of any real or personal property.

      c)     Leases (including those in which a security interest in personal property is granted).

      d)     Loan acquisition agreements and loan sale agreements including participation agreements and participation certificates, and broker agreements.

2.     Any Senior Officer, acting alone, may execute:

      a)     Deeds and conveyances of any real or personal property for a consideration of $300,000.00, or less.

      b)     Any and all documents and agreements relating to an individual loan closing including, but not limited to, matters relating to the application for HUD insurance.

      c)     Any endorsement of mortgage notes and/or assignment of security instruments (mortgages, deeds of trust, security deeds, etc.) relating to real estate loans held by the Corporation, either in its own behalf or in a fiduciary or agency capacity.

      d)     Full or partial releases, subordinations and satisfactions of security instruments (mortgages, deeds of trust, security deeds, etc.) relating to commercial and multi-family mortgage loans.

3.     Any Junior Officer, acting alone, may execute full or partial releases and satisfactions of security instruments (mortgages, deeds of trust, security deeds, etc.), relating to commercial and multi-family mortgage loans.

4.     A Limited Signer, acting alone, may execute any of the instruments, documents, or agreements listed in paragraphs 2(b) or 2(c) of this resolution.

5.     The Secretary shall designate by name any Assistant Secretary who is authorized to execute corporate certifications for this Corporation, and shall file such designation in the Corporation record books.

**FURTHER RESOLVED**, that purchasers of mortgage loans from this Corporation are hereby requested, authorized and directed to honor mortgage note endorsements and/or security instruments (mortgages, deeds of trust, security deeds, etc.), assignments drawn in the Corporation's name and executed by any authorized

person when bearing or purporting to bear the signature of such person in facsimile form.

**I FURTHER CERTIFY** that the person listed below is, as of this date, a duly elected, qualified and acting Officer or Limited Signer of the Corporation; is now serving in the official capacity set forth opposite his name, and his signature as set forth below is genuine:

| <u>Name</u> | <u>Title</u> | <u>Signature</u> |
|-------------|--------------|------------------|
| _____ | _____ | _____ |

**IN WITNESS WHEREOF**, I have executed this Certificate as of this ___ day of _____, 2010.

CAPMARK FINANCE INC.
**Debtor-in-Possession**

By:_____
          Name:  Lisa Maloney
          Title:  Assistant Secretary

EXHIBIT O

RELEASE AGREEMENT

This Release Agreement (this "**Release**") is made as of _____ __, 2010, by and among **CAPMARK INVESTMENTS LP, debtor in possession ("Releasor")** and (A)(i) **WDC HOLDINGS, LLC**, a Delaware limited liability company ("**Guarantor**"), (ii) **WDC GEORGETOWN PARK MANAGER, LLC**, a Delaware limited liability company ("**WDC Manager**"), (iii) **GEORGETOWN PARK PARTNERS, LLC**, a Delaware limited liability company ("**Borrower**"), and (iv) **WDC GEORGETOWN PARK, LLC**, a Delaware limited liability company **("WDC GPLLC")** (Guarantor, WDC Manager, Borrower and WDC GPLLC being collectively referred to as the "**WDC Parties**"), and (B) **HERBERT MILLER**, an individual ("**Miller**"). Each of the WDC Parties and Miller are referred to herein as a "**Released Party**" (and, together with its and his successors and assigns, predecessors, parents, subsidiaries and/or affiliated companies, and the shareholders, trustees officers, directors, partners, members, beneficial owners, attorneys in fact, employees, agents, representatives and attorneys of all of the foregoing and their respective heirs, executors, administrators, attorneys, successors, legal representatives and assigns, the "**Released Parties**").

WHEREAS, Borrower and **CAPMARK FINANCE INC.**, Debtor-in-possession ("**Lender**") are parties to that certain Loan Agreement dated as of February 28, 2007 (the "**Loan Agreement**") relating to one or more mortgage loans in the maximum amount of up to $70,400,000 (collectively, the "**Loan**"). Terms used but not otherwise defined herein shall have the meanings given in the Loan Agreement.

WHEREAS, pursuant to that certain Guaranty (Exceptions to Nonrecourse Liability) dated as of February 28, 2007, Guarantor agreed to guaranty certain of Borrower's Obligations with respect to the Loan.

WHEREAS, on the date hereof, concurrently with the execution and delivery of this Release, Lender has consummated the sale of the Loan to Angelo Gordon Real Estate Inc., a Delaware corporation or its assignee ("**Transferee**") under that certain Loan Purchase and Sale Agreement dated as of May __, 2010 between Lender and Angelo Gordon Real Estate Inc. (the "**LPSA**");

WHEREAS, pursuant to the LPSA, it is a condition to Transferee's obligation to buy the Loan to Transferee that Releasor executes and deliver this Release, and it is a condition to Lender's obligation to sell the Loan that Borrower and WDC Manger withdraw, with prejudice, proofs of claim numbers 1633 and 1634 filed by Borrower and proof of claim numbers 1483, 1484, 1619 and 1622 filed by WDC Manager (collectively, the "**Withdrawal of Proofs of Claim**") in the bankruptcy proceedings of Releasor and Lender;

WHEREAS, Releasor agrees that it will derive substantial benefit from the Withdrawal of Proofs of Claim; and

WHEREAS, pursuant to the LPSA, on the date hereof concurrently with the execution and delivery of this Release, the WDC Parties (other than Borrower) and Miller are executing and delivering a Release Agreement with Lender (the "**Other Release**").

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto hereby agree as follows:

1.   Release. Effective upon the date hereof, Releasor, on behalf of itself and each of its heirs, executors, administrators, successors, legal representatives and assigns and all persons claiming by, through or under it, and the shareholders, officers, directors, partners, members, employees, agents, representatives and attorneys of all of the foregoing and their respective heirs, executors, administrators, successors, legal representatives and assigns and all persons claiming by, through or under them or any of them, but solely in such capacity (and specifically excluding any Excluded Parties, as defined below) (all such included parties hereinafter collectively referred to as the "**Releasing Parties**"), do hereby remise, release, acquit and forever discharge each of the Released Parties of, from and against any and all manner of actions, causes of actions, choices in action, suits, debts, dues, sums of money, compensation, accounts, rentals, commissions, reckonings, bonds, bills, specialties, covenants, rights, contracts, controversies, agreements, promises, costs, damages, judgments, executions, claims and demands whatsoever, whether known or unknown, foreseen or unforeseen (regardless of by whom raised) in law or in equity, including, without implied limitation, such claims and defenses as fraud, mistake, duress, which the Releasing Parties, and/or any of them, and/or anyone claiming by, through or under any of the Releasing Parties, now have, ever had or may ever have from the beginning of time through the date hereof against the Released Parties or any of them, singly or in any combination, on account of, arising out of, or in connection with any thing, cause, matter, transaction, act or omission of any nature whatsoever of, or involving, in whole or in part, directly or indirectly, any of the following (collectively, all of the foregoing, the "**Claims**"): (i) the Property, and the renovation, development, redevelopment, management, operation, leasing, supervision financing and maintenance thereof, (ii) any claim under, pursuant to, or relating in any way to the Limited Liability Company Agreement of Borrower (the "**Borrower LLC Agreement**"), (iii) the EastBanc Litigation, as defined in the LPSA, (iv) any Claims against Releasor made by or through Capmark Co-Managing Member or Capmark Member (as those terms are defined in the Borrower LLC Agreement), or any of them, or their respective affiliates and related entities with respect to any of the matters referred to the preceding clauses (i) through (iii) or the following clauses (v) through (ix), (v) any Claims against Releasor made by or through TRECAP Partners, LLC, or any of its affiliates and related entities with respect to any of the matters referred to the preceding clauses (i) through (iv) or the following clauses (vi) through (ix), (vi) any Claims arising out or relating to the matters described in the proofs of claim filed by Borrower and/or WDC Manager, including proofs of claim numbers 1633, 1634, 1483, 1484, 1619 and 1622, in the bankruptcy proceedings of Lender, Capmark Investments LP and their affiliates (collectively, the **Proofs of Claim**"), (vii) any transactions, occurrences, acts, omissions, statements, promises, agreements or undertakings of Borrower to any of the Released Parties or by, between or among any of the direct or indirect members in Borrower or their advisors with respect to any of the matters referred to the preceding clauses (i) through (vii) or the following clauses (viii) and (ix), (viii) any Claims

concerning alleged misrepresentation, fraud, breach of fiduciary duty, breach of contract, conflict of interest, self-dealing, or other similar types of claims relating to the formation of Borrower, the investments made by Capmark Co-Managing Member and Capmark Member as members of Borrower, the entry into, partial performance and eventual default under that certain Loan Purchase Contract dated March 26, 2009 between Lender and Borrower, and (ix) any transactions, occurrences, acts, omissions, statements, promises, agreements or undertakings of any of the Released Parties (or of any agents, contractors, counsel or representatives of any Released Party) made or omitted to be made in connection with any of the foregoing <u>clauses (i)</u> through <u>(viii)</u> or other matters arising out of the relationship between any of the Releasing Parties and any of the Releasors with respect thereto, including any and all documents executed in connection therewith or any other document, instrument or agreement and the representations and warranties set forth herein or therein. For purposes of the avoidance of doubt, but without acknowledging in any way that any such Claims exist, Releasors, for themselves and for the Released Parties, acknowledge and agree that the foregoing release is not in any way a release of Claims, if any, held by any of the following (collectively, the "**<u>Excluded Parties</u>**") (1) Capmark Members (as that term is defined in the Limited Liability Company Agreement of Borrower, dated as of October 30, 2006) or any of the Capmark Members' respective successors and assigns, or any persons claiming by, through or under any of the Capmark Members, or the shareholders, officers, directors, partners, members, employees, agents, representatives and attorneys of any of the Capmark Members or (ii) TRECAP Partners, LLC, or any of its affiliates and related entities. Also for purposes of the avoidance of doubt, (A) "Releasing Parties" does not include Capmark Finance Inc., debtor in possession, and (B) this Release is not intended and shall not operate to release any rights, interests or claims (including Lender Claims as defined in Exhibit L to the LPSA) acquired or intended to be acquired by Transferee pursuant to the LPSA.

        2.     <u>Covenant Not to Sue</u>. Releasor hereby covenants and agrees, for and on behalf of itself and the Releasing Parties, that it shall forever refrain, and is hereby estopped, from instituting, prosecuting, asserting or otherwise pursuing or pressing against any of the Released Parties any of the Claims (whether or not such Claims are now existing or are hereafter discovered).

        3.     <u>Representations and Warranties</u>.

        (a)     Releasor represents and warrants to the Released Parties that, as of the date hereof:

        i.     <u>Organization</u>. The Releasor (i) is a duly organized and validly existing entity in good standing under the laws of the State of its formation, (ii) has the requisite entity power and authority to carry on its business as now being conducted, and (iii) has the requisite entity power to execute and deliver, and perform its obligations under, this Release.

        ii.     <u>Authorization</u>. The execution and delivery by the Releasor of this Release and its performance of its obligations hereunder (i) have been duly authorized by all requisite entity action and by all required action by the Bankruptcy Court in the bankruptcy proceedings of Lender, Releasor and their affiliates, if any, (ii) will not violate any provision of any applicable legal requirements, any order, writ,

decree, injunction or demand of any court or other governmental authority, any organizational document or any indenture or agreement or other instrument to which the Releasor is a party or by which the Releasor is bound (iii) to the knowledge of the Releasor, will not conflict with, result in a breach of, or constitute a default under, any of the terms, conditions or provisions of any agreement or instrument to which the Releasor, or any other affiliate of the Releasor, is a party or by which it is bound and (iv) to the knowledge of the Releasor, will not be in conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under, or result in the creation or imposition of any lien of any nature whatsoever upon any of the property or assets of the Releasor pursuant to, any indenture or agreement or instrument. Except for the approval of the United States Bankruptcy Court for the District of Delaware, if and to the extent applicable hereto (and which, if applicable, Releasor covenants to obtain), Releasor is not required to obtain any consent, approval or authorization from or to file any declaration or statement with, any governmental authority or other agency in connection with or as a condition to the execution, delivery or performance of this Release. This Release has been duly authorized, executed and delivered by the Releasor.

    iii. <u>Enforceability</u>. This Release is a legal, valid and binding obligation of Releasor, enforceable against each such party in accordance with its terms, subject to bankruptcy, insolvency and other limitations on creditors' rights generally and to equitable principles.

    iv. <u>No Transfer of Claims</u>. Releasor has not has transferred or encumbered any of the Claims.

    4. <u>Governing Law; JURY TRIAL WAIVER</u>. This Release shall be construed in accordance with and governed by the laws of the State of New York applicable to agreements executed in and to be performed in New York and by any applicable Federal law. Until the chapter 11 cases of Lender, Capmark Investments LP and their affiliated debtors and debtors in possession are closed or dismissed, each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of and agrees that venue shall be proper in the United States Bankruptcy Court for the District of Delaware, and any appellate court therefrom, in any action or proceeding arising out of or relating to or connected with this Agreement. Each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be heard and determined in such court until such chapter 11 cases are closed or dismissed. Following the closing or dismissal of the chapter 11 cases of Lender, Capmark Investments LP and their affiliated debtors and debtors in possession, each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of and agrees that venue shall be proper in the United States Bankruptcy Court for the District of Delaware or any state or federal court in New York County in the State of New York, and any appellate court therefrom. Each of the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding shall be heard and determined in any such court at any time following the closing or dismissal of such chapter 11 cases. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATED TO THIS RELEASE.

5.    Integration; amendment.  This Release constitutes the sole agreement of the parties with respect to the subject matter hereof and supersedes all oral negotiations and prior writings with respect to the subject matter hereof.  This Release may not be modified or amended except in a writing executed by the person or entity against whom enforcement of such modification or amendment is sought.

6.    Successors and assigns.  This Release (i) shall be binding upon the Releasors and, where applicable, their respective heirs, executors, administrators, successors and permitted assigns, and (ii) shall inure to the benefit of the Released Parties and their respective heirs, executors, administrators, successors and assigns.

7.    Severability and consistency.  The illegality, unenforceability or inconsistency of any provisions of this Release shall not in any way affect or impair the legality, enforceability or consistency of the remaining provisions of this Release or any instrument or agreement executed in connection herewith.

8.    Counterparts.  This Release may be executed in any number of counterparts and by the different parties on separate counterparts.  Each such counterpart shall be deemed an original, but all such counterparts shall together constitute one and the same agreement.  An electronically transmitted counterpart of this Release shall constitute an original for all purposes.

9.    Void Ab Initio.  This Release shall be void ab initio and of no force or effect if (i) any of the Released Parties ever file, commence, maintain, join in, prosecute or participate in, or direct or induce any other person or entity to commence, maintain, join in, prosecute or participate in, any claim, suit, action or proceeding in which any Claim (as such term is defined in the Other Release) is asserted against Releasor or Capmark Finance Inc. or (ii) if for any reason the Withdrawal of Proofs of Claim is void, voided or otherwise determined by final order of any court of competent jurisdiction to be not legally binding on Borrower or WDC Manager.

[TEXT ENDS – SIGNATURES COMMENCE ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties hereto have caused this Release to be duly executed by their duly authorized representatives, all as of the day and year first above written.

**CAPMARK INVESTMENTS LP, debtor in possession**

**By:**_____]

EXHIBIT P

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

*In re*                                                      :

                                                             :

**CAPMARK FINANCIAL GROUP INC.,** *et al.,*                  :

                                                             :

**Debtors.**                                                 :

                                                             :

-------------------------------------------------------------x

**Chapter 11 Case No.**

**09-13684 (CSS)**

**Jointly Administered**

## ORDER (A) SCHEDULING AN AUCTION IN CONNECTION WITH THE SALE OF THE GEORGETOWN PARK PARTNERS, LLC LOAN; (B) APPROVING BIDDING PROCEDURES; (C) APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (D) SCHEDULING A SALE HEARING; (E) ESTABLISHING OBJECTION DEADLINE; AND (F) APPROVING SALE HEARING NOTICE

Upon the motion, dated as of May __, 2010 (the "Motion"),[1] of Capmark

Financial Group, Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and

debtors in possession (collectively, the "Debtors"),[2] pursuant to sections 105(a) and 363 of title

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such term in the Motion.

[2]     The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are:  Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826),

11, United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 9014 and 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1

of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules") requesting the

following relief from this Court:

(I)     entry of an order (the "Bidding Procedures Order"):

    (i)     scheduling a hearing (the "Sale Hearing") to consider approval of the proposed sale (the "Sale") by Capmark Finance Inc. (the "Seller"), of the Seller's ownership interest in a loan in the original maximum principal amount of $70,400,000 made to Georgetown Park Partners, LLC, together with the accompanying loan file (collectively, the "Georgetown Loan") to (a) Angelo Gordon Real Estate Inc. (or its assignee as permitted by the Purchase Agreement (as defined below)) (the "Purchaser") under that certain Purchase Agreement (together with all exhibits, schedules and agreements attached thereto, the "Purchase Agreement"), between the Seller and Purchaser, dated as of May __, 2010, attached to the Motion as Exhibit C, or (b) another Successful Bidder (as defined below);

    (ii)    establishing the objection deadline in connection with the proposed Sale;

    (iii)appr    oving the form, and notice procedures relating to, the Auction and Sale Hearing Notice (as defined below);

    (iv)    scheduling an auction ("Auction") to the extent the Seller receives additional higher or better offers from Qualifying Bidders (as defined below) for the Georgetown Loan;

    (v)     approving the bidding procedures (the "Bidding Procedures"), as set forth herein; and

    (vi)    approving the break up fee (the "Break-Up Fee") and expense reimbursement ("Expense Reimbursement") payable to the Purchaser under the Purchase Agreement;

---

Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (7799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), and Capmark Investments LP (7999). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

(II)  upon completion of the Sale Hearing, entry of an order (the "Sale Order"):

    (i)  if no higher and/or better offers from Qualifying Bidders have been received, approving the Seller's entry into and performance under the Purchase Agreement without the necessity of conducting an Auction; or

    (ii)  if a higher and/or better offer from a Qualifying Bidder is received, and therefore, an Auction is held, authorizing the Sale of the Georgetown Loan to Purchaser, or to another Successful Bidder, free and clear of any and all liens, encumbrances, claims, and interests of any kind, nature or description (collectively, the "Liens") pursuant to section 363(f) of the Bankruptcy Code, pursuant to the Purchase Agreement, or a Modified Purchase Agreement (as defined below), other than the Designated Defenses (as defined in the Purchase Agreement), if any; and

    (iii) in the even  t there is no Auction or the Purchaser is the Successful Bidder at the Auction, authorizing the Debtors in connection with the consummation of the Purchase Agreement to consummate a settlement with WDC Holdings, LLC, WDC Georgetown Park Manager, LLC, WDC Georgetown Park, LLC and Herbert Miller (collectively, the "Miller Parties") pursuant to which (a) the Miller Parties, on the one hand, and Seller and Capmark Investments LP, on the other hand, would exchange mutual releases, (b) Seller and Capmark Investments LP would conditionally release Georgetown Park Partners, LLC and (c) Georgetown Park Partners, LLC and WDC Georgetown Park Manager, LLC would withdraw with prejudice their proofs of claim filed against the Debtors (collectively, the "Settlement");

and due and proper notice of the Motion having been provided to (i) the U.S. Trustee, (ii) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, (iii) counsel to the Purchaser, (iv) Wilmington Trust FSB, as successor trustee under the prepetition senior unsecured floating rate note, 5.875% senior unsecured note, and 6.300% senior unsecured note indentures, (v) counsel to the Committee, (vi) any party who, in the past twelve (12) months, expressed in writing to the Debtors an interest in acquiring the Georgetown Loan, and who the Debtors and their representatives reasonably and in good faith determine potentially have the

desire and financial wherewithal to effectuate the Sale, and (vii) all parties requesting notice

pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b), and it appearing that no other or

further notice need be provided; and the Court having determined that the relief sought in the

Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

FOUND AND DETERMINED THAT:[3]

     A.    The Court has jurisdiction to consider the Motion and the relief requested

therein pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

     B.    Good and sufficient notice of the Motion has been given under the

circumstances, and no further or other notice is required. A reasonable opportunity to object or

be heard regarding the relief requested in the Motion has been afforded to all interested persons.

     C.    The notice of Auction and Sale Hearing, annexed hereto as <u>Schedule 1</u>

(the "<u>Auction and Sale Hearing Notice</u>"), is appropriate and reasonably calculated to provide

interested parties with timely and proper notice of the Auction and Sale Hearing and related

deadlines, and no other or further notice is required.

     D.    The Break-Up Fee and Expense Reimbursement to be paid under the

circumstances set forth herein and in the Purchase Agreement (i) are an actual and necessary cost

and expense of preserving the Debtors' estates within the meaning of section 503(b) of the

Bankruptcy Code, (ii) are commensurate to the real and substantial benefit conferred upon the

Debtors' estates by the Purchaser, (iii) are reasonable and appropriate in light of the size and

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

nature of the proposed Sale, the commitments that have been made, and the substantial time and

efforts that have been and will be expended by the Purchaser, (iv) were necessary to induce the

Purchaser to enter into the Purchase Agreement and are necessary to ensure that the Purchaser

will continue to pursue the Sale and continue to be bound by the Purchase Agreement (as

opposed to exercising its right of termination if the Break-Up Fee and Expense Reimbursement

are not approved as contemplated by the Purchase Agreement), and (v) the fees were negotiated

in good faith and at arm's length by the Seller and the Purchaser.

      E.    The Bidding Procedures have been reasonably designed to induce

competitive bidding and maximize the purchase price and other consideration to be received for

the Georgetown Loan.

      F.    The Debtors have articulated good and sufficient reasons for this Court,

and that the best interests of the estates will be served by, to grant the relief requested in the

Motion, including this Court's (i) approval of the Bidding Procedures, and (ii) approval of

payment of the Break-Up Fee and Expense Reimbursement on the terms set forth herein and in

the Purchase Agreement. The Debtors have articulated good and sufficient reasons for, and that

the best interests of their estates will be served by, this Court scheduling a subsequent hearing to

consider whether to grant the remainder of the relief requested in the Motion, including approval

of the Sale in accordance with either the Purchase Agreement or the Modified Purchase

Agreement between the Seller and the Successful Bidder, free and clear of all Liens pursuant to

sections 363(b) and (f) of the Bankruptcy Code, other than the Designated Defenses, if any.

      NOW THEREFORE, IT IS HEREBY ORDERED THAT:

      1.    The Motion is granted to the extent described herein.

      2.    The Bidding Procedures, as set forth below, are approved and shall apply
with respect to the proposed sale of the Georgetown Loan (provided the Debtors may modify,
amend and waive, as applicable, the Bidding Procedures in their sole discretion after consultation

with the Committee, except that any such modification, amendment or waiver that is materially different than the Bidding Procedures set forth herein or that adversely affects Purchaser's rights in respect of the Deposit (as defined in the Purchase Agreement), the Break-Up Fee, and the Expense Reimbursement may not be made without Purchaser's consent):

(a)  **Assets to Be Sold**:  The assets to be sold shall consist of the assets comprising the Georgetown Loan.

(b)  **Confidentiality Agreements**:  Upon execution of a confidentiality agreement, in form and substance satisfactory to the Seller, any party that wishes to conduct due diligence in respect of the Georgetown Loan may be granted access to all material information that has been or will be provided to Purchaser and other bidders; *provided, however*, prior to receipt by a party of any information from the Debtors (including, but not limited to, the Purchase Agreement and its schedules and exhibits, business and financial information and access to representatives of the Seller), each such party will be required to deliver evidence reasonably satisfactory to the Seller establishing such party's financial capability to timely consummate a purchase of the Georgetown Loan.

(c)  **Bid Deadline**:  Any person or entity interested in participating in the Auction must submit a Qualifying Bid (as defined below) on or before _____, 2010 at 12:00 p.m. noon (prevailing Eastern Time) (the "Bid Deadline") in writing, to (1) counsel to the Debtors, Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York, 10019, Attention: Michael P. Kessler, Esq. and Judy G.Z. Liu, Esq., (2) corporate counsel to the Seller, Kaye Scholer LLP, 425 Park Avenue, New York, New York, 10022, Attention: Louis J. Hait, Esq. and Benjamin Mintz, Esq., (3) Capmark Finance Inc., 116 Welsh Road, Horsham, Pennsylvania, 19044, Attention: Jonathan Kohan, and (4) counsel to the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York, 10036, Attention: Thomas Moers Mayer, Esq. and Amy Caton, Esq.

(d)  **Qualifying Bids**:  To participate in the bidding process and be deemed a "Qualifying Bidder," each potential bidder (other than the Purchaser) must submit a "Qualifying Bid" by the Bid Deadline.  The Purchase Agreement is deemed a Qualifying Bid and Purchaser is deemed a Qualifying Bidder. Otherwise, to constitute a Qualifying Bid a bid must:

(i)  be in writing and state that such bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Georgetown Loan on aggregate terms and conditions no less favorable to the Seller than the terms and conditions contained in the Purchase Agreement, and with a cash purchase price of no less than the Purchaser's purchase price plus the Break-Up Fee, the Expense Reimbursement, and $500,000;

> provided that a Qualifying Bid need not include a release in favor of Seller from the Borrower Parties;

(ii)    have a purchase price consisting only of cash;

(iii) provide    details of any assumptions about the transaction that are key to the purchase price;

(iv)    include a mark-up of the Purchase Agreement (a "<u>Modified Purchase Agreement</u>") reflecting the variations from the Purchase Agreement, and a clean and executed Modified Purchase Agreement;

(v)    otherwise include terms and conditions substantially the same in all respects to the Purchase Agreement (including with respect to the representations and warranties);

(vi)    provide that such bidder's offer is irrevocable until the closing of the purchase of the Georgetown Loan if such bidder is the Successful Bidder or the Back-Up Bidder (each as defined below) including, without limitation, without regard to whether the borrower for the Georgetown Loan becomes the subject of a bankruptcy proceeding;

(vii)    state such bidder is financially capable of consummating the transactions contemplated by the Modified Purchase Agreement, and that there are no financing, due diligence or other material contingencies for the bidder to consummate the Modified Purchase Agreement;

(viii)    provide that such bidder will close on the sale of the Georgetown Loan within the same time period provided for in the Purchase Agreement;

(ix)    include such financial and other information that will allow the Seller to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement;

(x)    include a statement that there are no conditions precedent to the bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid;

(xi)    not request or entitle the bidder to any transaction or break-up fee, termination fee, expense reimbursement, or similar type of payment;

(xii)    fully disclose the identity of each entity that will be bidding for the Georgetown Loan or otherwise participating in connection with such bid, and the complete terms of any such participation;

(xiii)    include any other information or factors that may be relevant to the Seller and its advisors in consideration of the bid; and

(xiv)    include a cash deposit by wire transfer equal to $10,000,000 (the "Good Faith Deposit") with such deposit being non-refundable on terms consistent with those set forth in the Purchase Agreement.

The Seller shall make a determination regarding whether a bid is a Qualifying Bid, after consultation with the Committee, and shall notify bidders whether their bids have been determined to be Qualifying Bids by no later than one hour before the start of the Auction;

(e)    **No Qualifying Bids**:  If no timely, conforming Qualifying Bids, other than the Purchase Agreement, are submitted by the Bid Deadline, the Seller shall not hold an Auction and, instead, shall request at the Sale Hearing that the Court approve the Purchase Agreement with Purchaser.

(f)    **Auction**:  In the event the Seller timely receives one or more Qualifying Bids other than the Purchase Agreement, the Seller shall conduct the Auction with respect to the Georgetown Loan.  The Auction will be held at the offices of Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, on _____, 2010 at _____ _.m. (prevailing Eastern Time), or such other location as designated by the Debtors in a notice to all Qualifying Bidders.  The Auction shall be governed by the following procedures (which may be amended, modified and waived, as applicable, by the Debtors at any time in their sole discretion after consultation with the Committee except that any such modification, amendment or waiver that is materially different than the Bidding Procedures set forth herein or that adversely affects Purchaser's rights in respect of the Deposit, the Break-Up Fee, the Expense Reimbursement may not be made without Purchaser's consent):

(i)    The Purchaser and the Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

(ii)    Only representatives of the Debtors, the Purchaser, Qualifying Bidders, counsel and other advisors selected by the Committee, and representatives from the Office of the U.S. Trustee, shall be entitled to be present at the Auction;

(iii)Upon the    commencement of Auction, the identity of each Qualifying Bidder and the material terms of its Qualifying Bid shall be disclosed to all other Qualifying Bidders;

(iv) The Auction shall be transcribed by a qualified court reporter, unless otherwise provided herein;

(v) Only the Purchaser and Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

(vi) Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

(vii) Bidding shall commence at the amount of the highest Qualifying Bid submitted by the Qualifying Bidders prior to the Auction, as determined by the Seller after consultation with the Committee, and such bid shall be announced prior to the start of the Auction (the "Initial Highest Bid");

(viii) Qualifying Bidders may submit subsequent bids to the Initial Highest Bid and all such subsequent bids must be stated in an amount exceeding each prior bid by $250,000 in cash purchase price consideration;

(ix) The Seller may determine the order in which Qualifying Bidders shall bid at the Auction;

(x) All Qualifying Bidders and the Purchaser shall be able to submit additional bids and make additional modifications to the Purchase Agreement or Modified Purchase Agreement, as applicable, at the Auction as determined by the Seller at any time in its sole discretion after consultation with the Committee;

(xi) The Debtors shall credit the amount of the Break-Up Fee and Expense Reimbursement to each and every bid submitted by Purchaser at the Auction, meaning that if the Purchaser's subsequent bid is the then-highest and best bid at the Auction, any subsequent bid must exceed Purchaser's bid by the amount of the Break-Up Fee plus the Expense Reimbursement plus $250,000 in cash purchase price consideration;

(xii) The Auction may include individual negotiations with the Qualifying Bidders and the Purchaser and/or open bidding in the presence of all other Qualifying Bidders and the Purchaser;

(xiii) Subject to Local Rule 6004(c)(ii)(D), the Seller may determine, in its sole discretion and after consultation with the Committee, whether and to what extent individual negotiations or discussions conducted with Qualifying Bidders during the Auction shall be transcribed;

(xiv)   The Seller may, in its sole discretion and after consultation with the Committee, discuss any Qualifying Bid with other Qualifying Bidders individually or together in any other group or groups of Qualifying Bidders, as determined by the Seller;

(xv)   The Auction shall continue until there is only one offer that the Seller determines, after consultation with the Committee and subject to Court approval, is the highest and/or best offer for the Georgetown Loan from among the Qualifying Bids submitted at the Auction (the "Successful Bid").  In making this decision, the Seller may consider any factors it deems relevant, including, without limitation, the amount of the purchase price, the form of consideration being offered, the expense to the Debtors of any obligation to pay the Break-Up Fee and Expense Reimbursement, the likelihood of the Qualifying Bidder's ability to comply with the terms of the applicable Modified Purchase Agreement and otherwise close a transaction and the timing thereof, the number, type, and nature of any changes to the Purchase Agreement requested by each Qualifying Bidder, any contingencies relating to a Qualifying Bidder's offer, the extent of any releases or indemnities granted to Seller and the net benefit to the Debtors' estates.  The Purchaser or Qualifying Bidder submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of a purchaser, as set forth in the applicable Purchase Agreement or Modified Purchase Agreement; and

(xvi)   Within three (3) days after conclusion of the Auction, but prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.  Bids made after the close of the Auction shall not be considered by the Seller.

**(g)**   **Back-Up Bidder and Return of Good Faith Deposits:**

(i)   If an Auction is conducted, the Qualifying Bidder (including the Purchaser with respect to its offer in the Purchase Agreement) with the next highest or otherwise best Qualified Bid, as determined by the Seller in the exercise of its business judgment at the Auction and in consultation with the Committee, shall be required to serve as a back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until twelve (12) business days after the conclusion of the Auction.  Following the Sale Hearing, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new

Successful Bidder, and the Debtors will be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Court.

(ii)     Except as otherwise provided herein, Good Faith Deposits shall be returned to each bidder not selected by the Seller as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) business day following the conclusion of the Auction. The Good Faith Deposit of the Back-Up Bidder shall be held by the Debtors until the earlier of (a) thirteen (13) business days after the conclusion of the Auction and (b) one (1) business day after the closing of the Sale transaction with the Successful Bidder.

3.     The Break-Up Fee and Expense Reimbursement are approved. The Seller is hereby authorized and directed to pay the Break-Up Fee and Expense Reimbursement in accordance with the terms of the Purchase Agreement including in the event the Georgetown Loan is sold to another bidder and the Purchase Agreement is terminated as a result of entry of an Order approving an alternative transaction. In the event the Break-Up Fee and Expense Reimbursement are payable in accordance with the terms of the Purchase Agreement, the Seller shall immediately pay the Break-Up Fee and Expense Reimbursement in cash to the Purchaser as an administrative expense claim in Seller's chapter 11 case pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code. The Seller's obligation to pay the Break-Up Fee and Expense Reimbursement shall survive termination of the Purchase Agreement and shall not be subordinated to any other administrative expense claim pursuant to any order entered after the date hereof.

4.     The escrow provisions set forth in Exhibit J to the Purchase Agreement with respect to Purchaser's $10,000,000 deposit are approved.

5.     The form and manner of providing the Auction and Sale Hearing Notice is hereby approved. Service of the Auction and Sale Hearing Notice, as set forth below, constitutes good and sufficient notice of the Auction and Sale Hearing.

6.     The Court shall hold the Sale Hearing on ___, 2010 at ____ _.m. (prevailing Eastern Time) at which time the Court will consider approval of the Sale of the Georgetown Loan to Purchaser or the Successful Bidder.

7.     Any objection (an "Objection") to the Sale of the Georgetown Loan and the Settlement must be filed and served so as to be actually received on or before 4:00 p.m. on _____, 2010 by (a) counsel for the Debtors, Dewey & LeBoeuf LLP, Attention: Michael P. Kessler, Esq., and Judy G.Z. Liu, Esq., 1301 Avenue of the Americas, New York, New York 10019; (b) local counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq.; (c) corporate counsel to the Seller, Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, Attention: Louis J. Hait, Esq. and Benjamin Mintz, Esq.; (d) counsel for Purchaser, Duval & Stachenfeld LLP, 101 Park Avenue, 11th Floor, New York, New York 10178, Attention: Kirk L. Brett, Esq.; (e) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington,

Delaware 19801; (f) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, 1615 Brett Rd. Bldg. 3, New Castle, Delaware 19720, Attention: Ralph Townley; (g) successor trustee under the prepetition senior unsecured floating rate note, 5.875% senior unsecured note, and 6.300% senior unsecured note indentures, Wilmington Trust FSB, 166 Mercer Street, Suite 2-R, New York, New York 10012-3249, Attention: Adam Berman; (h) counsel to the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attention: Thomas Moers Mayer, Esq. and Amy Caton, Esq.; and (i) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b). Each Objection must state with specificity the nature of such Objection.

       8.    The notices described in the subparagraphs below shall be sufficient and no further notice shall be required if given as follows:

       (i)    The Debtors shall serve, within three (3) business days after entry of the Bidding Procedures Order (the "Mailing Deadline"), by overnight courier, electronic mail, or same-day messenger delivery, and copies of the Auction and Sale Hearing Notice upon: (i) the U.S. Trustee, (ii) attorneys for the Committee, (iii) attorneys for the Purchaser, (iv) any party who, in the past twelve (12) months, expressed in writing to the Debtors an interest in acquiring the Georgetown Loan, and who the Debtors and their representatives reasonably and in good faith determine potentially have the desire and financial wherewithal to effectuate the Sale, (v) all parties who are known to possess or assert a secured claim against the Georgetown Loan, (vi) the Internal Revenue Service, (vii) the SEC, (viii) all applicable state attorneys general, local realty enforcement agencies, and local regulatory authorities, and (ix) any parties entitled to notice under Rule 2002-1(b) of the Local Rules for the United States Bankruptcy Court for the District of Delaware.

      (ii)    On or before the Mailing Deadline, or as soon as practical thereafter, the Debtors will publicize the Auction and Sale Hearing Notice in the Wall Street Journal (National Edition) for one business day.

       9.    Failure of any objecting person or entity to timely file its Objection shall be an absolute bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion or the consummation and performance of the Sale (including the transfer free and clear of all Liens other than the Designated Defenses, if any).

      10.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Bidding Procedures Order including with respect to the escrow provisions set forth in Exhibit J to the Purchase Agreement. The Debtors are hereby authorized and empowered to take such steps, expend such sums of money, and do such other

things as may be necessary to implement and effect the terms and requirements of this Bidding Procedures Order.

11.    Notwithstanding any other provision contained herein, the Debtors, after consultation with the Committee, may adjourn or cancel the Auction or Sale at any time as an exercise of their sound business judgment.

12.    Notwithstanding any potential applicability of Bankruptcy Rule 6004(h) or other Rule, this Bidding Procedures Order shall not be stayed for ten (10) days after the entry hereof and shall be effective and enforceable upon signature hereof.

Dated: _____, 2010
　　　　Wilmington, Delaware

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　CHRISTOPHER S. SONTCHI
　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT Q**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                         :
*In re*                                  :        **Chapter 11 Case No.**
                                         :
**CAPMARK FINANCIAL GROUP INC.,** *et al.,*  :
                                         :        **09-13684 (CSS)**
         **Debtors.**                    :
                                         :        **Jointly Administered**
                                         :
---------------------------------------------------------------x

## ORDER AUTHORIZING SALE OF THE GEORGETOWN PARK PARTNERS, LLC
## LOAN FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS
## AND APPROVING RELATED SETTLEMENT

Upon the motion, dated as of May ___, 2010 (the "<u>Motion</u>")[1] of Capmark Financial

Group, Inc. ("<u>CFGI</u>") and certain of its subsidiaries and affiliates, as debtors and debtors in

possession (collectively, the "<u>Debtors</u>"),[2] pursuant to sections 105(a) and 363 of title 11, United

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such term in the Motion.

[2]     The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P.

States Code (the "Bankruptcy Code"), Rules 2002, 6004, 9014 and 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local

Bankruptcy Rules for the District of Delaware (the "Local Rules") requesting the following relief

from this Court:

(I)     entry of an order (the "Bidding Procedures Order"):

    (i)     scheduling a hearing (the "Sale Hearing") to consider approval of
the proposed sale (the "Sale") by Capmark Finance Inc. (the
"Seller"), of the Seller's ownership interest in a loan in the original
maximum principal amount of $70,400,000 made to Georgetown
Park Partners, LLC, together with the accompanying loan file
(collectively, the "Georgetown Loan") to (a) Angelo Gordon Real
Estate Inc. (or its assignee as permitted by the Purchase Agreement
(as defined below)) (the "Purchaser") under that certain Purchase
Agreement (together with all exhibits, schedules and agreements
attached thereto, the "Purchase Agreement"), between the Seller
and Purchaser, dated as of May __, 2010, attached to the Motion as
Exhibit C, or (b) another Successful Bidder (as defined below);

    (ii)    establishing the objection deadline in connection with the proposed
Sale;

    (iii)appr     oving the form, and notice procedures relating to, the Auction
and Sale Hearing Notice (as defined in the Bidding Procedures
Order);

    (iv)    scheduling an auction ("Auction") to the extent the Seller receives
additional higher or better offers from Qualifying Bidders (as
defined in the Bidding Procedures Order) for the Georgetown
Loan;

    (v)     approving the bidding procedures (the "Bidding Procedures"), as
set forth herein; and

    (vi)    approving the break-up fee (the "Break-Up Fee") and expense
reimbursement ("Expense Reimbursement") payable to the
Purchaser under the Purchase Agreement;

---

(9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark
Affordable Equity Inc. (2381), and Capmark Investments LP (7999). CFGI's corporate headquarters is
located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are
available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

(II)    upon completion of the Sale Hearing, entry of an order (the "Sale Order"):

(i)    if no higher and/or better offers from Qualifying Bidders have been received, approving the Seller's entry into and performance under the Purchase Agreement without the necessity of conducting an Auction; or

(ii)    if a higher and/or better offer is received from a Qualifying Bidder, and therefore, an Auction is held, authorizing the Sale of the Georgetown Loan to Purchaser, or to another Successful Bidder, free and clear of any and all liens, encumbrances, claims, and interests of any kind, nature or description (collectively, the "Liens") pursuant to section 363(f) of the Bankruptcy Code, pursuant to the Purchase Agreement, or a Modified Purchase Agreement (as defined in the Bidding Procedures Order) other than the Designated Defenses (as defined in the Purchase Agreement), if any; and

(iii) in the even    t there is no Auction or the Purchaser is the Successful Bidder at the Auction, authorizing the Debtors in connection with the consummation of the Purchase Agreement to consummate a settlement with WDC Holdings, LLC, WDC Georgetown Park Manager, LLC, WDC Georgetown Park, LLC and Herbert Miller (collectively, the "Miller Parties") pursuant to which (a) the Miller Parties, on the one hand, and Seller and Capmark Investments LP, on the other hand, would exchange mutual releases, (b) Seller and Capmark Investments LP would conditionally release Georgetown Park Partners, LLC and (c) Georgetown Park Partners, LLC and WDC Georgetown Park Manager, LLC would withdraw with prejudice their proofs of claim filed against the Debtors (collectively, the "Settlement");

and due and proper notice of the Motion having been provided to (i) the U.S. Trustee,

(ii) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors'

prepetition senior credit facility, bridge loan agreement and term loan facility, (iii) counsel to the

Purchaser, (iv) Wilmington Trust FSB, as successor trustee under the prepetition senior

unsecured floating rate note, 5.875% senior unsecured note, and 6.300% senior unsecured note

indentures, (v) counsel to the Committee, (vi) any party who, in the past twelve (12) months,

expressed in writing to the Debtors an interest in acquiring the Georgetown Loan, and who the

Debtors and their representatives reasonably and in good faith determine potentially have the

desire and financial wherewithal to effectuate the Sale, and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b); and the Bidding Procedures Order having been entered by the Court on _____, 2010; and the Debtors having provided notice of the Auction and Sale Hearing by service and publication of the Auction and Sale Hearing Notice in the manner set forth in the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

      A.    The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      B.    Time is of the essence in consummating a Sale of the Georgetown Loan and it is in the best interests of Capmark Finance Inc. ("Seller") and its estate to sell the Georgetown Loan within the time constraints set forth in the Motion and the Purchase Agreement. The terms of the Purchase Agreement are the highest and best terms that have been offered for Sale of the Georgetown Loan.

      C.    Upon the closing of the Purchase Agreement (the "Closing"), the Georgetown Loan will have been acquired by Purchaser after adequate marketing and in good faith and as the result of arm's-length negotiations.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

D.      Reasonable notice of the Sale and a reasonable opportunity to object or be heard with respect to the Sale of the Georgetown Loan has been afforded to all interested persons and entities, including: (i) the U.S. Trustee, (ii) Citibank, N.A. and Citicorp North America, Inc., as administrative agents under the Debtors' prepetition senior credit facility, bridge loan agreement and term loan facility, (iii) counsel to the Purchaser, (iv) Wilmington Trust FSB, as successor trustee under the prepetition senior unsecured floating rate note, 5.875% senior unsecured note, and 6.300% senior unsecured note indentures, (v) counsel to the Committee, (vi) any party who, in the past 12 (twelve) months, expressed in writing to the Debtors an interest in acquiring the Georgetown Loan, and who the Debtors and their representatives reasonably and in good faith determine potentially have the desire and financial wherewithal to effectuate the Sale, and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).

E.      Neither the execution of the Purchase Agreement nor the consummation of the Sale of the Georgetown Loan, in accordance with the terms of the Purchase Agreement, shall constitute a violation of any provision of the organizational documents of Seller or any other instrument, law, regulation, or ordinance by which Seller is bound.

F.      Upon entry of this Sale Order, Seller shall have full power and authority to consummate the Sale and all related transactions contemplated by the Purchase Agreement. The Purchase Agreement and the Sale have been duly and validly authorized by all necessary action of Seller and no shareholder vote, board resolution, or other corporate action is required of Seller for Seller to consummate such Sale.

G.    This Sale Order and consummation of the Sale are supported by good business reasons and will serve the best interests of Seller, its estate, and creditors by maximizing the value received for the Georgetown Loan.

H.    The Purchase Agreement was negotiated, proposed, and entered into by Purchaser without collusion, in good faith, and from an arm's-length bargaining position. There is no insider relationship between affiliates of Purchaser and the Seller. The Seller and Purchaser have not engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.

I.    [The Auction was held on ___, 2010. The Debtors conducted the Auction fairly, reasonably and in good faith. At the conclusion of the Auction, the Debtors determined that Purchaser submitted the highest and best bid and Purchaser was designated the Successful Bidder (as defined in the Bidding Procedures Order). At the conclusion of the Auction, the Debtors determined that ___ submitted the second highest and best bid and ___ was designated the Back-Up Bidder (as defined in the Bidding Procedures Order).]

J.    Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such is entitled to all of the protections afforded thereby, and otherwise has acted in good faith in all respects in connection with this proceeding, in that: (i) Purchaser recognized that the Seller was free to deal with other parties interested in acquiring the Georgetown Loan; (ii) Purchaser agreed to provisions in the Purchase Agreement which would enable the Seller to accept a higher and better offer for the Georgetown Loan; (iii) Purchaser in no way induced or caused the chapter 11 filing of the Seller or any of the Debtors; (iv) all payments to be made by Purchaser and other agreements entered into between Purchaser and the Seller in connection with the Sale have been disclosed; (v) the negotiation and execution of the

Purchase Agreement and related agreements was in good faith and an arm's-length transaction; and (vi) the disclosure requirements required by Local Rule 6004-1 have been satisfied.

K.    The consideration to be paid or provided by Purchaser to Seller for the Georgetown Loan pursuant to the Purchase Agreement (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Georgetown Loan; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act or any similar laws of any state or jurisdiction whose law is applicable to the Sale.

L.    The consummation of the Sale pursuant to the Purchase Agreement will be a legal, valid, and effective sale of the Georgetown Loan to Purchaser and will vest Purchaser with all of Seller's right, title, and interest in and to the Georgetown Loan, free and clear of all Liens (other than the Designated Defenses, if any) in accordance with section 363(f) of the Bankruptcy Code, because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

M.    All parties with Liens against the Georgetown Loan, if any (other than the Designated Defenses, if any), who did not object to the Motion and the relief requested therein, or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against Purchaser, its affiliates, or any agent of the foregoing to recover any claim which such person or entity has solely against Seller or any of its affiliates. All other objections to the Sale of the Georgetown Loan are overruled. Failure to sell the Georgetown Loan free and clear of Liens other than the Designated Defenses, if any, would be substantially less beneficial to Seller's estate.

N.    The Settlement falls within the reasonable range of litigation possibilities, and consummation of the Settlement is in the best interests of the Debtors' estates, their creditors and other parties in interest.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The Motion is granted in all respects, other than with respect to matters already addressed by the Bidding Procedures Order.

2.    Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Seller's sale, conveyance, and assignment of the Georgetown Loan pursuant to the Purchase Agreement is approved, and Seller is authorized to enter into and consummate the Purchase Agreement and all agreements contemplated thereunder, and execute any and all documents and take all actions necessary and appropriate to effectuate and consummate the Sale in consideration of the purchase price specified therein, including selling, assigning and transferring to Purchaser all of Seller's right, title, and interest in and to the Georgetown Loan on the terms set forth in the Purchase Agreement. Seller's prior execution of the Purchase Agreement is ratified and approved.

3.    The transfer of the Georgetown Loan by the Seller to Purchaser is a legal, valid, and effective transfer and shall vest Purchaser with all right, title, and interest in Seller's right, title and interest in the Georgetown Loan pursuant to section 363(f) of the Bankruptcy Code, free and clear of any and all Liens (including but not limited to any and all "claims" as defined in section 101(5) of the Bankruptcy Code) and any and all rights and claims under any bulk transfer statutes and related laws, whether arising by agreement, statute, or otherwise and whether arising before or after the commencement of these chapter 11 cases, whether known or unknown, including Liens of any of the creditors, vendors, employers, suppliers, or lessors of

Seller or any other third party, other than the Designated Defenses, if any. Any and all such

Liens shall attach to the net proceeds of the Sale, with the same priority, validity, force, and

effect as they now have against the Georgetown Loan.

        4.      The Sale pursuant to this Sale Order shall be binding upon the Debtors,

Seller, Purchaser, all creditors, members, and owners of Seller, all persons having or asserting a

Lien against Seller or the Georgetown Loan, and all parties to any actions or proceedings that

directly or indirectly contest the power or authority of Seller to sell, assign, and convey the

Georgetown Loan or that seek to enjoin any such sale, assignment, or conveyance.

        5.      The contemplated Sale has been undertaken by Purchaser and the Seller at

arm's-length, without collusion, and Purchaser shall acquire the Georgetown Loan pursuant to

the Purchase Agreement in good faith, under section 363(m) of the Bankruptcy Code, and is, and

shall be entitled to all of the protections in accordance therewith. The consideration provided by

Purchaser for the Georgetown Loan under the Purchase Agreement is fair and reasonable, and

the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

        6.      This Sale Order and all provisions of the Purchase Agreement shall be

binding upon any successors and assigns of the Seller, including, without limitation, any trustee

appointed for the Seller in its chapter 11 case or in any superseding proceeding under chapter 7

of the Bankruptcy Code.

        7.      Nothing contained in any chapter 11 plan confirmed in these chapter 11

cases, or in any order of this Court entered after the date hereof, shall conflict with or derogate

the provisions of the Purchase Agreement, to the extent modified by this Sale Order.

8.      The Purchase Agreement may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Seller or its estate.

9.      To the extent any inconsistency exists between the provisions of the Purchase Agreement and this Sale Order, the provisions contained herein shall govern. The failure specifically to include any provisions of the Purchase Agreement in this Sale Order does not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

10.     Without limiting in any manner the effect of the other provisions of this Sale Order, any person or entity that has filed financing statements or other documents evidencing or otherwise asserting a Lien against the Georgetown Loan shall be, and hereby is, directed to deliver to Seller prior to Closing, in proper form for filing after Closing, and executed by the appropriate parties, termination statements or similar instruments as appropriate to cause the release of any such Lien, and in the event any such person or entity fails to comply with the direction set forth in this paragraph, then, at the option of Purchaser, Purchaser either may seek to have such person or entity held in contempt of this Court or shall be hereby authorized, without the requirement of any further action (including Order of this Court) either to execute and file or record such statements, instruments, releases, and other documents on behalf of such person or entity releasing such asserted Lien in, to, or against the Georgetown Loan or to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the termination or release of any such Lien in, to, or against the Georgetown Loan.

11.     Consistent with, but not in limitation of the foregoing, each and every federal, state, and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

12.     Without limiting the generality of the other provisions of this Sale Order, and to the extent provided by federal law, Purchaser, under no circumstances, shall be deemed to be a successor of the Seller (and Purchaser expressly has disclaimed any such liability with respect to the Seller), and Purchaser shall have no successor or vicarious liabilities of any kind with respect to the Georgetown Loan.

13.     Until the Debtors' bankruptcy cases are closed or dismissed, the Court shall retain exclusive jurisdiction to interpret, construe, and enforce the provisions of the Purchase Agreement, this Sale Order and the Settlement in all respects, and further, to hear and determine any and all disputes between Seller and/or Purchaser relating to the Purchase Agreement and/or this Sale Order and between the Debtors and the Miller Parties relating to the Settlement.

14.     The automatic stay of section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the Purchase Agreement, including, without limitation, with respect to any cash held in escrow pursuant to the provisions thereof.

15.     Pursuant to section 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors are authorized to consummate the Settlement and to take such steps as may be necessary to implement the terms of the Settlement. The Debtors are authorized to execute and deliver all instruments and documents and take such other action as may be

necessary or appropriate to implement and effectuate the transactions contemplated by the

Settlement.

      16.    This Sale Order shall take effect immediately and shall not be stayed

pursuant to Bankruptcy Rules 6004(h) or 7062, or otherwise.

Dated: _____, 2010
       Wilmington, Delaware

                                                    _____

                                                    CHRISTOPHER S. SONTCHI
                                                    UNITED STATES BANKRUPTCY JUDGE