**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------x
:
*In re* : Chapter 11
:
**CAPMARK FINANCIAL GROUP INC.,** *et al.*, : Case No. 09-13684 (CSS)
:
Debtors.[1] : Jointly Administered
:
: Hearing Date: March 14, 2011 at 11:00 a.m. (EDT)
: Objection Deadline: March 7, 2011 at 4:00 p.m. (EST)
----------------------------------------------------------x

### DEBTORS' MOTION PURSUANT TO SECTIONS 363(b) AND 105(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2002 AND 6004(h), AND LOCAL RULE 2002-1 FOR ORDER AUTHORIZING CAPMARK FINANCE INC. TO SELL PUBLICLY TRADED EQUITY SECURITIES IN CUSTOMARY MARKET OR ARMS' LENGTH TRANSACTIONS

Capmark Financial Group Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order authorizing Debtor Capmark Finance Inc. ("CFI") to effect the sale of CFI's shares of common stock in a public company whose shares are traded on the

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), Capmark Investments LP (7999) and Protech Holdings C, LLC (7929). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

New York Stock Exchange (the "Public Company") in open market transactions, brokers' transactions, block trades, privately negotiated transactions or other similar transactions, in each case in customary market or arms' length transactions at prices determined with reference to current trading prices of the Public Company, which transactions may include a sale or sales effected through a 10b5-1 Plan (as defined below). In support of this Motion, the Debtors respectfully represent:

## Background

1. On October 25, 2009 (the "Commencement Date"), each of the Debtors other than Capmark Investments LP and Protech Holdings C, LLC (collectively, the "First Filed Debtors") commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On January 15, 2010, Capmark Investments LP ("CILP"), a wholly-owned subsidiary of CFGI, commenced a voluntary case under chapter 11 of the Bankruptcy Code. On July 29, 2010, Protech Holdings C, LLC ("Protech C"), a limited liability company indirectly held by Debtor Capmark Affordable Equity Holdings Inc., commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession as authorized by sections 1107(a) and 1108 of the Bankruptcy Code.

2. On October 27, 2009, this Court entered an order authorizing the joint administration of the First Filed Debtors' chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). On January 19, 2010, this Court entered an order authorizing the joint administration of CILP's chapter 11 case with the jointly administered chapter 11 cases of the First Filed Debtors. On February 19, 2010, this Court entered an order

2
RLF1 3813059v. 1

authorizing the application to CILP of any and all generally applicable orders previously entered in the First Filed Debtors' cases. On August 16, 2010, this Court entered an order authorizing the application to Protech C of any and all generally applicable orders previously entered in these chapter 11 cases. On August 17, 2010, this Court entered an order authorizing the joint administration of Protech C's chapter 11 case with the chapter 11 cases of all other Debtors.

3. On November 2, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed a statutory unsecured creditors' committee pursuant to section 1102 of the Bankruptcy Code (the "Committee").

**Jurisdiction and Venue**

4. This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Capmark's Businesses**

5. The Debtors and their non-debtor subsidiaries and affiliates (together with the Debtors, "Capmark") are a group of commercial real estate finance companies that provide real estate-related products and services to borrowers, investors and other customers along three core business lines: (i) commercial real estate lending and mortgage banking; (ii) investments and funds management; and (iii) commercial loan servicing.[2]

6. A detailed description of Capmark's business, capital structure, and the events leading to the commencement of these chapter 11 cases is contained in the *Declaration of Thomas L. Fairfield, Executive Vice President, General Counsel and Secretary of CFGI, in*

---

[2] Pursuant to an order of this Court dated November 24, 2009, the Debtors were authorized to sell all of their commercial mortgage banking and mortgage servicing assets to Berkadia Commercial Mortgage LLC, which sale closed December 11, 2009.

RLF1 3813059v. 1

*Support of the Debtors' Chapter 11 Petitions and First Day Motions and Applications*, filed on the Commencement Date [Docket No. 13].

**Proposed Sale of CFI's Shares in the Public Company
Pursuant to Customary Market or Arms' Length Transactions**

7. CFI previously acquired shares of common stock in the Public Company (the "Shares") in an unregistered, private sale in reliance on Section 4(2) of the Securities Act of 1933, 15 U.S.C. §§ 77 *et seq.* (the "Securities Act"), under which transactions not involving a public offering are exempt from registration.

8. CFI now seeks to sell all or a portion of the Shares without registration. To sell the Shares, CFI intends to rely on a registration exemption contained in Section 4(1) of the Securities Act, the so-called "brokers" exemption for transactions by any person "other than an issuer, underwriter or dealer." Section 4(1) of the Securities Act contains an exemption which allows ordinary trading in securities to occur without registration (*e.g.*, ordinary trading on the New York Stock Exchange (the "NYSE")). In the case of privately placed shares, the SEC promulgated Rule 144 under the Securities Act, a safe harbor which deems all sales by persons who acquired privately placed shares, which sales are made in accordance with the Rule, as exempt from registration under Section 4(1). *See* 17 C.F.R. § 230.144. Among other things, to sell securities without registration, Rule 144 requires (i) the seller to have held the shares for no less than six (6) months, and (ii) the issuer to be a public reporting company (and, subject to certain exceptions, the issuer must be current in its reporting obligations under the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78 *et seq.* (the "Exchange Act")). *Id.* CFI has held the Shares for more than six months and the Public Company is a public reporting company. Because the proposed sale of the Shares will meet these requirements, CFI can sell the Shares without registration.

9. CFI (and its affiliates) will effect such sale or sales in open market transactions, brokers' transactions, block trades, privately negotiated transactions or other transactions, in each case in customary market or arms' length transactions at prices determined with reference to current trading prices of the Public Company.

10. Although CFI may sell the Shares without registration, CFI intends to take prudent precautions to ensure that it will not be deemed to be entering into any sale on the basis of material non-public information about the Public Company as a result of access it and certain of its affiliates have to such information in the ordinary course of business relating to the Public Company. Section 10(b) and Rule 10b-5 of the Exchange Act prohibit the purchase or sale of a security on the basis of material non-public information. *See* 17 C.F.R. § 240.10b5-1. Rule 10b5-1 specifies that a purchase or sale constitutes trading "on the basis of" material non-public information where the person making the purchase or sale was aware of material non-public information at the time the purchase or sale was made. *Id.*

11. Among the precautions CFI may take to ensure it does not sell the Shares on the basis of material non-public information about the Public Company is the adoption of a Rule 10b5-1 plan (a "10b5-1 Plan" or a "Plan"). A 10b5-1 Plan is a written, prearranged plan for trading securities that a person or entity which has access to material, non-public information can adopt when they are not in possession of such information. Stock sales executed pursuant to 10b5-1 Plans minimize concerns about initiating stock transactions while an insider may be aware of material, non-public information. Once a 10b5-1 Plan is established, the insider retains no discretion over sales under the Plan, and the prearranged trades are executed by the Plan counterparty, typically a broker-dealer. As a result, any person or entity that executes preplanned transactions pursuant to a 10b5-1 Plan that was established in good faith at a time

5

when the security holder was unaware of material non-public information has an affirmative defense against accusations of insider trading, even if actual trades made pursuant to the Plan are executed at a time when the individual or entity may be aware of material, nonpublic information that would otherwise subject that person or entity to liability under Section 10(b) of the Exchange Act or Rule 10b5-1.

12. CFI currently intends to enter into a 10b5-1 Plan to effect a sale or sales of the Shares and comply with applicable securities regulations. CFI will work with a broker-dealer affiliate of its financial advisors, Lazard Frères & Co. LLC ("Lazard"), to design a 10b5-1 Plan setting forth the parameters for sales of the Shares, such as price, timing and amount. Upon entering into the 10b5-1 Plan and for so long as it is in effect, CFI would have no discretion over when, whether, or how a sale or sales of the Shares are executed. Instead, the Lazard affiliated broker-dealer will be solely responsible for administration of the 10b5-1 Plan and will execute trades on CFI's behalf in accordance with pre-established parameters.[3] Because sales under a 10b5-1 Plan are subject to certain pricing parameters, there is no guarantee as to the exact number of Shares that will be sold under the Plan, or that any of Shares will be sold pursuant to the Plan.

**Relief Requested**

13. By this Motion, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004(h), and Local Rule 2002-1, the Debtors request an order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to sell the Shares in the Public Company, in any transaction not required to be registered under the Securities Act,

---

[3] If CFI utilizes a 10b5-1 Plan to effect a sale or sales of the Shares, a copy of the 10b5-1 Plan will be submitted to the Court at or before the hearing on the Motion. Given that the Shares represent equity in a publicly traded company, the 10b5-1 Plan will contain confidential information regarding CFI's trading strategies (including pricing information) and material non-public information regarding anticipated trades in the stock of a publicly traded company. As a result, the Debtors will file the 10b5-1 Plan with the Court under seal and will provide copies of the 10b5-1 Plan to the U.S. Trustee and the Committee, subject to appropriate confidentiality protections.

6

provided that such sale is made in open market transactions, brokers' transactions, block trades, privately negotiated transactions or other transactions, in each case in customary market or arms' length transactions at prices determined with reference to current trading prices of the Public Company, which transactions may include a sale or sales effected through a 10b5-1 Plan

### **Basis for Relief**

14. Section 363(b)(1) of the Bankruptcy Code permits debtors to use, sell, or lease property of the estate, other than in the ordinary course of business, after notice and a hearing. 11 U.S.C. § 363(b)(l). In addition, section 105(a) provides the authority for this Court to carry out the provisions of section 363(b). *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). When considering whether to authorize a debtor's entry into a transaction outside the ordinary course of business, courts in this circuit and others require the transaction be based upon the debtor's sound business judgment. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under Bankruptcy Code section 363(b) when there is a legitimate business justification) (citing *Fulton State Bank v Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *see also In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3rd Cir. 1986) (adopting the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); and *Dai-Ichi Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (same). Courts will approve the use or sale of property of the estate outside of the ordinary course upon the showing of a sound business purpose and are cautious not to substitute their own business judgment for the debtor's judgment. *See, e.g.*, *In re Crystal Apparel*, 207 B.R. 406, 410 (S.D.N.Y. 1997) ("[C]ourts must exercise great deference in

7

reviewing a corporation's desire to pay its employees."); and *In re Raytech Corp.*, 190 B.R. 149 (Bankr. D. Conn. 1995) (approving use of debtor's property outside of the ordinary course of business pursuant to section 363 to purchase stock upon showing that purchase would strengthen operations).

15. The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Martin*, 91 F.3d at 395 (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under Bankruptcy Code section 363(b) when there is a legitimate business justification); *see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Instead, objections to such decisions will only be entertained when they allege "bad faith, self-interest, or gross negligence." *Id.*

16. When a valid business judgment exists, the law vests the debtor's decision with a strong presumption that "in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in honest belief that the action taken was in the best interests of the company." *In re Dura Auto. Sys.*, 2007 Bankr. LEXIS 2764, at *260 (Bankr. D. Del. Aug. 15, 2007) (citing *Integrated Res.* (quoting *Smith v. Von Gorkum*, 488 A.2d 858, 872 (Del. 1985). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

RLF1 3813059v. 1

17.     The Debtors believe, in their sound business judgment, CFI's sale of the Shares (including any sale effected pursuant to a 10b5-1 Plan) is in the best interests of CFI's estate and creditors, and all parties in interest.  CFI has determined to monetize the Shares and thus realize significant value for its estate.  Because the Shares will be sold on the open market, for a market-determined price, CFI will receive the best possible price for the Shares.  Given that CFI may be privy to material non-public information relating to the Public Company, using a Rule 10b5-1 Plan is one prudent way CFI may execute the sale.

18.     The Debtors consider the proposed sale of the Shares to be in the ordinary course of their business, as the Debtors have sold equity and junior debt securities they acquired in the course of their business operations on several occasions before the Commencement Date.  Moreover, financial companies like the Debtors often acquire equity or junior debt securities in the course of entering into transactions with counterparties, and such companies also dispose of the stock in the ordinary course of their businesses.  If the acquired equity is publicly traded, 10b5-1 Plans can be implemented to the extent the acquiring entity may, in the course of business, come into possession of material non-public information.  Nonetheless, out of an abundance of caution, the Debtors seek the Court's authority for CFI to effect sales of the Shares in the manner described in this Motion, including through the adoption of a 10b5-1 Plan.

**Relief from Fourteen-Day Waiting Period**

19.     The Debtors request a waiver of the fourteen-day stay period otherwise imposed by Bankruptcy Rule 6004(h) and an order that, if and when approved, approves the requested relief, effective immediately.  Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The purpose of this rule is to provide sufficient time for an objecting party to appeal before an order is effective.  *See* Advisory

9

Committee Notes to Bankruptcy Rule 6004(h).  Although the rule and the Advisory Committee Notes are silent as to when a court should "order otherwise" and waive the fourteen-day stay period, Collier suggests the stay period should be waived to allow a transaction to close immediately "where there has been no objection to the procedure."  10 COLLIER ON BANKRUPTCY 15th Ed. Rev. ¶ 6004.10 (15th rev. ed. 2006).  Further, it suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal.  *Id*.

## Notice

20.     No trustee or examiner has been appointed in these chapter 11 cases.  Notice of this Motion has been provided by overnight mail to:  (i) the U.S. Trustee, (ii) Wilmington Trust FSB, as successor trustee under the prepetition indentures for the senior unsecured floating rate notes, 5.875% senior unsecured notes, and 6.300% senior unsecured notes, (iii) counsel to the Committee, and (iv) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).  The Debtors submit that no other or further notice need be provided.

## No Previous Request

21.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request an order (i) authorizing CFI's sale of the Shares as described in the Motion, and (ii) granting such other and further relief as the Court deems just and proper.

Dated: February 21, 2011
   Wilmington, Delaware

Respectfully submitted,

*/s/ Lee E. Kaufman*_____
Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Martin J. Bienenstock
Michael P. Kessler
Judy G. Z. Liu
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000

*Attorneys for the Debtors and Debtors in Possession*