IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
*In re* : Chapter 11
:
CAPMARK FINANCIAL GROUP INC., *et al.*, : Case No. 09-13684 (CSS)
:
Debtors. : Jointly Administered
:
: Re: Docket Nos. 2512, 2571, 2572,
: 2573, 2587, 2599,
: 2617 and 2618
------------------------------------------------------------x

## ORDER AUTHORIZING: (I) DEBTORS' TRANSFERS OF SUBSTANTIALLY ALL NON-LOAN ASSETS IN THE NEW MARKETS TAX CREDIT BUSINESS (INCLUDING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS) TO NEW SPECIAL PURPOSE ENTITIES, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (II) DEBTORS' SALE OF SUBSTANTIALLY ALL LOAN ASSETS IN THE NMTC BUSINESS (INCLUDING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS) TO U.S. BANCORP COMMUNITY DEVELOPMENT CORPORATION, AND U.S. BANCORP COMMUNITY INVESTMENT CORPORATION, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (III) SETTLEMENT OF CLAIMS ARISING FROM AND RELATED TO DEBTORS' NEW MARKETS TAX CREDIT BUSINESS

Upon the motion, dated as of February 22, 2011 (the "Motion"),[1] of Capmark Financial Group, Inc. ("CFGI") and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"),[2] pursuant to sections 105(a), 363(b), and 365

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such term in the Motion.

[2] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member

of title 11, United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules") requesting an order authorizing: (i) transfers of substantially all the Debtors' non-loan assets in their New Markets Tax Credit ("NMTC") business platform (the "NMTC Business") (including the assumption and assignment of executory contracts), free and clear of all liens, claims, encumbrances and interests (collectively, the "Encumbrances"), to Greenline Investments LLC, a newly-formed, special purpose Delaware limited liability company ("Newco"), and Greenline Community Ventures LLC, a newly-formed, special purpose Delaware limited liability company ("Holdco"), (ii) transfers of substantially all of the Debtors' loan assets ("Fund Loans") in the NMTC Business (including the assumption and assignment of executory contracts), free and clear of all Encumbrances, to U.S. Bancorp Community Development Corporation ("USBCDC") and U.S. Bancorp Community Investment Corporation ("USBCIC" and together with USBCDC, the "USB Investors"), and (iii) the settlement of substantially all claims associated with the Debtors' obligations relating to the NMTC Business and the release of all claims the USB Investors and other NMTC investors have asserted or could assert against the Debtors relating to the NMTC Business or Fund Loans; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having

---

XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), Capmark Investments LP (7999), and Protech Holdings C, LLC (7929). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

RLF1 3917592v. 1

considered the Motion and determined the relief sought in the Motion is in the best interests of the Debtors, their creditors, and all parties in interest; and all objections to the Motion having been withdrawn or overruled; and the Court having determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

A. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Reasonable notice of the Contemplated Transactions and Settlement and a reasonable opportunity to object or be heard with respect thereto, including the transfer of the Purchased Assets and Transferred Assets and the assumption and assignment of the Assigned Contracts, has been afforded to all interested persons and entities, including: (i) the U.S. Trustee, (ii) Wilmington Trust FSB, as successor trustee under the prepetition senior unsecured floating rate note, 5.875% senior unsecured note, and 6.300% senior unsecured note indentures, (iii) counsel to the Committee, (iv) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b), (v) the Tax Credit Investors, and (vi) all nondebtor parties to the Assigned Contracts being assumed and assigned pursuant to the Purchase Agreement or the Newco Transfer Agreement, as applicable.

C. Notice, as specified in the preceding paragraph and as evidenced by the affidavits of service filed with the Court, has been provided in the form and manner specified in the Motion, and such notice is reasonable and adequate.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

D. Although the parties have agreed under the terms of the Purchase Agreement and other Transaction Documents to obtain certain additional consents or approvals, as conditions to the closing of the Contemplated Transactions and Settlement and all related transactions, including the sales of the Purchased Assets and Transferred Assets, the Court makes no finding as to whether any of these additional consents or approvals are necessary for approval and authorization of the Contemplated Transactions and Settlement by the Court. Neither the execution of the Purchase Agreement and other Transaction Documents nor the consummation of the Contemplated Transactions and Settlement in accordance with the terms of the Transaction Documents will constitute a violation of any provision of the organizational documents of the Sellers or any other instrument, law, regulation, or ordinance by which any Debtor is bound.

E. Upon entry of this Order, the Debtors shall have full power and authority to consummate the Contemplated Transactions and Settlement and all related transactions contemplated by the Purchase Agreement and other Transaction Documents. The Purchase Agreement, the other Transaction Documents, and the Contemplated Transactions and Settlement have been duly and validly authorized by all necessary actions of the Debtors and no shareholder vote, board resolution, or other corporate action is required of any of the Debtors for the Debtors to consummate the Contemplated Transactions and Settlement.

F. The relief granted by this Order and consummation of the Contemplated Transactions and Settlement are supported by good business reasons and will serve the best interests of the Debtors, their estates, and creditors by maximizing recoveries to the estates from the NMTC Business. The Settlement is fair and equitable and falls well above the lowest point in the range of reasonableness.

G. The Purchase Agreement and the other Transaction Documents were negotiated, proposed, and entered into by the Debtors, the Purchasers, U.S. Bank, Holdco and Newco without collusion, in good faith, and from an arm's-length bargaining position. The Debtors, the Purchasers, U.S. Bank, Holdco and Newco have not engaged in any conduct that would cause or permit the Purchase Agreement or any of the other Transaction Documents to be avoided under section 363(n) of the Bankruptcy Code.

H. The Purchasers, Newco and Holdco are good faith purchasers under section 363(m) of the Bankruptcy Code and as such are entitled to all of the protections afforded thereby, and otherwise has acted in good faith in all respects in connection with this proceeding, in that: (i) all payments to be made by the Purchasers, Newco and Holdco, if any, and other agreements entered into by Purchasers, Newco and Holdco in connection with the Contemplated Transactions and Settlement have been disclosed; (ii) the negotiation and execution of the Purchase Agreement and other Transaction Documents were in good faith and arm's-length transactions; and (iii) the disclosure requirements required by Local Rule 6004-1 have been satisfied.

I. The consideration to be paid by the Purchasers to the Sellers for the Purchased Assets pursuant to the Purchase Agreement (i) is fair and reasonable; (ii) represents the best possible disposition of the Purchased Assets under the circumstances; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act or any similar laws of any state or jurisdiction whose law is applicable to the Sale.

J. The consummation of the Contemplated Transactions pursuant to the Purchase Agreement and the other Transaction Documents constitutes a legal, valid, and

effective sale of the Purchased Assets to the Purchasers and transfer of the Transferred Assets to Holdco and Newco, as applicable, and will vest the Purchasers, Holdco and Newco, as applicable, with all right, title, and interest in such assets, free and clear of all Encumbrances in accordance with section 363(f) of the Bankruptcy Code, because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

K. The releases included as part of the Transaction Documents are fair and equitable and in the best interest of the estates pursuant to Bankruptcy Rule 9019.

L. All parties with Encumbrances against the Purchased Assets and the Transferred Assets, if any, who did not object to the Motion and the relief requested therein, or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against the Purchasers, Holdco, Newco, any of their affiliates, or any agent of the foregoing to recover any claim which such person or entity has against the Debtors or any of its affiliates. All other objections to the Contemplated Transactions and Settlement are overruled. Failure to sell the Purchased Assets and the Transferred Assets free and clear of Encumbrances would be substantially less beneficial to the Debtors' estates.

M. All objections thereto having been resolved, the amounts set forth on Schedule 1 to the Notice of Assumption and Assignment, dated as of February 22, 2011 (the "Cure Amounts"), are deemed the necessary amounts to "cure" all "defaults" under section 365(b) of the Bankruptcy Code.

N. The Debtors acknowledge the $92,035.49 cure amount claim relating to an asset management and servicing agreement asserted by Phoenix Community Development and Investment Corporation ("PCDIC") and Phoenix Development and Revitalization, LLC ("PDR,"

and together with PCDIC, "Phoenix"), and the Debtors agree to transfer that amount to a reserve account pending final determination or agreement between the parties regarding amounts required to cure all defaults under section 365(b) of the Bankruptcy Code. Phoenix acknowledges and agrees that after final resolution of its cure claim pursuant to the terms of this Order, Phoenix will withdraw any proof of claim it has filed relating to the contract that is the subject of the cure claim.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Motion is granted in all respects.

2. The Settlement is approved pursuant to Bankruptcy Rule 9019.

3. Pursuant to sections 105(a), 363(b), and 365 of the Bankruptcy Code, the Sellers', Newco Transferors', and Holdco Transferors' sale, conveyance, transfer, and assignment of the Purchased Assets and Transferred Assets to the Purchasers, Holdco and Newco, as applicable, the assumption and assignment of certain Assigned Contracts by the Sellers to Purchasers pursuant to the Purchase Agreement, the assumption and assignment by the Newco Transferors of the other Assigned Contracts to Newco pursuant to the Newco Transfer Agreement, and all related transactions pursuant to the Purchase Agreement and other Transaction Documents, are approved, and the Debtors are authorized to assume the Purchase Agreement, the Transaction Documents, and all agreements contemplated thereunder, as applicable, and execute any and all documents and take all actions necessary and appropriate to effectuate and consummate the sales contemplated by the Contemplated Transactions and Settlement, in exchange for the consideration provided for in the Transaction Documents, including the release of all claims the Tax Credit Investors have asserted or could assert against the Debtors with respect to the NMTC Business.

4. The sale and transfers of the Purchased Assets and Transferred Assets, respectively, are legal, valid, and effective transfers and shall vest the Purchasers, Holdco and Newco, as applicable, with all right, title, and interest in the Purchased Assets and Transferred Assets pursuant to section 363(f) of the Bankruptcy Code, free and clear of any and all Encumbrances (including but not limited to any and all "claims" as defined in section 101(5) of the Bankruptcy Code) and any and all rights and claims under any bulk transfer statutes and related laws, whether arising by agreement, statute, or otherwise and whether arising before or after the commencement of these chapter 11 cases, whether known or unknown, including encumbrances of any of the creditors, vendors, employers, suppliers, or lessors of the Debtors or any other third party; *provided, however*, that Encumbrances shall not be construed to include the participation interests in the Funds Loans sold by the Debtors to third parties pursuant to the Participation Agreements, which participation interests of such third parties are the property of such third parties or their permitted assignees. Any and all such Encumbrances shall attach to the net proceeds of the transfers, with the same priority, validity, force, and effect as they now have against the Purchased Assets and Transferred Assets.

5. The assignment of the Purchased Assets and Transferred Assets pursuant to this Order shall be binding upon the Debtors, the Purchasers, Holdco, Newco, all creditors, members, and owners of the Debtors, all persons having or asserting an Encumbrance against the Debtors or the Purchased Assets and the Transferred Assets, and all parties to any actions or proceedings that directly or indirectly contest the power or authority of the Debtors to sell, assign, and convey the Purchased Assets and the Transferred Assets or that seek to enjoin any such sale, assignment, or conveyance.

6. The Debtors shall maintain an interest bearing separate escrow account containing $92,035.49 for the protection of the cure amount claim of Phoenix under the terms and conditions provided herein (the "Phoenix Reserve"). Maintenance of the escrow account will provide for adequate assurance of payment from the estates.

7. The monies deposited into the escrow account on account of the Phoenix Reserve shall not be released by the Debtors until the entry of a final non-appealable order with respect to the claims or causes of action that give rise to Phoenix's asserted cure amount for which the Phoenix Reserve is maintained, or by agreement of Phoenix and the Debtors.

8. Notwithstanding any other provision of this Order, the Debtors and Phoenix reserve their respective rights to address, dispute, and contest the underlying merits of the asserted cure amount, and nothing herein, including the establishment of the Phoenix Reserve, shall in any way affect, or be deemed to affect, the merits of Phoenix's rights or entitlement to the asserted cure amount, or be deemed an admission by the Debtors as to any liability or default under any agreement.

9. Any party having the right to consent to the assumption or assignment of the Assigned Contracts to the Purchasers or Newco, as applicable, that has failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment, as required by subsections 365(c) and (h) of the Bankruptcy Code. In addition, adequate assurance of future performance has been demonstrated by or on behalf of the Purchasers and Newco with respect to the Assigned Contracts.

10. There shall be no payment accelerations, assignment fees, increases, or any other fees charged to the Debtors or their affiliates or designees as a result of the assumption or assignment by the Debtors to the Purchasers and Newco, as applicable, of the Assigned

Contracts, and the validity of such assumption or assignment shall not be affected by any dispute between the Debtors or any of their respective affiliates and any counterparty to any Assigned Contract regarding the correct cure amounts that may be due, and the Assigned Contracts, upon assignment to the Purchasers and Newco, as applicable, shall be deemed valid and binding and in full force and effect in accordance with their terms.

11. Without limiting the generality of the provisions of the Purchase Agreement, the other Transaction Documents or other provisions of this Order, the Purchasers, Holdco and Newco, as applicable, shall not be deemed to have assumed any liability under, or otherwise be deemed liable in any manner whatsoever with respect to, any contract or lease of the Debtors that is not explicitly designated as an Assigned Contract or an Assumed Liability, or any other obligation, absent the Purchasers', Holdco's or Newco's, as applicable, written agreement as to the subsequent inclusion of any specifically identified contract or lease as an Assigned Contract or an Assumed Liability and the satisfaction of the requirements of section 365 of the Bankruptcy Code with respect to any such contract or lease.

12. The Contemplated Transactions and Settlement and all transfers by the Debtors thereunder have been undertaken by the Debtors, the Purchasers, Holdco and Newco, as applicable, at arm's-length and without collusion, and the Purchasers, Holdco and Newco, as applicable, shall acquire the Purchased Assets and the Transferred Assets pursuant to the Purchase Agreement and the other Transaction Documents in good faith, under section 363(m) of the Bankruptcy Code, and are, and shall be entitled to all of the protections in accordance therewith. The consideration provided by the Purchasers, Holdco and Newco, as applicable, for the Purchased Assets and the Transferred Assets under the Purchase Agreement, the Holdco Transfer Agreement, the Newco Transfer Agreement, and the other Transaction Documents, is

fair and reasonable, and the transfers that are part of the Contemplated Transactions and Settlement may not be avoided under section 363(n) of the Bankruptcy Code.

13. This Order and all provisions of the Purchase Agreement and the other Transaction Documents shall be binding upon any successors and assigns of the Debtors, including, without limitation, any trustee appointed for any Debtor in its chapter 11 case or in any superseding proceeding under chapter 7 of the Bankruptcy Code.

14. Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases shall conflict with or derogate the provisions of the Purchase Agreement and the other Transaction Documents, to the extent modified by this Order.

15. The Purchase Agreement and other Transaction Documents may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors or their estates.

16. From and after the date hereof, the Debtors shall act in accordance with the terms of the Purchase Agreement and the other Transaction Documents and each Debtor, to the extent it already has not done so, shall execute the Purchase Agreement and the other Transaction Documents at or prior to the Closing.

17. Upon Closing, the Tax Credit Investors shall withdraw with prejudice any claims filed against the Debtors in these chapter 11 cases and may not assert any claims, whether pursuant to timely filed proofs of claim or otherwise, or seek any other relief against the Debtors relating to the NMTC Business in the chapter 11 cases or otherwise, except to the extent

provided in the Purchase Agreement and other Transaction Documents. Upon Closing, all such claims shall be deemed expunged.

18. None of the Purchasers, Newco, or Holdco and their affiliates shall have any liability for claims asserting that any transaction contemplated by the Purchase Agreement and other Transaction Documents constitute a fraudulent conveyance, fraudulent transfer, or similar claim.

19. To the extent any inconsistency exists between the provisions of the Purchase Agreement, the other Transaction Documents and this Order, the provisions contained herein shall govern. The failure specifically to include any provisions of the Purchase Agreement or any other Transaction Documents in this Order does not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement and the other Transaction Documents be authorized and approved in their entirety.

20. Without limiting in any manner the effect of the other provisions of this Order and except as otherwise provided in the Purchase Agreement and other Transaction Documents, any person or entity that has filed financing statements, mortgages, mechanics' liens, *lis pendens*, or other documents evidencing or otherwise asserting an Encumbrance against the Purchased Assets or the Transferred Assets shall be, and hereby is, directed to deliver to the Debtors prior to the Closing, in proper form for filing after the Closing, and executed by the appropriate parties, termination statements, instruments of satisfaction, mortgage or deed of trust releases, or similar instruments as appropriate to cause the release of any such lien or Encumbrance, and in the event any such person or entity fails to comply with the direction set forth in this paragraph, then, at the option of the Purchasers, Newco, or Holdco, as applicable, the Purchasers, Newco, or Holdco either may seek to have such person or entity held in contempt

of this Court or shall be hereby authorized, without the requirement of any further action (including Order of this Court) either to execute and file or record such statements, instruments, releases, and other documents on behalf of such person or entity releasing such asserted lien or Encumbrance in, to, or against the Purchased Assets or the Transferred Assets or to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the termination or release of any such Encumbrance in, to, or against the Purchased Assets or the Transferred Assets.

21. Consistent with, but not in limitation of the foregoing, each and every federal, state, and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Contemplated Transactions and Settlement.

22. All persons or entities in possession of some or all of the Purchased Assets and/or the Transferred Assets on the Closing are hereby directed to surrender possession of those assets to the Purchasers, Holdco or Newco, as applicable, at the Closing.

23. Without limiting the generality of the other provisions of this Order, and to the extent provided by federal law, under no circumstances shall the Purchasers, Holdco and Newco, as applicable, be deemed to be a successor of the Debtors (and the Purchasers, Holdco and Newco, as applicable, expressly have disclaimed any such liability with respect to the Debtors). Accordingly, the Purchasers, Holdco and Newco, as applicable, shall have no successor or vicarious liabilities of any kind with respect to the Purchased Assets and the Transferred Assets, and all persons and entities shall be hereby enjoined from asserting any such claims against the Purchasers, Holdco and Newco.

24. The Court shall retain exclusive jurisdiction to interpret, construe, and enforce the provisions of the Purchase Agreement, the other Transaction Documents and this Order in all respects, and further, to hear and determine any and all disputes between the Debtors and the Purchasers, Holdco or Newco, as the case may be, and any non-debtor party to, among other things, any Assigned Contracts, concerning, *inter alia*, assignment thereof by the pertinent Debtor to the Purchasers under the Purchase Agreement or Newco pursuant to the Newco Transfer Agreement, as applicable, and any dispute between the Purchasers, Holdco or Newco and any Debtor as to their respective obligations with respect to any asset, liability, or claim arising hereunder.

25. The automatic stay of section 362(a) of the Bankruptcy Code shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the Transaction Documents, including, without limitation, with respect to any cash held in escrow pursuant to the provisions thereof.

26. This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, or otherwise.

Dated: March 17, 2011
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE