## EXHIBIT A

**Proposed Bidding Procedures Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------------x
                                            :
```
*In re*                                     :    **Chapter 11**
                                            :
**CAPMARK FINANCIAL GROUP INC.,** *et al.,*  :    **Case No. 09-13684 (CSS)**
                                            :
**Debtors.**[1]                             :    **Jointly Administered**
                                            :
```
--------------------------------------------------------------x
```

**ORDER (I) SCHEDULING AN AUCTION SALE IN CONNECTION WITH THE
SALE OF CERTAIN EQUITY INTERESTS IN REAL ESTATE DEBT INVESTMENT
ADVISORY GROUP BUSINESS (INCLUDING ASSUMPTION AND ASSIGNMENT
OF CONTRACTS), (II) APPROVING BIDDING PROCEDURES, (III) APPROVING A
TERMINATION FEE AND EXPENSE REIMBURSEMENT, (IV) SCHEDULING
A SALE HEARING, (V) ESTABLISHING AN OBJECTION DEADLINE, AND
(VI) APPROVING THE FORM AND MANNER OF THE NOTICE OF AUCTION
AND SALE HEARING AND NOTICE OF ASSUMPTION AND ASSIGNMENT**

Upon the motion dated as of March 18, 2011 (the "Motion"),[2] of Capmark

Financial Group Inc. and certain of its subsidiaries and affiliates, as debtors and debtors in

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), Capmark Investments LP (7999), and Protech Holdings C, LLC (7929). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

possession (collectively, the "Debtors"), pursuant to sections 105(a), 363(b), and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), requesting the following relief from this Court:

(i)    entry of an order (the "Bidding Procedures Order"),

    (a)    scheduling a hearing (the "Sale Hearing") to consider approval of the proposed sale (the "Sale") (including the assumption and assignment of certain contracts) by Capmark Investments LP ("CILP") and Capmark Finance Inc. ("CFI", and together with CILP, the "Sellers") to PCCP Pool I, LLC (the "Buyer"), or another Successful Bidder (as defined below) of certain assets relating to the Sellers' business of managing a private real estate debt investment fund, including the following: (i) the investment management agreements to which CILP is a party (the "Purchased Contracts"), (ii) CFI's limited partnership interest in Capmark Structured GP, L.P., a Delaware limited partnership, and (iii) CILP's membership interest in Capmark Investments Structured Fund GP LLC, a Delaware limited liability company (collectively, the "Sale Assets"), all as provided for under that certain purchase agreement, dated March 15, 2011, between the Sellers and the Buyer (the "Sale Agreement") attached to the Motion as Exhibit C;

    (b)    establishing the objection deadline in connection with the proposed Sale;

    (c)    approving the form of, and notice procedures relating to, the Notice of Auction and Sale Hearing and the Notice of Assumption and Assignment (each as defined below);

    (d)    scheduling an auction (the "Auction") to the extent that the Sellers receive additional higher and/or otherwise better offers for the Sale Assets;

    (e)    approving the bidding procedures (the "Bidding Procedures") set forth in the Bidding Procedures Order; and

    (f)    approving the termination fee (the "Termination Fee") and expense reimbursement (the "Expense Reimbursement") provided for in the Sale Agreement; and

(ii)    upon completion of the Sale Hearing, entry of an order (the "Sale Order"),

(a)  if no higher and/or otherwise better offers have been received, approving the Sellers' entry into the Sale Agreement without the necessity of conducting an Auction; or

(b)  if a higher and/or otherwise better offer is received for the Sale Assets, and therefore, an Auction is held, authorizing the Sale of the Sale Assets to the Buyer, or to another Successful Bidder, at an Auction, in each case, free and clear of any and all liens, encumbrances, claims, and interests of any kind, nature or description (collectively, the "Liens"), pursuant to section 363(f) of the Bankruptcy Code, in accordance with the Sale Agreement, or a Modified Sale Agreement (as defined below);

and due and proper notice of the Motion having been provided to: (i) the U.S. Trustee, (ii) counsel to the Buyer, (iii) Wilmington Trust FSB, as successor trustee under the prepetition indentures for the senior unsecured floating rate notes, 5.875% senior unsecured notes, and 6.300% senior unsecured notes, (iv) counsel to the Committee, (v) any party who, in the past twelve (12) months, expressed to the Debtors an interest in acquiring the Sale Assets, and who the Debtors and their representatives reasonably and in good faith determined potentially have the desire and financial wherewithal to effectuate the Sale, (vi) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b), (vii) all non-debtor parties to the Partnership Agreement, and (viii) all non-debtor parties to the Purchased Contracts; and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Sellers, their estates, and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and all objections to the Motion having been withdrawn or overruled; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

A.    The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Good and sufficient notice of the Motion has been given under the circumstances, and no further or other notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all interested persons.

C.    The Sellers' notice of the Auction and Sale (the "Notice of Auction and Sale Hearing"), substantially in the form attached hereto as Schedule 1, is appropriate and reasonably calculated to provide interested parties with timely and proper notice of the Auction and Sale and related deadlines, and no other or further notice is required.

D.    The Sellers' notice of assumption and assignment of the Purchased Contracts (the "Notice of Assumption and Assignment"), substantially in the form attached hereto as Schedule 2, is appropriate and reasonably calculated to provide interested parties with timely and proper notice of the assumption and assignment of the Purchased Contracts and related deadlines, and no other or further notice is required.

E.    The Termination Fee is an essential inducement and condition relating to the Buyer, under the circumstances described herein and in the Sale Agreement, is (i) an actual necessary cost and expense of preserving the Sellers' estates, within the meaning of section 503(b) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefits conferred upon the Sellers' estates by the Buyer; (iii) reasonable and appropriate in light of the nature of the Sale; and (iv) necessary to induce the Buyer to continue to pursue the Sale.

F.    The Termination Fee induced the Buyer to submit a bid that will serve as a minimum or floor bid on which the Sellers, their creditors, and other bidder can rely. The Buyer

4

has provided a material benefit to the Sellers and their creditors by increasing the likelihood that

the best possible price for the Sale Assets will be received.  Accordingly, the Termination Fee is

reasonable and appropriate and represents the best method for maximizing value for the benefit

of the Debtors' estates.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The Motion is granted to the extent described herein.

2.     The Bidding Procedures, as set forth below, are approved and shall apply

with respect to the proposed sale of the Sale Assets (the Sellers may modify, amend, and waive,

as applicable, the Bidding Procedures in their sole discretion after consultation with the

Committee; provided that no such modification, amendment or waiver may modify, amend or

waive the terms and conditions of the Sale Agreement without the consent of the Buyer):

(i)     **Assets to Be Sold**:  The Auction shall consist of all of the Sale Assets collectively in an integrated transaction and shall not involve the sale of any individual Sale Asset.

(ii)    **Confidentiality Agreements**:  Upon execution of a confidentiality agreement, in form and substance satisfactory to the Sellers, any party that wishes to conduct due diligence in respect of the Sale Assets may be granted access to all material information that has previously been provided to (or is simultaneously provided to) the Buyer and other bidders; *provided, however*, prior to receipt by a party of any information from the Sellers (including, but not limited to, the Sale Agreement and its schedules and exhibits, business and financial information and access to representatives of the Sellers), each such party will be required to deliver evidence reasonably satisfactory to the Sellers establishing such party's financial capability to timely consummate a purchase of all of the Sale Assets.  In any event, the Buyer shall be provided access to all due diligence materials, management presentations and other information provided to any potential bidder hereunder that were not previously made available to the Buyer at the same time such access is provided to such other potential bidder.  The availability of additional due diligence shall cease on the date of the Auction.

(iii)   **Bid Deadline**:  Any person or entity interested in participating in the Auction must submit a Qualifying Bid (as defined below) by 2:00 p.m. (prevailing Eastern Time) on April 22, 2011 (the "Bid Deadline"), in writing, to: (a) counsel to the Sellers, Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York 10019, Attention:  Michael P. Kessler, Esq. and Judy G.Z. Liu, Esq.,

5

(b) Capmark Investments LP, 116 Welsh Road, Horsham, Pennsylvania 19044, Attention: Alyssa Brodzinski, (c) Capmark Finance Inc., 116 Welsh Road, Horsham, Pennsylvania 19044, Attention: Thomas L. Fairfield, General Counsel, (d) counsel to the Committee, Kramer Levin Naftalis and Frankel, LLP, 1177 Avenue of the Americas, New York, New York 10036; Attention: Thomas Moers Mayer, Esq. and Joshua Brody, Esq., (e) PCCP Pool I, LLC, 222 North Sepulveda Blvd., Suite 2222, El Segundo, California 90245, Attention: William R. Lindsay, and (f) counsel to the Buyer, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, Attention: Jennifer Bellah Maguire, Esq. and Oscar Garza, Esq. The Bid Deadline may be extended or otherwise modified by the Sellers in their sole discretion after consultation with the Committee; *provided, however*, that the Sellers shall notify the Buyer if such Bid Deadline is extended more than three (3) Business Days; *provided, further*, that once the Bid Deadline (as the same may have been theretofore extended or modified from time to time) has expired, the Sellers may not then establish a new Bid Deadline without the consent of Buyer.

(iv)　**Qualifying Bids**:　Only the Qualifying Bidders (as defined below) may participate in the bidding process. In order to be deemed a "Qualifying Bidder" each potential bidder (other than the Buyer) must submit a "Qualifying Bid" by the Bid Deadline. The Sale Agreement is deemed a Qualifying Bid and the Buyer is deemed a Qualifying Bidder. Otherwise, to constitute a Qualifying Bid, a bid must:

(a)　be in writing and state that such bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of all the Sale Assets on terms and conditions no less favorable to the Sellers than the terms and conditions contained in the Sale Agreement;

(b)　include a mark-up of the Sale Agreement (the "Modified Sale Agreement") reflecting the variations from the Sale Agreement, and a clean and executed Modified Sale Agreement, together with all exhibits and schedules thereto, and other ancillary agreements described in the Modified Sale Agreement; *provided*, that the management fees and each of the other terms set forth in Annex A to the Modified Sale Agreement may not be any less favorable to the Limited Partners (as defined in the Partnership Agreement) of the Fund, in the aggregate, than the management fees and each of the other terms set forth in Annex A to the Sale Agreement;

(c)　otherwise include terms and conditions substantially the same in all respects to the Sale Agreement (including with respect to the representations and warranties);

(d)　include an acknowledgement or letter that such bidder's offer is irrevocable until the closing of the purchase of the Sale Assets if such

6

bidder is a Successful Bidder or the Back-Up Bidder (each as defined below);

(e)   be for all of the Sale Assets and not individual Sale Assets, and provide that such bidder will close on the sale of all of the Sale Assets within the same time period provided for in the Sale Agreement;

(f)   provide for the immediate payment of the Termination Fee and the Expense Reimbursement in cash[4] upon consummation of an Alternative Transaction out of the proceeds of a sale of any of the Sale Assets to a Person other than the Buyer and/or its Affiliates in accordance with the Sale Agreement;

(g)   include evidence, in form and substance satisfactory to the Sellers, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Sale Agreement;

(h)   exceed the Purchase Price in the Sale Agreement by an initial bid of at least $75,000 plus the amounts of the Termination Fee and the Expense Reimbursement, which bid must be in cash;[5]

(i)   to the extent not previously provided during the bidding process, include a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction pursuant to the Modified Sale Agreement (including current audited financial statements and latest unaudited financial statements), that will allow the Sellers to make a reasonable determination as to the bidder's financial wherewithal and other capabilities to consummate the transactions contemplated by the Modified Sale Agreement;

(j)   not request or entitle the bidder to any transaction or break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement;

(k)   not contain any due diligence or financing contingencies of any kind or any conditions precedent to such bidder's obligation to purchase the Sale Assets other than conditions set forth in the Sale Agreement;

---

[4]  Note: Purchase Agreement provides that such aggregate payment shall not exceed 3% of the Purchase Price.

[5]  For example, assuming the Termination Fee and Expense Reimbursement equal 3% of the Purchase Price, then the initial bid must be at least $7,851,500, which equals the sum of (i) the Purchase Price of $7,550,000, (ii) $226,500 (3% of the Purchase Price of $7,550,000), and (iii) $75,000 (the minimum bid increment).

(l)    include full disclosure regarding the identity of each entity that will be bidding for the Sale Assets or otherwise participating in connection with the offer and the names and contact information of members of the bidder who will be available to answer questions regarding the offer;

(m)    include the names of external advisors to the bidder, including financial, legal, and accounting firms, as well as industry consultants or other resources;

(n)    include any other information or factors that may be relevant to or reasonably requested by the Sellers and their advisors in consideration of the bid;

(o)    include a cash deposit in United States Dollars by wire transfer equal to ten percent (10%) of the amount offered to purchase the Sale Assets (the "Good Faith Deposit"); and

(p)    be received on or before the Bid Deadline.

The Sellers shall make a determination regarding whether a bid is a Qualifying Bid, after consultation with the Committee, and shall notify the bidders as to whether their bids have been determined to be Qualifying Bids by no later than April 25, 2011, at 5:00 p.m. (prevailing Eastern Time). Promptly following receipt, the Sellers shall deliver written copies of all Qualifying Bids along with all materials required under section 2(d) of this Order to the Buyer's counsel, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, Attention: Jennifer Bellah Maguire, Esq. and Oscar Garza, Esq.

(v)    **No Qualifying Bids:**  If no timely, conforming Qualifying Bid, other than the Sale Agreement, is submitted by the Bid Deadline, the Sellers shall not hold an Auction and, instead, shall request at the Sale Hearing that the Court approve the Sale Agreement with the Buyer.

(vi)    **Right to Disseminate Information Relating to Bids:**  At any time, whether before or after the Auction, the Sellers may share or not share, after consultation with the Committee, the details of any Qualifying Bid for the Sale Assets with the other bidders.

(vii)    **Auction:**  In the event the Sellers timely receive one or more Qualifying Bids in addition to the Sale Agreement, they shall conduct the Auction with respect to the Sale Assets. The Auction will be conducted at the offices of Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York 10019, on April 26, 2011, at 11:00 a.m. (prevailing Eastern Time), or such other location in New York County, New York as designated by the Sellers in a timely notice to all the Qualifying Bidders. The Auction shall be governed by the following procedures (which may be amended, modified, and waived, as applicable, by the Sellers at any time in their sole discretion after consultation with the Committee; provided

8

that no such modification, amendment, or waiver may modify, amend, or waive the terms and conditions of the Sale Agreement without the consent of the Buyer):

(a)    The Buyer and the other Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

(b)    Only representatives of the Sellers, the Buyer, the other Qualifying Bidders, counsel and other advisors selected by the Committee, and representatives from the U.S. Trustee, shall be entitled to be present at the Auction;

(c)    The Auction process shall be transcribed by a qualified court reporter, unless otherwise provided herein;

(d)    Only the Buyer and the other Qualifying Bidders shall be entitled to make any subsequent bids at the Auction;

(e)    Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

(f)    As soon as practicable prior to the Auction, the Sellers will provide copies of the Qualifying Bid which the Sellers believe, in their reasonable business judgment, is the highest or otherwise best offer, which shall include cash consideration in excess of the Purchase Price under the Sale Agreement at least equal to the Termination Fee plus the Expense Reimbursement plus $75,000 (the "Initial Highest Bid") to the Buyer and the other Qualifying Bidders which have informed the Sellers of their intent to participate in the Auction;[6]

(g)    Bidding shall commence the Auction at the amount of the Initial Highest Bid;

(h)    Qualifying Bidders may submit subsequent bids to the Initial Highest Bid and all such subsequent bids must be at least $75,000 higher in cash purchase price consideration than the previous bid.  The Sellers shall credit the amount of the Termination Fee and the Expense Reimbursement to each and every bid submitted by the Buyer at the Auction, meaning that if the Buyer's subsequent bid is the then highest and best bid at the Auction, any subsequent bid must exceed the Buyer's bid in cash purchase

---

[6]  For example, assuming the Termination Fee and Expense Reimbursement equal 3% of the Purchase Price, then the initial bid must be at least $7,851,500, which equals the sum of (i) the Purchase Price of $7,550,000, (ii) $226,500 (3% of the Purchase Price of $7,550,000), and (iii) $75,000 (the minimum bid increment).

price consideration by the sum of the amount of the Termination Fee plus the Expense Reimbursement plus $75,000;[7]

(i)     The Sellers may determine, in consultation with the Committee, the order in which Qualifying Bids will be submitted and may modify the ordering of the Qualifying Bids at any time;

(j)     All Qualifying Bidders shall be able to submit additional bids and make additional modifications to the Sale Agreement or Modified Sale Agreements, as applicable, at the Auction; *provided, that*, the management fees and each of the other terms set forth in Exhibit D to the Modified Sale Agreement may not be any less favorable to the Limited Partners (as defined in the Partnership Agreement) of the Fund than the management fees and each of the other terms set forth in Exhibit D to the Sale Agreement;

(k)     The Auction may include individual negotiations with the Qualifying Bidders and the Buyer and/or open bidding in the presence of all other Qualifying Bidders and the Buyer; *provided, however*, all material terms of each subsequent bid will be fully disclosed to all bidders throughout the Auction;

(l)     Consistent with the conduct of the Auction in subsection (k) above, the Sellers may conduct, at the Sellers' sole discretion after consultation with the Committee, portions of their negotiations with any Qualified Bidder without having such negotiations transcribed;

(m)     The Auction shall continue until there is only one offer that the Sellers determine, after consultation with the Committee and subject to Court approval, is the highest and/or otherwise best offer from among the Qualifying Bidders and the Buyer submitted at the Auction for the Sale Assets (the "Successful Bid"). In making this decision, the Sellers shall consider any factors they deem relevant, including, without limitation, the amount of the purchase price, the Termination Fee, the Expense Reimbursement, the form of consideration being offered, the likelihood of a Qualifying Bidder's ability to close a transaction and the timing thereof, the ability of a Qualifying Bidder to obtain Approvals and Permits, the number, type and nature of any changes to the Sale Agreement requested by a Qualifying Bidder, any contingencies relating to a Qualifying Bidder's offer, and the net benefit to the Sellers' estates. The Buyer or the

---

[7] For example, assuming the Termination Fee and Expense Reimbursement equal 3% of the Purchase Price, then the initial bid must be at least $7,851,500. Any subsequent bid must be for at least $7,926,500 in cash (*i e*, the initial bid of $7,851,500 plus the minimum bid increment of $75,000). If the Buyer were to submit such bid for $7,926,500, any subsequent bidder would need to bid at least $8,228,000 in cash to be considered to have submitted the highest bid (*i e*, (i) $7,926,500 (the amount of the previous bid), plus (ii) 75,000 (the minimum bid increment), plus (iii) $226,500 (the amount of the Termination Fee and Expense Reimbursement)).

Qualifying Bidder submitting such Successful Bid shall become the "Successful Bidder" and shall have such rights and responsibilities of a purchaser, as set forth in the Sale Agreement or Modified Sale Agreement, as applicable;

(n)     Within three (3) days after conclusion of the Auction, but prior to the Sale Hearing, the Successful Bidder shall complete and execute all agreements, contracts, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made and make and pay for all necessary filings with all applicable governmental or other authorities; and

(o)     Bids made after the close of the Auction shall not be considered by the Sellers.

(viii)  Back-Up Bidder and Return of Good Faith Deposits:

(a)     If an Auction is conducted in which a Qualifying Bidder submits the highest and/or otherwise best Qualifying Bid for all of the Sale Assets, the Qualifying Bidder with the next highest and/or otherwise best Qualifying Bid for all of the Sale Assets, as determined by the Sellers at the Auction in the exercise of their business judgment and in consultation with the Committee, shall be required to serve as the back-up bidder (the "Back-Up Bidder") and keep such bid open and irrevocable until the earlier of (i) 24 hours after the closing of the Sale transaction with the Successful Bidder, or (ii) the Drop Dead Date or any other outside closing date or termination date in the Sale Agreement or Modified Sale Agreement. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Sellers will be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Court.

(b)     Except as otherwise provided herein, Good Faith Deposits shall be returned to each bidder not selected by the Sellers as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) Business Day following the conclusion of the Auction. The Good Faith Deposit of the Back-Up Bidder shall be held by the Sellers until the earlier of (i) one (1) Business Day after the closing of the Sale transaction with the Successful Bidder for the Sale Assets, or (ii) the date of any termination of the Sale Agreement or Modified Sale Agreement of the Back-Up Bidder.

3.      The Termination Fee and the Expense Reimbursement are approved and binding on the Sellers and their estates. The Sellers are hereby authorized and directed to pay in

11

cash the Termination Fee and the Expense Reimbursement as provided herein in connection with

the sale of the Sale Assets to another bidder in any Alternative Transaction. The Expense

Reimbursement shall constitute an administrative expense claim in the Sellers' chapter 11 cases

pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code. The Sellers shall pay

the Termination Fee and the Expense Reimbursement to, or at the direction of, the Buyer, in the

event that each of the following occurs: (i) the Sale Agreement is terminated pursuant to Section

7.1(b) of the Sale Agreement, other than by the Sellers pursuant to Section 7.1(b)(iii) of the Sale

Agreement where the closing of the Sale Transaction has not occurred due to the failure of the

conditions contained in Section 6.3 of the Sale Agreement to be satisfied by the Drop Dead Date

(other than any condition that by its nature is to be satisfied by actions to be taken at the closing

of the Sale Transaction by the Buyer if the Buyer is prepared to take such actions on such date)

or Section 7.1(c)(ii) of the Sale Agreement; (ii) the Buyer is not then in default under the Sale

Agreement; and (iii) (a) an Alternative Transaction shall have closed within six (6) months of

such termination, or (b) this Court shall have entered a Sale Order approving the sale of the Sale

Assets to the Buyer, but this Agreement is terminated by the Buyer pursuant to Section 7.1(b)(iii)

of the Sale Agreement where the closing of the Sale Transaction has not occurred due to the

breach by the Seller of their obligations under the Sale Agreement or their failure to satisfy the

Closing conditions contained in Section 6.2 of the Sale Agreement. The payment of the

Termination Fee and the Expense Reimbursement, if payable in accordance with the foregoing,

shall be made solely from the proceeds of the sale to a Person other than the Buyer or its

Affiliates within three (3) Business Days of the closing of the Alternative Transaction; *provided*,

that the payment of the Termination Fee and the Expense Reimbursement, if payable in

12

accordance with the foregoing where the circumstance described in clause (iii)(b) above apply, shall be made by the Sellers within one (1) Business Day of the Drop Dead Date.

       4.      The form and manner of providing the Notice of Auction and Sale Hearing are hereby approved. Service of the Notice of Auction and Sale Hearing, as set forth below, constitutes sufficient notice of the Auction and Sale Hearing.

       5.      The Court shall hold the Sale Hearing on April 28, 2011, at 10:00 a.m. (prevailing Eastern Time), at which time the Court will consider approval of the Sale to the Buyer or the Successful Bidder of the Sale Assets, including the assumption and assignment of the Purchased Contracts.

       6.      The notices described in the subparagraphs below shall be sufficient and no further notice shall be required if given as follows:

(i)     The Sellers (or their agent) shall serve, within five (5) Business Days after entry of the Bidding Procedures Order (the "Mailing Deadline"), by overnight mail, electronic mail, or same-day messenger delivery, copies of the Notice of Auction and Sale Hearing, substantially in the form attached hereto as Schedule 1, upon: (a) the U.S. Trustee, (b) counsel to the Committee, (c) counsel to the Buyer, (d) any party who, in the past twelve (12) months, expressed to the Debtors an interest in acquiring the Sale Assets, and who the Debtors and their representatives reasonably and in good faith determine potentially have the desire and financial wherewithal to effectuate the Sale, (e) all parties who are known to possess or assert a claim against the Sale Assets, (f) all parties who hold a right to consent to the transfer or sale of the Sale Assets, (g) any parties entitled to notice under Bankruptcy Rule 2002 and Local Rule 2002-1(b), (h) all non-debtor parties to the Partnership Agreement, and (i) all non-debtor parties to the Purchased Contracts.

(ii)    On or before the Mailing Deadline, or as soon as practicable thereafter, the Sellers (or their agent) will publicize the Notice of Auction and Sale Hearing in the Wall Street Journal (National Edition) for two (2) consecutive business days.

(iii)   On or before the Mailing Deadline, the Sellers (or their agent) shall serve, by overnight courier, electronic mail, or same-day messenger delivery, the Notice of Assumption and Assignment, upon all known non-debtor parties to the Purchased Contracts. The Notice of Assumption and Assignment shall set forth (a) the intent of CILP to assume the Purchased Contracts and assign the contracts to the Buyer or the Successful Bidder, as applicable, and (b) applicable cure amount (the "Cure

13

Amount"), if any.  The Notice of Assumption and Assignment shall identify the Purchased Contracts and the Cure Amount that CILP believes must be paid in order to cure all defaults.  If no amount is listed on the Notice of Assumption and Assignment, CILP believes that there is no Cure Amount due.

7.  Any objection (an "Objection") to the Sale of the Sellers' Sale Assets, the assumption and assignment of the Purchased Contracts, or the amounts asserted as a Cure Amount must (a) specify the nature of such Objection, and (b) be filed with the Court and served so as to be actually received on or before 4:00 p.m. on April 21, 2011, upon:  (i) counsel to the Debtors, Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York 10019, Attention:  Michael P. Kessler, Esq. and Judy G.Z. Liu, Esq.; (ii) local counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attention:  Mark D. Collins, Esq.; (iii) counsel to the Buyer, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, Attention:  Jennifer Bellah Maguire, Esq. and Oscar Garza, Esq.; (iv) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (v) Wilmington Trust FSB, as successor trustee under the prepetition indentures for the senior unsecured floating rate notes, 5.875% senior unsecured notes, and 6.300% senior unsecured notes, 166 Mercer Street, Suite 2-R, New York, New York 10012-3249, Attention:  Adam Berman; (vi) counsel to the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attention:  Thomas Moers Mayer, Esq. and Joshua Brody, Esq.; and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).  If an Objection is timely filed, the hearing with respect to the Objection shall be held at the Sale Hearing.

8.  If an Objection challenges a Cure Amount, the Objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof.  Upon receipt of an Objection to a Cure Amount,

14

CILP may, in its sole discretion, hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the objecting party and CILP. So long as CILP holds the Claimed Cure Amount in reserve, CILP may, without further delay, assume and assign the Purchased Contracts that is the subject of an Objection relating to the Purchased Contract's Cure Amount.

9.      If no Objection to the Cure Amount or the proposed assumption and assignment of the Purchased Contracts is timely filed and served, CILP may assume and assign the Purchased Contracts to the Buyer or the Successful Bidder and the Cure Amount set forth in the Notice of Assumption and Assignment shall be binding upon the respective non-debtor party to the Purchased Contracts for all purposes. The objecting party shall thereafter be forever barred from objecting to the assumption and assignment of the Purchased Contracts and the Cure Amount, including, without limitation, the right to assert any condition to assignment and/or additional cure or other amount with respect to the Purchased Contracts.

10.      Failure of any objecting person or entity to timely file its Objection shall be an absolute bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, CILP's assumption and assignment of the Purchased Contracts, or the consummation of the Sale (including the transfer of the Sale Assets free and clear of all Liens).

11.      The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Bidding Procedures Order. The Sellers are hereby authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements of this Bidding Procedures Order.

12.    Notwithstanding any other provision contained herein, the Sellers, after consultation with the Committee, may adjourn or cancel the Auction or Sale at any time as an exercise of their sound business judgment.

13.    Notwithstanding any potential applicability of Bankruptcy Rule 6004(h) or other Rule, this Bidding Procedures Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable upon signature hereof.

Dated: April ____, 2011
       Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

16

## SCHEDULE 1

**Notice of Auction and Sale Hearing**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------------- x
                                                           :
In re                                                      :   Chapter 11
                                                           :
CAPMARK FINANCIAL GROUP INC., et al.,                      :   Case No. 09-13684 (CSS)
                                                           :
        Debtors.[1]                                        :   Jointly Administered
                                                           :
---------------------------------------------------------- x
```

## NOTICE OF AUCTION AND SALE HEARING IN CONNECTION WITH THE SALE OF REAL ESTATE DEBT INVESTMENT ADVISORY GROUP BUSINESS

NOTICE IS HEREBY GIVEN, as follows:

1.      On March 18, 2011, Capmark Financial Group Inc. and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Motion"),[2] pursuant to sections 105(a), 363(b), and 365 of the title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

---

[1]  The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc. (2188), Capmark Capital Inc. (6496), Capmark Finance Inc. (3444), Commercial Equity Investments, Inc. (4153), Mortgage Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity Holdings Inc. (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934), Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117), Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857), Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC (4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186), Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC (6831), Broadway Street California, L.P. (7722), Broadway Street 2001, L.P. (0187), Broadway Street XV, L.P. (7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC (9740), Capmark Managing Member 4.5 LLC (8979), Capmark Affordable Equity Inc. (2381), Capmark Investments LP (7999), and Protech Holdings C, LLC (7929). CFGI's corporate headquarters is located at 116 Welsh Road, Horsham, Pennsylvania, 19044. The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Sale Agreement (as defined below), as applicable.

RLF1 3926224v.1

District of Delaware (the "<u>Local Rules</u>"), seeking approval of, among other things, (i) the establishment of bidding procedures (the "<u>Bidding Procedures</u>"), (ii) the scheduling of an auction (the "<u>Auction</u>"), as necessary, and (iii) the scheduling of a sale hearing (the "<u>Sale Hearing</u>") in connection with the proposed sale (the "<u>Sale</u>") by Capmark Investments LP ("<u>CILP</u>") and Capmark Finance Inc. ("<u>CFI</u>", and together with CILP, the "<u>Sellers</u>") of certain assets relating to their business of managing a private real estate debt investment fund, including (i) the assumption and assignment of the Purchased Contracts, and (ii) the sale of the LP Interest and the Company Membership Interest (collectively, the "<u>Sale Assets</u>"). On April ___, 2011, the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") entered an order (the "<u>Bidding Procedures Order</u>") approving, among other things, the Bidding Procedures and the Sale Hearing schedule.

2.    The Sellers and PCCP Pool I, LLC (the "<u>Buyer</u>") have entered into that certain purchase agreement, dated March 15, 2011 (the "<u>Sale Agreement</u>"), for the Sale of the Sale Assets, whereby the Sellers have agreed to sell the Sale Assets to the Buyer, subject to higher and/or otherwise better offers.

3.    Pursuant to the Bidding Procedures Order, if the Sellers receive any higher and/or otherwise better bids for the Sale Assets, the Auction for the Sale Assets shall take place on April 26, 2011, at 11:00 a.m. (prevailing Eastern Time), at the offices of Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York 10019. Only parties that have submitted a Qualifying Bid, as set forth in the Bidding Procedures Order, by no later than 2:00 p.m. (prevailing Eastern Time) on April 22, 2011 (the "<u>Bid Deadline</u>"), may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Sale Assets must submit its competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4.    The Bidding Procedures Order provides that a Sale Hearing will be held on April 28, 2011, at 10:00 a.m. (prevailing Eastern Time), before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, in Room 6 of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801.

5.    At the Sale Hearing, the Sellers shall request that the Court enter an order, authorizing, among other things, the Sale of the Sale Assets held by the Sellers to the Buyer pursuant to the Sale Agreement, or authorizing the Sale of the Sale Assets to the Successful Bidder (as defined in the Bidding Procedures Order) following the Auction.

6.    At the Sale Hearing, the Court may enter such orders as it deems appropriate under the applicable law and as required by the circumstances and equities of these chapter 11 cases. Any objection (an "<u>Objection</u>") to the Sale of the Sale Assets pursuant to the Sale Agreement shall be in writing, shall conform to Bankruptcy Rules and the Local Rules, shall set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Sellers' estates or properties, the basis for the Objection and the specific grounds therefor, and shall be filed with the Court and served so as to be actually received on or before April 21, 2011, at 4:00 p.m. (prevailing Eastern Time) upon: (i) counsel to the Debtors, Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York 10019, Attention: Michael P. Kessler, Esq. and Judy G.Z. Liu, Esq.; (ii) local counsel to the

2

Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq.; (iii) counsel for the Buyer, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, Attention: Jennifer Bellah Maguire, Esq. and Oscar Garza, Esq.; (iv) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (v) Wilmington Trust FSB, as successor trustee under the prepetition indentures for the senior unsecured floating rate notes, 5.875% senior unsecured notes, and 6.300% senior unsecured notes, 166 Mercer Street, Suite 2-R, New York, New York 10012-3249, Attention: Adam Berman; (vi) counsel to the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attention: Thomas Moers Mayer, Esq. and Joshua Brody, Esq.; and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).

7.    If an Objection is timely filed, a hearing with respect to that Objection shall be held before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, at the Sale Hearing.

8.    A copy of the Sale Agreement is attached as <u>Exhibit C</u> to the Motion.

Dated: April ___, 2011
     Wilmington, Delaware

_____

Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Jason M. Madron (No. 4431)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Martin J. Bienenstock
Michael P. Kessler
Judy G. Z. Liu
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333

*Attorneys for the Debtors and Debtors in Possession*

3

## SCHEDULE 2

**Notice of Assumption and Assignment**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------

|  |  |  |
|---|---|---|
| *In re* | : | **Chapter 11** |
|  | : |  |
| **CAPMARK FINANCIAL GROUP INC.,** *et al.,* | : | **Case No. 09-13684 (CSS)** |
|  | : |  |
| **Debtors.**[1] | : | **Jointly Administered** |
|  | : |  |

---------------------------------------------------------------:
x

**NOTICE OF INTENT TO ASSUME AND ASSIGN CONTRACTS IN CONNECTION
WITH THE SALE OF REAL ESTATE DEBT INVESTMENT ADVISORY GROUP
BUSINESS AND THE FIXING OF CURE AMOUNTS AND
PROCEDURES ASSOCIATED THEREWITH**

NOTICE IS HEREBY GIVEN, as follows:

On April ___, 2011, the United States Bankruptcy Court for the District of
Delaware (the "Court") entered an order (the "Bidding Procedures Order"),[2] pursuant to sections
105(a), 363(b), and 365 of the title 11 of the United States Code (the "Bankruptcy Code"), Rules
2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy
Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax
identification number, are: Summit Crest Ventures, LLC (5690), Capmark Financial Group Inc (2188), Capmark
Capital Inc. (6496), Capmark Finance Inc (3444), Commercial Equity Investments, Inc. (4153), Mortgage
Investments, LLC (6319), Net Lease Acquisition LLC (9658), SJM Cap, LLC (0862), Capmark Affordable Equity
Holdings Inc (2379), Capmark REO Holding LLC (3951), Paramount Managing Member AMBAC II, LLC (3934),
Paramount Managing Member AMBAC III, LLC (3999), Paramount Managing Member AMBAC IV, LLC (0117),
Paramount Managing Member AMBAC V, LLC (3366), Paramount Managing Member LLC (0184), Paramount
Managing Member II, LLC (7457), Paramount Managing Member III, LLC (0196), Paramount Managing Member
IV, LLC (0199), Paramount Managing Member V, LLC (0201), Paramount Managing Member VI, LLC (5857),
Paramount Managing Member VII, LLC (5855), Paramount Managing Member VIII, LLC (5854), Paramount
Managing Member IX, LLC (5452), Paramount Managing Member XI, LLC (5455), Paramount Managing Member
XII, LLC (5457), Paramount Managing Member XVIII, LLC (3087), Paramount Managing Member XIV, LLC
(4194), Paramount Managing Member XV, LLC (4192), Paramount Managing Member XVI, LLC (4186),
Paramount Northeastern Managing Member, LLC (3086), Capmark Affordable Properties Inc. (3435), Paramount
Managing Member XXIII, LLC (4754), Paramount Managing Member XXIV, LLC (3615), Paramount Managing
Member 30, LLC (6824), Paramount Managing Member 31, LLC (6826), Paramount Managing Member 33, LLC
(6831), Broadway Street California, L P. (7722), Broadway Street 2001, L P. (0187), Broadway Street XV, L P
(7730), Broadway Street XVI, L.P. (7725), Broadway Street XVIII, L.P. (9799), Broadway Street Georgia I, LLC
(9740), Capmark Managing Member 4 5 LLC (8979), Capmark Affordable Equity Inc. (2381), Capmark
Investments LP (7999) and Protech Holdings C, LLC (7929)  CFGI's corporate headquarters is located at 116
Welsh Road, Horsham, Pennsylvania, 19044  The addresses for all of the Debtors are available at the following
World Wide Web address: http://chapter11 epiqsystems com/capmark

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bidding
Procedures Order or the Sale Agreement (as defined below), as applicable.

of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") in the above-captioned chapter 11 cases of Capmark Financial Group Inc. and certain of its subsidiaries and affiliates, as debtors and debtors in possession (collectively, the "Debtors"), approving, among other things, this notice, the scheduling of a hearing (the "Sale Hearing"), and the procedures for the fixing of the cure amount ("Cure Amount") related to the assumption and assignment of the Purchased Contracts (the "Purchased Contracts") in connection with the proposed sale (the "Sale") by Capmark Investments LP ("CILP") and Capmark Finance Inc. ("CFI", and together with CILP, the "Sellers") of certain assets relating to their business of managing a private real estate debt investment fund, including (i) the Purchased Contracts, (ii) the LP Interest, and (iii) the Company Membership Interest (collectively, the "Sale Assets"). As part of the Sale, CILP will assume the Purchased Contracts pursuant to section 365 of the Bankruptcy Code and assign it to PCCP Pool I, LLC (the "Buyer") or another Successful Bidder at Auction (each as defined in the Bidding Procedures Order), pursuant to the terms of that certain purchase agreement between the Sellers and the Buyer, dated March 15, 2011 (the "Sale Agreement"), attached to the Motion as Exhibit C.

1.      CILP believes that any and all defaults (other than the filing of these chapter 11 cases) under the Purchased Contracts can be cured by the payment of the Cure Amount listed on Exhibit A, attached hereto.

2.      Any objections to CILP's assumption and assignment of the Purchased Contracts or the amount asserted as the Cure Amount (each, an "Assumption and/or Cure Objection") must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of the Purchased Contracts (the "Claimed Cure Amount").

3.      To be considered a timely Assumption and/or Cure Objection, such objection must be filed with the Court and served so as to be actually received on or before April 21, 2011, at 4:00 p.m. (prevailing Eastern Time) upon: (i) counsel to the Debtors, Dewey & LeBoeuf LLP, 1301 Avenue of the Americas, New York, New York 10019, Attention: Michael P. Kessler, Esq. and Judy G.Z. Liu, Esq.; (ii) local counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq.; (iii) counsel to the Buyer, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, California 90071, Attention: Jennifer Bellah Maguire, Esq. and Oscar Garza, Esq.; (iv) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; (v) Wilmington Trust FSB, as successor trustee under the prepetition indentures for the senior unsecured floating rate notes, 5.875% senior unsecured notes, and 6.300% senior unsecured notes, 166 Mercer Street, Suite 2-R, New York, New York 10012-3249, Attention: Adam Berman; (vi) counsel to the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attention: Thomas Moers Mayer, Esq. and Joshua Brody, Esq.; and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b).

4.      If an Assumption and/or Cure Objection is timely filed, a hearing with respect to that objection shall be held before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, at the Sale Hearing.

5.    Unless the Assumption and/or Cure Objection is timely filed and served, the assumption and assignment of the Purchased Contracts by CILP will proceed without further notice at the Sale Hearing to approve the Sale.

6.    Parties that fail to file and serve timely Assumption and/or Cure Objections shall be deemed to have waived and released any and all rights to assert Cure Amounts different from those listed on Exhibit A and, subject to payment of the Cure Amounts listed on Exhibit A with respect to the Purchased Contracts, shall be forever barred and estopped from asserting or claiming against CILP, the Buyer, or any assignee of the Purchased Contracts that any additional amounts are due or defaults exist, or prohibitions or conditions to assignment exist or must be satisfied, under the Purchased Contracts.

7.    If no Cure Amount is due under the Purchased Contracts and the counterparties to the Purchased Contracts do not otherwise object to CILP's assumption and assignment of the Purchased Contracts, no further action need to be taken on the part of such non-debtor parties.

8.    Assumption and/or Cure Objections that object solely to the Cure Amount may not prevent or delay CILP's assumption and assignment of the Purchased Contracts. If a Party objects solely to a Cure Amount, CILP may, in its sole discretion, hold the Claimed Cure Amount in reserve pending further order of the Court or mutual agreement of the parties. So long as CILP holds the Claimed Cure Amount in reserve, and there are no other unresolved objections to assumption and assignment, CILP can, without further delay, assume and assign the Purchased Contracts that is the subject of the objection. Under such circumstances, the objecting party's recourse is limited to the funds held in reserve.

9.    CILP's decision to assume and assign the Purchased Contracts to the Buyer or the Successful Bidder is subject to Court approval and the closing of the Sale Agreement (the "Closing"). Accordingly, absent such Closing, the Purchased Contracts shall not be deemed assumed nor assigned, and shall in all respects be subject to further administration under the Bankruptcy Code. The inclusion of the Purchased Contracts in the exhibit to this notice shall not constitute or be deemed to be a determination or admission by CILP or the Buyer (or the Successful Bidder) that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated: April ___, 2011
     Wilmington, Delaware

                              _____
                              Mark D. Collins (No. 2981)
                              Paul N. Heath (No. 3704)
                              Jason M. Madron (No. 4431)
                              Lee E. Kaufman (No. 4877)
                              RICHARDS, LAYTON & FINGER, P.A.
                              One Rodney Square
                              920 North King Street
                              Wilmington, Delaware 19801
                              Telephone:  (302) 651-7700
                              Facsimile:  (302) 651-7701

                              -and-

                              Martin J. Bienenstock
                              Michael P. Kessler
                              Judy G. Z. Liu
                              DEWEY & LEBOEUF LLP
                              1301 Avenue of the Americas
                              New York, New York 10019
                              Telephone:  (212) 259-8000
                              Facsimile:  (212) 259-6333

                              *Attorneys for the Debtors and Debtors in Possession*

4

## EXHIBIT A

### Cure Schedule for the Purchased Contracts

| Debtor(s) | Counterparty Name and Address | Description of Agreement | Cure Amount |
|-----------|-------------------------------|--------------------------|-------------|
|           |                               |                          |             |