**ORIGINAL**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x

|  |  |  |
|---|---|---|
| *In re:* | : | **Chapter 11** |
|  | : |  |
| **CAPMARK FINANCIAL GROUP INC.,** *et al.,* | : | **Case No. 09-13684 (CSS)** |
|  | : |  |
| **Reorganized Debtors and Debtors in Possession.**[1] | : | **Jointly Administered** |
|  | : |  |
|  | : | **Re: D.I. 5688, 5696, 5699** |

---------------------------------------------------------------x

## ORDER APPROVING FOURTH SALE OF SUBSEQUENT SALE ASSETS IN LOW-INCOME HOUSING TAX CREDIT BUSINESS FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, CLAIMS, AND INTERESTS

---

[1] On September 30, 2011, the joint chapter 11 plan of 14 of the original 46 debtors (each a "Debtor" and collectively, the "Debtors") became effective and the 14 reorganized debtors (the "Reorganized Debtors") emerged from chapter 11 following certain corporate conversions. The Reorganized Debtors include the following entities: Summit Crest Ventures, LLC; Capmark Financial Group Inc.; Capmark Capital LLC (f/k/a Capmark Capital Inc.); Capmark Finance LLC (f/k/a Capmark Finance Inc.); Commercial Equity Investments LLC (f/k/a Commercial Equity Investments, Inc.); Mortgage Investments, LLC, Net Lease Acquisition LLC; SJM Cap, LLC; Capmark Affordable Equity Holdings LLC (f/k/a Capmark Affordable Equity Holdings Inc.); Capmark REO Holding LLC; Capmark Affordable Properties LLC (f/k/a Capmark Affordable Properties Inc., f/k/a Paramount Properties Inc.); Capmark Affordable Equity LLC (f/k/a Capmark Affordable Equity Inc.); Capmark Investments LP; and Protech Holdings C, LLC. On October 3, 2013, the Court issued an order closing the chapter 11 cases of eight of the Reorganized Debtors, Capmark Investments LP; Commercial Equity Investments LLC; Mortgage Investments, LLC; Net Lease Acquisition LLC; SJM Cap, LLC; Capmark REO Holding LLC; Capmark Affordable Equity LLC; and Protech Holdings C, LLC. The six Reorganized Debtors' open cases are Summit Crest Ventures, LLC; Capmark Financial Group Inc.; Capmark Capital LLC; Capmark Finance LLC; Capmark Affordable Equity Holdings LLC; and Capmark Affordable Properties LLC.

On May 17, 2011, the other 32 Debtors filed a motion to dismiss their chapter 11 cases. On July 5, 2011, the Court issued an order dismissing the chapter 11 cases of six of the Debtors, Broadway Street Georgia I, LLC, Broadway Street XVI, L.P., Broadway Street XVIII, L.P., Paramount Managing Member IX, LLC, Paramount Managing Member XI, LLC, and Paramount Managing Member XV, LLC. On November 16, 2011, the Court issued an order dismissing the cases of five more Debtors, Paramount Managing Member IV, LLC, Paramount Managing Member XVIII, LLC, Paramount Managing Member XXIII, LLC, Paramount Managing Member 31, LLC, and Broadway Street 2001, L.P. On March 6, 2012, the Court issued an order dismissing the cases of four more Debtors, Paramount Managing Member LLC, Paramount Managing Member V, LLC, Paramount Managing Member VIII, LLC, and Broadway Street California, L.P. On June 8, 2012, the Court issued an order dismissing the cases of four more Debtors, Paramount Managing Member III, LLC, Paramount Managing Member VII, LLC, Paramount Managing Member XII, LLC, and Paramount Managing Member 30 LLC. On September 21, 2012, the Court issued an order dismissing the cases of one more Debtor, Paramount Northeastern Managing Member, LLC. On April 10, 2013, the Court issued an order dismissing the cases of two more Debtors, Paramount Managing Member XIV, LLC and Paramount Managing Member XXIV, LLC. On July 11, 2014, the Court issued an order dismissing the cases of six more Debtors, Capmark Managing Member 4.5 LLC, Paramount Managing Member Ambac II, LLC, Paramount Managing Member Ambac III, LLC, Paramount Managing Member Ambac IV, LLC, Paramount Managing Member Ambac V, LLC, Paramount Managing Member XVI, LLC, subject to certain conditions precedent. The Court adjourned consideration of the motion to dismiss with respect to the remaining four Debtors (the "Remaining Debtors") *sine die.*

The four Remaining Debtors in these chapter 11 cases are: Broadway Street XV, L.P., Paramount Managing Member 33, LLC, Paramount Managing Member II, LLC, and Paramount Managing Member VI, LLC.

The addresses for all of the Debtors are available at the following World Wide Web address: http://chapter11.epiqsystems.com/capmark.

Upon the motion, dated as of September 17, 2014 [D.I. 5688] (the "Motion"),[2] of Reorganized Debtor Capmark Financial Group Inc. ("CFGI") and certain of its subsidiaries and affiliates, as Debtors and Reorganized Debtors (collectively, "Capmark"), pursuant to sections 105(a), 363(b), and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), requesting entry of this Sale Order, approving and authorizing the sale ("Sale") of certain of Capmark's equity interests in a new special purpose entity formed to hold its interest in the JPM LIHTC Transactions (the NewCo Equity Interest, as further described in the Motion), to HCP Pacific Holdings, LLC (the "Buyer"), pursuant to the Sale Agreement (as defined below), free and clear of any and all liens, encumbrances, claims and interests of any kind, nature or description (collectively, the "Liens") pursuant to section 363(f) of the Bankruptcy Code and pursuant to the Sale Agreement, all as further described in the Motion and in the supplement thereto, dated as of September 22, 2014 [D.I. 5699] (the "Supplement"); and the Court having entered a bidding procedures order on August 19, 2011 [D.I. 3540] (the "Bidding Procedures Order") and the Initial Sale Order on September 23, 2011 [D.I. 3783]; and an Auction having been held on September 19, 2011, in accordance with the Bidding Procedures Order; and upon the *Declaration of David Sebastian in Support of Sale of Substantially All Remaining Assets Relating to the Debtors' Low-Income Housing Tax Credit Business*, filed by the Debtors on September 19, 2011 [D.I. 3732] (the "Sebastian Declaration"); and upon the *Declaration of*

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Sale Agreement (as defined below), as applicable.

2

*Alyssa J. Brodzinski in Support of Fourth Motion, Pursuant to Sections 105(a), 363(b), and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002-1 and 6004-1, for Order Approving Sale of Certain Subsequent Assets in Reorganized Debtors' Low-Income Housing Tax Credit Business, Free and Clear of all Liens, Encumbrances, Claims, and Interests,* filed by Capmark on September 19, 2014 [D.I. 5696]; and the Court having determined that the relief sought in the Motion and the Supplement is in the best interests of the Sellers, their estates, and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion and the Supplement establish just cause for the relief granted herein; and all objections to the Motion and the Supplement having been withdrawn, resolved, or overruled; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

> A.    This Court has subject matter jurisdiction to consider the Motion, the Supplement, and the relief requested therein pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

> B.    Time is of the essence in consummating the Sale of the NewCo Equity Interest, and it is in the best interests of the Sellers and their estates to sell the NewCo Equity Interest within the time constraints set forth in the Sale Agreement.  The terms of the Sale Agreement, as amended, are the highest and best terms for the Sale of the NewCo Equity Interest.  Accordingly, notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.    As previously determined by the Court in the Initial Sale Order, the procedures set forth in the Bidding Procedures Order were substantively fair to all parties. The Sellers conducted the sale process (including the Auction) in accordance with the procedures set forth in the Bidding Procedures Order.

D.    After the conclusion of the Auction, the Debtors, in consultation with the Committee,[4] determined that the highest and/or otherwise best Qualifying Bid for the right to acquire the Sale Assets was that of the Buyer, as set forth in that certain Purchase Agreement, dated as of September 19, 2011, as amended, between Reorganized Debtors Capmark Finance LLC (f/k/a Capmark Finance Inc.) ("CFI"), Capmark Affordable Equity Holdings LLC (f/k/a Capmark Affordable Equity Holdings Inc.) ("CAEH"), Capmark Affordable Equity LLC (f/k/a Capmark Affordable Equity Inc.) ("CAE"), Capmark Affordable Properties LLC (f/k/a Capmark Affordable Properties Inc.) ("CAP"), and non-debtor Protech Development Corporation ("PDC") (the "Initial Sellers") and the Buyer (the "Sale Agreement"), attached as Exhibit A to the Initial Sale Order. Sellers will transfer the NewCo Equity Interest to Buyer pursuant to the terms of an Amendment to the Sale Agreement and any related transaction documents, which will be integrated into the Sale Agreement.[5]

---

[4] The Committee held consultation rights pursuant to the Sale Agreement for so as long as it was still constituted under provisions of the Plan.

[5] All references to the Sale Agreement herein shall be deemed to include all amendments thereto, including the Amendment to be executed by Sellers and Buyer in connection with the sale of the NewCo Equity Interest.

E.      Upon the closing of the NewCo Equity Interest Sale (the "Subsequent Closing"), the NewCo Equity Interest will have been acquired after adequate marketing, in good faith, and as the result of arm's-length negotiations.

F.      Written notice of the Sale, the Motion, and the Supplement, and a reasonable opportunity to object or be heard with respect to the Sale, has been afforded to all interested persons and entities, including: (i) the U.S. Trustee, (ii) counsel to the Buyer, (iii) all investors and credit enhancers in related LIHTC Funds, and (iv) all parties requesting notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b), and in accordance with this Court's Order dated September 18, 2014, shortening notice on this Motion [D.I. 5692].

G.      Notice, as specified in the preceding paragraph and as evidenced by the affidavits of service filed with the Court, is reasonable and adequate and consistent with this Court's September 18, 2014, Order [D.I. 5692]. Such notice and opportunity for hearing was adequate and appropriate in the circumstances of these cases, comports with all due process requirements, and satisfies the requirements of the Bankruptcy Rules and no other or further notice is required.

H.      As previously determined by the Court in the Initial Sale Order, subject to entry of this Sale Order, the Sellers have (i) all power and authority necessary to consummate the Sale of the NewCo Equity Interest, and (ii) taken all action necessary to authorize and approve such transaction.

I.      Except as otherwise expressly provided in the Sale Agreement, no further consents or approvals are required for the Sellers to consummate the Sale of the NewCo Equity Interest other than the consent and approval of this Court. Neither the execution of the Sale Agreement nor the Sale of the NewCo Equity Interest in accordance with the terms of the Sale

5

Agreement will constitute a violation of any provision of the organizational documents of the Sellers or any other instrument, law, regulation, or ordinance by which the Sellers are bound.

J.     This Sale Order and consummation of the Sale are supported by good business reasons and will serve the best interests of the Sellers, their estates, and creditors by maximizing the values obtained from the Sellers' NewCo Equity Interest.

K.     The marketing and bidding procedures implemented by the Debtors, as set forth in the LIHTC Sale Motion, the Bidding Procedures Order, the Sebastian Declaration, and the record of the hearings relating to the Sale, were fair, proper, and reasonably calculated to result in the best value received for the NewCo Equity Interest.

L.     The Sellers solicited offers for, scheduled and conducted the Auction, and selected the Buyer for the right to acquire the NewCo Equity Interest in accordance with the Bidding Procedures Order.

M.     As previously determined by the Court in the Initial Sale Order, the Sale Agreement was negotiated, proposed, and entered into by the Buyer without collusion, in good faith, and from an arm's-length bargaining position.  There is no insider relationship between affiliates of the Buyer and the Sellers.  The Sellers and the Buyer have not engaged in any conduct that would cause or permit the Sale Agreement to be avoided under section 363(n) of the Bankruptcy Code.

N.     The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such is entitled to all of the protections afforded thereby, and has acted in good faith in all respects in connection with this proceeding, in that:  (i) the Buyer complied with all provisions in the Bidding Procedures Order; (ii) all payments to be made by the Buyer and other agreements entered into between the Buyer and the Sellers in connection with the Sale

6

have been disclosed; (iii) the negotiation and execution of the Sale Agreement and related agreements were in good faith and constituted an arm's-length transaction; and (iv) the disclosure requirements required by Local Rule 6004-1 have been satisfied.

O.    The consideration to be paid by the Buyer to the Sellers for the Sellers' NewCo Equity Interest is fair and reasonable, is the highest and/or otherwise best offer for the Sellers' NewCo Equity Interest, and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and any similar laws of any state or jurisdiction whose law is applicable to the Sale. The Sale does not constitute a fraudulent conveyance or fraudulent transfer under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and any similar laws of any state or jurisdiction whose law is applicable to the Sale. Capmark's determination that the Sale Agreement (as modified) constitutes the highest and/or otherwise best offer for the Sellers' NewCo Equity Interest constitutes a valid and sound exercise of Capmark's business judgment.

P.    Except as expressly set forth in the Sale Agreement, the Buyer shall have no liability or obligations for any Liens or other interest, or other obligation of or against Capmark, related to the Sellers' NewCo Equity Interest by reason of the transfer of the Sellers' NewCo Equity Interest to the Buyer. The Buyer shall not be deemed, as a result of any action taken in connection with the purchase of the Sellers' NewCo Equity Interest, to:  (1) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities); or (2) have, *de facto* or otherwise, merged with or into any of the Debtors. Subject to any terms and conditions of the Sale Agreement, including all liabilities assumed and to be assumed by the Buyer pursuant to the Sale Agreement, and without limiting

7

the assumption by the Buyer of any such assumed liability, the Buyer is not acquiring or assuming any liability, warranty, or other obligation of the Debtors, except as expressly set forth in the Sale Agreement with respect to the related Subsequent Assumed Liabilities, including, without limitation, any liability arising from any of the following:  (i) any employment or labor agreements, consulting agreements, severance agreements, change in control agreements, or other similar agreements to which any Debtor is or was a party, (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including without limitation, any pension plan of the Debtors, (iii) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974 ("ERISA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act (the "WARN Act"), (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environment liabilities, debts, claims, or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any other environmental, health, and safety requirements, (vi) any bulk sales or similar law, (vii) any litigation by or against the Debtors, and (viii) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including without limitation, any theory or equitable law, including without limitation, any theory of antitrust or successor or

8

transferee liability.  To the extent there is any conflict between this paragraph of the Sale Order and the Sale Agreement, the provisions of the Sale Agreement shall govern.

Q.    The Buyer would not have entered into the Sale Agreement and would not consummate the transactions contemplated thereby if the Sale of the NewCo Equity Interest to the Buyer were not free and clear of all Liens and other interests of any kind or nature whatsoever (except as provided in the Sale Agreement), or if the Buyer would, or in the future could, be liable for any of such Liens or other interests.

R.    The consummation of the Sale pursuant to the Sale Agreement will be a legal, valid, and effective Sale of the Sellers' NewCo Equity Interest to the Buyer and will vest the Buyer with all of the Sellers' right, title, and interest in and to the Sellers' NewCo Equity Interest, free and clear of all Liens and claims (as defined in section 101(5) of the Bankruptcy Code), in accordance with section 363(f) of the Bankruptcy Code, because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

S.    All parties with Liens against the Sellers' NewCo Equity Interest, if any, who did not object to the Motion, the Supplement, and the relief requested therein, or who withdrew or resolved their objections to the Motion or the Supplement, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against the Buyer, its affiliates, or any agent of the foregoing to recover any claim such person or entity has solely against the Sellers or any of their affiliates.  All other objections to the Sale of the Sellers' NewCo Equity Interest are overruled.  Failure to sell the Sellers' NewCo Equity Interest free and clear of Liens would be substantially less beneficial to the Sellers' estates.

T.    The Sale of the Sellers' NewCo Equity Interest contemplated in the Sale Agreement is being undertaken in furtherance of and in connection with the Reorganized Debtors' *Third Amended Joint Plan of Capmark Financial Group Inc. and Certain Affiliated Proponent Debtors Under Chapter 11 of the Bankruptcy Code*, dated August 23, 2011 [D.I. 3558] (the "Plan"), which was confirmed by order of this Court on August 24, 2011 [D.I. 3658].

U.    All counterparties to the NewCo Debtor Assigned Contracts (as defined in the RSA), having the right to consent to the assumption or assignment of the Debtor-Movants' NewCo Debtor Assigned Contracts, have validly waived the requirements of section 365(b) of the Bankruptcy Code and, to the extent applicable, section 365(c) of the Bankruptcy Code, with respect to notice, any obligation to cure or provide adequate assurance of future performance by the Debtor-Movants, and the counterparties' right to object thereto.

V.    Because the NewCo Reorganized Debtor Assigned Contracts were previously assumed by Reorganized Debtors CFGI, CAEH, CAE, and/or CAP, as applicable, pursuant to section 7.1 of the Plan and paragraph 20 of the Confirmation Order, this Court's authorization is not required with respect to the postconfirmation assignment of such contracts to NewCo pursuant to section 365 of the Bankruptcy Code or otherwise.

W.    Upon entry of this Sale Order, the Sellers shall have full power and authority to consummate the Sale of the Sellers' NewCo Equity Interest and all related transactions and actions contemplated by the Sale Agreement.  As previously determined by the Court in the Initial Sale Order, the Sale Agreement and the Sale have been duly and validly authorized by all necessary action of the Sellers and no shareholder vote, board resolution, or other corporate action is required of the Sellers to consummate such Sale.

10

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion and the Supplement are granted in all respects, other than with respect to matters already addressed and approved by the Bidding Procedures Order, the Initial Sale Order, the First Subsequent Sale Order, the Second Subsequent Sale Order, and the Third Subsequent Sale Order, and other than with respect to the actual sale of any other Subsequent Sale Asset not addressed by the Motion or the Supplement.

2.      All objections with regard to the relief sought in the Motion and the Supplement that have not been withdrawn, waived, settled, or otherwise dealt with as expressly provided herein are hereby overruled.

3.      Pursuant to sections 363(b), 363(f), and 365 of the Bankruptcy Code, the Sale of the Sellers' NewCo Equity Interest specified in the Motion and the Supplement is approved, and the Sellers are authorized to consummate the Sale of the NewCo Equity Interest pursuant to the Sale Agreement and all agreements contemplated thereunder, and execute any and all documents and take all actions necessary and appropriate to effectuate and consummate the Sale of the Sellers' NewCo Equity Interest in consideration of the Purchase Price specified in the Sale Agreement (as modified) and upon the terms set forth therein including, without limitation, selling, assigning, and transferring to the Buyer all of the Sellers' right, title, and interest in and to the Sellers' NewCo Equity Interest, and including the taking of any other actions required of Capmark to effectuate the Sale, including causing its non-debtor subsidiaries to take any actions, if necessary.  The Sellers' prior execution of the Sale Agreement is hereby ratified and approved.

4.      The transfer of the Sellers' NewCo Equity Interest is a legal, valid, and effective transfer and shall vest the Buyer with all right, title, and interest of the Sellers in the

11

Sellers' NewCo Equity Interest, free and clear of all Liens (including but not limited to any and all "claims," as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature that have been, are, or could be asserted against Capmark whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, pursuant to section 363(f) of the Bankruptcy Code and any and all rights and claims under any bulk transfer statutes and related laws, whether arising by agreement, statute, or otherwise and whether arising before or after the commencement of these chapter 11 cases, whether known or unknown, including Liens or interests of any of the creditors, vendors, employers, suppliers, or lessors of the Debtors or any other third party. Any and all such Liens shall attach to the net proceeds of the Sellers' NewCo Equity Interest, with the same priority, validity, force, and effect as they now have against such assets.

5.      All persons and entities asserting or holding any Liens or other interests in or with respect to the Sellers' NewCo Equity Interest (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), however arising, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Liens or other interests against the Buyer.

6.      The transactions authorized herein shall be of full force and effect, regardless of any Sellers' lack of good standing in any jurisdiction in which such Seller is formed or authorized to transact business.

7.      A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Liens or other interests of record.

8.      The Sale shall be binding upon all entities, including, without limitation, Capmark, the Buyer, other parties to the Sale Agreement, all creditors, members, and owners of Capmark, all persons having or asserting a Lien or other interest upon Capmark's assets, including the Sellers' NewCo Equity Interest, and all parties to any actions or proceedings that directly or indirectly contest the power or authority of the Sellers to sell, assign, and convey the Sellers' NewCo Equity Interest, that seek to enjoin any such sale, assignment, or conveyance, or that assert any rights of first offer, first refusal, and the like which may apply in connection herewith.

9.      The contemplated Sale has been undertaken by the Buyer and the Sellers at arm's-length, without collusion, and the Buyer shall acquire the Sellers' NewCo Equity Interest pursuant to the Sale Agreement in good faith, under section 363(m) of the Bankruptcy Code, and is, and shall be entitled to, all of the protections in accordance therewith. The consideration provided for the Sellers' NewCo Equity Interest pursuant to the Sale Agreement is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

10.      This Sale Order and all provisions of the Sale Agreement shall be binding upon any successors and assigns of the Sellers, including, without limitation, any trustee appointed for the Sellers in their chapter 11 cases or in any superseding proceeding under chapter 7 of the Bankruptcy Code.

11.      Nothing contained in the Plan confirmed in these chapter 11 cases shall be deemed to conflict with or derogate the provisions of the Sale Agreement, to the extent modified

13

by the Initial Sale Order, the First Subsequent Sale Order, the Second Subsequent Sale Order, the Third Subsequent Sale Order, or this Sale Order.

12.    The Sale Agreement or any document relating thereto may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Sellers or their estates.

13.    From and after the date hereof, the Sellers shall be authorized, with respect to the Sale of the NewCo Equity Interest, to perform their respective obligations under the Sale Agreement or any other documents relating thereto to which they are a party and act in accordance with the terms of the Sale Agreement or any other documents relating thereto.

14.    Unless otherwise provided in this Sale Order, to the extent any inconsistency exists between the provisions of the Sale Agreement and this Sale Order, the provisions contained herein shall govern. The failure specifically to include any provisions of the Sale Agreement in this Sale Order does not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Sale Agreement be authorized and approved in its entirety.

15.    The provisions of this Sale Order shall be self-executing and neither the Sellers nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order. However, the Sellers and the Buyer, and each of their respective officers, employees, and agents are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Sellers or the Buyer deem

14

necessary or appropriate to implement and effectuate the terms of the Sale Agreement and this Sale Order. This Sale Order is and shall be (i) effective as a determination that, upon closing, Liens and other interests existing as to the Sellers' NewCo Equity Interest conveyed to the Buyer have been and hereby are adjudged and declared to be unconditionally released, discharged, and terminated; and (ii) binding upon and govern the acts of all entities, including all filing agents or officers, title agents or companies, recorders or registrars of mortgages or deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Sellers' NewCo Equity Interest conveyed to the Buyer.

16.     For the reasons set forth in the Supplement, notwithstanding anything to the contrary in the Orders of this Court relating to the Rejection Motions, which orders were issued by the Court on December 19, 2012 [D.I. 4856-4859] (the "Rejection Orders"), neither the closing of the settlement described in the Settlement Motion nor the Subsequent Closing of this Sale shall constitute a rejection of the Operating Agreement of GMACCH Guaranteed Tax Credit Fund II, LLC, dated as of October 1, 2001, by and among Paramount Managing Member II, LLC and First Chicago Leasing Corporation, as amended by that certain amendment dated as of March 31, 2004 and that certain amendment dated as of March 8, 2006; the First Amended and Restated Operating Agreement of GMACCH Guaranteed Tax Credit Fund VI, LLC, by and among Paramount Managing Member VI, LLC and First Chicago Leasing Corporation, as amended by that certain amendment dated March 8, 2006; the Operating Agreement of GMAC Guaranteed Tax Credit Fund 33, LLC, dated as of August 11, 2004, by and among Paramount

Managing Member 33, LLC and Washington Mutual Bank, as amended by that certain amendment dated July 25, 2006; and the First Amended and Restated Agreement of Limited Partnership of American Tax Credit Corporate Fund XV, LP, dated as of May 31, 2002, by and among Broadway and GMACCH Guaranteed Tax Credit Fund VI, LLC, as amended by that certain amendment dated March 8, 2006, which the Debtor-Movants are proposing to assume and assign to NewCo as NewCo Debtor Assigned Contracts to Buyer. For the avoidance of doubt, this paragraph 16 of this Order supplements and amends the previously issued Rejection Orders.

17.    Upon the Closing, the Debtor-Movants are authorized and empowered to assume, assign, and/or transfer each of the Debtor-Movants NewCo Debtor Assigned Contracts to Buyer. Upon the Closing, the Buyer shall have assumed the Debtor-Movants' NewCo Debtor Assigned Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtor-Movants of the NewCo Debtor Assigned Contracts shall not be a default thereunder.

18.    All parties having the right to consent to the assumption or assignment of the Debtor-Movants' NewCo Debtor Assigned Contracts are deemed to have consented to such assumption and assignment, as required by section 365(c) of the Bankruptcy Code, and adequate assurance of future performance has been sufficiently demonstrated by or on behalf of the Buyer with respect to the NewCo Debtor Assigned Contracts.

19.    There shall be no rent accelerations, assignment fees, increases, or any other charges charged to the Debtor-Movants or the Buyer or their respective affiliates or designees as a result of the Debtor-Movants' assumption and assignment to the Buyer of the Debtor-Movants' NewCo Debtor Assigned Contracts, and the validity of such assumption or assignment shall not be affected by any dispute between any of the Debtor-Movants or their affiliates and any counterparty to such contracts, and the Debtor-Movants' NewCo Debtor Assigned Contracts, upon assignment to the

16

Buyer, shall be deemed valid and binding and in full force and effect in accordance with their terms. The failure of the Debtor-Movants or the Buyer to enforce at any time one or more terms or conditions of any of the NewCo Debtor Assigned Contracts shall not be a waiver of such terms or conditions, or of the Debtor-Movants' and Buyer's rights to enforce every term and condition of the Debtor-Movants' NewCo Debtor Assigned Contracts.

20.    Without limiting in any manner the effect of the other provisions of this Sale Order, any person or entity that asserts a Lien or other interest against the Sellers' NewCo Equity Interest shall be, and hereby is, directed to deliver to the Sellers, prior to closing, in proper form for filing after the closing, and executed by the appropriate parties, any and all instruments as appropriate to cause the release of any such Lien or other interest, and in the event any such person or entity fails to comply with the direction set forth in this paragraph, then, at the option of the Buyer, the Buyer either may seek to have such person or entity held in contempt of this Court or shall be hereby authorized, without the requirement of any further action (including order of this Court), to execute, file, or otherwise record such statements, instruments, releases, and other documents on behalf of such person or entity releasing such asserted Lien or other interest or to file, register, or otherwise record a certified copy of this Sale Order, which shall constitute conclusive evidence of the termination or release of any such Lien or other interest.

21.    Subject to the fulfillment of the terms and conditions of the Sale Agreement, as of the closing, this Sale Order shall be considered and constitute for all purposes a full and complete general assignment, conveyance, and transfer of the Sellers' NewCo Equity Interest and/or a bill of sale transferring the Sellers' title and interest in the Sellers' NewCo Equity Interest to the Buyer.

RLF1 10845028v.1

22.    Consistent with, but not in limitation of the foregoing, each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

23.    Except as otherwise expressly set forth in this Sale Order or the Sale Agreement (as modified), and subject to any terms and conditions of the Sale Agreement, including all liabilities assumed and to be assumed by the Buyer pursuant to the Sale Agreement, and without limiting the assumption by the Buyer of any such assumed liability, the Buyer shall not have any liability or other obligation of the Sellers arising under or related to any of the Sellers' NewCo Equity Interest.  Without limiting the generality of the foregoing, and to the extent provided by federal law, the Buyer, under no circumstances, shall be deemed to be a successor of the Sellers.  Accordingly, the Buyer and its employees, officers, directors, advisors, lenders, affiliates, owners, successors, and assigns shall have no successor or vicarious liabilities with respect to Sellers' NewCo Equity Interest of any kind or character including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the closing, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated, or unliquidated with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any claims arising under ERISA or the WARN Act.

24.    Effective upon the Subsequent Closing date and except as otherwise provided by stipulations filed with or announced to this Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner, any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceedings against the Buyer, its successors and

18

assigns, or the Sellers' NewCo Equity Interest, with respect to any (a) interest (other than an applicable Subsequent Assumed Liability) arising under, out of, in connection with or in any way relating to the Debtors, the Buyer, the Sellers' NewCo Equity Interest, or the operation of the Sellers' NewCo Equity Interest prior to the Initial Closing, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, its successors or assigns, assets, or properties, (ii) enforcing, attaching, collecting ,or recovering in any manner any judgment, award, decree, or order against the Buyer, its successors, assets, or properties; (iii) creating, perfecting, or enforcing any interest against the Buyer, its successors, or assigns, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating, or failing or refusing to issue or renew any license, permit, or authorization to operate any of the Sellers' NewCo Equity Interest or conduct any of the businesses operated with the Sellers' NewCo Equity Interest.

25.     Upon the Closing of this Sale of Subsequent Sale Assets, all the relief requested by the Initial Sale Motion will have been granted and no Debtor or Reorganized Debtor shall seek this Court's approval for any further Sale of Subsequent Sale Assets.

26.     The Court shall retain exclusive jurisdiction to interpret, construe, and enforce the provisions of the Sale Agreement and this Sale Order in all respects, and further, to hear and determine any and all disputes between the Sellers and/or the Buyer with respect

thereto, and any dispute between the Buyer and the Sellers as to their respective obligations with respect to any asset, liability, or claim arising hereunder.

27.     Furthermore, the Court shall retain jurisdiction over all matters arising under the Debtors' chapter 11 cases regarding the sale of all the Sale Assets, notwithstanding that the entire sale is being consummated after confirmation and effectiveness of the Reorganized Debtors' Plan. To the extent any other Subsequent Sale Assets are sold as contemplated by, and resulting from, the rights set forth in the Sale Agreement, the Court shall retain jurisdiction to authorize and approve such sales pursuant to sections 363 and 365 of the Bankruptcy Code, including granting any of the relief provided by this Sale Order with respect to such sale or sales of the other Subsequent Sale Assets.

28.     Pursuant to section 1146(a) of the Bankruptcy Code, the Plan and the Confirmation Order, the (i) issuance, transfer, or exchange of debt, equity security, or other interest in the Debtors, (ii) creation of any mortgage, deed of trust, or other security interest, (iii) making or assignment of any lease or sublease, or (iv) making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan and the Sale Agreement, will not be subject to any stamp tax, recording tax, personal property transfer tax, real estate transfer tax, sales or use tax, or other similar tax or government assessment, and the appropriate state or local government official or agent shall be directed by the Bankruptcy Court to forego the collection of any such tax or government assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or government assessment.

29.     Nothing herein shall supersede or contradict paragraph 5 of this Court's order entered on September 23, 2011 [D.I. 3783].

20

30.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

31.    This Sale Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, or otherwise, and the Sellers may take any action authorized under this Sale Order immediately.

Dated: September 24, 2014
      Wilmington, Delaware

                                  THE HONORABLE CHRISTOPHER S. SONTCHI
                                  UNITED STATES BANKRUPTCY JUDGE

RLF1 10845028v.1